UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FULL CIRCLE UNITED, LLC,<br><br>     Plaintiff,<br>v.<br><br>BAY TEK ENTERTAINMENT, INC.,<br><br>     Defendant. | CASE NO. 1:20-CV-03395<br><br>**ANSWER AND COUNTERCLAIMS OF BAY TEK ENTERTAINMENT, INC.**<br><br><u>**JURY TRIAL DEMANDED**</u> |
| BAY TEK ENTERTAINMENT, INC.,<br><br>     Counterclaim Plaintiff,<br>v.<br><br>FULL CIRCLE UNITED, LLC,<br><br>     Counterclaim Defendant,<br><br>and<br><br>ERIC PAVONY,<br><br>     Additional Counterclaim Defendant. | |

Defendant and Counterclaim Plaintiff Bay Tek Entertainment, Inc. ("Bay Tek"), by and through its undersigned counsel, for its Answer to the Complaint of Plaintiff Full Circle United, LLC ("Plaintiff" or "Full Circle") alleges as follows:

**SUMMARY OF THE ACTION**

1.    Denies the allegations in paragraph 1, except admits the existence of a July 2014 Trademark License Agreement (the "License Agreement") between Skee Ball, Inc. ("SBI") and

12510029.2

Full Circle pertaining to the trademark "SKEE-BALL®" (the "Mark"), admits that Bay Tek has been assigned SBI's interest in the License Agreement, and avers that the terms of the License Agreement speak for themselves.

2.      Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 2, and on that basis it is denied.

3.      Bay Tek lacks sufficient knowledge or information to admit or deny the first sentence in paragraph 3, and on that basis it is denied.  Bay Tek denies the remainder of the allegations in paragraph 3.

4.      Bay Tek denies the allegations in paragraph 4, except admits the existence of a July 2014 Trademark License Agreement (the "License Agreement") between Skee Ball, Inc. ("SBI") and Full Circle pertaining to the trademark "SKEE-BALL®" (the "Mark"), admits that Bay Tek has been assigned SBI's interest in the License Agreement, and avers that the terms of the License Agreement speak for themselves.

5.      Bay Tek denies the allegations in paragraph 5.

6.      Bay Tek denies the allegations in paragraph 6.

7.      Bay Tek denies the allegations in paragraph 7.

8.      Bay Tek denies the allegations in paragraph 8.

9.      Bay Tek denies the allegations in paragraph 9.

10.      Bay Tek denies the allegations in paragraph 10.

11.      Bay Tek denies the allegations in paragraph 11, except admits that it registered the trademark "Skee-Ball Live," and avers that it has the right to do so.  Bay Tek further avers that Plaintiff purports to characterize, in part, certain written communications made between Bay

Tek and Plaintiff, denies those allegations to the extent they inaccurately or incompletely characterize the communications, and avers that the communications speak for themselves.

12.    Bay Tek denies the allegations in paragraph 12, except avers that Plaintiff purports to characterize, in part, certain written communications made between Bay Tek and Plaintiff, denies those allegations to the extent they inaccurately or incompletely characterize the communications, and avers that the communications speak for themselves.

13.    Bay Tek denies the allegations in paragraph 13.

## PARTIES

14.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 14, and on that basis it is denied.

15.    Bay Tek admits the allegations in paragraph 15.

16.    Bay Tek denies the allegations in the first sentence of paragraph 16, except admits the existence of the License Agreement, admits that Bay Tek has been assigned SBI's interest in the License Agreement, and avers that the terms of the License Agreement speak for themselves. Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in the remainder of paragraph 16, and on that basis they are denied.

## JURISDICTION AND VENUE

17.    Bay Tek avers that to the extent paragraph 17 asserts legal conclusions, no response is required or given. Bay Tek denies any factual allegations in paragraph 17 except admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

12510029.2

18.     Bay Tek avers that to the extent paragraph 18 asserts legal conclusions, no response is required or given.  Bay Tek denies any factual allegations in paragraph 18 except admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

19.     Bay Tek avers that to the extent paragraph 19 asserts legal conclusions, no response is required or given.  Bay Tek denies any factual allegations regarding Bay Tek in paragraph 19 except admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.  Bay Tek lacks sufficient knowledge or information to admit or deny any allegations in paragraph 19 regarding parties other than Bay Tek, and on that basis they are denied.

## GENERAL ALLEGATIONS[1]

20.     Bay Tek admits the allegations in paragraph 20.

21.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 21, and on that basis it is denied.

22.     Bay Tek admits that the Mark is a registered trademark, and avers that the terms of that registration speak for themselves.  Bay Tek lacks sufficient knowledge or information to admit or deny the remainder of the allegations in paragraph 22, and on that basis they are denied.

23.     Bay Tek admits that it has manufactured Skee-Ball branded alley rollers ("Skee-Ball Lanes" or "Skee-Ball branded Lanes") and that Bay Tek has used the Mark to otherwise promote the Skee-Ball brand, and/or licensed others to do so.  Bay Tek lacks sufficient

---

[1] Bay Tek denies the allegations in the Complaint's headings.

12510029.2

knowledge or information to admit or deny the remainder of the allegations in paragraph 23, and on that basis they are denied.

24.     Bay Tek admits that non-party SBI owned the Mark before it sold the Mark to Bay Tek.  Bay Tek lacks sufficient knowledge or information to admit or deny the remainder of the allegations in paragraph 24.

25.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 25, and on that basis, it is denied.

26.     Bay Tek denies that the National Skee-Ball League ("NSBL") creates, conducts, and manages competitive Skee-Ball leagues, events, and tournaments "across the country," and otherwise lacks sufficient knowledge or information to admit or deny the remainder of the allegations in paragraph 26, and on that basis, they are denied.

27.     Bay Tek denies the allegations in paragraph 27, except admits the existence of the License Agreement, and further avers that the License Agreement speaks for itself.

28.     Bay Tek admits that it operated as Bay Tek Games, Inc. and produces alley rollers, and denies the remainder of the allegations in paragraph 28.

29.     Bay Tek admits the allegations in paragraph 29.

30.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 30, and on that basis, it is denied.

31.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 31, and on that basis, it is denied.

32.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 32, and on that basis, it is denied.

12510029.2

33.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 33, and on that basis, it is denied.

34.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 34, and on that basis, it is denied.

35.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 35, and on that basis, it is denied.

36.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 36, and on that basis, it is denied.

37.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 37, and on that basis, it is denied.

38.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 38, and on that basis, it is denied.

39.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 39, and on that basis, it is denied.

40.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 40, and on that basis, it is denied.

41.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 41, and on that basis, it is denied.

42.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 42, and avers that Plaintiffs' admitted goal of having Skee-Ball broadcast on ESPN unequivocally falls outside the scope of the License Agreement.

12510029.2

43.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 43, and on that basis, it is denied.

44.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 44, and on that basis, it is denied.

45.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 45, and on that basis, it is denied.

46.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 46, and on that basis, it is denied.

47.     Bay Tek denies the allegations regarding Bay Tek in Paragraph 47.  Bay Tek lacks sufficient knowledge or information to admit or deny the remaining allegations in paragraph 47, and on that basis, they are denied.

48.     Bay Tek admits that it started manufacturing "Beer Ball" lanes in or about 2010 or 2011, and otherwise denies the allegations in paragraph 48.

49.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 49, and on that basis, it is denied.

50.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 50, and on that basis it is denied.

51.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 51, and on that basis it is denied.

52.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 52, and on that basis it is denied.

53.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 53, and on that basis it is denied.

54.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 54, and on that basis it is denied.

55.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 55, and on that basis it is denied.

56.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 56, and on that basis it is denied.

57.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 57, and on that basis it is denied.

58.     Bay Tek admits that SBI filed a lawsuit against Plaintiff on or about October 5, 2011 and avers that the lawsuit speaks for itself.  Bay Tek otherwise lacks sufficient knowledge or information to admit or deny the allegations in paragraph 58, and on that basis they are denied.

59.     Bay Tek admits that SBI filed a lawsuit against Plaintiff on or about October 5, 2011 and avers that the lawsuit speaks for itself.  Bay Tek otherwise lacks sufficient knowledge or information to admit or deny the allegations in paragraph 59, and on that basis they are denied.

60.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 60, and on that basis it is denied.

12510029.2

61.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 61, and on that basis it is denied, and avers that the lawsuit speaks for itself.

62.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 62, and on that basis it is denied, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

63.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 63, and on that basis it is denied, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

64.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 64, and on that basis it is denied.

65.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 65, and on that basis it is denied, except Bay Tek admits the existence of a settlement agreement, and avers that the terms of that agreement speak for themselves.

66.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 66, and on that basis it is denied.

67.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 67, and on that basis it is denied.

68.     Bay Tek denies the allegations in paragraph 68, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

12510029.2

69.    Bay Tek denies the allegations in paragraph 69, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

70.    Bay Tek denies the allegations in paragraph 70, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

71.    Bay Tek denies the allegations in paragraph 71, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

72.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 72, and on that basis it is denied, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

73.    Bay Tek denies the allegations in paragraph 73, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

74.    Bay Tek denies the allegations in paragraph 74, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

75.    Bay Tek denies the allegations in paragraph 75, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

12510029.2

76.     Bay Tek denies the allegations in paragraph 76, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

77.     Bay Tek denies the allegations in paragraph 77, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

78.     Bay Tek denies the allegations in paragraph 78, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

79.     Bay Tek denies the allegations in paragraph 79, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

80.     Bay Tek lacks sufficient knowledge or information to admit or deny the first sentence of paragraph 80, and on that basis it is denied.  Bay Tek otherwise denies the allegations in paragraph 80, except Bay Tek admits the existence of the License Agreement, and avers that the terms of the License Agreement speak for themselves.

