# McIntyre Thanasides

*Reply to:*
paul@mcintyrefirm.com

April 23, 2021

**VIA ECF**
Hon. Brian M. Cogan
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   ***Full Circle United, LLC v. Bay Tek Entm't, Inc.*, No. 20-cv-3395-BMC**

Judge Cogan,

Unfortunately, the parties have been unable to resolve all their discovery disputes despite very hard work to avoid Court intervention. The disputes that remain are discussed separately by the parties below.

**FULL CIRCLE UNITED & ERIC PAVONY'S POSITION ON A SPECIAL MASTER**

Full Circle and Pavony have twice proposed that the parties stipulate to the appointment of a special master to oversee discovery, an option Your Honor suggested during the case status conference conducted on April 16. Bay Tek declined. Full Circle and Pavony maintain that a special master, paid for by the parties, is appropriate and request that the Court make such appointment to aid the parties' numerous, ongoing disputes so that they can advance this litigation without burdening the Court.

**FULL CIRCLE UNITED & ERIC PAVONY'S POSITION ON DISCOVERY**

In this case, Bay Tek is a licensor with an express contractual obligation to use its "best efforts" to promote the business of Full Circle, its licensee, of operating and conducting competitive skee ball tournaments, leagues, and events ("Live Play"). Bay Tek did not comply with its obligations. Instead, seizing an opportunity to enter the Live Play market for its own profit, Bay Tek embarked on a scheme to destroy Full Circle by starving it of funds, equipment, and business opportunities, and by placing the license in dispute. Indeed, many of the discovery requests to which Bay Tek refuses to respond are focused on Bay Tek's analysis of the profitability of the Live Play market and its designs related to that market.

On October 5, 2020, Full Circle and Pavony served their first requests for production to Bay Tek. In its written responses served on November 12, 2020, Bay Tek objected to each and every one of Full Circle and Pavony's thirty-one (31) requests for documents ("Requests"). Bay Tek stated in its response it would produce responsive documents "on a rolling basis." To date, Bay Tek has not

produced **any** responsive document, and should be required to produce the documents responsive to Full Circle and Pavony's requests.

Full Circle and Pavony attempted to confer with Bay Tek, including numerous conferences to reach agreement as to search terms, but have been unsuccessful. The parties conferred by phone on November 4 and December 18, March 11, and April 13. On April 21 and April 22, collectively, the parties conferred for over three hours. The parties conferred in writing to address various disputes by exchanging a number of emails February 22-24, March 10-31, and throughout the month of April regarding the document production.

Not only has Bay Tek failed to provide any meaningful discovery, its conduct suggests that it intends to further pursue obfuscation and delay. If anything, Bay Tek's exaggerated and largely inaccurate claims in its section of the letter underscore this fact. A telling example is the assertion that "[r]emarkably, Full Circle's counsel now takes the position that they intend to take **twenty** depositions and serve up to **fifty** interrogatories." (emphasis in original). That is incorrect; there has been no discussion on the number of party depositions to date (which will be far less than twenty, and hopefully less than 10), and with respect to interrogatories, counsel for Full Circle and Pavony merely pointed out that Pavony is a defendant who has the legal right to serve discovery related to the counterclaims raised against him. Full Circle and Pavony have served fourteen interrogatories in total.

While there are sets of issues that run through the discovery responses, Full Circle and Pavony have specifically identified their concerns with each respect to each interrogatory and document request so that the Court has complete information on the status of discovery.

   I.  **Interrogatories**

**General Objections to Interrogatories**

Bay Tek incorporates a litany of General Objections into each of its responses to Full Circle's First Set of Interrogatories, Pavony's First Set of Interrogatories, and Full Circle's Second Set of Interrogatories:

> **General Objection 1:** Bay Tek objects to the Interrogatories to the extent that they seek information protected from disclosure pursuant to the attorney-client privilege, the work-product doctrine, or other applicable privileges. To the extent that an Interrogatory may be construed as seeking information subject to the attorney-client privilege or work-product doctrine, Bay Tek hereby claims the attorney-client privilege and invoke the work-product doctrine as to the Interrogatory.
>
> **General Objection 2:** Bay Tek objects to the Interrogatories to the extent they seek information not currently available to Bay Tek. Bay Tek has not completed its investigation of the facts relating to this case and reserves all rights to supplement and/or amend its responses.

**General Objection 3:** Bay Tek objects to each Interrogatory to the extent that the Interrogatory seeks information that is not in Bay Tek's possession, custody, or control and/or solely within the possession, custody or control of entities other than Bay Tek. These responses are provided only on behalf of Bay Tek, and Bay Tek will only produce information within its own possession, custody, or control.

**General Objection 4:** Bay Tek objects to each Interrogatory to the extent that the Interrogatory seeks information that is highly confidential, sensitive, and/or proprietary business information and/or trade secrets. Bay Tek will only provide such information after a protective order is entered in the case.

**General Objection 5:** Bay Tek objects to each Interrogatory to the extent it demands information that is likely to be the subject of expert testimony. Bay Tek will make its expert disclosures at the appropriate time and in the appropriate manner.

**General Objection 6:** Bay Tek objects to each Interrogatory to the extent it is compound and contains subparts which should be treated as separate Interrogatories.

