# EXHIBIT A

# CONFIDENTIAL SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (this "Agreement") is between Skee Ball, Inc., a Pennsylvania corporation ("SBI"), on the one hand, and Full Circle United, LLC, a New York limited liability corporation, a/k/a BREWSKEE-BALL ("FCU"), on the other hand. SBI and FCU are referred to in this Agreement collectively as the "Parties" and individually as a "Party." This Agreement is effective as of the last date signed below once all Parties have executed this Agreement (the "Effective Date").

**WHEREAS**, SBI asserts an exclusive trademark right in the term "SKEE-BALL®" (the "SKEE-BALL Trademark"), and is the owner of U.S. Trademark Reg. No. 0,256,496 for the SKEE-BALL Trademark in connection with a "game in the nature of a bowling game and parts thereof" (the "SKEE-BALL Registration");

**WHEREAS**, FCU asserts an exclusive trademark right in the term "BREWSKEE-BALL®" (the "BREWSKEE-BALL Trademark"), and is the owner of U.S. Trademark Reg. No. 3,389,014 for the BREWSKEE-BALL Trademark in connection with, among other things, "arranging and conducting skee-ball competitions" (the "BREWSKEE-BALL Registration");

**WHEREAS**, SBI filed suit against FCU in the Northern District of California, Case No. 3:11-cv-04930-EDL, which was transferred to the Eastern District of New York, Case No. 1:11-cv-06277 (the "SBI Litigation");

**WHEREAS**, SBI in the SBI Litigation sought cancellation of the BREWSKEE-BALL Registration among other claims;

**WHEREAS**, FCU filed counterclaims in the SBI Litigation and also filed suit against SBI in the Eastern District of New York, Case No. 1:11-cv-05476 (the "FCU Litigation"). The SBI Litigation and FCU Litigation are referred to as the "Litigations;"

**WHEREAS**, FCU asserted various claims against SBI, including that the SKEE-BALL Trademark is generic because allegedly the primary meaning of the term has become the game of "skee-ball" itself rather than an indicator of source; and

**WHEREAS,** on May 1, 2014, FCU filed a Petition for Cancellation of SBI's SKEE-BALL Registration of the SKEE-BALL Trademark with the United States Patent and Trademark Office before the Trademark Trial and Appeal Board ("TTAB"), commencing Cancellation No.: 92059136 (hereinafter referred to as the "Petition"); and

**WHEREAS,** FCU has indicated in writing that is has or will challenge registration of other SKEE-BALL Trademark related trademarks, including but not limited to: "SKEE-BALL GALAXY"; "SKEE-BALL PINBALL";"SKEE-BALL ARCADE";"SKEE-BALL CANDY"; and "SKEEBALL BASKETBALL" (collectively "Additional SBI Trademarks") and is expected to oppose registration of a "SKEE-BALL" logo and design trademark (the "Skee-Ball Logo and Design Trademark"); and

WHEREAS, the Parties desire to settle amicably the Dispute (as defined below) without the expenditure of further time, burden and expense, without the adjudication of any issue of fact or law and without any admission of liability and to put to rest, once and for all, the Dispute between the Parties by comprehensive releases and covenants not to sue. The term "Dispute" as used herein shall mean the Litigations; all matters alleged or which could be alleged in the Litigations; all claims of any nature between the Parties as of the Effective Date, whether or not alleged in the Litigations; all matters alleged in the Petition or any matter that could be alleged in the Petition; any challenges to the Additional SBI Trademarks or to the Skee-Ball Logo and Design Trademark; and any challenges that either Party may bring against the other Party concerning their respective trademarks or registrations.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. RELEASES AND DISMISSAL

