# EXHIBIT 33

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FULL CIRCLE UNITED, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>BAY TEK ENTERTAINMENT, INC.,<br><br>*Defendant*.<br><br>BAY TEK ENTERTAINMENT, INC.,<br><br>*Counterclaim Plaintiff,*<br><br>v.<br><br>FULL CIRCLE UNITED, LLC,<br><br>*Counterclaim Defendant,*<br><br>and<br><br>ERIC PAVONY,<br><br>*Additional Counterclaim Defendant.* | Civ. Action No. 1:20-cv-03395<br><br>**PLAINTIFF/COUNTERCLAIM DEFENDANT FULL CIRCLE UNITED, LLC'SAMENDED ANSWERS TO DEFENDANT/ COUNTERCLAIM PLAINTIFF BAY TEK ENTERTAINMENT, INC.'S SECOND SET OF INTERROGATORIES** |

Plaintiff/Counterclaim Defendant Full Circle United, LLC, ("Full Circle"), pursuant to Fed. R. Civ. P. 33, provides amended answers to Defendant/Counterclaim Plaintiff Bay Tek Entertainment, Inc.'s ("Bay Tek") Second Set of Interrogatories served on October 13, 2021:

**INTERROGATORIES**

**Interrogatory No. 10:** Identify the provision(s) and specific language of the License Agreement that you contend obligates Bay Tek to manufacture Skee-Ball Live Lanes, and state all facts supporting your contention.

**Answer**:

Full Circle has not made this contention.

**Interrogatory No. 11:** Identify the provision(s) and specific language of the License Agreement that you contend entitles you to add aftermarket modifications to standard Skee-Ball®-branded alley roller products manufactured and sold by Bay Tek, without Bay Tek's permission, and state all facts supporting your contention.

**Amended Answer**:

Full Circle has made not made this contention. Nothing in the License Agreement prohibits Full Circle from modifying skee-ball machines. Bay Tek's conduct supports Full Circle's position. Prior to December 2018, Bay Tek knew Full Circle modified skee-ball machines and third-parties modified skee-ball machines, but raised no objection. Instead, Bay Tek encouraged and facilitated Full Circle in making modifications to a skee-ball lane manufactured by Bay Tek.

**Interrogatory No. 12:** Identify the provision(s) and specific language of the License Agreement that you contend entitles a third party to add aftermarket modifications to standard Skee-Ball®-branded alley roller products manufactured and sold by Bay Tek, or otherwise manufacture Skee-Ball Live Lanes, without Bay Tek's permission, and state all facts supporting your contention.

**Amended Answer**:

Full Circle has not made this contention. Nothing in the License Agreement prohibits a third-party from modifying skee-ball machines. Bay Tek's conduct supports Full Circle's position. Prior to December 2018, Bay Tek knew Full Circle modified skee-ball machines and third-parties modified skee-ball machines, but raised no objection. Instead, Bay Tek encouraged and facilitated Full Circle in making modifications to a skee-ball lane manufactured by Bay Tek.

2

**Interrogatory No. 13:** Do you contend that Bay Tek interfered with your ability to operate and conduct Live Play or otherwise host Live Play events on standard Skee-Ball®-branded alley roller products manufactured and sold by Bay Tek? If so, state all facts supporting your contention.

**Amended Answer**:

Full Circle objects to Interrogatory No. 13 as unduly burdensome in that it asks Full Circle to identify each and every fact without limiting the timeframe of the information requested, since there are countless instances of Bay Tek's interference over the last five years. The Interrogatory is vague and calls for speculation to the extent it asks for information relating to "standard" Skee-Ball®-branded products. Full Circle also objects to the Interrogatory as unintelligible. For the purpose of answering Interrogatory No. 13, Bay Tek asks that "standard Skee-Ball®-branded alley roller products" mean machines branded with the Skee-Ball Mark exclusive of Skee-Ball Live Lanes, as that term is defined in the Second Amended Complaint. Incorporating this definition solely for the purpose of answering this Interrogatory and subject to and without waiving the foregoing objections, Full Circle answers Interrogatory No. 13 as follows:

Full Circle does not understand this question. The contention stated rests on a distinction Full Circle has not made. Nonetheless, yes. Bay Tek interfered with Full Circle's ability to obtain "standard" skee-ball lanes by promising to manufacture custom machines for Full Circle then refusing to deliver the machines it promised, refusing to provide the skee-ball machines when Full Circle attempted to obtain them through George Petro, as alleged in the Second Amended Complaint, and refusing to sell skee-ball machines to Full Circle in December 2019. In addition, Bay Tek has interfered with Full Circle's business relationships and ability to raise money to grow Live Play by frivolously placing Full Circle's license at issue and attempting to terminate or limit Full Circle's rights to operate Live Play.

