UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FULL CIRCLE UNITED, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>BAY TEK ENTERTAINMENT, INC.,<br><br>*Defendant*. | Civ. Action No. 1:20-cv-03395 |
| BAY TEK ENTERTAINMENT, INC.,<br><br>*Counterclaim Plaintiff*,<br><br>v.<br><br>FULL CIRCLE UNITED, LLC,<br><br>*Counterclaim Defendant*,<br><br>and<br><br>ERIC PAVONY,<br><br>*Additional Counterclaim Defendant*. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF FULL CIRCLE UNITED, LLC'S MOTION SEEKING
<u>LEAVE TO FILE A THIRD AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I. FCU COMPLIED WITH THE COURT'S ORDER. ................................................. 2

II. FCU HAS ESTABLISHED GOOD CAUSE. ........................................................... 4

III. THE PROPOSED AMENDMENTS WOULD READILY WITHSTAND A MOTION
    TO DISMISS. ............................................................................................................. 7

A. FCU's Fraud Claims Arise From BTE's and Treankler's Misrepresentations and
   Omissions of Present Facts to Induce FCU's Continued Performance. ............... 7

B. FCU's Claim for Trademark Cancellation is Properly Pleaded.......................... 9

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agerbrink v. Model Serv. LLC*,
    155 F. Supp. 3d 448 (S.D.N.Y. 2016) .................................................................................. 6

*Air Italy S.p.A. v. Aviation Techs., Inc.*,
    2010 WL 2925949 (E.D.N.Y. July 21, 2010) .................................................................. 8, 9

*Alexander Interactive, Inc. v. Adorama, Inc.*,
    2014 WL 113728 (S.D.N.Y. Jan. 13, 2014) ....................................................................... 6

*American Electric Power Co. v. Westinghouse Electric Corp.*,
    418 F. Supp. 435 (S.D.N.Y. 1976) .................................................................................. 4, 5

*Baez v. Delta Airlines, Inc.*,
    2013 WL 5272935 (S.D.N.Y. Sept. 18, 2013) ................................................................... 6

*Barrie House Coffee Co., Inc. v. Teampac, LLC*,
    2016 WL 3645199 (S.D.N.Y. June 30, 2016) .................................................................... 8

*Best Payphones, Inc. v. Dobrin*,
    410 F. Supp. 3d 457 (E.D.N.Y. 2019) ................................................................................ 5

*Cohen v. G & M Realty L.P.*,
    2015 WL 1182712 (E.D.N.Y. Mar. 13, 2015) .................................................................... 6

*Courageous Syndicate, Inc. v. People-to-People Sports Comm., Inc.*,
    141 A.D.2d 599 (2d Dep't 1988) ........................................................................................ 9

*Drapkin v. Mafco Consol. Grp., Inc.*,
    818 F. Supp. 2d 678 (S.D.N.Y. 2011) ................................................................................ 7

*Gucci Am., Inc. v. Guess?, Inc.*,
    868 F. Supp. 2d 207 (S.D.N.Y. 2012) ................................................................................ 9

*In re Pfizer Inc. Sec. Litig.*,
    2012 WL 983548 (S.D.N.Y. Mar. 22, 2012) ...................................................................... 4

*Knoll v. Equinox Fitness Clubs*,
    2007 WL 4526596 (S.D.N.Y. Dec. 20, 2007) .................................................................... 3

*Makhnevich v. Bougopoulos*,
    2022 WL 939409 (E.D.N.Y. Mar. 29, 2022) ...................................................................... 5

*Martal Cosms., Ltd. v. Int'l Beauty Exch. Inc.*,
    2010 WL 2179022 (E.D.N.Y. May 28, 2010) .................................................................. 10

*Ortiz v. Case*,
    2019 WL 1236413 (W.D.N.Y. Mar. 18, 2019) .................................................................. 6

*Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*,
    2022 WL 426199 (E.D.N.Y. Feb. 11, 2022) ................................................................... 4

*Quality Serv. Grp. v. LJMJR Corp.*,
    831 F. Supp. 2d 705 (S.D.N.Y. 2011) ..................................................................... 9, 10