81.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 81, and on that basis it is denied.

82.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 82, and on that basis it is denied.

83.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 83, and on that basis it is denied.

84.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 84, and on that basis it is denied.

85.     Bay Tek lacks sufficient knowledge or information to admit or deny the the allegations in paragraph 85, and on that basis it is denied, except Bay Tek admits that Plaintiff consented to the assignment of the License Agreement to Bay Tek.

86.     Bay Tek denies the allegations in paragraph 86, except admits that Bay Tek has been assigned SBI's interest in the License Agreement, and avers that the terms of the License Agreement speak for themselves.

87.     Bay Tek denies the allegations in paragraph 87, except admits that Bay Tek manufactures Skee-Ball lanes.

88.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 88, and on that basis it is denied.

89.     Bay Tek denies the allegations in paragraph 89 except admits that representatives of Bay Tek and Full Circle have had certain conversations.

90.     Bay Tek denies the allegations of paragraph 90, except admits that Bay Tek and Full Circle entered into a Mutual Non-Disclosure Agreement effective March 22, 2016.

91.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 91, and on that basis it is denied.

92.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 92 and on that basis it is denied.

93.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 93, and on that basis it is denied.

94.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 94 regarding Mr. Philippon, and on that basis they are denied.  Bay Tek denies the remaining allegations in paragraph 94.

95.     Denies the allegations in paragraph 95, excepts admits that Mr. Philippon is no longer the CEO of Bay Tek, and that Larry Treankler is the CEO of Bay Tek.

96.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 96, and on that basis it is denied.

97.     Bay Tek denies the allegations in paragraph 97.

98.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 98, and on that basis it is denied.

99.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 99, and on that basis, it is denied.

100.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 100, and on that basis it is denied.

101.    Bay Tek admits that representative of Bay Tek, including Mr. Treankler, Ms. Hampton, and Mr. Schadrie traveled to Austin in or around July 17, 2017 to meet with representatives of Full Circle.  Bay Tek lacks sufficient knowledge or information to admit or deny the remainder of the allegations in paragraph 101, and on that basis they are denied.

102.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 102, and on that basis it is denied.

103.    Bay Tek denies the allegations in paragraph 103.

104.    Bay Tek denies the allegations in paragraph 104.

13

105.     With respect to the allegations in paragraph 105, Bay Tek admits the parties have had certain communications, and denies Plaintiff's characterizations of those communications.

106.     With respect to the allegations in paragraph 106, Bay Tek admits the parties have had certain communications, and denies Plaintiff's characterizations of those communications.

107.     With respect to the allegations in paragraph 107, Bay Tek admits the parties have had certain communications, and denies Plaintiff's characterizations of those communications.

108.     Bay Tek admits that it built eleven (11) lanes and denies the remainder of the allegations in paragraph 108.

109.     Bay Tek denies the allegations in paragraph 109.

110.     Bay Tek denies that allegations in paragraph 110.

111.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 111, and on that basis it is denied.

112.     With respect to the allegations in paragraph 112, Bay Tek admits the parties have had certain communications, and denies Plaintiff's characterizations of those communications.

113.     With respect to the allegations in paragraph 113, Bay Tek admits the parties have had certain communications, and denies Plaintiff's characterizations of those communications.

114.     Bay Tek denies the allegations in paragraph 114.

115.     Bay Tek denies the allegations in paragraph 115.

116.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 116, and on that basis it is denied.

117.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 117, and on that basis it is denied.

12510029.2

118.    Bay Tek avers that Plaintiff purports to quote Larry Treankler, denies those allegations to the extent they inaccurately or incompletely quote Mr. Treankler, and otherwise lacks sufficient knowledge or information to admit or deny the allegations in paragraph 118.

119.    Bay Tek avers that Plaintiff purports to quote Larry Treankler, denies those allegations to the extent they inaccurately or incompletely quote Mr. Treankler, and otherwise lacks sufficient knowledge or information to admit or deny the allegations in paragraph 119.

120.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 120, and on that basis it is denied.

121.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 121, and on that basis it is denied.

122.    Bay Tek admits that Plaintiff purports to quote Larry Treankler, denies those allegations to the extent they inaccurately or incompletely quote Mr. Treankler, and otherwise lacks sufficient knowledge or information to admit or deny the allegations in paragraph 122.

123.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 123, and on that basis it is denied.

124.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 124, and avers that it did not consent to the audio or video recording of any meetings with Plaintiff.

125.    Bay Tek avers that Plaintiff purports to quote Larry Treankler, denies those allegations to the extent they inaccurately or incompletely quote Mr. Treankler, and otherwise lacks sufficient knowledge or information to admit or deny the allegations in paragraph 125.

12510029.2

126.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 126, and on that basis it is denied.

127.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 127, and on that basis it is denied.

128.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 128, and on that basis it is denied.

129.    Bay Tek admits that paragraph 129 purports to characterize certain communications; Bey Tek denies those characterizations to the extent they are inaccurate.

130.    Bay Tek admits that it delivered ten (10) Skee-Ball Live Prototype Lanes to Full Circle, and otherwise denies the allegations in paragraph 130.

131.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 131, and on that basis it is denied.

132.    Bay Tek denies the allegations in paragraph 132.

133.    Bay Tek denies the allegations in paragraph 133.

134.    Bay Tek denies the allegations in paragraph 134.

135.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 135, and on that basis it is denied.

136.    Bay Tek avers that Plaintiff purports to quote Eric Schadrie, denies those allegations to the extent they inaccurately or incompletely quote Mr. Schadrie, and otherwise lacks sufficient knowledge or information to admit or deny the allegations in paragraph 136.

137.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 137, and on that basis it is denied.

12510029.2

138.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 138, and on that basis it is denied.

139.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 139, and on that basis it is denied.

140.    Bay Tek denies the allegations in paragraph 140.

141.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 141, and on that basis it is denied.

142.    Bay Tek denies the allegations in paragraph 142.

143.    Bay Tek avers that Plaintiff purports to quote Eric Schadrie, denies those allegations to the extent they inaccurately or incompletely quote Mr. Schadrie, and otherwise lacks sufficient knowledge or information to admit or deny the allegations in paragraph 143.

144.    Bay Tek avers that Plaintiff purports to characterize communications by Ms. Hampton and Mr. Schadrie, denies those allegations to the extent they inaccurately or incompletely characterize those communications, and otherwise lacks sufficient knowledge or information to admit or deny the allegations in paragraph 144.

145.    Bay Tek admits that Plaintiff sent Bay Tek what it refers to as a "six-month plan," avers that the plan contemplated uses of the Mark outside the scope of the License Agreement, and lacks sufficient knowledge or information to admit or deny the remainder of the allegations in paragraph 145.

146.    Bay Tek denies the allegations of paragraph 146, except admits that it informed Full Circle regarding a potential non-revenue generating Skee-Ball tournament at a local game room.

12510029.2

147.    Bay Tek denies the allegations in paragraph 147.

148.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 148, and on that basis it is denied.

149.    Bay Tek avers that Plaintiff purports to characterize communications by Ms. Hampton, denies those allegations to the extent they inaccurately or incompletely characterize those communications, and otherwise lacks sufficient knowledge or information to admit or deny the allegations in paragraph 149.

150.    Bay Tek avers that Plaintiff purports to characterize communications by Ms. Hampton, denies those allegations to the extent they inaccurately or incompletely characterize those communications, and otherwise denies the allegations in paragraph 150.

151.    Bay Tek admits that it acquired the assets of Dimensional Branding, LLC, and lacks knowledge or information sufficient to admit or deny the remainder of the allegations in paragraph 151.

152.    Bay Tek denies the allegations in paragraph 152.

153.    Bay Tek denies the allegations in paragraph 153.

154.    Bay Tek denies the allegations in paragraph 154.

155.    Bay Tek denies the allegations in paragraph 155.

156.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 156, and on that basis it is denied.

157.    Bay Tek denies the allegations in paragraph 157.

158.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 158, and on that basis it is denied.

18

12510029.2

159.     Bay Tek admits that in March 2018, it contacted Plaintiff through its attorney by letter (the "March 2018 Letter"), and avers that the March 2018 Letter speaks for itself.  Bay Tek otherwise denies the allegations in paragraph 159.

160.     Bay Tek denies the allegations in paragraph 160.

161.     Bay Tek avers that Plaintiff purports to characterize the March 2018 Letter, denies those allegations to the extent they inaccurately or incompletely characterize the March 2018 Letter, and avers that the March 2018 Letter speaks for itself.  Bay Tek otherwise denies the allegations in paragraph 161.

162.     Bay Tek avers that Plaintiff purports to characterize the March 2018 Letter, denies those allegations to the extent they inaccurately or incompletely characterize the March 2018 Letter, and avers that the March 2018 Letter speaks for itself.  Bay Tek otherwise denies the allegations in paragraph 162.