As amended in 2015, Rule 33(b)(4) provides that "[t]he grounds for objecting to an interrogatory must be stated with specificity." Rule 34(b)(4), Fed. R. Civ.; *see also CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13CV2581PKCJLC, 2019 WL 3334503, at *11 (S.D.N.Y. July 25, 2019) (directing party to withdraw general objections to interrogatories that did not truly apply to each request). None of the general objections asserted by Bay Tek are applicable to each of its interrogatory responses. Still, Bay Tek refused Full Circle and Pavony's requests to withdraw its improper general objections. Bay Tek's objections are inappropriate and should be withdrawn.

### Interrogatory No. 1 from Second Set of Interrogatories by Full Circle

Full Circle seeks to compel an answer to Interrogatory No. 1:

Identify all channels or methods (e.g., internet, print) used by Bay Tek, or any licensee of Bay Tek other than Full Circle, to advertise goods or services using the Mark from 2016 through present, and for each, identify the date(s) each channel was used, the product(s) or service(s) advertised on the channel, the method or channel used, and the substance of the advertising. For each identified advertising activity that is performed by an entity other than Bay Tek, identify the entity.

Bay Tek objects**:**

Bay Tek hereby incorporates the foregoing Preliminary Statement and General Objections, and further objects to this Interrogatory on the grounds that it is vague and ambiguous in its use of the phrases "channels or methods . . . used by Bay Tek,

or any licensee of Bay Tek other than Full Circle" and "advertise goods or services using the Mark"; it is overly broad, unduly burdensome and harassing, inter alia because it seeks information that is neither relevant nor proportional to the needs of the case; and it is compound and thus Full Circle has impermissibly exceeded the maximum number of Interrogatories permitted by Federal Rule of Civil Procedure 33.

Bay Tek's objections to Interrogatory No. 1 lack the specificity required by Rule 33(b)(4). The information sought is relevant and proportional to Full Circle's defenses against Bay Tek's claims that it has violated the license and tarnished, diluted and disparaged the Mark and Bay Tek through its uses of the Mark, specifically in "digital broadcasts". Bay Tek claims Full Circle's conduct cultivates "an unsavory image that is anathema to the family and children friendly image for the Mark". (ECF No. 56, ¶4). It has alleged it is "illustrative of a debaucherous and vulgar culture completely antithetical to Bay Tek and the Mark's family friendly image." (ECF No. 56, ¶5).

Full Circle has a right to learn how Bay Tek and its other licensees have used the Mark, and whether those uses are the same or similar to the uses by Full Circle that Bay Tek contend violate the license and tarnish, dilute and disparage Bay Tek and the Mark. *See Ringling Brothers–Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.,* 937 F. Supp. 204, 211 (S.D.N.Y.1996) (holding circus could not succeed on tarnishment claim based on association of The Greatest Show on Earth mark with an establishment that serves alcohol where it serves alcohol in some venues and obtains sponsors that sell alcohol).

## II.   Requests for Production

### General Objections to Requests for Production

Bay Tek refuses to withdraw the following General Objections improperly asserted in its responses to Full Circle and Pavony's First Requests for Production:

> **General Objection 1:** Bay Tek objects to Counterclaim Defendants' Definitions and Instructions and to each and every Request for production to the extent that they seek to impose duties or obligations on Bay Tek different from, or in addition to, those imposed by Federal Rules of Civil Procedure and/or the Civil Local Rules and/or any other applicable rule or regulation.

> **General Objection 2:** Bay Tek objects to each Request for production to the extent it seeks to elicit information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privileges and doctrines. Because some Requests for production are overly broad, vague, and ambiguous, Bay Tek cannot always determine whether a Request for production may be reasonably construed as seeking privileged or protected documents or information. To the extent that a Request for production may be construed as seeking documents subject to the attorney-client privilege or work-product

doctrine, Bay Teks hereby claim the attorney-client privilege and invokes the work-product doctrine as to such Request for production. The fact that Bay Tek does not specifically object to an individual Request for production on the ground that it seeks documents subject to the attorney-client privilege and/or work-product doctrine is not deemed a waiver of the protection of non-disclosure afforded by the attorney-client privilege or work-product doctrine, or any other applicable privileges and doctrines. Further, the inadvertent disclosure of any matter covered by the attorney-client privilege, work-product doctrine, or other applicable privilege or doctrine, shall not be deemed a waiver thereof. The parties counsel should meet and confer to agree upon the scope of the privilege logs they will exchange.

**General Objection 3:** Bay Tek objects to each Request for production to the extent that it seeks information that is not relevant and/or material to the subject matter of this litigation, nor proportional to the needs of the case.

**General Objection 4:** Bay Tek objects to each Request for production to the extent that it seeks documents that are not within their possession, custody or control.

**General Objection 5:** Bay Tek objects to each Request for production that seeks discovery that is equally available to Counterclaim Defendants or within Counterclaim Defendants' possession, custody or control, or is obtainable from some other source that is more convenient, less burdensome, or less expensive, such that compliance with such Request would not be proportional to the needs of the case, as prohibited by Rule 26(b) of the Federal Rules of Civil Procedure.

**General Objection 6:** Bay Tek objects to each Request for production on the grounds that it seeks discovery that is unreasonably cumulative or duplicative of Counterclaim Defendants' other Requests. Bay Tek will not produce duplicates of documents.

**General Objection 7:** Bay Tek objects to each Request for production on the grounds that it demands production of "all" documents or other items falling within particular categories, on the ground that such a Request is overly broad and not proportional to the needs of the case.