    **1.1** **SBI's Release of FCU.** Except with respect to the obligations created by or arising out of this Agreement or as set forth below, SBI does hereby for itself, and its respective officers, directors, employees, shareholders, legal predecessors, successors, parents, subsidiaries, heirs, and assigns (the "SBI Releasors"), forever completely release and absolutely discharge FCU, and in their respective official and individual capacities, Eric Pavony and Evan Tobias, and all of their parent, subsidiary, affiliated and related persons and entities and each of the respective officers, directors, employees, shareholders, members, managers, legal predecessors, legal successors, agents and employees of the foregoing (the "FCU Releasees"), of and from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, attorneys' fees, actions and causes of action of every kind and nature whatsoever, known or unknown, in law, equity or otherwise, occurring up until the Effective Date of this Agreement, which SBI ever had, now has or hereafter can, shall, or may have, against the FCU Releasees, throughout the world, arising out of or based on the term SKEE-BALL, the SKEE-BALL Trademark, the SKEE-BALL Registration, the BREWSKEE-BALL Trademark, the BREWSKEE-BALL Registration or the Dispute (the "SBI Released Claims"). This Agreement and the SBI Released Claims do not include or constitute a release of claims that arise between the Parties as a result of future conduct or matters between the Parties occurring after the Effective Date.

    **1.2** **FCU's Release of SBI.** Except with respect to the obligations created by or arising out of this Agreement or as set forth below, FCU does hereby for itself, and its respective officers, directors, employees, shareholders, legal predecessors, successors, parents, subsidiaries, heirs, assigns (the "FCU Releasors"), forever completely release and absolutely discharge SBI, Dimensional Branding LLC, Dimensional Branding Group LLC and all of their parent, subsidiary, affiliated and related persons and entities and each of the respective officers, directors, employees, shareholders, members, managers, legal predecessors, legal successors, agents and employees of the foregoing and, including but not limited to, in their official and individual capacity, Joseph Sladek, John Leonhardt and Larry Seidman (the "SBI Releasees") of and from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, attorneys' fees, actions and causes of action of

every kind and nature whatsoever, known or unknown, in law, equity or otherwise, occurring up until the Effective Date of this Agreement, which FCU ever had, now has or hereafter can, shall, or may have, against the SBI Releasees, throughout the world, arising out of or based on the term SKEE-BALL, the SKEE-BALL Trademark, the SKEE-BALL Registration, the BREWSKEE-BALL Trademark, the BREWSKEE-BALL Registration or the Dispute (the "FCU Released Claims"). This Agreement and the FCU Released Claims do not include or constitute a release of claims that arise between the Parties as a result of future conduct or matters between the Parties occurring after the Effective Date.

**1.3** **Unknown Claims.** This Agreement is intended as a full and final release of claims up to the Effective Date. The Parties each expressly acknowledge and agree that this Agreement fully and finally releases and forever resolves the Litigations, including any claims that are unknown, unanticipated or unsuspected or that may hereafter arise as a result of the discovery of new and/or additional facts. The Parties acknowledge and understand the significance and potential consequences of its release of unknown claims. The Parties intend that the claims released under this Agreement be construed as broadly as possible and agree to waive and relinquish all rights and benefits each may have under Section 1542 of the Civil Code of the State of California, or any similar statute or law of any other jurisdiction. Section 1542 reads as follows:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

**1.4** **Denial of Liability.** The Parties acknowledge that they are entering into this Agreement to resolve disputed claims, that nothing herein shall be construed to be an admission of liability, and that the Parties expressly deny any liability to the other Party. This Agreement is entered into without adjudication of any issue of fact or law in the Litigations or the Petition. Each Party shall bear its own costs and attorney's fees incurred in this action.