**Interrogatory No. 14:** Identify the provision(s) and specific language of the License Agreement that you contend entitles you to stream, transmit, or broadcast entire Live Play tournaments over the Internet, television, or radio, and state all facts supporting your contention.

**Answer:**

The foundation of this question is not agreeable, as it assumes Full Circle has no right to promote skee-ball tournaments via video unless Bay Tek deigns to permit it and ignores the fact that the License Agreement does not preclude video promotion.

Agreements are to be read as a whole. Full Circle's contention is that the License Agreement as a whole permits the use of the Skee-Ball Mark in the promotion of Live Play in any medium. For years, Bay Tek agreed with this as its course of dealing/conduct and never raised any issue about Live Play videos until Full Circle filed this lawsuit. Moreover, Bay Tek approved of this activity to obtain Full Circle's written consent to the assignment of the License Agreement to Bay Tek.

Among other provisions of the License Agreement, sections 3.1, 3.2, and 4.5 state:

Subject to the terms, conditions, exclusions, and restrictions of this Agreement, including without limitation the SBI use guidelines set forth in Exhibit "A" hereto (the "SBI Use Guidelines"), SBI grants to FCU a worldwide, right and license to use the SKEE-BALL Trademark in connection with the following specified Licensed Uses during the Term and within the Territory:

> a) Conducting, arranging, presenting, marketing, and promoting live play leagues, teams, events, and tournaments utilizing alley rollers manufactured by SBI and called Skee-Ball® machines (including without limitation BREWSKEE BALL live play leagues, teams, events, and tournaments) utilizing alley rollers manufactured by SBI (collectively "Live Play").
>
> b) Developing, producing, selling, and distributing merchandise solely in connection withLive Play ("Live Play Merchandise") subject to the restrictions on merchandise set forth below.
>
> c) Developing, producing, offering, and using an electronic scoring application that will bemade available for free, which allows Live Play players, teams, and leagues to record andmaintain cores, statistics, league and player information, wins and losses, awards and rankings, solely and directly in connection with Live Play, and which does not include virtual play of the game manufactured by SBI known as Skee-Ball® (the "Scoring App").

4

> d) Using the Skee-Ball Trademark for sponsorships or endorsements solely and directly related to Live Play, provided however, that notice of such sponsorships or endorsement must be given to SBI, SBI shall receive a copy of the executed agreement and SBI shall receive five percent (5%) of Gross Sponsorship Revenues (as defined below in Paragraph 8.4).

The foregoing (a) – (d) are referred to as the "Licensed Uses." Pursuant to the license granted to FCU herein under Section 3.1, and subject to the restrictions and exclusions set forth below, the Parties acknowledge and agree that FCU may use the SKEE-BALL Trademark, for advertising and promotional purposes in any and all mediums now known or hereafter devised, so long as such use is solely in connection with and in compliance with the Licensed Uses above, and the restrictions, conditions and exclusions below.

For the avoidance of doubt, FCU has the right to use the SKEE-BALL Trademark, per Paragraph 3.2, via the Internet, radio, television, or other communication and media outlets, whether now known or hereafter created, developed or devised, for promotional and marketing purposes only of its Live Play business (including for the purpose of allowing Live Play players to enroll in / sign up for Live Play) and Live Play Merchandise.

**Interrogatory No. 15:** State all facts supporting your contention that, had Bay Tek performed under the License Agreement, Bay Tek would have financed and manufactured 1,750 Skee-Ball Live Lanes by 2026.