*Regent Insurance Co. v. Storm King Contracting, Inc.*,
    2008 WL 563465 (S.D.N.Y. Feb. 27, 2008) (amending ............................................. 5

*Shaitelman v. Phoenix Mut. Life Ins. Co.*,
    517 F. Supp. 21 (S.D.N.Y. 1980) ................................................................................ 9

*Shervington v. Vill. of Piermont*,
    732 F. Supp. 2d 423 (S.D.N.Y. 2010) ......................................................................... 3

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*,
    2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016) ............................................................. 4

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................... 8
Fed. R. Civ. P. 15(b) .................................................................................................. 5

Plaintiff/Counterclaim Defendant Full Circle United, LLC ("FCU") submits this reply memorandum of law in support of its motion for leave to file a Third Amended Complaint ("TAC") against Bay Tek Entertainment, Inc. ("BTE") and Larry Treankler ("Treankler").[1]

## **PRELIMINARY STATEMENT**

This has been a hard-fought case on both sides. As the case has progressed, new claims have been discovered and others created by actions taken after the case was first filed. The TAC conforms the pleadings to the evidence that has been developed through discovery, as noted in FCU's initial motion for leave to file the TAC (ECF No. 85).

FCU also believes that, at this juncture, it is essential that the pleadings make clear the claims at issue. BTE's motion for summary judgment supports this belief. The motion tilts at windmills and misstates the claims the parties have litigated for the last two years. To be clear, as much as BTE has attempted to construe the TAC as opening new avenues in this action, FCU needs *zero* additional discovery. FCU should be granted leave to file the TAC for several reasons.

*First*, upon reflection and further review of the record, FCU clarifies that no additional discovery will be needed to litigate the new allegations in the TAC. As BTE concedes, the facts upon which the new claims contained within the TAC are premised have been gleaned through exhaustive discovery. Accordingly, FCU is not seeking any new discovery, and BTE will experience no unfair prejudice arising out of the TAC.

*Second*, FCU fully complied with this Court's December 6, 2022 Order (ECF No. 146; the "Order"). FCU originally sought to add a fraudulent inducement claim related to the NDA. Based on the Court's guidance and directives both at the November 29, 2022 status conference and in the

---

[1] Capitalized terms herein have the same meaning as in FCU's opening brief (ECF No. 148) ("Moving Br." or "Moving Brief").

1

Order, FCU added a claim for fraud relating to the License Agreement because such a claim is equally supported by the newly discovered facts. FCU's new claims are cogent, well-pled, and in no way an attempt to purportedly circumvent this Court's Order.

*Third*, FCU has established good cause for its request for leave to file the TAC. In November 2021, FCU filed its initial motion for leave to amend, attaching a proposed TAC containing most of the allegations in the presently-proposed TAC. These facts could not have been pled before then, as the key documents that revealed these facts were only disclosed in October 2021, after multiple rounds of disputes before this Court and the Special Master. BTE argues that these facts have been known to the parties for months, yet that they are untimely and prejudicial. Simply put, BTE cannot have its cake and eat it too. These facts were largely incorporated in FCU's initially-proposed TAC over a year ago, and serve as the basis for the claims asserted in the TAC. They are not untimely, nor is their inclusion prejudicial to BTE.

*Fourth*, each of the proposed new claims contained in the TAC would readily withstand a motion to dismiss. The fraud cause of action—that BTE induced FCU to continue its performance under the License Agreement by misrepresenting and omitting *present* facts—is separate from and in addition to FCU's claim for BTE's breach of the License Agreement. Moreover, FCU not only has standing to pursue its claim for cancellation of the Mark but has sufficiently pled that BTE knowingly made false statements to fraudulently obtain the Mark's registration.

Accordingly, as shown below, the Court should grant FCU leave to file the TAC.