163.     Bay Tek avers that Plaintiff purports to characterize an April 2018 letter sent by Bay Tek's attorney to Plaintiff (the "April 2018 Letter"), denies those allegations to the extent they inaccurately or incompletely characterize the April 2018 Letter, and avers that the April 2018 Letter speaks for itself.  Bay Tek otherwise denies the allegations in paragraph 163.

164.     Bay Tek avers that Plaintiff purports to characterize the April 2018 Letter, denies those allegations to the extent they inaccurately or incompletely characterize the April 2018 Letter, and avers that the April 2018 Letter speaks for itself.  Bay Tek otherwise denies the allegations in paragraph 164.

165.     Bay Tek denies the allegations in paragraph 165.

166.     Bay Tek denies the allegations in paragraph 166.

12510029.2

167.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 167, and on that basis it is denied.

168.    Bay Tek avers that Plaintiff purports to characterize an alleged email from Mr. Wikman, denies those allegations to the extent they inaccurately or incompletely characterize that alleged email, and avers that any such email speaks for itself.  Bay Tek otherwise denies the allegations in paragraph 168.

169.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 169, and on that basis it is denied.

170.    Bay Tek denies the allegations in paragraph 170.

171.    Bay Tek denies the allegations in paragraph 171.

172.    Bay Tek denies the allegations in paragraph 172, except admits that it changed its name from Bay Tek Games, Inc. to Bay Tek Entertainment, Inc.

173.    Bay Tek denies the allegations in paragraph 173 regarding Bay Tek.  Bay Tek otherwise lacks sufficient knowledge or information to admit or deny the remainder of the allegations in paragraph 173, and on that basis they are denied.

174.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 174, and on that basis it is denied.

175.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 175, and on that basis it is denied.

176.    Bay Tek denies the allegations in paragraph 176 regarding Bay Tek.  Bay Tek otherwise lacks sufficient knowledge or information to admit or deny the remainder of the allegations in paragraph 176, and on that basis they are denied.

12510029.2

177.    Bay Tek denies the allegations in paragraph 177.

178.    Bay Tek avers that Plaintiff purports to quote alleged communications from Mr. Rochetti, denies those allegations to the extent they inaccurately or incompletely quote Mr. Rochetti, and avers any such alleged communications speak for themselves.  Bay Tek denies the last sentence of paragraph 178.  Bay Tek otherwise lacks sufficient knowledge or information to admit or deny the remainder of the allegations in paragraph 178, and on that basis they are denied.

179.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 179, and on that basis it is denied.

180.    Bay Tek admits that it acquired the Mark almost three years prior to the end of 2018, and denies that Plaintiff could not acquire lanes through other means.  Bay Tek lacks sufficient knowledge or information to admit or deny the remainder of the allegations in paragraph 180, and on that basis they are denied.

181.    Bay Tek denies the allegations in paragraph 181.

182.    Bay Tek avers that Plaintiff purports to quote Larry Treankler, and denies those allegations to the extent they inaccurately or incompletely quote Mr. Treankler.  Bay Tek otherwise denies the allegations in paragraph 182.

183.    Bay Tek denies the allegations in paragraph 183, except admits that Mr. Treankler met with representatives of Full Circle.

184.    Bay Tek avers that Plaintiff purports to characterize communications by Larry Treankler, and denies those allegations to the extent they inaccurately or incompletely do so. Bay Tek otherwise denies the allegations in paragraph 184.

12510029.2

185.    Bay Tek avers that Plaintiff purports to quote Larry Treankler, and denies those allegations to the extent they inaccurately or incompletely quote Mr. Treankler.  Bay Tek otherwise denies the allegations in paragraph 185.

186.    Bay Tek admits that Plaintiff purports to quote Larry Treankler, and denies those allegations to the extent they inaccurately or incompletely quote Mr. Treankler.  Bay Tek otherwise denies the allegations in paragraph 186.

187.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 187, and on that basis it is denied.

188.    Bay Tek denies the allegations in paragraph 188.

189.    Bay Tek denies the allegations in paragraph 189.

190.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 190, and on that basis it is denied.

191.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 191, and on that basis it is denied.

192.    Bay Tek denies the allegations in paragraph 192, except Bay Tek admits sending a letter to Plaintiff through its attorney dated May 7, 2019 (the "May 2019 Letter"), and avers that the May 2019 Letter speaks for itself.

193.    Bay Tek avers that Plaintiff purports to characterize the May 2019 Letter, denies those allegations to the extent they inaccurately or incompletely characterize the May 2019 Letter, and avers that the May 2019 Letter speaks for itself.  Bay Tek otherwise denies the allegations in Paragraph 193.

12510029.2

194.     Bay Tek avers that Plaintiff purports to characterize the May 2019 Letter, denies those allegations to the extent they inaccurately or incompletely characterize the May 2019 Letter, and avers that the May 2019 Letter speaks for itself.  Bay Tek otherwise denies the allegations in Paragraph 194.

195.     Bay Tek avers that Plaintiff purports to quote the May 2019 Letter, denies those allegations to the extent they inaccurately or incompletely quote the May 2019 Letter, and avers that the May 2019 Letter speaks for itself.  Bay Tek otherwise denies the allegations in Paragraph 195.

196.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 196, and on that basis it is denied.

197.     Bay Tek avers that paragraph 197 is vague and ambiguous (including in its use of the phrase "[t]hrough the summer of 2019"), and on that basis it is denied.  Bay Tek otherwise denies the allegations in paragraph 197.

198.     Bay Tek denies the allegations in paragraph 198.

199.     Bay Tek denies the allegations in paragraph 199.

200.     Bay Tek denies the allegations in paragraph 200.

201.     Bay Tek denies the allegations in paragraph 201.

202.     Bay Tek denies the allegations in paragraph 202.

203.     Bay Tek denies the allegations in paragraph 203.

204.     Bay Tek denies the allegations in paragraph 204, which allegations are premised upon a misrepresentation and misstatement of the terms of the License Agreement.

23

205.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 205, and on that basis it is denied.

206.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 206, and on that basis it is denied.

207.    Bay Tek avers that Full Circle purports to characterize an alleged email from November 22, 2019 in part, denies those allegations to the extent they inaccurately or incompletely characterize the alleged email, and avers that the alleged email speaks for itself.

208.    Bay Tek avers that Full Circle purports to characterize an email from December 16, 2019 in part, denies those allegations to the extent they inaccurately or incompletely characterize the email, and avers that the email speaks for itself.

209.    Bay Tek avers that Full Circle purports to characterize an email in part, denies those allegations to the extent they inaccurately or incompletely characterize the email, and avers that the email speaks for itself.

210.    Bay Tek denies the allegations in paragraph 210.

211.    Bay Tek admits receiving a purported notice, avers that the purported notice speaks for itself, and denies breaching the License Agreement.  Bay Tek otherwise denies the allegations in paragraph 211.

212.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 212, and on that basis it is denied.

213.    Bay Tek admits that Plaintiff was and remains in default of the License Agreement, and otherwise denies the allegations in paragraph 213.

214.    Bay Tek denies the allegations in paragraph 214.

24

215.     Bay Tek admits that the parties engaged in certain communications regarding a purported ESPN deal, and denies the allegations in paragraph 215 to the extent Full Circle mischaracterizes such communication.  Bay Tek otherwise denies the allegations in paragraph 215.

216.     Bay Tek admits that the parties engaged in certain communications regarding a purported ESPN deal, and denies the allegations in paragraph 216 to the extent Full Circle mischaracterizes such communications.  Bay Tek otherwise denies the allegations in paragraph 216, and on that basis they are denied.

217.     Bay Tek admits that the parties engaged in certain communications regarding a purported ESPN deal, and denies the allegations in paragraph 217 to the extent Full Circle mischaracterizes such communication.  Bay Tek otherwise denies the allegations in paragraph 217, and on that basis they are denied.

218.     Bay Tek denies it made "threats."  Bay Tek otherwise lacks sufficient knowledge or information to admit or deny the allegations in paragraph 218, and on that basis they are denied.

219.     Bay Tek denies the allegations in paragraph 219.

220.     Bay Tek denies the allegations in paragraph 220.

221.     Bay Tek denies the allegations in paragraph 221.

**COUNT I**
**(Breach of the License Agreement)**

222.     Bay Tek realleges the foregoing responses to the Complaint as if set forth fully herein.

223.     Bay Tek admits that Plaintiff purports to allege breach of the License Agreement, and denies committing any breach.

224.     Bay Tek denies the allegations in paragraph 224.

225.     Bay Tek avers that the allegations in paragraph 225 purport to characterize the License Agreement; Bay Tek denies those allegations to the extent they inaccurately or incompletely characterize the License Agreement, and avers that the License Agreement speaks for itself.  Bay Tek otherwise denies the allegations in paragraph 225.

226.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 226, and on that basis it is denied.

227.     Bay Tek denies the allegations in paragraph 227.

228.     Bay Tek denies the allegations in paragraph 228.

229.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 229, and on that basis it is denied.

230.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 230, and on that basis it is denied.

231.     Bay Tek admits registering the trademark "Skee-Ball Live," and avers that it was entitled to do so, both as the owner of the Mark, and pursuant to the express terms of the License Agreement.  Bay Tek otherwise lacks sufficient knowledge or information to admit or deny the allegations in paragraph 231, and on that basis it is denied.