**General Objection 8:** Bay Tek objects to each Request for production that is not time-limited or seeks information beyond the timeframe relevant to this litigation on the grounds that it is overly broad and not proportional to the needs of the case, and seeks information that is irrelevant to the subject matter of this litigation and unlikely to lead to the discovery of admissible evidence.

**General Objection 9:** Bay Tek objects to each Request for production to the extent that it seeks documents containing confidential, proprietary, and/or sensitive

information, including business information and/or business trade secrets and documents covered by protective orders in other cases, whether concerning Bay Tek, or a third party, or concerning confidential personal information about individuals. Bay Tek objects to each Request for production on the grounds that it seeks documents protected from disclosure by privacy rights enumerated in or recognized by the common law, State or federal statutes, or any relevant State Constitution or the Constitution of the United States of America – including, but not limited to, documents containing confidential and private information.

**General Objection 10:** Bay Tek objects to each Request for production on the ground and to the extent that it calls for the production of electronically stored information ("ESI") that is not reasonably accessible. FRCP 26(b)(2)(B).

"The 2015 Amendments to the Federal Rules no longer permit global, generalized objections to each request." *See CapRate Events, LLC v. Knobloch*, 17-CV-5907-NGG-SJB, 2018 WL 4378167, at *2 (E.D.N.Y. Apr. 18, 2018). Bay Tek's blanket objections to the requests are improper, and should be withdrawn.

**Responses to Specific Requests for Production**

Full Circle and Pavony seek to compel the production of documents to the following requests for production of documents:

**Request No. 5 from First Set of Requests for Production**

Request No. 5 states:

All documents and communications concerning Bay Tek's decision to enter the Bar Market, including but not limited to: documents or communications that describe, summarize, analyze, discuss or comment on the Bar Market, including the size or value of the market, market conditions, or the profitability, or projected profitability, of any company, including Bay Tek, in the supply, manufacture, distribution or sale of alley rollers designed for the Bar Market; and documents and communications concerning any plan or strategy currently or previously contemplated by Bay Tek for the development, manufacture or sale of an alley roller for the Bar Market.

Bay Tek's Response:

Bay Tek hereby incorporates the foregoing Preliminary Statement and General Objections, and further objects to this Request on the grounds that it is vague and ambiguous in its use of the phrases "enter the Bar Market," "alley rollers designed for the Bar Market," and "plan or strategy currently or previously contemplated by Bay Tek" it is overly broad, unduly burdensome, and harassing, inter alia because

it seeks information that is neither relevant nor proportional to the needs of the case; it seeks information protected by the attorney-client privilege, the attorney work product doctrine, and all other applicable privileges and doctrines; it seeks documents already in the possession of Counterclaim Defendants or already made available to Counterclaim Defendants, or in the possession of third parties; and it seeks highly confidential, sensitive, and/or proprietary business information of Bay Tek and/or third parties.

Full Circle and Pavony's Position:

Bay Tek's response to Request No. 5 is improper under Rule 34 (b)(2)(C). Bay Tek asserts meaningless boilerplate, provides no particularized facts to support its objections and does not indicate if any documents are being withheld on the basis of its objections.

In 2005, Full Circle launched the first competitive skee ball league, called Brewskee-Ball, which grew into a national league. In 2011, Bay Tek entered the Bar Market by launching Beer Ball. In a recording produced to Bay Tek by Full Circle, Bay Tek's former CEO admitted that Bay Tek modeled Beer Ball after Brewskee-Ball

This request sought financial information relating to skee ball as a game played in bars (Bar Market), and Bay Tek's decision to operate in the Bar Market. During meet and confers, Bay Tek maintained the request is not relevant and burdensome. Bay Tek claims Full Circle's lost profits claim should be dismissed because "an award of lost profits would require an unreasonable level of speculation." (ECF No. 34). The information sought would likely disprove Bay Tek's contention, and show the jury that Bay Tek has valued the Bar Market and Full Circle's business, or a comparable one. It will also likely show Bay Tek has long known the value of Full Circle's license, which permits it to use the Mark to operate skee ball leagues, events and tournaments in the Bar Market and beyond. This information supports Full Circle's claim that Bay Tek embarked on a scheme to ruin Full Circle's business and take back the license so it can operate Live Play itself.

**Request No. 6 from First Set of Requests for Production**

Request No. 6 states:

> All documents and communications concerning Beer Ball, including but not limited to: documents referencing Beer Ball; documents and communications concerning the creation and development of the Beer Ball Concept; documents and communications concerning Bay Tek's decision to use the name "Beer Ball" in connection with the Beer Ball Concept; documents or correspondence concerning the Beer Ball culture or the environment or atmosphere with leagues or at Beer Ball events or tournaments; documents and communications concerning the demand for Beer Ball leagues or Beer Ball Lanes; recordings, images or other promotional material used in connection with marketing or promoting Beer Ball or Beer Ball

Lanes; recordings or images of Beer Ball events or tournaments taken by Bay Tek or at Bay Tek's request; and documents and communications concerning Bay Tek's decision to stop operating Beer Ball.

Bay Tek's Response:

Bay Tek hereby incorporates the foregoing Preliminary Statement and General Objections, and further objects to this Request on the grounds that it is vague and ambiguous as to the phrase "the Beer Ball culture or the environment or atmosphere"; it is overly broad, unduly burdensome, and harassing, inter alia because it seeks information that is neither relevant nor proportional to the needs of the case; it seeks information protected by the attorney-client privilege, the attorney work product doctrine, and all other applicable privileges and doctrines; it seeks documents already in the possession of Counterclaim Defendants or already made available to Counterclaim Defendants, or in the possession of third parties; and it seeks highly confidential, sensitive, and/or proprietary business information of Bay Tek and/or third parties.