**1.5** **Dismissal.** Within five (5) days of the Effective Date: (1) The Parties shall jointly file a Stipulation of Dismissal With Prejudice, in the form attached hereto as Exhibit A, requesting that the United States District Court presiding over the Litigations dismiss with prejudice all claims between the Parties in the Litigations, with each Party to bear its own costs and attorneys' fees. The Parties agree to submit to the court appropriate stipulations and proposed orders for extensions of time for all due dates in the Litigation, if necessary, so that neither Party is required to incur unnecessary expenses in the Litigations between the Effective Date and the date the Litigations are dismissed; (2) FCU shall file a Stipulation of Dismissal With Prejudice of the Petition, in the form attached hereto as Exhibit B; and (3) FCU shall file a Stipulation of Dismissal With Prejudice of any opposition filed against (and/or will refrain from commencing a formal opposition against, as appropriate) any of the Additional SBI Trademarks and/or the Skee-Ball Logo and Design Trademark.

## 2. COVENANTS NOT TO SUE

**2.1 SBI Covenant Not to Sue.** Subject to the terms and conditions of this Agreement, SBI, on behalf of itself and the SBI Releasors, hereby covenants, warrants, and agrees forever completely not to sue, threaten to sue, or assert any claim, counterclaim, third-party claim, contribution claim, indemnity claim, demand, action, causes of action, and any other claim of every kind and nature in law or equity, in any forum, against FCU and the FCU Releasees, whether arising under state, federal, international or other law, that is based upon the SBI Released Claims, whether such claims are known or unknown. Such covenant not to sue includes, but is not limited to, the agreement never to take any action, or to assist others in taking action, to challenge any trademark held by FCU, or for which a registration is pending as of the Effective Date.

**2.2 FCU Covenant Not to Sue.** Subject to the terms and conditions of this Agreement, FCU, on behalf of itself and the FCU Releasors hereby covenants, warrants, and agrees forever completely not to sue, threaten to sue, or assert any claim, counterclaim, third-party claim, contribution claim, indemnity claim, demand, action, causes of action, and any other claim of every kind and nature in law or equity, in any forum, against SBI and the SBI Releasees, whether arising under state, federal, international or other law, that is based upon the FCU Released Claims, whether such claims are known or unknown. Such covenant not to sue includes, but is not limited to, the agreement never to take any action, or to assist others in taking action, to challenge any trademark held by SBI, or for which a registration is pending as of the Effective Date. Further, such covenant not to sue includes, but is not limited to the agreement never to take any action, or assist others in suing or taking action, to have the SKEE- BALL Trademark declared generic.

## 3. NO CHALLENGE OR CONTESTING TRADEMARK VALIDITY

**3.1** Subject to the terms and conditions of this Agreement, FCU, on behalf of itself and the FCU Releasors, agrees that it shall not challenge or contest, or assist others in challenging or contesting, in any way, including but not limited to on grounds of genericness, the SKEE-BALL Trademark or the validity and enforceability of the SKEE-BALL Registration.

**3.2** Subject to the terms and conditions of this Agreement, SBI, on behalf of itself and the SBI Releasors, agrees that it shall not challenge or contest, or assist others in challenging or contesting, in any way, the BREWSKEE-BALL Trademark or the validity and enforceability of the BREWSKEE-BALL Registration.

## 4. COVENANTS AGAINST COMPETITION

**4.1** SBI hereby covenants, warrants, and agrees that it will not, directly or indirectly, operate, sponsor, or endorse a business, anywhere in the world, involving Live Play (as defined in the License Agreement attached as Exhibit "C") for as long as the license agreement contemporaneously entered into by the parties and attached hereto as Exhibit C (the "License Agreement") is in full force and effect.

**4.2** FCU hereby covenants, warrants, and agrees that it will not, directly or indirectly, enter into any business operations competitive with the business of SBI, as that business was made known to FCU by SBI as of the Effective Date, and as FCU is further advised by SBI in writing after the Effective Date (the "Business of SBI") for as long as the License Agreement is in full force and effect.