**Amended Answer**:

Full Circle objects to Interrogatory No. 15 to the extent it seeks information protected by the work product privilege. Full Circle further objects to the Interrogatory as unduly burdensome in that it asks Full Circle to identify all facts supporting the contention. Subject to and without waiving the foregoing objections, Full Circle answers Interrogatory No. 15 as follows: Full Circle has not made this contention. Full Circle refers Bay Tek to ¶¶118-122 of its Second Amended Complaint, which it incorporates by reference herein. Full Circle contends Bay Tek represented it had the ability to manufacture the quantity of lanes Full Circle projected in its growth model, and that it would invest if Full Circle "proved the model" with the Skee-Ball Live Lanes. *See* FCU FCU000000008. Full Circle also refers Bay Tek to Bay Tek's production and Full Circle's production, including, without limitation, the revenue models and NSBL business decks provided to it by Full Circle, and

5

FCU000000011- FCU000000014; FCU000000081-FCU000000130; BT0008527 - BT0008554; BT0004707-BT0004707; FCU000008395 - FCU000008406.

**Interrogatory No. 16**: Identify all statements by George Petro or any representative thereof, including the specific language used by Mr. Petro or any representative thereof, which supports your contention that Play Mechanix had the intention to finance and manufacture Skee-Ball Live Lanes.

**Amended Answer:**

Full Circle objects to Interrogatory No. 16 as unduly burdensome to the extent it asks Full Circle to identify all statements by George Petro or a representative that support the contention using "specific language". Subject to and without waiving the foregoing objection, Full Circle answers Interrogatory No. 16 as follows:

Full Circle has not made this contention. Full Circle refers Bay Tek to ¶¶ 180, 267-279 of its Second Amended Complaint, which Full Circle incorporates by reference herein. Full Circle also refers Bay Tek to the correspondence between George Petro and Full Circle produced by Full Circle, including, without limitation, FCU_EXPERT_0000127 - FCU_EXPERT_0000144 and Mr. Petro's production GP-0073. It also refers Bay Tek to FCU000010110- FCU000010116 and FCU000010124.

**Interrogatory No. 17**: Identify all statements by George Petro or any representative thereof, including the specific language used by Mr. Petro or any representative thereof, which supports your contention that Play Mechanix had the intention to finance and manufacture 1,750 Skee-Ball Live Lanes by 2026.

**Amended Answer:**

Full Circle objects to Interrogatory No. 17 as unduly burdensome to the extent it asks Full Circle to identify all statements by George Petro or a representative that support the contention using "specific language". Subject to and without waiving the foregoing objection, Full Circle answers

6

Interrogatory No. 17 as follows:

Full Circle has not made this contention. Full Circle contends Play Mechanix intended to partner with Full Circle to operate skee-ball machines, after obtaining them from Bay Tek, and planned to deploy those machines into Buck Hunter's existing network. Full Circle refers Bay Tek to ¶¶ 180, 267-279 of its Second Amended Complaint, which Full Circle incorporates by reference herein. Full Circle also refers Bay Tek to the correspondence between Full Circle and Mr. Petro produced by Full Circle, including, without limitation, FCU_EXPERT_0000127 - FCU_EXPERT_0000144. It also refers Bay Tek to FCU000010110- FCU000010116 and FCU000010124.

**Interrogatory No. 18**: State all facts supporting your contention that, had Bay Tek not allegedly interfered with Full Circle's purported business relationship with Play Mechanix, Play Mechanix would have financed and manufactured Skee-Ball Live Lanes for Full Circle.

**Amended Answer:**

Full Circle objects to Interrogatory No. 18 to the extent it seeks information protected by the attorney client privilege and protected work product. The Interrogatory is unduly burdensome in that it asks Full Circle to identify all facts supporting the contention. Subject to and without waiving the foregoing objection, Full Circle answers Interrogatory No. 18 as follows:

Full Circle has not made this contention. Full Circle contends Play Mechanix intended to partner with Full Circle to operate skee-ball machines, after obtaining them from Bay Tek, and planned to deploy those machines into Buck Hunter's existing network. Full Circle refers Bay Tek to ¶¶ 180, 267-279 of its Second Amended Complaint, which Full Circle incorporates by reference herein. Full Circle also refers Bay Tek to the correspondence between Full Circle and Mr. Petro produced by Full Circle, including, without limitation, FCU_EXPERT_0000127 -

7

FCU_EXPERT_0000144. It also refers Bay Tek to FCU000010110- FCU000010116 and FCU000010124.

**Interrogatory No. 19**: State all facts supporting your contention that, had Bay Tek not allegedly interfered with Full Circle's purported business relationship with Play Mechanix, Play Mechanix would have financed and manufactured 1,750 Skee-Ball Live Lanes by 2026.