## ARGUMENT

### I. FCU COMPLIED WITH THE COURT'S ORDER.

BTE's insistence that FCU failed to comply with the Court's Order is incorrect at best and misleading at worst. That the facts supporting FCU's previous claim for fraud relating to the NDA may also support its proposed claim for fraud relating to the License Agreement does not render

FCU's cause of action for fraud deficient or deceptive. Rather, FCU heeded the Court's guidance in its Order that a cause of action for fraud based on the NDA will not lie in this jurisdiction, and has now pled that BTE's fraudulent misstatements and omissions give rise to a cause of action for fraud relating to the License Agreement. That is appropriate because they do.

As set forth in the TAC, BTE misrepresented and/or omitted its intent to operate Live Play itself, that it was actively seeking opportunities to operate Live Play with third parties and marketing the concept with information disclosed to it by FCU, that it intended to terminate FCU's license, that BTE concealed that it actively involved its exclusive licensing agent, Dimensional Branding Group, in issues relating to FCU's license in contravention of the terms of FCU's settlement with BTE's predecessor, that BTE was relying upon FCU's use of the Skee-Ball Live lanes as a use in commerce to register the Mark despite representing that FCU did not have rights to the Skee-Ball Live lanes or to use the Mark, and that BTE did not intend to invest in FCU even if it proved its model for Skee-Ball Live. These facts more than amply plead a cause of action for fraud relating to the License Agreement, regardless of the fact that they may also support a claim for fraud based on the NDA. Notwithstanding BTE's attempt to focus on any references to the NDA in the TAC, the cause of action contained therein is clearly for fraud relating to the *License Agreement*.

Accordingly, FCU fully complied with the Court's order and asserts a cause of action in the TAC for fraud relating to the License Agreement only.[2]

---

[2] BTE maintains that the Court should deny FCU's motion for leave to file the TAC because its filing was untimely. (ECF No. 155; "Opp.," at 5). FCU's delay of 22 minutes, caused by technical difficulties with ECF, is in no way like the delays involved in BTE's cited authority, and should not result in a denial of its motion to amend. *See Shervington v. Vill. of Piermont*, 732 F. Supp. 2d 423, 425 (S.D.N.Y. 2010) (concluding failure to "diligently check the Court's docket does not constitute excusable neglect"); *Knoll v. Equinox Fitness Clubs*, 2007 WL 4526596, at *1 (S.D.N.Y. Dec. 20, 2007) (finding a delay of *days* untimely).

## II. FCU HAS ESTABLISHED GOOD CAUSE.

The TAC alleges only two new causes of action based on facts that the parties have been aware of and have both zealously litigated for over two years. As set forth in the moving brief, FCU exercised diligence in obtaining the facts underlying its proposed amendments, timely serving document demands over two years ago and repeatedly seeking to hold BTE to its discovery obligations through motion practice and with the assistance of the Special Master. Upon learning the new facts set forth in the TAC, FCU filed its initial motion for leave to amend over a year ago. Those same facts are the foundation for the currently-proposed TAC. Moreover, BTE has plainly been on notice of the facts giving rise to FCU's trademark cancellation claim because its applications to the USPTO have been the subject of discovery disputes before the Special Master.

Permitting FCU to add these claims is particularly appropriate because the facts necessary to support the claims arise out of the same transactions and occurrences that are already the subject matter of the action and discovery need not be reopened. Accordingly, BTE will suffer no prejudice. *See Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, 2022 WL 426199, at *6 (E.D.N.Y. Feb. 11, 2022) ("[T]he new allegations clearly generate from a common factual nucleus as those already pleaded. . . . Further, by premising its amended allegations on evidence obtained in discovery, there is no need to re-open discovery – diminishing any alleged prejudice to [defendant]."); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016) (permitting an amended complaint whose proposed allegations were "based on evidence" obtained in discovery, even though the deadline to amend pleadings had passed); *In re Pfizer Inc. Sec. Litig.*, 2012 WL 983548, at *2 (S.D.N.Y. Mar. 22, 2012) ("Courts routinely grant leave to amend when a plaintiff seeks to refine the complaint to reflect evidence obtained during discovery."); *American Electric Power Co. v. Westinghouse Electric Corp.*, 418 F. Supp. 435, 443 (S.D.N.Y. 1976) ("[T]here is little prejudice to the defendant since the factual

showing necessary to support [plaintiff's] claims of fraud will arise out of the same transactions and occurrences which are already the subject matter of this lawsuit.").