232.     Bay Tek denies the allegations in paragraph 232.

233.     Bay Tek denies the allegations in paragraph 233.

234.     Bay Tek denies the allegations in paragraph 234.

235.     Bay Tek avers that the allegation in paragraph 235 purports to quote the License Agreement in part, denies those allegations to the extent they inaccurately or incompletely characterize the License Agreement, and avers that the License Agreement speaks for itself.  Bay Tek further denies breaching the License Agreement, and otherwise denies the remaining allegations in paragraph 235.

236.     Bay Tek denies the allegations in paragraph 236.

237.     Bay Tek denies the allegations in paragraph 237.

238.     Bay Tek avers that the allegations in paragraph 238 purport to characterize the License Agreement in part, denies those allegations to the extent they inaccurately or incompletely characterize the License Agreement, and avers that the License Agreement speaks for itself.  Bay Tek further denies breaching the License Agreement, and otherwise denies the allegations in paragraph 238.

239.     Bay Tek denies the allegations in paragraph 239.

240.     Bay Tek denies the allegations in paragraph 240.

241.     Bay Tek denies the allegations in paragraph 241.

242.     Plaintiff's legal characterization of New York law in paragraph 242 is a legal opinion to which no response is required.  Bay Tek otherwise denies the allegations in paragraph 242.

243.     Bay Tek denies the allegations in paragraph 243.

244.     Bay Tek denies the allegations in paragraph 244.

245.     Bay Tek denies the allegations in paragraph 245.

246.     Bay Tek denies the allegations in paragraph 246.

247.     Bay Tek denies the allegations in paragraph 247.

248.     Bay Tek denies the allegations in paragraph 248.

249.     Bay Tek denies the allegations in paragraph 249.

**COUNT II**
**(Breach of the Revenue Share Agreement)**

250.     Bay Tek realleges the foregoing responses to the Complaint as if set forth fully

herein.

251.     Bay Tek admits that Plaintiff purports to allege breach of the purported Revenue

Share Agreement, and denies committing any breach.  Bay Tek otherwise denies the allegations

in paragraph 251.

252.     Bay Tek denies the allegations in paragraph 252.

253.     Bay Tek denies the allegations in paragraph 253.

254.     Bay Tek denies the allegations in paragraph 254.

255.     Bay Tek denies the allegations in paragraph 255.

256.     Bay Tek denies the allegations in paragraph 256.

257.     Bay Tek denies the allegations in paragraph 257.

258.     Bay Tek denies the allegations in paragraph 258.

259.     Bay Tek avers that it is not required to provide Plaintiff with thirty-six (36) Skee-

Ball Live Lanes, and otherwise denies the allegations in paragraph 259.

260.     Bay Tek denies the allegations in paragraph 260.

261.     Bay Tek denies the allegations in paragraph 261.

262.     Bay Tek denies the allegations in paragraph 262.

12510029.2

263.     Bay Tek denies the allegations in paragraph 263.

### COUNT III
**(Tortious Interference with Prospective Business Relationship)**

264.     Bay Tek realleges the forgoing responses to the Complaint as if set forth fully herein.

265.     Bay Tek admits that Plaintiff purports to allege tortious interference with a prospective business relationship, and denies committing any tort.  Bay Tek otherwise denies the allegations in paragraph 265.

266.     Bay Tek denies the allegations in paragraph 266.

267.     Bay Tek denies that it refused to perform any purported contractual obligations. Bay Tek lacks sufficient knowledge or information to admit or deny the remainder of the allegations in paragraph 267, and on that basis they are denied.

268.     Bay Tek denies that it refused to perform any purported contractual obligations. Bay Tek lacks sufficient knowledge or information to admit or deny the remainder of the allegations in paragraph 268, and on that basis they are denied.

269.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 269, and on that basis it is denied.

270.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 270, and on that basis it is denied.

271.     Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 271, and on that basis it is denied.

272.     Bay Tek denies the allegations in paragraph 272.

273.    Bay Tek lacks sufficient knowledge or information to admit or deny the allegations in paragraph 273, and on that basis it is denied.

274.    Bay Tek denies the allegations in paragraph 274.

275.    Bay Tek denies the allegations in paragraph 275.

276.    Bay Tek denies the allegations in paragraph 276.

## PRAYER FOR RELIEF

Bay Tek denies that Full Circle is entitled to the relief requested in its Prayer for Relief, or to any other relief whatsoever.

## AFFIRMATIVE AND OTHER DEFENSES

Without waiving or excusing the burden of proof of Plaintiff, or admitting that Bay Tek has any burden of proof, Bay Tek asserts the following affirmative and other defenses.  Bay Tek does not presently know all facts and circumstances with respect to Plaintiff's allegations, and thereby reserves the right to amend this Answer should it later discover facts demonstrating the existence of additional defenses.

### FIRST DEFENSE
#### (Failure to State a Claim)

1.    The Complaint and any purported claims for relief therein fail to state a claim for which relief can be granted.

### SECOND DEFENSE
#### (Statute of Frauds)

30

2.      The Revenue Sharing Agreement referred to in the Complaint is barred by the statute of frauds.

<strong><u>THIRD DEFENSE</u></strong><br><strong>(Condition Precedent/Subsequent)</strong>

3.      Any alleged contracts, obligations, or agreements referred to in the Complaint are barred by failures of conditions precedent or subsequent.

<strong><u>FOURTH DEFENSE</u></strong><br><strong>(Breach and Default by Plaintiff)</strong>

4.      Bay Tek has substantially performed any and all contractual obligations, and any duty or performance on behalf of Bay Tek is excused by Plaintiff's own actions, breaches, and defaults, including but not limited to those specified in Bay Tek's counterclaims.

<strong><u>FIFTH DEFENSE</u></strong><br><strong>(Waiver)</strong>

5.      Plaintiff has waived the right, if any, to pursue any of the causes of action alleged in the Complaint by reason of its own actions and course of conduct.

<strong><u>SIXTH DEFENSE</u></strong><br><strong>(Estoppel)</strong>

6.      Plaintiff's claims and damages are barred, in whole or in part, by the doctrine of estoppel.

<strong><u>SEVENTH DEFENSE</u></strong><br><strong>(Unclean Hands/<em>In Pari Delicto</em>)</strong>

7.      Plaintiff has not come to Court with clean hands and thus, its claims and damages are barred, in whole in part, by the doctrines of unclean hands and <em>in pari delicto</em>.

31

## EIGHTH DEFENSE
### (Offset/Setoff)

8.      If Plaintiff sustained any damage as a result of the conduct alleged in the Complaint, which Bay Tek expressly denies, then Bay Tek is entitled to offset or setoff against any such recovery any and all amounts owed to Bay Tek by Plaintiff, and damages or harm caused to Bay Tek by Plaintiff's action or inaction.  The offset claims include but are not limited to those alleged in Bay Tek's counterclaims.

## NINTH DEFENSE
### (Failure to Mitigate)

9.      If Plaintiff sustained any damage as a result of the conduct alleged in the Complaint, which Bay Tek expressly denies, the relief, if any, to which Plaintiff is entitled must be diminished, in whole or in part, by the extent of (a) the actual mitigation of Plaintiff's damages, and (b) any additional mitigation of Plaintiff's damages which with reasonable diligence Plaintiffs could have accomplished.

## TENTH AFFIRMATIVE DEFENSE
### (Ratification/Acquiescence/Abandonment/Forfeiture)

10.      Plaintiff's claims and damages are barred, in whole or in part, by the doctrines of ratification, acquiescence, abandonment, and/or forfeiture.

## ELEVENTH AFFIRMATIVE DEFENSE
### (No Damages)

11.      Plaintiff's claims and damages are barred, in whole or in part, because Plaintiff has not suffered any damage or injury as a result of any act or conduct by Bay Tek.

## TWELTH AFFIRMATIVE DEFENSE

12510029.2

**(Damages Too Speculative)**

12.     Plaintiff's claims and damages are barred, in whole or in part, because the damages sought are too speculative and remote.

### THIRTEENTH AFFIRMATIVE DEFENSE
**(Good Faith)**

13.     Plaintiff's claims and damages are barred, in whole or in part, because Bay Tek has acted in good faith in all of its dealings with Plaintiff.

### FOURTEENTH AFFIRMATIVE DEFENSE
**(Bad Faith)**

14.     Plaintiff's claims and damages are barred, in whole or in part, as a result of Plaintiff's bad faith.

### FIFTEENTH AFFIRMATIVE DEFENSE
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

15.     Plaintiff's claims and damages are barred, in whole or in part, due to the fact that Plaintiff, by its own acts and/or omissions, breached the covenant of good faith and fair dealing implied in its agreements with Bay Tek.

### SIXTEENTH AFFIRMATIVE DEFENSE
**(Anticipatory Repudiation)**

16.     Plaintiff's claims and damages are barred, in whole or in part, by the doctrine of anticipatory repudiation.

### SIXTEENTH AFFIRMATIVE DEFENSE
**(Statute of Limitations)**

17.     Plaintiff's claims and damages are barred, in whole or in part, by the statute of limitations.

12510029.2

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Laches)

18.     Plaintiff's claims and damages are barred, in whole or in part, by the doctrine of laches.


WHEREFORE, Bay Tek respectfully submits that the Complaint should be dismissed with prejudice and judgment entered in its favor.