Full Circle and Pavony's Position:

Bay Tek's objections to Request No. 6 fail to comply with Rule 34(b)(4)(C). Bay Tek should be ordered to state specific facts to support its objections. It should also identify what is being withheld on the basis of its objections.

Bay Tek should be compelled to produce documents in response to Request No. 6. Bay Tek has alleged and will try to prove to the jury that Skee-Ball is a pristine children's game associated only with "family values" and never with adult themes like celebratory drinking (self-servingly characterized by Bay Tek as "chugging" or "binging"), sexual innuendos, adult humor, or risqué puns. But Bay Tek marketed a "Beer Ball" Skee Ball game for years that celebrated drinking. Bay Tek marketed its Beer Ball Skee Ball lanes using sexualized pictures of almost naked, very fit human beings and the trademarked tagline: "Beer Ball makes you sexy." The information FULL CIRCLE requests about Beer Ball will show that the game of Skee Ball has been associated with adult themes for many years, and that Bay Tek itself had a hand in creating that association. Bay Tek has stated in response to this requested discovery that the Skee-Ball mark is distinct from the game of Skee Ball, such that prior associations of adult themes with the game are irrelevant to the mark. That distinction is a litigation fiction. Skee-Ball is a game, it refers to nothing else, and the mark cannot be divorced from the game. That does not mean the mark is generic; it merely means it is inextricably associated with the game of Skee Ball. In any event, the issue of whether the Skee-Ball mark can be effectively divorced from the game to which it refers is for the jury to decide, not for Bay Tek to merely assume and then successfully avoid discovery based on that naked conclusion. Because the discovery is relevant to this disputed issue in this litigation, it should be permitted.

**Request No. 7 from First Set of Requests for Production**

Request No. 7:

> All documents and communications concerning the Live Play market, including but not limited to: notes, reports or memoranda that describe, summarize, analyze, discuss or comment on the market for Live Play, including the size or value of the market or other market conditions; documents or communications that reference the profitability, or projected profitability, of any company, including Bay Tek, engaged in the supply, manufacture, distribution or sale of alley rollers designed for Live Play; and documents and communications concerning any plan or strategy currently or previously contemplated by Bay Tek for the development, manufacture or sale of an alley roller designed for Live Play.

Bay Tek's Response:

> Bay Tek hereby incorporates the foregoing Preliminary Statement and General Objections, and further objects to this Request on the grounds that it is vague and ambiguous in its use of the phrases "describe, summarize, analyze, discuss or comment on," "alley rollers designed for Live Play," and "plan or strategy currently or previously contemplated by Bay Tek"; it is overly broad, unduly burdensome, and harassing, inter alia because it seeks information that is neither relevant nor proportional to the needs of the case; it seeks information protected by the attorney-client privilege, the attorney work product doctrine, and all other applicable privileges and doctrines; it seeks documents already in the possession of Counterclaim Defendants or already made available to Counterclaim Defendants, or in the possession of third parties; and it seeks highly confidential, sensitive, and/or proprietary business information of Bay Tek and/or third parties.

> Subject to and without waiving the foregoing objections, Bay Tek responds as follows: Bay Tek will produce non-privileged, relevant and responsive documents on a rolling basis concerning Brewskee-Ball, to the extent such documents can be located pursuant to a reasonably diligent search, pursuant to ESI search protocols to be agreed upon by the parties. Bay Tek will produce any confidential documents upon entry of an appropriate protective order in this case.

<u>Full Circle and Pavony's Position</u>:

Bay Tek's response fails to comply with Rule 34(b)(4). The request seeks information relating to Live Play, the business operated by Full Circle. Full Circle alleges Bay Tek breached its agreement to manufacture alley rollers for Full Circle that were specifically designed for Live Play. It also alleges Bay Tek breached its obligations under the Full Circle's license to operate Live Play using the Skee Ball Mark. The information requested in Request No. 7 will show Bay Tek's understanding of its obligations owed to Full Circle under the revenue share agreement, whether

it violated provisions under the License Agreement prohibiting it from indirectly or directly operating Live Play, and whether it violated the License Agreement's implied covenants of good faith and fair dealing. The request asks Bay Tek to produce documents concerning the value of Live Play, the projected profitability of the Live Play lanes Full Circle alleges Bay Tek failed to deliver and other critical issues. This information would disprove Bay Tek's claim Full Circle's lost profits should be dismissed as speculative.

**Request No. 19 from First Set of Requests for Production**

**Request No. 19**:

> All documents and communications relating to license agreements, or Bay Tek's consideration of entering into license agreements, with entities engaged in, or that proposed to engage in, offensive, profane, or sexually suggestive uses of the Mark, or to use the Mark in connection with products or services related to or involving alcohol or gambling, including any products or services offered, or proposed to be offered, in bars, night clubs or casinos.