## 5. USE OF TRADEMARKS AND MONITORING

**5.1** With the exception of FCU's use of the SKEE-BALL Trademark in accordance with the terms of the License Agreement, after the Effective Date, neither Party shall use or exploit the others' trademarks without the prior written consent of the Party owning the trademark. The Parties acknowledge and agree that only SBI, and not FCU, has the full right to commence any action for infringement or improper use of the SKEE-BALL Trademark against any third party, and that only FCU, and not SBI, has the full right to commence any action for infringement or improper use of the BREWSKEE-BALL Trademark against any third Party.

## 6. CONFIDENTIALITY; STRICT CONFIDENTIALITY

**6.1** The parties will issue the joint press release attached hereto as <u>Exhibit D</u> (the "Press Release"). Unless otherwise specifically provided for in this Agreement, the Parties agree to maintain the confidentiality of the negotiations leading up to this Agreement and the License Agreement and the terms and subject matter of this Agreement and the License Agreement and to refrain from disclosing same to any third party, other than to state at their discretion the very limited public disclosure with words to the effect that: "(1) as of the Effective Date SBI and FCU have resolved their legal differences and their lawsuits and have reached a mutually-agreeable confidential settlement; and (2) pursuant to that settlement the parties have entered into a business relationship by the terms of which FCU has become a licensee of SBI for live league play." No further comment shall be made, except for the statements set forth in the Press Release. Nonetheless, it shall not be deemed a breach of this Agreement, and each Party shall have the right, to disclose this Agreement (or portions thereof): (a) to any third party, but only to the extent necessary to demonstrate or give effect to the releases granted herein, including without limitation the clauses relating to such releases and any portions of this Agreement which may be needed to give such releases a proper interpretation and/or their full force and effect; (b) if legally compelled to do so (including but not limited to by deposition, interrogatories, requests for documents, subpoena, civil investigative demand, court order, or similar process), provided that the disclosing party provides reasonable prior notice to the other Party so the other Party may seek a protective order to keep such information confidential; (c) as necessary in any legal proceeding in order to enforce any provision of this Agreement; (d) in order to comply with tax or other governmental filings; and (e) as necessary, to various legal, tax, financial and other advisors so long as the said advisors agree to keep the information confidential.

**6.2** Pursuant to the agreement between SBI and Dimensional Branding Group, ("DBG"), a California Corporation, certain terms and conditions of the License Agreement were disclosed to DBG and Scopely in order to obtain Scopely's consent to certain Licensed Uses (as defined in the License Agreement) that are conditioned on Scopely's consent. In addition, a

copy of the Settlement Agreement showing the release of Dimensional Branding LLC, DBG, and all of their parent, subsidiary, affiliated and related persons and entities and each of the respective officers, directors, employees, shareholders, members, managers, legal predecessors, legal successors, agents and employees of the foregoing and, including but not limited to, in their official and individual capacity, John Leonhardt and Larry Seidman, shall be given to DBG to confirm to them that the release has been given.

## 7. TRANSFER OF DOMAIN NAME

    **7.1**    Contemporaneous with the full execution of this Agreement, FCU shall transfer to SBI all of FCU's right, title and interest, if any, in and to the URL www.skee-ball.com by unlocking that URL and providing SBI with the relevant authorization code. As a result of FCU's transfer of the URL to SBI, SBI assumes all rights and obligations of the URL with all accrued benefits and rights attached thereto. FCU agrees to provide to SBI any and all relevant documents and assist SBI with the transfer of the URL, to the extent necessary. SBI reserves the right to assign, or transfer the URL, whether in whole or in part, to any Party. If, for any reason, any other steps or action is necessary to assign or transfer the URL www.skee-ball.com to SBI, FCU shall take all such steps or action to assure that the URL www.skee-ball.com is so assigned or transferred, including but not limited to any requirements of the domain registrar.