**Amended Answer:**

Full Circle objects to Interrogatory No. 19 to the extent it seeks information protected by the attorney client privilege and protected work product. The Interrogatory is unduly burdensome in that it asks Full Circle to identify all facts supporting the contention. Subject to and without waiving the foregoing objection, Full Circle answers Interrogatory No. 19 as follows:

Full Circle has not made this contention. Full Circle contends Play Mechanix intended to partner with Full Circle to operate skee-ball machines, after obtaining them from Bay Tek, and planned to deploy those machines into Buck Hunter's existing network. Full Circle refers Bay Tek to ¶¶ 180, 267-279 of its Second Amended Complaint, which Full Circle incorporates by reference herein. Full Circle also refers Bay Tek to the correspondence between Full Circle and Mr. Petro produced by Full Circle, including, without limitation, FCU_EXPERT_0000127 - FCU_EXPERT_0000144. It also refers Bay Tek to FCU000010110- FCU000010116 and FCU000010124.

8

**Interrogatory No. 20**: Identify all statements made and writings prepared by or signed by someone with authority to bind Bay Tek that you contend memorialize the terms of the alleged revenue share agreement underlying Count II of the Second Amended Complaint.

**Amended Answer:**

Full Circle objects to Interrogatory 20 as unduly burdensome in that it asks Full Circle to review its evidence to identify all statements and writings prepared by or signed by someone with authority to bind Bay Tek that it contends memorialize the terms of the alleged revenue share agreement, and improper to the extent it asks Full Circle to review Bay Tek's production for same. Full Circle also objects to the Interrogatory on the ground that it improperly seeks protected work product. Subject to and without waiving the foregoing objection, Full Circle answers Interrogatory No. 20 as follows:

Full Circle has not made this contention.  Certain terms of the Revenue Share Agreement are reflected on the following documents: BT0008343, BT0005905 - BT0005906, FCU000002453 - FCU000002455, BT0006831 - BT0006836. Full Circle also refers Bay Tek to Larry Treankler's recorded statements:  FCU000000183.


**Interrogatory No. 21:** Do you contend that you maintain in full force and effect an insurance policy or policies that comply with your obligations under Section 14.4 of the License Agreement? If yes, state all facts supporting your contention.

**Amended Answer:**

Yes. Full Circle refers Bay Tek to the policy produced to Bay Tek. Bay Tek has not notified Full Circle of any deficiencies with the policy.

9

**Interrogatory No. 22:** State all facts supporting your contention that Bay Tek's claims and damages are barred, in whole or in part, because Bay Tek "consented or acquiesced to "[Full Circle's] use of the [Skee-Ball] Mark in connection with the conduct complained of in its Counterclaims," as alleged in your Fifth Affirmative Defense to Bay Tek's Counterclaims.

**Answer:**

Full Circle objects to Interrogatory No. 22 as unduly burdensome to the extent it asks Full Circle to identify each and every interaction between Full Circle and BayTek. There are hundreds of communications and other documents that show Bay Tek acquiescing in the conduct that Bay Tek complains of for the first time, now that it has been sued. Full Circle refers Bay Tek to its own production, Full Circle's production, and to the recordings produced by Full Circle, which are all replete with approvals and acquiescence, including without limitation Bay Tek doing the following:

1. Viewing videos of Brewskee-Ball and NSBL Live Play events and tournaments sent to Bay Tek by Counterclaim Defendants and publicly available on the Internet, and responding to the broadcasts approvingly, and without raising issue with Full Circle's right to use the Mark in connection with the videos promoting Live Play or to the culture or conduct of customers or participants in the Brewskee-Ball league. For example, Pavony sent Bay Tek a video, included in Exhibit D to Bay Tek's Counterclaim, that involved Brewskee-Ball team members chugging beer, to which Holly Hampton, Bay Tek's Director of Innovation at the time, replied,

"Thanks Pavony! Just watching that you tube video gets me so pumped about the NSBL!";

2. Expressing approval of Brewskee-Ball after attending and participating in Brewskee-Ball events and tournaments, and witnessing and approving of the use of words, phrases and slogans incorporating "skee", and never objecting to or raising issue with Full Circle's use of Brewskee-Ball, or any words, phrases or slogans used in connection with Brewskee-Ball;