Any new allegations beyond those two claims were necessitated by BTE's motion for summary judgment (ECF No. 150), which attempts to obfuscate the issues that the parties have been litigating for years. FCU accordingly seeks to conform the pleadings to the evidence developed through discovery to focus on the issues as to which the parties have been litigating. That is entirely proper. Though this action is not yet at the trial stage, courts within the Second Circuit "have applied Rule 15(b) to conform pleadings to the proof offered at summary judgment." *Makhnevich v. Bougopoulos*, 2022 WL 939409, at *9 (E.D.N.Y. Mar. 29, 2022); *Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 511–12 (E.D.N.Y. 2019) ("Rule 15(b) of the Federal Rules allows amendment of pleadings to conform to the evidence so long as amendment would promote adjudication of the merits and would not prejudice the opposing party."); *Regent Insurance Co. v. Storm King Contracting, Inc.*, 2008 WL 563465, at *13-14 (S.D.N.Y. Feb. 27, 2008) (amending plaintiff's claims at summary judgment to conform pleadings to additional evidence revealed through discovery).

BTE's own concessions belie its assertion that FCU exercised delay rather than diligence, that any purported delay is inexcusable, and that BTE would be prejudiced by the causes of action and factual assertions in the TAC. BTE capitulates that: (i) "FCU's 'new' theory underlying its fraud claim is the same . . . theory it has espoused since it filed the Complaint"; (ii) "[t]he Proposed TAC includes essentially no new facts that FCU has not known for months if not years"; and (iii) "FCU's new proposed cancellation claim is based on publicly available USPTO filings that predate this litigation." (Opp. at 6) (emphasis omitted). These statements, in fact, support the filing of the TAC.

5

FCU initially brought its motion for leave to file the TAC in November 2021, shortly after it learned of the new facts alleged. After further discovery, including depositions that were not completed until July 2022, review of BTE's motion for summary judgment, and the Court's denial of FCU's first motion to amend with leave to refile, FCU promptly filed this motion to adhere to the Court's directive as to its fraud claim and to conform the pleadings to the evidence obtained through this summer. In fact, the Court allowed FCU to file this motion up to and including December 20, 2022. That FCU potentially could have supplemented its prior motion to amend does not render it lacking in good cause, particularly where, as here, BTE will not be prejudiced because there is no need for additional discovery. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452–53 (S.D.N.Y. 2016) ("Simply alleging that the plaintiff could have moved to amend earlier than she did, however, is insufficient to demonstrate undue delay. . . . The court may deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, <u>and</u> the amendment would prejudice other parties.") (emphasis in original); *Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 WL 113728, at *3 (S.D.N.Y. Jan. 13, 2014) ("[W]here the proposed amendment arises from the same set of operative facts as the original claims, or from events closely related to those originally pleaded, the mere fact that discovery has concluded does not provide a reason for denying leave to amend.").[3] Indeed, BTE recently supplemented its motion for judgment on the pleadings, which the Court converted into a motion

---

[3] BTE's cited authorities are inapposite because they either concern circumstances where voluminous additional discovery would be required, or the parties had not litigated the underlying issues. *See, e.g.*, *Ortiz v. Case*, 2019 WL 1236413, at *10 (W.D.N.Y. Mar. 18, 2019), *aff'd*, 782 F. App'x 65 (2d Cir. 2019) (defendants faced "potential of extensive discovery related to futile claims"); *Cohen v. G & M Realty L.P.*, 2015 WL 1182712, at *4 (E.D.N.Y. Mar. 13, 2015) (denying motion to amend where plaintiffs sought to add nine additional plaintiffs at late stage of litigation); *Baez v. Delta Airlines, Inc.*, 2013 WL 5272935, at *4 (S.D.N.Y. Sept. 18, 2013) ("Plaintiff is in fact trying to introduce, at the eleventh hour, an entirely new theory.").

for summary judgment, by adding arguments to support summary judgment on its counterclaims. Having liberally taken advantage of an opportunity to supplement its motion, BTE cannot now complain about FCU amending the pleadings to fit the evidence. As these new claims are based solely on information that the parties have known and litigated for months, if not years, as BTE concedes, and FCU is no longer seeking additional discovery, FCU has accordingly established good cause and BTE has failed to demonstrate any way in which it would be prejudiced by this amended pleading.