## JURY TRIAL DEMANDED

Bay Tek demands a trial by jury of all claims that are so triable.

34

**COUNTERCLAIMS OF BAY TEK ENTERTAINMENT, INC. AGAINST**
**FULL CIRCLE UNITED, LLC AND ERIC PAVONY**

Defendant/Counterclaim Plaintiff Bay Tek Entertainment, Inc. ("Bay Tek"), by and

through its undersigned counsel, hereby alleges, on personal knowledge as to its own actions and

on information and belief as to the actions of others, as follows:

## NATURE OF ACTION

1.       Bay Tek is a family-owned business based in Northeast Wisconsin.  Founded in

1977, Bay Tek has become one of the leading developers and designers of family-friendly ticket

redemption games.  These games include Skee-Ball, the iconic and beloved arcade game in

which players roll a ball up an inclined lane to get the ball to fall into various holes

corresponding to different point values.  Bay Tek is the owner of the registered trademark

"SKEE-BALL®" (the "Mark"), which it acquired in 2016 from a company called Skee Ball, Inc.

("SBI"), as well as related trademarks.

2.       Plaintiff/Counterclaim Defendant Full Circle United, LLC ("Full Circle") and

additional Counterclaim Defendant Eric Pavony ("Pavony") (collectively with "Full Circle,"

"Counterclaim Defendants") operate live Skee-Ball tournaments, competitions, and events in

bars, including in two bars which Full Circle owns in Brooklyn, New York and Austin, Texas.

Full Circle alleges that it is the owner of the trademark "BREWSKEE Ball®."

3.       When Bay Tek acquired the Mark in 2016, it also received an assignment of

SBI's interest under a July 2014 trademark license agreement (the "License Agreement") with

Full Circle.  Pursuant to the License Agreement, Full Circle was granted a limited license to use

the Mark solely in connection with live play leagues, teams, events and tournaments ("Live Play"), subject to expressly enumerated restrictions, exclusions, and other conditions.

4.     Despite receiving only a limited license to use the Mark, Full Circle has, in concert with Pavony, its founder and sole member, wrongfully conducted itself as if Full Circle, and not Bay Tek, is the owner of the Mark.  Counterclaim Defendants together have engaged in, and continue to engage in, uses of the Mark that blatantly fall outside the scope of Full Circle's limited rights, all while deliberately cultivating an unsavory image that is anathema to the family and children-friendly image for the Mark that Full Circle is contractually obligated to uphold. *Inter alia*, Counterclaim Defendants have repeatedly made, and encouraged the public to make, disparaging—and frankly disgusting—uses of the Mark that associate it with drug abuse, sexual conduct and even the murder trial of a young child.  They include, without limitation, "Skeemature Ejaculation," "Hepatitis Skee," "Skeefer Madness," and "K. Skee Anthony."

5.     These shocking misuses of the Mark are not mere isolated incidents, but rather, illustrative of a debaucherous and vulgar culture completely antithetical to Bay Tek and the Mark's family-friendly image.  Counterclaim Defendants go well beyond merely associating Skee-Ball with a bar environment, but rather associate Skee-Ball with alcohol abuse and sexually inappropriate behavior, both of which are on full display in its videos and marketing materials.

6.     In further violation of the License Agreement and applicable trademark law, Counterclaim Defendants regularly engage in digital streaming broadcasts which make unauthorized uses of the Mark.  These streaming broadcasts further tarnish the Mark through, *inter alia*, their amateurish production values and promotion of alcohol abuse.  Counterclaim Defendants have focused all of their efforts and attention on these live broadcasts to the

36

detriment of fostering the Live Play leagues, teams, events and tournaments which the License Agreement actually authorized Full Circle to promote with the Mark.[2]  By willfully neglecting the legitimate endeavors in which it was actually authorized to engage, Full Circle has violated its contractual obligations under the License Agreements to use best efforts to promote its Live Play leagues, teams, events, and tournaments.

7.      Finally, Full Circle has failed and refused to pay Bay Tek the contractually specified licensing fees for the valuable sponsorships which Full Circle has obtained, and failed to maintain a sufficient general liability insurance policy, as it is contractually obligated to do.

8.      Counterclaim Defendants' blatant disregard for Bay Tek's contractual and trademark rights have caused and will continue to cause irreparable damage to Bay Tek's business and reputation.  Counterclaim Defendants are actively undermining Bay Tek's ability to control the use and quality associated with its own Mark, thereby diminishing the value of the Mark.

9.      Indeed, as set forth herein, Counterclaim Defendants have demonstrated that their entire business model is devoted to the improper exploitation of the Mark and disrespect for Bay Tek's rights in the Mark, such that Full Circle's countless breaches are incurable as a matter of law and warrant termination of the License Agreement.

---

[2] Indeed, Full Circle filed its meritless Complaint in this action as a misguided attempt to pressure Bay Tek into permitting it to engage in these broadcasts which are wholly forbidden under the License Agreement.  However, Bay Tek will not fall prey to such bully tactics. Consistent with the Court's scheduling order, Bay Tek will be filing a motion pursuant to Rule 12(c) to dismiss Full Circle's Complaint on or before September 30, 2020.

12510029.2

10.     Accordingly, Bay Tek hereby asserts Counterclaims against Full Circle and Pavony for:  (1) trademark infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114); (2) false endorsement under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (3) trademark dilution under Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); (4) common law unfair competition; (5) dilution under New York General Business Law § 360-l; and further asserts Counterclaims against Full Circle for (6) breach of the Licensing Agreement; and (7) declaratory judgment that Bay Tek is entitled to terminate the License Agreement.

### THE PARTIES

11.     Bay Tek Entertainment, Inc. is a Wisconsin corporation with its principal place of business at 1077 East Glenbrook Drive, Pulaski, WI 54162.

12.     Full Circle United, LLC is a New York limited liability company whose sole member, Eric Pavony, is domiciled in New York.

13.     Eric Pavony is an individual who is domiciled in New York.  Pavony founded Full Circle, and is its sole member.  Pavony is central to Full Circle's actions, directly controlling and authorizing, and financially benefiting from, all of Full Circle's unlawful conduct stated herein.

### JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338, because Bay Tek raises counterclaims that arise under the Lanham Act.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

12510029.2

15.     This Court has personal jurisdiction over Counterclaim Defendants pursuant to N.Y. C.P.L.R. § 301 because Full Circle is incorporated in New York and has such continuous and systematic contacts in New York to be essentially "at home" in New York, and because Pavony is domiciled in New York.  Full Circle has further consented to jurisdiction in this District in the parties' License Agreement and by filing the instant lawsuit in this District.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Counterclaim Defendants are "deemed to reside" in this District and because a substantial part of the events giving rise to the claim occurred in this District.

### THE SKEE-BALL MARK

17.     Skee-Ball is a well-known and famous arcade game that originated in or around 1908.  Ubiquitous in arcades, Skee-Ball is played by rolling a ball up an inclined lane in an attempt to get the ball to fall into various holes corresponding to different point values.  The object of Skee-Ball is to collect as many points as possible.

18.     The SKEE-BALL Mark was registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") on May 21, 1929, under the Trademark Act of 1905, in connection with "game in the nature of a bowling game and parts thereof."  The Mark remains registered on the Principal Register of the USPTO.  It is incontestable pursuant to 15 U.S.C. § 1065 (Lanham Act § 15).

19.     The Mark is famous and is widely recognized by the consuming public of the United States as a designation of source, and, following Bay Tek's acquisition of the Mark in 2016, has been used and has become recognized as a source of Bay Tek's goods and services.

12510029.2

**COUNTERCLAIM DEFENDANTS' LONG HISTORY OF INFRINGING THE MARK[3]**

20.     Even before the inception of the License Agreement in July 2014, Counterclaim Defendants demonstrated their contempt for trademark law and lack of respect for the Mark.

21.     Starting in or around 2006, Counterclaim Defendants began to wrongfully exploit the Mark, sparking the attention of SBI, Bay Tek's predecessor-in-interest.  At Pavony's direction, Full Circle held itself out to the public as if it was endorsed by or affiliated with the Skee-Ball brand without permission or authorization from SBI.  Despite being completely unaffiliated with the Mark at the time, Full Circle referred to itself as the "First-Ever Competitive Skee Ball League," advertised the "Skee Ball Stadium" at its bar in Brooklyn, and used the Mark extensively on its own website, in print and media advertising, and in other promotional materials and prize materials.  Indeed, Full Circle even incorporated the Mark into its own brand, Brewskee-Ball.  In short, Counterclaim Defendants built Full Circle's entire business model around misappropriating the Skee-Ball brand and freeriding off of its goodwill.

22.     Full Circle also improperly registered the trademark BREWSKEE-BALL with the USPTO in 2006, wrongfully incorporating the Mark into its description of goods and services no less than four times: "Entertainment in the nature of skee-ball games; entertainment services, namely, arranging and conducting of skee-ball competitions; providing a website that provides statistics for skee-ball league players; providing recognition and incentives by the way of awards to demonstrate excellence in the field of skee-ball."  Full Circle did so notwithstanding the

---

[3] Paragraphs 20 – 24 are alleged on information and belief according to SBI's publicly-filed Complaint in *Skee Ball, Inc. v. Full Circle United, LLC*, No. 1:11-cv-06277-LB (E.D.N.Y.).