**Bay Tek's Response**:

> Bay Tek hereby incorporates the foregoing Preliminary Statement and General Objections, and further objects to this Request on the grounds that it is vague and ambiguous in its use of the phrases "licensing agreements, or Bay Tek's consideration of entering into license agreements," "offensive, profane, or sexually suggestive uses of the Mark," "related to or involving alcohol or gambling" and "bars, night clubs or casinos"; it is overly broad, unduly burdensome, and harassing inter alia because it seeks information that is neither relevant nor proportional to the needs of the case; it assumes facts not in the record; it seeks information protected by the attorney-client privilege, the attorney work product doctrine, and all other applicable privileges and doctrines; it seeks documents already in the possession of Counterclaim Defendants or already made available to Counterclaim Defendants, or in the possession of third parties; and it seeks highly confidential, sensitive, and/or proprietary business information of Bay Tek and/or third parties.

Full Circle and Pavony's Position:

Bay Tek claims Full Circle's conduct cultivates "an unsavory image that is anathema to the family and children friendly image for the Mark". (ECF No. 56, ¶4). It has alleged it is "illustrative of a debaucherous and vulgar culture completely antithetical to Bay Tek and the Mark's family friendly image." (ECF No. 56, ¶5).

Full Circle has a right to learn how Bay Tek and its other licensees have used the Mark, and whether those uses are the same or like the uses by Full Circle that Bay Tek contend violate the license and tarnish, dilute and disparage Bay Tek and the Mark. *See Ringling Brothers–Barnum &*

*Bailey Combined Shows, Inc. v. B.E. Windows Corp.,* 937 F. Supp. 204, 211 (S.D.N.Y.1996) (holding circus could not succeed on tarnishment claim based on association of The Greatest Show on Earth mark with an establishment that serves alcohol where it serves alcohol in some venues and obtains sponsors that sell alcohol).

**BAY TEK'S POSITION**

I.      Introduction

This case concerns Full Circle's use of the SKEE-BALL trademark (the "Mark"), pursuant to an expressly limited license agreement with Bay Tek dated July 17, 2014 (the "License Agreement"). Full Circle commenced this action, alleging that Bay Tek breached the License Agreement. In reality, Full Circle brought this lawsuit to bully Bay Tek into granting it rights it does not have, such as television broadcast rights in the Mark. Full Circle is fully aware it does not hold such right, and its claims are entirely untethered to the plain language of the License Agreement, and therefore specious. Accordingly, Bay Tek has filed a motion seeking dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(c), which motion remains *sub judice*. ECF No. 33.

Although Full Circle is nominally the plaintiff in this action, it has flagrantly breached its own obligations under the License Agreement and infringed Bay Tek's trademark rights in the Mark.[1] Among other improper actions, Full Circle has tarnished the Mark, and violated the use restrictions in the License Agreement, through the use of vulgar and sexually explicit slogans such as "Hepatitis Skee" and "Skeemature Ejaculation." Full Circle has also engaged in broadcasts using the Mark, which are prohibited under the License Agreement. These improper acts, among others, are the subject of Bay Tek's Counterclaims against Full Circle and its principal Eric Pavony.

Although Full Circle and Pavony have been represented in this action by five attorneys of record across two law firms,[2] they have done practically nothing in discovery. To date, they have: (1) produced certain documents of their own unilateral choosing; and (2) engaged in the deficient attempted service of a subpoena upon a non-party (which deficiency we understand has still not been remedied). And, notwithstanding Full Circle's claims that they purportedly have specific

---

[1] As discussed in the Counterclaims, Bay Tek inherited this License Agreement, under which Full Circle has a longstanding pattern of misconduct, as reflected in the prior litigation it was engaged in with the prior owner, Skee-Ball, Inc. ("SBI"), as referenced in the Counterclaims.

[2] One of those firms has withdrawn, and Full Circle has now hired another law firm to represent it in this matter.

grievances with Bay Tek's discovery responses, they made <u>no effort</u> to identify those purported grievances until this week.[3]

However, Full Circle recently abandoned its lackadaisical attitude toward discovery. Instead, Full Circle has embarked at the last minute on an aggressive harassment campaign against Bay Tek, making wildly disproportionate discovery demands that not only would be incredibly burdensome to meet, but seek information that is utterly irrelevant to this case. Notably, this dramatic change occurred only **after** Bay Tek's counsel recently informed Full Circle that it would not entertain any amendment to the License Agreement that would allow Full Circle to engage in the type of televisions broadcasts of the Mark that Full Circle is intent on pursuing. In the past ten days alone, pursuant to Full Circle's demand, the parties have participated in **approximately four-and-a-half hours of meet and confer** telephone calls.[4] In advance of these calls, Full Circle refused to provide any written grounds for their purported grievances despite repeated requests from Bay Tek and despite their written commitment to do so; in contrast, Bay Tek repeatedly set forth its issues and the basis for such issues in writing ahead of calls with Full Circle's counsel so as to enable more productive and efficient meetings.

Full Circle's new, maximalist approach to discovery is not limited to excessive telephone calls. Remarkably, Full Circle's counsel now takes the position that they intend to take **twenty** depositions and serve up to **fifty** interrogatories. This amount of discovery is, of course, wildly disproportionate to the size of the dispute. Full Circle's counsel's only stated justification for seeking such excessive discovery is a contention that they purportedly are entitled to double the limits imposed by the Federal Rules because Full Circle's principal Pavony (represented by the same counsel as Full Circle) who is spearheading this case for Full Circle is also a counterclaim defendant. But that is not the law. *See e.g., Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006) ("The best result would seem to be to recognize that in some instances nominally separate parties should be considered one party for purposes of the 25-interrogatory limitation."); *Hannah v. Wal-Mart Stores, Inc.*, 2014 WL 110950, at *3 (D. Conn. Jan. 10, 2014) ("The rule is clear that each side is limited to ten depositions.").