## 8. NO ASSIGNMENT OF RIGHTS AND OBLIGATIONS

This Agreement and the rights granted hereunder are personal to the Parties, and no Party may assign this Agreement or any right or obligation under this Agreement without the prior written consent of the other Party. Any assignment or transfer in violation of this Section 8.1 shall be null and void. This prohibition on assignment without prior written consent shall apply to any transfer, whether direct or indirect, including any transfer which arises from a change in control or any kind whatsoever, whether a stock sale, asset sale or other change in control, and whether part of a sale or transfer of a substantial portion of a Party's business (regardless of the manner in which any such transaction is effected). Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the Parties and their respective affiliates and their permitted successors and assigns.

## 9. GENERAL PROVISIONS

    **9.1**    **Warranty.** SBI represents and warrants to FCU, that, as of the Effective Date, it owns all right, title and interest in and to the SKEE-BALL Trademark and SKEE-BALL Registration, including, without limitation, all rights to sue and recover damages for any and all past, present, and future infringements thereof, that it has the exclusive and entire right to enforce the SKEE-BALL Trademark, that it has the exclusive right to covenant not to sue FCU as stated herein, and thus the right to enter into this Agreement, and that it has not entered into, and shall not enter into, any agreement which would interfere with the releases and covenants against suit granted by this Agreement. FCU represents and warrants to SBI, that, as of the Effective Date, it owns all right, title and interest in and to the BREWSKEE-BALL Trademark and BREWSKEE-BALL Registration, including, without limitation, all rights to sue and recover damages for any and all past, present, and future infringements thereof, that it has the exclusive and entire right to

enforce the BREWSKEE-BALL Trademark, that it has the exclusive right to covenant not to sue SBI as stated herein, and thus the right to enter into this Agreement, and that it has not entered into, and shall not enter into, any agreement which would interfere with the releases and covenants against suit granted by this Agreement.

**9.2 Duly Existing.** Each of the Parties represents and warrants that it is duly existing, that it has the full right, power and authority to enter into this Agreement, and that there are no other persons whose consent to this Agreement or whose joinder herein is necessary to make fully effective the provisions of this Agreement.

**9.3 Comprehension.** Each Party acknowledges to the other Party that it has been represented by independent legal counsel of its own choice throughout all of the negotiations which preceded the execution of this Agreement and that it has executed this Agreement with the consent and on the advice of such independent legal counsel. Each Party further acknowledges that it and its counsel have had adequate opportunity to make whatever investigation or inquiry they may deem necessary or desirable in connection with the subject matter of this Agreement prior to the execution hereof. Each Party has authorized and directed their respective attorneys to execute and deliver such other and further documents as may be required to carry out the terms and conditions of this Agreement.

**9.4 Interpretation.** The language of this Agreement has been approved by counsel for the Parties. The language of this Agreement shall be construed as a whole according to its fair meaning and none of the Parties (or the Parties' respective attorneys) shall be deemed to be the draftsman of this Agreement in any action which may hereafter arise between the Parties.

**9.5 Entire Agreement.** This is an enforceable Agreement. This Agreement, including the attached Exhibits, which are incorporated by reference herein, constitutes the entire agreement between the Parties regarding the subject matter hereof and supersedes all previous communications, representations, agreements or understandings, either oral or written, between the Parties with respect to the subject matter hereof. This Agreement may be amended, supplemented or modified only by a written instrument duly executed by or on behalf of each Party hereto which specifically refers to this Agreement.

**9.6 Waiver.** No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving Party.

**9.7 Notices.** Any notice required or permitted by this Agreement shall be in writing and shall be sent by personal delivery or by a reliable overnight courier service, at the address below or to such other address for which such Party shall give notice hereunder. Such notice shall be deemed to have been given upon receipt.