3. Expressing approval of Full Circle's Live Play concept when it was presented by Full Circle to Bay Tek, which included a new skee-ball lane designed by Full Circle that connected to the Internet and recorded Live Play with cameras (the "Skee-Ball Live Prototype Lanes"), and Full Circle's plan to promote Live Play events and tournaments via video on various platforms, including ESPN;

10

4. Building Internet-enabled Skee-Ball Live Prototype Lanes installed with cameras, and delivering the lanes to Full Circle with the specific knowledge and intent that they would be used to promote Live Play in Internet videos;

5. Accepting, on more than one occasion, revenue share under the License for sponsorships of tournament promotion videos and payments from Full Circle of revenue generated from the videos;

6. Reviewing and approving Full Circle's business plans, which specifically identified the functionalities of the Skee-Ball Live Lanes, and the intention to use social media platforms, the internet and television to promote Live Play;

7. Requesting and receiving from Full Circle footage of Live Play on television and the internet and using the same footage to promote Live Play itself; and

8. Participating, through its agents and officers, including Holly Hampton, in the conduct Bay Tek contends tarnish the mark and breach the License Agreement, specifically but not exclusively, by engaging in excessive alcohol consumption.

9. Failing to provide a cure notice as required in section 7 of the License Agreement with respect to the conduct at issue, springing the supposed "concerns" on Full Circle with no notice for the first time after it was sued by Full Circle, revealing the obvious pretext and true motive to harm Full Circle not use Bay Tek's best efforts to promote its Licensed Uses.

**Interrogatory No. 23:** State all facts supporting your contention that Bay Tek's claims and damages are barred, in whole or in part, "by the doctrine of waiver," as alleged in your Sixth Affirmative Defense to Bay Tek's Counterclaims.

**Answer:**

Full Circle objects to Interrogatory No. 23 as unduly burdensome to the extent it asks Full Circle to identify each and every fact over the past five years of interaction between Full Circle and Bay Tek. There are hundreds of communications and other documents that show Bay Tek acquiescing to the conduct that Bay Tek complains of for the first time, now that it has been sued. Full Circle refers Bay Tek to its own production, Full Circle's production, and to the recordings produced by Full Circle, which are all replete with approvals and acquiescence, including without limitation Bay Tek doing the following:

1. Viewing videos of Brewskee-Ball and NSBL Live Play events and tournaments sent to Bay Tek by Counterclaim Defendants and publicly available on the Internet, and responding to

11

the broadcasts approvingly, and without raising issue with Full Circle's right to use the Mark in connection with the videos promoting Live Play or to the culture or conduct of customers or participants in the Brewskee-Ball league. For example, Pavony sent Bay Tek a video, included in Exhibit D to Bay Tek's Counterclaim, that involved Brewskee-Ball team members chugging beer, to which Holly Hampton, Bay Tek's Director of Innovation at the time, replied,

"Thanks Pavony! Just watching that you tube video gets me so pumped about the NSBL!";

2. Expressing approval of Brewskee-Ball after attending and participating in Brewskee-Ball events and tournaments, and witnessing and approving of the use of words, phrases and slogans incorporating "skee", and never objecting to or raising issue with Full Circle's use of Brewskee-Ball, or any words, phrases or slogans used in connection with Brewskee-Ball;

3. Expressing approval of Full Circle's Live Play concept when it was presented by Full Circle to Bay Tek, which included a new skee-ball lane designed by Full Circle that connected to the Internet and recorded Live Play with cameras (the "Skee-Ball Live Prototype Lanes"), and Full Circle's plan to promote Live Play events and tournaments via video on various platforms, including ESPN;

4. Building Internet-enabled Skee-Ball Live Prototype Lanes installed with cameras, and delivering the lanes to Full Circle with the specific knowledge and intent that they would be used to promote Live Play in Internet videos;

5. Accepting, on more than one occasion, revenue share under the License for sponsorships of tournament promotion videos and payments from Full Circle of revenue generated from the videos;

6. Reviewing and approving Full Circle's business plans, which specifically identified the functionalities of the Skee-Ball Live Lanes, and the intention to use social media platforms, the internet and television to promote Live Play;

7. Requesting and receiving from Full Circle footage of Live Play on television and the internet and using the same footage to promote Live Play itself; and

8. Participating, through its agents and officers, including Holly Hampton, in the conduct Bay Tek contends tarnish the mark and breach the License Agreement, specifically but not exclusively, by engaging in excessive alcohol consumption.