### III. THE PROPOSED AMENDMENTS WOULD READILY WITHSTAND A MOTION TO DISMISS.[4]

#### A. FCU's Fraud Claims Arise From BTE's and Treankler's Misrepresentations and Omissions of Present Facts to Induce FCU's Continued Performance.

Notwithstanding BTE's assertion that FCU's cause of action for fraud relating to the License Agreement has three distinct theories, the proposed claim is straightforward: BTE and Treankler misrepresented and omitted material facts to induce FCU's continued performance under the License Agreement, which it could have availed itself of its rights under at any time,

---

[4] BTE attempts to argue that "FCU belatedly attempts to plead breach of contract arising from BTE's alleged failure to undertake the License Agreement's 'notice and cure' procedure," and that such "claim" fails. (Opp. at 17). BTE falsely claims it notified FCU of its breaches by letter "[w]hen BTE filed its Counterclaims." Nevertheless, the letter BTE points to was sent to FCU on September 23, 2020 (ECF No. 156 at Ex. 4), *after* BTE filed its Counterclaims (ECF. No. 25). In the letter, BTE directs FCU to the Counterclaims, which it incorporates by reference, to learn of the purportedly breaching conduct. Moreover, FCU learned of new bases for BTE's breach claims for the first time in BTE's memorandum in support of its motion for summary judgment. This falls desperately short of complying with the requirements under the License Agreement, which obligate BTE to notify FCU of perceived material breaches *and* provide FCU an opportunity to cure them prior to taking legal action. *See* License Agreement at ¶ 11.6. Finally, BTE's argument as to futility fails because, as BTE's authority concedes, "[f]utility is found only in limited circumstances, which include where the non-performing party (1) expressly repudiated the parties' contract or (2) abandons performance thereunder," neither of which occurred here. *See Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 689 (S.D.N.Y. 2011).

including by providing BTE with notice of its material breach and an opportunity to cure pursuant to Section 11.6.[5]

Specifically, BTE and Treankler fraudulently misrepresented and concealed their intent to garner as much sensitive information regarding FCU's business model and innovations as possible, their intent to co-opt that information for BTE's benefit while simultaneously effectively terminating FCU's license, and their intent to perform under the License Agreement. (TAC, ECF No. 148, at ¶¶ 239-49).

Such misrepresentations and omissions are collateral to and therefore not duplicative of BTE's breach of the License Agreement. BTE does not, because it cannot, cite to a single authority for the proposition that fraudulent inducement applies only to misrepresentations and omissions to induce a party to *enter into* an agreement. While fraudulent inducement is often discussed in the context of contract formation, a party's material misrepresentations and omissions made to induce continued performance may form the basis for a cause of action for fraud separate and distinct from one for breach of that same contract. *See Barrie House Coffee Co., Inc. v. Teampac, LLC*, 2016 WL 3645199, at * 7 (S.D.N.Y. June 30, 2016) ("[A] fraud claim may arise when a defendant makes misrepresentations to induce a plaintiff's continuing performance. . . . [A] relatively concrete representation as to future performance, if made at a time when the speaker knows that the represented level of performance cannot be achieved, may ground a claim of fraud."); *Air Italy S.p.A. v. Aviation Techs., Inc.*, 2010 WL 2925949, at *6 (E.D.N.Y. July 21, 2010) (declining to dismiss fraud cause of action, made in addition to breach of contract claim, where "the complaint

---

[5] BTE further argues in passing that FCU's claim for fraud fails to meet FRCP 9(b)'s heightened standard. That is wrong, as FCU's allegations, taken as a whole, place both BTE and Treankler on notice of the misrepresentations and omissions alleged, which have been voraciously litigated throughout discovery.