Trademark Manual of Examining Procedure's ("TMEP") express prohibition against using a registered mark to identify one's own product or service. *See* TMEP § 1402.09.

23.     In light of Full Circle's blatantly unlawful conduct, SBI demanded in 2010 that Full Circle cease and desist all uses of the Mark without the authorization of SBI.  Full Circle failed to comply, and continued to willfully use the Mark without SBI's permission or authorization.

24.     Because Full Circle refused to cease its infringing activities and continued to operate a business premised on the unauthorized use of the Mark, SBI was forced to bring a lawsuit for trademark infringement and related claims.  SBI filed its lawsuit on October 5, 2011 in the Northern District of California; the case was later transferred to this District.

25.     Full Circle retaliated with a lawsuit of its own a month later, outrageously claiming that SBI had orally agreed that Full Circle was granted permission to engage in unfettered use of the Mark simply because SBI's CEO, Joseph Sladek, had purportedly "wished them luck" when they first started Brewskee-Ball in 2005.  The Court roundly rejected Full Circle's spurious argument.  *See Full Circle United, LLC v. Skee-Ball, Inc.*, No. 11 CV 5476 (LB), 11 CV 6277 (LB), 2014 WL 12829195 (E.D.N.Y. May 13, 2014).

26.      Shortly thereafter, SBI and Full Circle settled their disputes on July 17, 2014.  As part of that settlement, and in exchange for mutual releases, SBI and Full Circle entered into the License Agreement, pursuant to which SBI granted Full Circle a limited license to allow Full Circle to engage in certain circumscribed uses of the Mark, subject to express restrictions, exclusions, and other terms and conditions set forth therein.  A summary of the relevant

41

provisions of the License Agreement—all of which Full Circle has breached—follows.  A copy

of the License Agreement is attached hereto as Exhibit A.

## THE TERMS OF THE LICENSE AGREEMENT
## WHICH FULL CIRCLE HAS INCURABLY BREACHED

27.     ***The Limited Scope of the Trademark License Granted to Full Circle.***  Section 3

of the License Agreement sets forth four limited categories of permitted uses of the Mark

(collectively, the "Licensed Uses") by Full Circle: (1) in connection with Live Play, which is

expressly limited under the License Agreement to "live play leagues, teams, events, and

tournaments utilizing alley rollers manufactured by SBI and called Skee-Ball® machines"; (2) in

connection with developing, producing, selling, and distributing merchandise solely in

connection with Live Play ("Live Play Merchandise"); (3) in connection with developing,

producing, offering, and using a free electronic scoring application to be used solely in

connection with Live Play to record and maintain scores, statistics, league and player

information, wins and losses, awards, and rankings (the "Scoring App"); and (4) in connection

with sponsorships or endorsements solely and directly related to Live Play, "***provided, however***"

that Full Circle was required to provide notice of the sponsorships or endorsements to SBI, a

copy of the executed sponsorship agreement, and pay SBI five percent (5%) of gross sponsorship

revenues.  (emphasis added).

28.     The License Agreement makes clear that the Licensed Uses, which were subject

to numerous conditions, restrictions, and exclusions, set forth the entire scope of Full Circle's

license to use the Mark.  In other words, if Full Circle used the Mark outside the Licensed Uses,

12510029.2

or failed to abide by the conditions, restrictions, and exclusions in the License Agreement, then Full Circle has infringed SBI's rights in the Mark.

29.    ***Prohibition on Full Circle's Digital Transmittal or Other Broadcasting of Live Play.***  Pursuant to Paragraph 3.2 of the License Agreement, Full Circle's right to use the Mark over the Internet, radio, television, or other communication and media outlets, was limited to "promotional and marketing purposes only."  In other words, Full Circle was entitled to use the Mark to advertise and promote Live Play at bars, but it could not transform Live Play into a digitally transmitted event, or otherwise broadcasted.  *See also* License Agreement, Paragraph 4.1 ("it is understood that no rights for digital or virtual play or other digital rights utilizing the SKEE-BALL Trademark beyond the Scoring App are granted to FCU herein.").

30.    ***Prohibition on Full Circle's Use of Unauthorized Phrases and Slogans Containing the Mark.***  Paragraph 4.2 of the License Agreement provided that Full Circle had the right to use a limited number of specified, pre-approved phrases and slogans, such as "National Skee-Ball League" and "National Skee-Ball League Championship," but ***prohibited*** Full Circle from using other phrases containing the Mark, unless Full Circle obtained prior written approval from SBI.

31.    ***Conditions Placed Upon Full Circle's Sponsorships and Endorsements.***  Paragraph 4.3 of the License Agreement required Full Circle to provide SBI with notification of sponsorships and endorsements (including a copy of all sponsorship and endorsement deals), and to pay SBI 5% of its gross revenues from such deals.

32.    ***Full Circle's Stringent Quality Control Obligations.***  The License Agreement also contains stringent quality control obligations for Full Circle to maintain the high-quality,

family-oriented reputation of the Mark.  For example, and without limitation, Paragraph 4.3 of

the License Agreement expressly prohibited Full Circle from using the Mark in connection with

any sponsorships or endorsements that would diminish or tarnish the reputation of the Mark.  By

way of further example, Paragraph 7.7 of the License Agreement provides:

> FCU shall not use the SKEE-BALL Trademark in a manner that disparages, demeans, tarnishes or dilutes the reputation of SBI or the SKEE-BALL Trademark.  ***FCU acknowledges and agrees that SBI's SKEE-BALL Trademark branded goods and/or services are geared toward families and children*** and FCU will ensure that its use of the SKEE-BALL Trademark shall not tarnish, dilute, weaken, blur or otherwise malign the SKEE-BALL Trademark and/or SBI. (emphasis added).

33.     ***Full Circle's Stringent "Best Efforts" Obligations.***  In Paragraph 5.1 of the

License Agreement, Full Circle agreed "to use best efforts to build a national network of Live

Play teams, leagues, and/or events in at least fifteen (15) states in the United States within five

(5) years of the Effective Date of this Agreement."

34.     ***Full Circle's Obligation to Maintain a General Liability Insurance Policy.***  In

paragraph 14.4 of the License Agreement, Full Circle agreed to take out and maintain, at its sole

expense, a commercial general liability insurance policy that sufficiently covered SBI in actions

related or arising, directly, or indirectly, from (a) a breach by Full Circle of any representation,

warranty, or covenant therein, (b) claims caused or alleged to have been caused by Full Circle or

any of its employees, agents, representatives, invitees, or sub-licensees in connection with

business operations conducted in exploitation of the Licensed Uses including but not limited to

claims for personal injury and property damage, and (c) any other claims arising from Full

Circle's exercise of the Licensed Uses.

12510029.2

35.     Bay Tek acquired the Mark in 2016, and with it received an assignment of SBI's interest under the License Agreement as licensor of the Mark.

36.     As discussed immediately below, Full Circle, in concert with, and directed by Pavony, has intentionally committed ongoing, incurable breaches of the above-referenced provisions of the license agreement, and caused irreparable harm to Bay Tek's valuable Mark.

## COUNTERCLAIM DEFENDANTS BUILD A BUSINESS WHICH FLAGRANTLY BREACHES THE LICENSE

37.     ***Counterclaim Defendants' Egregious and Incurable Violations of License Agreement's Quality Control Provisions, Use of Unapproved Phrases and Slogans, and Concomitant Trademark Infringements.***  The National Skee-Ball League which Full Circle and Pavony purport to run, is a shambolic enterprise which has intentionally adopted, as its very business model, an "Animal House" atmosphere, in which sexual innuendos, profanity, and out-of-control drinking are celebrated and encouraged.  The type of excessive alcohol abuse which Counterclaim Defendants promote would be wholly inappropriate and unacceptable in this day and age at a fraternity party, let alone for the licensee of a world-famous, family-friendly trademark.  As explained below, Counterclaim Defendants have adopted a conscious business model to build up its own BREWSKEE BALL mark at the expense of the Mark, by incessantly disparaging and tarnishing the Mark.  It would be a grievous understatement to note that this repugnant business model incurably violates the quality-control provisions of the License Agreement.

38.     Counterclaim Defendants have encouraged, and directly promoted the use by the public of, unapproved slogans which contain vulgar sexual innuendos incorporating the Mark.

These unauthorized, and frequently loathsome, slogans not only violate numerous provisions of the Licensee Agreement, but moreover constitute willful infringement and tarnishment of the Mark.  They include, but are far from limited to, "Skeemature Ejaculation" and "Hepatitis Skee," both of which Counterclaim Defendants have proudly displayed on Full Circle's website and/or in its online merchandise store:



12510029.2



39.     Many of the unapproved phrases and slogans containing the Mark which

Counterclaim Defendants promote also incorporate the intellectual property of third parties, even

though Full Circle is expressly prohibited from making such a use of the Mark without first

obtaining "the required party authorization, release, approval, consent, or license."  For instance,

Full Circle actively promotes "Skee.I.Joes," a play on Skee-Ball and "G.I. Joe" action figures.

Full Circle also uses the slogan "Fight Claw," to associate its business with White Claw® hard

seltzer.