---

[3] By way of example, the parties engaged in a meet and confer by phone on December 18, 2020 for almost 1.5 hours. On that call, Full Circle's counsel vaguely asserted that they took issue with certain of Bay Tek's discovery responses, without providing any specificity. Bay Tek's counsel indicated that they would be willing to consider the deficiencies and requested Full Circle's basis for the deficiencies, which Full Circle agreed to provide in writing. However, **Full Circle never followed up with that promised writing.**

[4] The parties engaged in a meet and confer on April 13, 2021 at approximately 11 AM for about one hour, and on April 21, 2021 at 11 AM, and April 22, 2021, at 12 PM, for approximately 1.5 hours and 2 hours, respectively. Participating on those calls was Christina Casadonte-Apostolou, Paul Thanasides, Stephen Shaw, and Reid Skibell for Full Circle, and Jeffrey Movit and Leo Lichtman for Bay Tek.

However, as set forth below, while aggressively consuming Bay Tek's resources with discovery tactics, Full Circle itself refuses to comply with its own discovery obligations.  Through this letter, Bay Tek seeks to compel compliance with same.

For these reasons, Bay Tek no longer believes that an extension of the discovery schedule is appropriate or warranted.  Instead, Bay Tek commits to completing discovery by the currently scheduled deadline of June 11, 2021, provided that Full Circle and Pavony are held to that same deadline.  Pursuant to the individual rules of this Court, discovery extensions will not be granted "based on an opponent's … non-compliance with discovery obligations unless the movant has exhausted, promptly upon the non-compliance, all legal remedies to obtain compliance."  Although Bay Tek vociferously disputes that its discovery responses are improper, Full Circle undisputedly seeks an extension of discovery based upon purported deficiencies.  However, literally for months, Full Circle refused to identify Bay Tek's purported deficiencies.  Instead, Full Circle forced Bay Tek's counsel into hours-long phone calls regarding issues identified for the very first time this week.  Based upon Full Circle's utter lack of diligence, a discovery extension is unwarranted under the rules of this Court.

## II.     Full Circle Should Be Ordered to Cure Its Discovery Deficiencies

### A.  Full Circle Should Be Ordered to Properly Respond to Interrogatories

<u>First</u>, Full Circle has failed to properly respond to Interrogatory Nos. 1, 2, and 9.  These interrogatories sought all "members," "employees and independent contractors," and "investor[s]" of Full Circle, which was defined to include not only Full Circle United, LLC, but also Full Circle Bar, LLC and Extra Positive Land, LLC (the "Related Entities")—two closely related affiliates of Full Circle that admittedly operate Full Circle Bar ***where the Mark is used***.  The Second Amended Complaint ("SAC") alleges Full Circle Bar to be "the flagship venue for Live Play (***using the Mark),*** a place where Full Circle conducted Live Play events and tournaments . . . ." SAC, ECF No. 52 ("SAC") ¶ 38.  Yet when it comes to complying with discovery, Full Circle speciously takes the position that the Related Entities are irrelevant.  Quite the contrary.  Given not only their close affiliation with Full Circle, but their admitted involvement in the very uses of the Mark that are at issue, Bay Tek has every right to uncover the identity of individuals that Full Circle is hiding, who may hold critical information pertinent to this lawsuit, and particularly, Bay Tek's infringement counterclaims.  *See Tomjai Enters., Corp. v. Laboratorie Pharmaplus USA, Inc.*, 2012 WL 3104891, at *6 (S.D.N.Y. July 31, 2012) ("It is often held that in infringement cases . . . the bulk of the relevant evidence usually comes from the accused infringer.").  Further, Bay Tek has alleged that Full Circle has failed to maintain a sufficient general liability insurance policy, as it is contractually obligated to do.  Amended Counterclaims, ECF No. 48 ("A.CC.") ¶¶ 7, 34.  Pursuant to the License Agreement, Full Circle is required to have insurance to cover claims "caused, or alleged to have been caused, by FCU or any of its <u>employees, agents, representatives, invitees, or sub-licensees</u>."  *Id.* ¶ 34, Ex. A to A.CC. § 14.4.  Full Circle cannot hide behind its affiliates, when employees and agents of those affiliates are directly involved in Full Circle's use of the Mark pursuant to the License Agreement and required to be covered by insurance.

Second, Full Circle improperly refuses to supplement its responses to Bay Tek's interrogatory numbers 3 and 4, which are critical to determining the full scope of Full Circle's use of the Mark. Bluntly stated, **Full Circle and Pavony will not disclose what they are doing with the Mark.** This refusal is particularly egregious because Full Circle has demanded that *Bay Tek* provide interrogatory responses specifically identifying each and every one of Full Circle's and Pavony's uses of the Mark are tarnishing and improper—even though that information is in the possession of Full Circle and Pavony—and not Bay Tek. Demonstrating their lack of <u>bona fides</u> as a licensee, Full Circle and Pavony are concealing their uses of the Mark and refusing to reveal their uses, while hypocritically demanding Bay Tek specify them.