    To SBI:
        Skee Ball, Inc.
        Joseph W. Sladek

121 Liberty Lane
Chalfont, Pennsylvania 18914

With a copy to:

Idell & Seitel, LLP
Richard J. Idell, Esq.
Richard.idell@idellseitel.com
Merchants Exchange Building
465 California Street, Suite 300
San Francisco, California 94014
Tel: (415) 986-2400
Fax: (415) 392-9259
Sonoma Office: (707) 938-7763
Sonoma Fax: (707) 938-7764
Mill Valley Office: (415) 383-1046

To FCU:

Full Circle United, LLC
Eric Pavony
318 Grand Street
Brooklyn, New York 11211

With a copy to:

Fish & Richardson P.C.
John T. Johnson, Esq.
jjohnson@fr.com
Kristen McCallion, Esq.
McCallion@fr.com
601 Lexington Avenue - 52nd Floor
New York, NY 10022-4611
Tel.: (212)-765-5070
Fax: (212) 258-2291

Any Party may change the address for notice at any time by giving notice to the other Party.

**9.8** **Governing Law, Jurisdiction, and Venue.** This Agreement shall be governed by, interpreted and construed in accordance with the laws of New York, without reference to conflicts of laws principles. Any legal action or other legal proceeding relating to this Agreement or the enforcement of any provision of this Agreement must be brought or otherwise commenced in a court of competent jurisdiction located in the boundaries of the Eastern District of New York; whether that court is a federal court or state court will depend on the nature of the case.

**9.9** **Severability.** If any provision of this Agreement shall be determined to be

invalid, illegal or unenforceable under any controlling body of law, that provision shall be reformed, construed and enforced to the maximum extent permissible; and the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

    9.10   **Section Headings.** The section headings used in this Agreement and in the attached Exhibits are intended for convenience only and shall not be deemed to supersede or modify any provisions.

    9.11   **Counterparts.** This Agreement may be signed in counterparts, each of which shall be deemed an original hereof, but all of which together shall constitute one and the same instrument.

    9.12   **Duty to Effectuate.** The Parties agree to perform any lawful additional acts, including the execution of additional agreements, as are reasonably necessary to effectuate the purpose of this Agreement.

IN WITNESS WHEREOF, the Parties do hereby execute this Settlement Agreement by duly authorized officials as of the Effective Date:

| Skee Ball, Inc. | Full Circle United, LLC |
|---|---|
| By: *(signature)* | By: _____ |
| Name: Joseph W. Sladek | Name: Eric Pavony |
| Title: President | Title: Manager |
| Date: 7/17/14 | Date: _____ |

...id, illegal or unenforceable under any controlling body of law, that provision shall ...rmed, construed and enforced to the maximum extent permissible; and the validity, legal ...d enforceability of the remaining provisions shall not in any way be affected or impair... ...ereby.

9.10 **Section Headings.** The section headings used in this Agreement and in th... ...ttached Exhibits are intended for convenience only and shall not be deemed to supersede ... ...odify any provisions.

9.11 **Counterparts.** This Agreement may be signed in counterparts, each of whic... ...hall be deemed an original hereof, but all of which together shall constitute one and the sam... ...nstrument.

9.12 **Duty to Effectuate.** The Parties agree to perform any lawful additional acts ...cluding the execution of additional agreements, as are reasonably necessary to effectuate the ...urpose of this Agreement.

...N WITNESS WHEREOF, the Parties do hereby execute this Settlement Agreement by duly ...uthorized officials as of the Effective Date.

Skee-Ball, Inc.                                     Full Circle United, LLC

By: _____              By: _____

Name: Joseph W. Sladek                         Name: Eric Pavony

Title: President                                        Title: Manager

Date: _____                                   Date: 7/17/14

invalid, illegal or unenforceable under any controlling body of law, that provision shall be reformed, construed and enforced to the maximum extent permissible; and the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

**9.10 Section Headings.** The section headings used in this Agreement and in the attached Exhibits are intended for convenience only and shall not be deemed to supersede or modify any provisions.

**9.11 Counterparts.** This Agreement may be signed in counterparts, each of which shall be deemed an original hereof, but all of which together shall constitute one and the same instrument.