9. Failing to provide a cure notice as required in section 7 of the License Agreement with respect to the conduct at issue, springing the supposed "concerns" on Full Circle with no notice for the first time after it was sued by Full Circle, revealing the obvious pretext and true motive to harm Full Circle not use Bay Tek's best efforts to promote its Licensed Uses.

12

**Interrogatory No. 24:** State all facts supporting your contention that Full Circle has "performed or substantially performed any and all contractual obligations and any duty, or, performance on behalf of Full Circle is excused by Bay Tek's actions and breaches," as alleged in your Fourth Affirmative Defense to Bay Tek's Counterclaims.

**Amended Answer:**

Full Circle objects to Interrogatory No. 24 on the basis that Bay Tek has exceeded the number of interrogatories permitted under Rule 33. While this interrogatory is numbered 24, prior interrogatories—including without limitation, interrogatories 10, 11, 12, and 14—contain additional discrete subparts, bringing the total over 25. Interrogatories 10, 11, 12, and 14 ask two questions each: first to identify provisions in the License Agreement that contain referenced language and then to identify extra-contractual facts that support a contention. The Interrogatory is unduly burdensome in that it asks Full Circle to identify all facts supporting the contention.

**Interrogatory No. 25:** State all facts supporting your contention that Bay Tek made a "promise" to "permit Full Circle to use the [Skee-Ball] Mark in connection with its Live Play operations, including Brewskee-Ball, and Full Circle's broader business plans to promote live play through videos of tournaments, league play, and events prior to receiving Full Circle's consent to the assignment of the License Agreement from SBI," as alleged in your Eighth Affirmative Defense to Bay Tek's counterclaims.

**Amended Answer:**

Full Circle objects to Interrogatory No. 25 on the basis that Bay Tek has exceeded the number of interrogatories permitted under Rule 33. While this interrogatory is numbered 25, prior interrogatories—including without limitation, interrogatories 10, 11, 12, and 14—contain additional discrete subparts, bringing the total over 25. Interrogatories 10, 11, 12, and 14 ask two questions each: first to identify provisions in the License Agreement that contain referenced language and then to identify extra-contractual facts that support a contention. Full Circle further objects to Interrogatory No. 25 to the extent it seeks information protected by the attorney client privilege and protected work product. Subject to and without waiving the foregoing objections, Full Circle answers Interrogatory No. 25 as follows: Full Circle refers Bay Tek to Full Circle's production, including, without limitation, FCU000000015, FCU000007213, FCU000007214, FCU000010121 - 10122 and correspondence between Full Circle and Gaetan Philippon produced by Full Circle.

      As to the interrogatories to which objections have been made:

                          Respectfully submitted,

                          */s/ Paul Thanasides*
                          Paul Thanasides
                          paul@mcintyrefirm.com
                          clservice@mcintyrefirm.com
                          Christina Casadonte-Apostolou
                          christina@mcintyrefirm.com
                          complexlit@mcintyrefirm.com

> McIntyre Thanasides Bringgold Elliott
>   Grimaldi Guito & Matthews, P.A.
> 500 E. Kennedy Blvd., Suite 200
> Tampa, FL 33602
> Telephone: 813.223.0000
> Facsimile: 813.225.1221
>
> and
>
> L. Reid Skibell
> rskibell@hs-law.com
> HARRIS, ST. LAURENT LLP
> 40 Wall St., 53rd Floor
> New York, NY 10005
> Telephone: 212.397.3370
> Facsimile: 212.202.6206
>
> ***Counsel for Plaintiff/Counterclaim Defendant Full Circle United, LLC and Counterclaim Defendant Eric Pavony***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 15, 2021, a true and correct copy of the foregoing was served by email to the following:

Christine Lepera
ctl@msk.com
Jeffrey Movit
jmm@msk.com
Leo M. Lichtman
lml@msk.com
Mitchell Silberberg & Knupp LLP
437 Madison Avenue, 25th Floor
New York, NY 10022
Telephone: 212.509.3900
Facsimile: 212.509.7239
***Counsel for Defendant/Counterclaim Plaintiff Bay Tek Entertainment, Inc.***

>   */s/ Paul Thanasides*
>   Attorney