makes adequate allegations that the misrepresentations were material, in that they were relevant to [plaintiff's] decision to continue performance under the [] contracts"); *Shaitelman v. Phoenix Mut. Life Ins. Co.*, 517 F. Supp. 21, 22 (S.D.N.Y. 1980) ("New York Courts have long held that an action for fraudulent misrepresentation, independently pleaded, can constitute a cause of action which may be pleaded in addition to, or as an alternative to, an action for breach of contract. . . . [A] tort action may accompany a breach of contract suit where the contract creates a relationship out of which springs a duty independent of the contractual obligation and that independent duty is also violated. Here, the defendant allegedly breached a duty independent of the contract by making affirmative misrepresentations to induce plaintiffs' continuing performance and reliance."). BTE's cited authority, for the unremarkable proposition that a fraud claim does not lie where it would merely duplicate a claim for breach of contract, fails to refute this fact. (Opp. at 10-11).[6]

For these reasons, the fraud claim relating to the License Agreement would withstand a motion to dismiss and is therefore not futile.

### B. FCU's Claim for Trademark Cancellation is Properly Pleaded.

BTE's standing argument fails because, as a matter of law, "[a] party has standing to seek cancellation where it has a real commercial interest in the cancellation—that is, reason to believe it will be harmed absent relief." *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012); *Quality Serv. Grp. v. LJMJR Corp.*, 831 F. Supp. 2d 705, 712 (S.D.N.Y. 2011) ("To demonstrate a 'real interest,' the party must have a direct and personal stake in the outcome

---

[6] BTE's arguments against adding Treankler, its CEO and mouthpiece, as a defendant, are equally unavailing. As BTE's own authority concedes, "a corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith ***and did not commit independent torts or predatory acts directed at another***." *Courageous Syndicate, Inc. v. People-to-People Sports Comm., Inc.*, 141 A.D.2d 599, 600 (2d Dep't 1988) (emphasis added). The TAC alleges that Treankler did, in fact, commit independent torts. Namely, that he fraudulently induced FCU's performance under the License Agreement.

of the cancellation."). FCU has a commercial interest in the cancellation because FCU used "Skee-Ball Live" in commerce, believing it had the right to do so as a "Live Play Phrase," as defined under the License Agreement, and because BTE is suing FCU for trademark infringement, among other things, based on FCU's uses of the Mark, and preventing FCU from using the Mark based on that registration.

Moreover, it is improper for BTE to maintain, in conclusory fashion, that its representations to the USPTO were immaterial to the USPTO's decision to grant the Mark's registration, as that is for the jury to decide. See *Martal Cosms., Ltd. v. Int'l Beauty Exch. Inc.*, 2010 WL 2179022, at *3 (E.D.N.Y. May 28, 2010) ("The existence of 'clear and convincing evidence' of fraud in plaintiff's [] Registration . . . is a question of fact to be determined at trial."). Accordingly, FCU's assertion that BTE knowingly made statements to the USPTO that FCU maintains are false is sufficient to withstand a motion to dismiss, and FCU's proposed fifth cause of action is therefore not futile.

## **CONCLUSION**

For the foregoing reasons, and those stated in its Moving Brief, Plaintiff FCU respectfully requests that this Court grant it leave to file the proposed Third Amended Complaint.

Dated: January 10, 2023

                              Respectfully submitted,

                              /s/ *L. Reid Skibell*
                              L. Reid Skibell, Esq.
                              Megan M. Reilly, Esq.
                              GLENN AGRE BERGMAN & FUENTES LLP
                              1185 Avenue of the Americas, 22nd Floor
                              New York, New York 10036
                              Telephone: (212) 358-5600
                              rskibell@glennagre.com
                              mreilly@glennagre.com

                              Paul Thanasides, Esq.
                              Christina Casadonte-Apostolou
                              MCINTYRE THANASIDES BRINGGOLD
                              ELLIOTT GRIMALDI GUITO & MATTHEWS,
                              P.A.
                              500 E. Kennedy Blvd., Suite 200
                              Tampa, FL 33602
                              Tel. (813) 223-0000
                              paul@mcintyrefirm.com
                              christina@mcintyrefirm.com

                              *Counsel for Plaintiff/Counterclaim Defendant FCU United, LLC*