40.     Counterclaim Defendants also deliberately associate the Mark with imagery of

binge drinking, masturbation, drug abuse, and a murder trial. These include the use by

Counterclaim Defendants of slogans such as "ONCE MORE AROUND THE MUG! Full Circle

47

Jerks Take One Last Chug" and "Bottom Up Champs." They also include drug references such as "Skeefer Madness" (a portmanteau of Skee-Ball and a well-known marijuana reference, "Reefer Madness").  Perhaps most repugnantly, they also include references to the highly publicized criminal trial of Casey Anthony, "K. Skee Anthony," the gruesome and tragic details of which do not need to be repeated herein:





48



41.     Counterclaim Defendants willfully advertise and promote Full Circle's

loathsome culture in videos that prominently display the Mark.  Attached hereto as Exhibits B-E

are excerpts from videos which Counterclaim Defendants posted on the Internet, which not only

include the Mark, but moreover gleefully depict Skee-Ball players being pressured into binge

drinking at Live Play tournaments, as rowdy audience members shout at the players to "chug"

more alcohol.

42.     Not only have Counterclaim Defendants built Full Circle's brand off the

disparagement of the Mark, but they have also explicitly disparaged Bay Tek itself in a video

featuring Pavony posted on Full Circle's Twitch page, titled "State of the Brewnion 2018." Excerpts from this video are attached hereto as Exhibit F.

43.     Counterclaim Defendants' willful lack of respect for the Mark and Bay Tek's brand is underscored by their use, and encouragement of others to use, countless other phrases and slogans that infringe upon and dilute the Mark.  Counterclaim Defendants expressly encourage players to craft infringing team names that Counterclaim Defendants promote and further associate with Full Circle's unwholesome culture.  A sample of such team names, which includes yet more disparaging references (including a major political sex scandal) and references that misappropriate the intellectual property of third parties, is below:

12510029.2



44. ***Counterclaim Defendants' Incurable Contractual Breaches and Concomitant Trademark Infringements through Unauthorized Digital Broadcasts.*** Counterclaim Defendants have regularly streamed entire Live Play tournaments over the Internet on countless occasions, and have shared such streams over websites such as YouTube and Twitch. Such streams cover entire tournaments, complete with play-by-play commentary (often provided by Pavony himself), akin to a live baseball game broadcast from Yankee Stadium, but far less

51

professional.  This activity goes well beyond the scope of Full Circle's authorization, which permits Internet broadcasts solely "for promotional and advertising purposes only."

45.    ***Full Circle's Incurable Contractual Breaches of the License Agreement's Sponsorship and Endorsement Provisions.***   In further disregard for Bay Tek's rights and Full Circle's obligations under the License Agreement, Counterclaim Defendants have used the Mark to obtain numerous sponsorships and endorsements for their own benefit, for which Bay Tek has neither been notified nor compensated in royalties.

46.    Full Circle's right to use the Mark for sponsorships and endorsements is expressly conditioned on these obligations being met.  Full Circle has baselessly contended that it is not required to pay royalties for these sponsorships, because the sponsors purportedly did not pay money to Full Circle, but instead provided Full Circle with in-kind payments, such as large quantities of alcoholic beverages, in exchange for the sponsorships.  Given that Full Circle operates multiple bars, these in-kind payments of alcoholic beverages obviously provided tremendous financial value to Full Circle.  And, pursuant to the terms of the License Agreement, Full Circle was obligated to remit royalties to Bay Tek based upon the fair-market value of these in-kind payments.  However, Full Circle has failed and refused to do so.

47.    Full Circle even falsely represented to Bay Tek that it had no sponsorship revenue to report for the entire second half of 2018.  Yet Full Circle's own Complaint alleges that it purportedly live-streamed an event that drew over 130,000 unique views on Twitch (itself a blatant breach and violation of Bay Tek's rights).  It is simply implausible that Full Circle would have no revenue to report when its illegal live streams at that time were littered with

12510029.2

endorsements from alcohol brands, such as Fireball® Whisky, Heineken®, Tecate®, and New Belgium® Brewing.

48.     In fact, while Full Circle is obligated to remit royalties on all Live Play Merchandise, Scoring App, and sponsorship revenue, Bay Tek has, since entering into the License Agreement with Full Circle, received a paltry one-hundred sixty-one dollars and fifty cents ($161.50) total in royalties from Full Circle.

49.     ***Full Circle's Incurable Breaches of Its "Best Efforts" Obligations.***  In 2016, when Bay Tek acquired the Mark from SBI, Bay Tek was looking forward to helping Counterclaim Defendants with their venture.

50.     As Bay Tek soon learned however, Counterclaim Defendants were not interested in Bay Tek's assistance in growing the Live Play concept.  Rather, Counterclaim Defendants insisted on focusing upon their illegal and unauthorized digital broadcasts of Brewskee Ball, and even went so far as to seek a broadcast deal for Brewskee Ball with a cable television network, in flagrant violation of the Licensing Agreement.  As the video clips annexed to these Counterclaims reflect, the quality of Counterclaim Defendants' illegal broadcasts have been amateurish and wholly lacking in professional production values, thereby further tarnishing the Mark.

51.     By single-mindedly focusing on its amateurish illegal broadcasts at the expense of building its Live Play business, Full Circle utterly failed to comply with its obligations under Paragraph 5.1 of the License Agreement "to use best efforts to build a national network of Live Play teams, leagues, and/or events in at least fifteen (15) states in the United States within five

53

(5) years of the Effective Date of this Agreement."  Indeed to date, Full Circle only operates in a mere eight (8) states.

52.     ***Full Circle's Incurable Breach of Its Obligation to Maintain a General Liability Insurance Policy***.  Full Circle has repeatedly failed to provide assurances to Bay Tek that it in fact maintains a policy that contains the necessary insurance coverages required under the terms of the License Agreement.

53.     In sum, Full Circle's ongoing contractual breaches and Counterclaim Defendants' ongoing trademark infringement have caused, and are continuing to cause, irreparable damage to Bay Tek.  Counterclaim Defendants' ongoing conduct and use of the Mark actively cheapens, dilutes, disparages, and tarnishes Bay Tek and the Mark, harms Bay Tek's reputation, and confuses consumers into thinking that Bay Tek, a family-oriented company, approves of, sponsors, and/or endorses such vulgar and offensive behavior, thereby diminishing the value of, and Bay Tek's ability to exploit, the Mark.

## FIRST CAUSE OF ACTION AGAINT COUNTERCLAIM DEFENDANTS
### (Trademark Infringement Under 15 U.S.C. § 1114)

54.     Bay Tek repeats and realleges the allegations set forth in paragraph 1 through 53 of its counterclaims as if fully set forth therein.

55.     Bay Tek is the owner of a valid and subsisting federal trademark registration for the SKEE-BALL Mark described above (U.S. Registration No. 0256496) and related marks, which are entitled to broad protection under federal and common law.

56.     Counterclaim Defendants have engaged in, and continue to engage in, unauthorized uses of the Mark well outside the scope of Full Circle's licensed rights under the

License Agreement, including in connection with unauthorized products and services, and in connection with countless unauthorized phrases and slogans that incorporate the Mark.

57.     Counterclaim Defendants' use of the Mark is likely to cause consumer confusion, mistake, and deception among the general public as to the source or origin of Counterclaim Defendants' goods and/or services, and is likely to create the false impression that Counterclaim Defendants' unlicensed uses of the Mark and disparaging conduct associated with the Mark have been sponsored, approved, and/or endorsed by Bay Tek.

58.     Counterclaim Defendants' acts as described in this Complaint constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

59.     Each Counterclaim Defendant directly and individually performed the acts alleged herein, and also did so jointly and in concert with one another, or as an agent, principal, alter ego, employee, or representative of the other.  Accordingly, each Counterclaim Defendant is liable for all of the acts alleged herein because they were the cause in fact and proximate cause of all injuries Bay Tek has suffered.

60.     Counterclaim Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.  Counterclaim Defendants' conduct presents an exceptional case, such that Bay Tek is entitled to Counterclaim Defendants' profits and to attorney's fees and costs pursuant to 15 U.S.C. § 1117.

61.     Counterclaim Defendants' wrongful acts form the core of Full Circle's business model, which is entirely devoted to using the Mark for its own purposes, regardless of whether it is licensed to do so.  Accordingly, Counterclaim Defendants' wrongful acts will continue unless enjoined by this Court.

12510029.2

62.     Counterclaim Defendants' unlawful conduct has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Bay Tek, including to its goodwill and reputation, for which Bay Tek has no adequate remedy at law.

### SECOND CAUSE OF ACTION AGAINST COUNTERCLAIM DEFENDANTS
### (False Endorsement Under 15 U.S.C. § 1125(a))

63.     Bay Tek repeats and realleges the allegations set forth in paragraph 1 through 62 of its counterclaims as if fully set forth therein.

64.     Counterclaim Defendants' use of the Mark well outside the scope of the License Agreement to promote highly objectionable and disparaging associations with the Mark is likely to cause confusion, to cause mistake and/or to deceive.  Counterclaim Defendants' manner of using the Mark constitutes a false endorsement of Counterclaim Defendants' business practices and unsavory branding because consumers are likely to mistakenly believe that Bay Tek approves of and endorses such conduct.

65.     Counterclaim Defendants' acts as described in this Complaint constitute false endorsement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

66.      Counterclaim Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.  Counterclaim Defendants' conduct presents an exceptional case, such that Bay Tek is entitled to Full Circle's profits and to attorney's fees and costs pursuant to 15 U.S.C. § 1117.