Bay Tek's Interrogatory No. 3 seeks all "phrases and slogans using the Skee-Ball Mark that you have used or promoted . . . ." However, Full Circle's response to this interrogatory is dramatically under-inclusive. Simply put*, again,* Full Circle refuses to identify its own uses of the Mark. This is something owed under the License Agreement itself, no less in discovery in this action, but Full Circle is not concerned about good faith use of the Mark or transparency. That is apparent as Full Circle speciously contends that its distribution of unauthorized merchandise and promotional materials containing such disgusting phrases as "Hepatitis Skee," "Skeemature Ejaculation," and "K. Skee Anthony" in connection with Full Circle's *Skee-Ball leagues*, do not constitute "uses" of the Mark, and therefore do not need to be disclosed in response to interrogatory No. 3. This position is clearly without merit, and Full Circle should be ordered to respond to this interrogatory in full.

Bay Tek's Interrogatory No. 4 seeks all "internet, radio, television, or other broadcast transmissions you have engaged in" that involve the Mark. Full Circle refuses to provide a proper response to this interrogatory. Instead of providing information regarding specific internet broadcasts, Full Circle has instead vaguely stated it that has made broadcasts using the Mark on websites such "Facebook" and "YouTube." Bay Tek cannot locate or identify the specific videos of Full Circle which have used the Mark unless Bay Tek provides specific identifying details regarding each broadcast that it has made. Once again, Full Circle is attempting to conceal its misuse of the Mark and breach of the License Agreement.

### III.     Full Circle's Claimed Deficiencies by Bay Tek Are Meritless

#### a.  Bay Tek's General Objections Are Irrelevant

Full Circle takes issue with Bay Tek's inclusion of general objections in its written responses to Full Circle's interrogatories and document requests. However, this is a paradigmatic example of a manufactured dispute by Full Circle. **Bay Tek has made clear that it is not withholding any information on the basis of those general objections.** Accordingly, they are irrelevant, and there is no real dispute here.

#### b.  Bay Tek's Response to Full Circle's Document Requests Are Proper

Full Circle's purported grievances with Bay Tek's discovery responses are baseless. Bay Tek has agreed, with minimal exceptions, to conduct Full Circle's proposed key word searches and provide responsive, non-privileged documents.

Originally, in collecting responsive ESI, Bay Tek had used "umbrella" search terms, in addition to the search terms proposed by Full Circle.[5] Until very recently Bay Tek did not believe that Full Circle took issue with the use of "umbrella" search terms. However, Full Circle's counsel notified Bay Tek's counsel for the first time this month (after Bay Tek informed Full Circle that it would not grant Full Circle broadcast rights), of its objection to the "umbrella" search terms. As an accommodation to Full Circle, Bay Tek has agreed to re-run its searches without the "umbrella" terms. Accordingly, there is no remaining issue pertaining to them. It is due to this (now-resolved) dispute over search terms that Bay Tek has not yet produced documents. Now that search terms are largely agreed upon, Bay Tek will begin producing documents shortly.

However, Full Circle has belatedly asserted additional demands seeking to impose unrealistic, and frankly, ridiculous requirements on Bay Tek and their counsel, by requesting voluminous categories of documents that are neither reasonably accessible nor relevant to this case. As an initial matter, this case narrowly concerns use of the Mark in connection with Live Play, which is defined as "live play leagues, teams, events, and tournaments utilizing alley rollers . . . called Skee-Ball® machines." License Agreement § 3.1. Full Circle itself alleges that it is the only company that is permitted to use the Mark for Live Play. SAC ¶ 28. Nonetheless, Full Circle seeks over 10 years of discovery into **all** of Bay Tek's business, **all** of Bay Tek's uses of the Mark outside of Live Play, and **all** of its other licensees of the Mark in categories completely divorced from Live Play. This is nothing more than a fishing expedition designed to harass Bay Tek.

First, Full Circle claims it is entitled to documents as far back as 2007—almost **ten years before Bay Tek assumed the License Agreement**. Bay Tek has reasonably offered to produce documents from 2015 to the present, which is more than a year prior to when it assumed the License Agreement. Simply put, Bay Tek's conduct prior to 2015 is irrelevant. It did not own the Mark and did not have a relationship with Full Circle. The License Agreement—the alleged breach of which forms the basis of this lawsuit—**was not even formed until 2014**. Their attempt to seek documents from Bay Tek that cannot possibly be relevant to Bay Tek's conduct as the Mark holder and licensor of the License Agreement is clearly improper.[6] But on top of

---

[5] The "umbrella" terms are: NSBL or National Skee Ball League, Pavony, Wikman, Cooper, Brewskee-Ball, Full Circle, SBI, Skee Ball Inc., Skee-Ball Live, and Live Play.

[6] The same timeframe for relevant discovery does not apply to Full Circle. Unlike Bay Tek, Full Circle's business is entirely devoted to operating Live Play pursuant to the License Agreement, and its conduct prior to the License Agreement is directly relevant to Bay Tek's infringement counterclaims. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 635 (S.D.N.Y. 2018) (holding that defendant's "lengthy history of infringement," including violation of a prior settlement agreement with the right holders, was directly relevant to defendant's

this, pre-2015 documents would be extremely burdensome for Bay Tek to harvest due to the fact that such documents are stored on an archived server, which is not readily accessible. The time and effort required by Bay Tek to search for and export such irrelevant documents is astronomical. Full Circle is fully aware of this, but continues to demand that Bay Tek engage in efforts to uncover such documents, which it knows have no relevance to this case.