**9.12 Duty to Effectuate.** The Parties agree to perform any lawful additional acts, including the execution of additional agreements, as are reasonably necessary to effectuate the purpose of this Agreement.

**IN WITNESS WHEREOF,** the Parties do hereby execute this Settlement Agreement by duly authorized officials as of the Effective Date:

Skee Ball, Inc.                                             Full Circle United, LLC

By: _____        By: _____

Name: Joseph W. Sladek                               Name: Eric Pavony

Title: President                                             Title: Manager

Date: _____      Date: _____

Exhibit "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FULL CIRCLE UNITED, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>SKEE BALL, INC.,<br><br>        Defendant. | Civil Action No. 11-CV-5476 (LB) |
| SKEE BALL, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>FULL CIRCLE UNITED, LLC,<br><br>       Defendant. | Civil Action No. 11-CV-6277 (LB) |

**STIPULATION AND [PROPOSED] ORDER FOR NOTICE
OF VOLUNTARY DISMISSAL WITH PREJUDICE**

Pursuant to Fed Rule Civ. P. 41(a)(1), and in accordance with the Settlement Agreement between Full Circle United, LLC ("FCU") and Skee Ball, Inc. ("SBI"), it is hereby stipulated by the parties that the above civil actions be dismissed with prejudice; each party to bear their own attorneys' fees and costs.

Richard J. Idell  
Idell & Seitel, LLP  
Merchants Exchange Building  
465 California Street, Suite 300  
San Francisco, CA 94104  

Attorney for Registrant  
SKEE BALL, INC.

Kristen McCallion  
John T. Johnson  
FISH & RICHARDSON P.C.  
601 Lexington Avenue, 52nd Floor  
New York, New York 10022  
Tel: (212) 765-5070  
Fax: (212) 258-2291  

Attorneys for Petitioner  
FULL CIRCLE UNITED, LLC

**SO ORDERED:**

DATE: _____, 2014

_____  
Honorable Lois Bloom  
United States Magistrate Judge

Exhibit "B"

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
# BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In the matter of Trademark Registration No.: 256,496
For the Mark: SKEE-BALL
Date Registered: May 21, 1929

---

FULL CIRCLE UNITED, LLC,

    Petitioner,

v.

SKEE BALL, INC.,

    Registrant.

Cancellation No. 92059136

---

## STIPULATION TO DISMISS CANCELLATION WITH PREJUDICE

In accordance with the Settlement Agreement between Full Circle United, LLC ("Petitioner") and Skee Ball, Inc. ("Registrant"), it is hereby stipulated by the parties that the Petition for Cancellation be dismissed with prejudice; each party to bear their own attorneys' fees and costs.

---

Richard J. Idell
Idell & Seitel, LLP
Merchants Exchange Building
465 California Street, Suite 300
San Francisco, CA 94104

Attorney for Registrant
SKEE BALL, INC.

Kristen McCallion
John T. Johnson
FISH & RICHARDSON P.C.
601 Lexington Avenue, 52nd Floor
New York, New York 10022
Tel: (212) 765-5070
Fax: (212) 258-2291

Attorneys for Petitioner
FULL CIRCLE UNITED, LLC

Exhibit "D"
Press Release

JOINT PRESS RELEASE

*To be jointly issued by the parties upon execution of the settlement documentation:*

"Skee-Ball, Inc. ("SBI") and Full Circle United, LLC ("FCU") jointly announce they have reached a confidential settlement and a license agreement. The settlement resolves existing lawsuits and legal claims between SBI and FCU.

FCU will continue to advance creative concepts, including competitive SKEE-BALL® league play featuring only official SKEE-BALL® brand name machines.

Skee-Ball Inc. is a pioneer in the U.S. in the development of amusement games including the game trademarked as Skee-Ball®, a trademark it has owned since 1929. Skee-Ball, Inc. will continue to manufacture high-quality SKEE-BALL® brand name machines, as well as other entertainment and amusement games.