67.      Each Counterclaim Defendant directly and individually performed the acts alleged herein, and also did so jointly and in concert with one another, or as an agent, principal, alter ego, employee, or representative of the other.  Accordingly, each Counterclaim Defendant

12510029.2

is liable for all of the acts alleged herein because they were the cause in fact and proximate cause of all injuries Bay Tek has suffered.

68.     Counterclaim Defendants' wrongful acts form the core of Full Circle's business model, which is entirely devoted to using the Mark for its own purposes, regardless of whether it is licensed to do so.  Accordingly, Counterclaim Defendants' wrongful acts will continue unless enjoined by this Court.

69.     Counterclaim Defendants' unlawful conduct has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Bay Tek, including to its goodwill and reputation, for which Bay Tek has no adequate remedy at law.

### THIRD CAUSE OF ACTION AGAINST COUNTERCLAIM DEFENDANTS
#### (Trademark Dilution Under Section 43(c) of the Lanham Act)

70.     Bay Tek repeats and realleges the allegations set forth in paragraph 1 through 69 of its counterclaims as if fully set forth therein.

71.     Bay Tek's iconic Mark has been extensively promoted and sold for more than a century, and continues to be extensively promoted and sold.  It is a staple of American culture and has unquestionably achieved widespread fame within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

72.     Counterclaim Defendants began using the Mark well after it became famous.

73.     Counterclaim Defendants have intentionally and willfully traded off the goodwill, reputation, acclaim, and brand recognition associated with the Mark to cause dilution to the Mark.

12510029.2

74.     Though Counterclaim Defendants expressly recognized that goods and/or services branded with the Mark are geared towards families and children, and promised not to tarnish, dilute, weaken, blur, or otherwise malign the Mark, Counterclaim Defendants have nonetheless intentionally associated the Mark with unwholesome goods and/or services of a vulgar, lewd, offensive, and unsavory nature.  Counterclaim Defendants have also intentionally exploited, advertised, and promoted countless other unauthorized phrases and slogans that incorporate the Mark and are similar to the Mark.

75.     Counterclaim Defendants' knowing and deliberate use of the Mark in such a manner is likely to harm Bay Tek's reputation, impair the distinctiveness of the Mark, and lessen the capacity of the Mark to identify and distinguish Bay Tek's goods, in violation of Section 43(c) of the Lanham Act, § 1125(c).

76.     Counterclaim Defendants' use of the Mark has caused a likelihood of dilution by blurring and/or tarnishment and has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Bay Tek, including to its goodwill and business reputation, for which Bay Tek has no adequate remedy at law.

77.     Counterclaim Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious, and willful.  Counterclaim Defendants' conduct presents an exceptional case, such that Bay Tek is entitled to Full Circle's profits and to attorney's fees and costs pursuant to 15 U.S.C. § 1117.

78.     Each Counterclaim Defendant directly and individually performed the acts alleged herein, and also did so jointly and in concert with one another, or as an agent, principal, alter ego, employee, or representative of the other.  Accordingly, each Counterclaim Defendant

58

12510029.2

is liable for all of the acts alleged herein because they were the cause in fact and proximate cause of all injuries Bay Tek has suffered.

## FOURTH CAUSE OF ACTION AGAINST COUNTERCLAIM DEFENDANTS
### (Common Law Unfair Competition)

79.     Bay Tek repeats and realleges the allegations set forth in paragraph 1 through 78 of its counterclaims as if fully set forth therein.

80.     Counterclaim Defendants use of the Mark well outside the scope of Full Circle's licensed rights, including in connection with unauthorized products and services, and in connection with countless unauthorized phrases and slogans that incorporate the Mark, is likely to cause consumer confusion, mistake, and deception among the general public as to the source or origin of Counterclaim Defendants' goods and/or services, and is likely to deceive consumers into believing that such goods and/or services are endorsed, approved, licensed, and/or otherwise affiliated with Bay Tek, in violation of New York State common law.

81.     Counterclaim Defendants' unauthorized uses of the Mark were deliberate, intentional, knowing, malicious, and willful.

82.     Counterclaim Defendants' unlawful conduct has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Bay Tek, including to its goodwill and reputation, for which Bay Tek has no adequate remedy at law.

83.     Each Counterclaim Defendant directly and individually performed the acts alleged herein, and also did so jointly and in concert with one another, or as an agent, principal, alter ego, employee, or representative of the other.  Accordingly, each Counterclaim Defendant

is liable for all of the acts alleged herein because they were the cause in fact and proximate cause of all injuries Bay Tek has suffered.

### FIFTH CAUSE OF ACTION AGAINST COUNTERCLAIM DEFENDANTS
**(Dilution under New York General Business Law § 360-l)**

84.     Bay Tek repeats and realleges the allegations set forth in paragraph 1 through 83 of its counterclaims as if fully set forth therein.

85.     Bay Tek's iconic Mark has been extensively promoted and sold for more than a century.  It is a strong and famous mark of distinctive quality within the meaning of New York General Business Law § 360-l.

86.     By the conduct described above, Counterclaim Defendants have diluted the distinctive quality of Bay Tek's Mark and have caused, and unless enjoined, will continue to cause substantial and irreparable injury to Bay Tek, including to Bay Tek's public image, goodwill, and reputation, in violation of New York General Business Law § 360-l.

87.     Each Counterclaim Defendant directly and individually performed the acts alleged herein, and also did so jointly and in concert with one another, or as an agent, principal, alter ego, employee, or representative of the other.  Accordingly, each Counterclaim Defendant is liable for all of the acts alleged herein because they were the cause in fact and proximate cause of all injuries Bay Tek has suffered.

### SIXTH CAUSE OF ACTION AGAINST FULL CIRCLE
**(Breach of Contract)**

88.     Bay Tek repeats and realleges the allegations set forth in paragraph 1 through 87 of its counterclaims as if fully set forth therein.

12510029.2

89.     Bay Tek and Full Circle, by assignment, are parties to a valid and enforceable contract, the License Agreement.

90.     Bay Tek has performed and continues to perform all of its obligations under the License Agreement, and all conditions precedent to bringing this action have been satisfied or waived.

91.     Full Circle's actions as described above have incurably breached numerous provisions of the License Agreement.

92.     As a direct and proximate result of Full Circle's breaches, Bay Tek has suffered actual and consequential damages in an amount that will conform to proof at trial.

## SEVENTH CAUSE OF ACTION AGAINST FULL CIRCLE
### (Declaratory Judgment)

93.      Bay Tek repeats and realleges the allegations set forth in paragraph 1 through 92 of its counterclaims as if fully set forth therein.

94.     As set forth above, Full Circle has committed numerous incurable breaches of the License Agreement which entitle Bay Tek to terminate the License Agreement.

95.     An actual and justiciable controversy exists between Bay Tek and Full Circle as to whether Bay Tek is entitled to terminate the License Agreement.

96.     Accordingly, Bay Tek seeks a judicial declaration that the License Agreement is terminated as a result of Full Circle's incurable breaches thereof.

97.     Such a declaration is necessary and appropriate because a substantial controversy exists between the parties having adverse legal interests as to the License Agreement, and it is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

12510029.2

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff Bay Tek requests that the Court enter judgment in its favor and against Counterclaim Defendants:

A. For an order requiring Counterclaim Defendants to pay Bay Tek damages arising from Counterclaim Defendants' trademark infringement, false endorsement, trademark dilution, and unfair competition, such damages to be trebled in view of Counterclaim Defendants' willful, knowing, and intentional violation of Bay Tek's rights in the Mark;

B. For an order requiring Counterclaim Defendants to pay Bay Tek all gains, profits, and other advantages derived by Counterclaim Defendants from their unlawful conduct, and that such profits be enhanced pursuant to 15 U.S.C. § 1117;

C. Pursuant to 15 U.S.C. § 1116, an order temporarily, preliminarily, and permanently enjoining Counterclaim Defendants, their officers, agents, servants, employees, members, managing members, directors, and all persons in active concert or participation with each or any of them, from further using or displaying the Mark or any colorable imitation of the Mark;

D. For an order requiring Full Circle to pay Bay Tek direct and consequential damages arising from Full Circle's material breaches of the License Agreement;

E. For a declaration that the License Agreement is terminated in light of Full Circle's incurable breaches thereof;

F.  For an order requiring Counterclaim Defendants to pay Bay Tek its costs and reasonable attorney's fees incurred, pursuant to 15 U.S.C. § 1117 and § 14.1 of the License Agreement;

G.  Pre-judgment and post-judgment interest at the applicable rate; and

H.  Such other and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Bay Tek demands a trial by jury of all claims that are so triable.

DATED:  New York, New York
         September 21, 2020

Respectfully submitted,

Mitchell Silberberg & Knupp LLP


By: /s/ Christine Lepera
    Christine Lepera
    Jeffrey M. Movit
    Leo Lichtman
    437 Madison Ave., 25th Floor
    New York, New York 10022-7001
    Telephone: (212) 509-3900
    Facsimile: (212) 509-7239
    Email: ctl@msk.com
    Email: jmm@msk.com
    Email: lml@msk.com

*Attorneys for Defendant and Counterclaim Plaintiff Bay Tek Entertainment, Inc.*

63

12510029.2