Second, Full Circle improperly seeks discovery (financial and otherwise) regarding business of Bay Tek that do not involve use of the Mark in connection with Live Play.[7] As discussed above, use of the Mark in connection with Live Play is the only relevant use of the Mark at issue in this case. And discovery by Full Circle into business operated by Bay Tek that do not even use the Mark are wholly improper. By way of example, Full Circle continues to claim that it is entitled to documents concerning "Beer Ball," which is an alley-roller game in which Bay Tek was involved in **years before** it acquired the Mark. **"Beer Ball" did not use the Mark and it is thus entirely irrelevant to this action**. In this action, Bay Tek is not alleging that Full Circle tarnished the entire alley-roller industry; rather it is alleging that Full Circle tarnished **the Mark**. Alley-roller games that do not use the Mark are thus utterly irrelevant.

As another example, Full Circle wrongly argues that it is entitled to all documents regarding Bay Tek's alleged decision to enter the "Bar Market." The Bar Market is defined in Full Circle's requests as "placement of alley rollers in bars for adult play." However, this request is irrelevant to any issue in the case. Full Circle wrongly claims that these documents are relevant to: (1) Bay Tek's scienter with respect to its alleged breach of the License Agreement; and (2) Full Circle's lost profits claim. Neither argument bears scrutiny. Scienter is not an element of a breach of contract claim. Moreover, Bay Tek's actual and projected revenue for "Beer Ball" alley rollers **not using the Mark** is utterly irrelevant to Full Circle's (baseless) lost-profits claim in connection with its pipe-dream to broadcast National Skee-Ball League competitions using the Mark (which it has no right to do in any event under the License Agreement). Under New York law, "[i]n order to recover lost profits, a business must have been established and in operation for a definite period of time and **calculations based on other similar businesses are too speculative** and will not satisfy the [requirement that a] reasonable means of calculating [the amount be provided]." *H & P Rsch., Inc. v. Liza Realty Corp.*, 943 F. Supp. 328, 331 (S.D.N.Y. 1996) (citing *Mehta v. New York City Dep't of Consumer Affairs*, 162 A.D.2d 236, 237, 556 N.Y.S.2d 601, 602 (1st Dep't 1990)).

In sum, Full Circle is not entitled to documents that have no relation to any of the parties' claims or defenses.

---

willfulness). Here, Full Circle itself alleges that it entered into the License Agreement in order to settle prior claims against it by the previous owner of the Mark. SAC ¶¶ 60-64. On top of this, Full Circle alleges that it is entitled to lost profits based on a business model that it alleges was created by it in 2005. SAC ¶ 34.

[7] These improper document requests include Full Circle's Request Nos. 5, 6, 7 and 19.

### c. Full Circle's and Pavony's Interrogatories at Issue Are Improper

Full Circle's first Interrogatory seeks for Bay Tek to "Identify all channels or methods (e.g. internet, print) used by Bay Tek, or any licensee of Bay Tek other than Full Circle, to advertise goods or services using the Mark from 2016 through present, and for each, identify the date(s) each channel was used, the product(s) or service(s) advertised on the channel, the method or channel used, and the substance of the advertising. For each identified advertising activity that is performed by an entity other than Bay Tek, identify the entity." Collecting and providing all of the voluminous information sought by this interrogatory would be a highly burdensome exercise that would not provide any information relevant to Full Circle's claims and defenses. Bay Tek thought that the parties had resolved this interrogatory, through a compromise pursuant to which Bay Tek would produce advertisements (if any) during the relevant time period involving bars, alcohol or casinos, as counsel had discussed on the April 22, 2021 meet and confer. Bay Tek is surprised that Full Circle has apparently reneged on this reasonable compromise.

Pavony's first Interrogatory asks Bay Tek to "[i]dentify each instance of Full Circle or Pavony using the Mark in a manner that Bay Tek contends disparages, demeans, tarnishes, maligns, or dilutes Bay Tek's reputation or the Mark." Full Circle's counsel has taken the position that Bay Tek must identify **every use of the Mark with specificity.** Yet, as explained above, Full Circle **will not even identify their own uses of the Mark to Bay Tek**. In essence, Full Circle seeks to bind Bay Tek in a catch-22, forcing it to identify conduct that Full Circle itself has chosen not to disclose. *See Tomjai*, 2012 WL 3104891, at *6; *c.f. Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (explaining that information on infringement in infringer's possession, and discovery into infringer may uncover evidence of continuing infringement). Bay Tek's response, which gave Full Circle notice of where to locate the improper uses of the Mark to which Bay Tek is aware, more than sufficiently answers the interrogatory.

### IV. Bay Tek Objects to the Appointment of a Special Discovery Master

Bay Tek does not object to the appointment of a Magistrate Judge to supervise discovery in this action. However, Bay Tek does not agree to Full Circle's proposal to stipulate to the appointment of a Special Master to supervise discovery. Such an appointment which would impose substantial additional cost and burden, and would not expedite the resolution of this matter. Rather, Bay Tek respectfully submits that the most efficient means of ensuring that discovery is promptly completed in this action is to enforce the current June 11, 2021 deadline for all parties to complete discovery.

Absent the consent of all parties, pursuant to Fed. R. Civ. P. 53, a Special Master cannot be appointed without notice and a hearing. At any such hearing, Bay Tek will explain in further detail why a Special Master is wholly unwarranted.

\* \* \*

The parties greatly appreciate the Court's consideration of these matters.

        Respectfully,

        /s/ Paul Thanasides

        Paul Thanasides

        /s/ Jeffrey M. Movit

        Mitchell Silberberg & Knupp LLP