```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - X
 3
                                    : 20CV3395 (BMC)
 4   FULL CIRCLE UNITED LLC,        :
                                    :
 5            Plaintiff,            :
                                    : United States Courthouse
 6                                  : Brooklyn, New York
         -against-                  :
 7                                  :
                                    : November 29, 2022
 8   BAY TEK ENTERTAINMENT, INC.,   : 10:00 a.m.
                                    :
 9            Defendant.            :
                                    :
10   - - - - - - - - - - - - - - - X
11
         TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
12             BEFORE THE HONORABLE BRIAN M. COGAN
                 UNITED STATES DISTRICT JUDGE
13
14                    A P P E A R A N C E S:

15   For the Plaintiff:    MC INTYRE THANASIDES
                           500 E Kennedy Boulevard, Suite 200
16                         Tampa, Florida  33602
                           BY: PAUL THANASIDES, ESQ.
17                         CHRISTINA CASADONTE-APOSTOLOU, ESQ.

18   For the Defendant:    MITCHELL SILBERBERG & KNUPP LLP
                           12 East 49th Street, 30th Floor
19                         New York, New York 10017
                           BY: CHRISTINE LEPERA, ESQ.
20                         JEFFREY MARK MOVIT, ESQ.
                           ELAINE NGUYEN, ESQ.
21                         MARK HUMPHREY, ESQ.

22
     Court Reporter:   SOPHIE NOLAN
23                     225 Cadman Plaza East/Brooklyn, NY 11201
                       NolanEDNY@aol.com
24   Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Aided Transcription
25
```

1    (In open court.)

2    (The Hon. Brian M. Cogan, presiding.)

3    THE COURTROOM DEPUTY:  Case number 20-CV-3395, *Full*

4 *Circle United LLC Versus Bay Tek Entertainment, Inc.*

5    Would the attorneys please state their name for the

6 record.

7    THE COURT:  I only want appearances from attorneys

8 who are likely to talk and if I feel like I'm being ganged up

9 on, I will take the first attorney to appear and say you're

10 the person.  Plaintiff.

11    MR. THANASIDES:  Paul Thanasides for plaintiff, Full

12 Circle United and counter-defendant, Full Circle United and

13 Eric Pavony.

14    THE COURT:  Let's not use the term

15 counter-defendant.  Let's talk about the plaintiff and the

16 defendant with the understanding that the defendant has

17 counterclaims.

18    MR. THANASIDES:  I represent the plaintiff and with

19 me is Christina Casadonte, who will also be speaking.

20    THE COURT:  Good morning.  Don't you have another

21 last name?

22    MS. CASADONTE:  Ms. Casadonte for today.

23    THE COURT:  For defendant?

24    MS. LEPERA:  Good morning, Your Honor.  Christine

25 Lepera, Mitchell Silberberg & Knupp for Bay Tek Entertainment.

1  With me is my partner, Jeff Movit, who will be speaking as

2  well.

3          THE COURT:  That is assuming anyone is going to be

4  speaking.

5          MS. LEPERA:  Thank you, Your Honor.

6          THE COURT:  First of all, the case is out of

7  control, okay?  Both sides have let discovery run away.  I had

8  a feeling it was going to happen when I appointed the special

9  master, but I didn't know it was going to happen to this

10  extent.

11          One of you and possibly both of you are headed for a

12  five-to-six-figure attorney sanction.  When I have this many

13  discovery disputes, and I've had it rarely, but in every case

14  I've had it, I have imposed a substantial on attorneys for

15  only seeing their perspective, but not thinking about what is

16  the judge likely to do with this and then taking that

17  position.  No one did that with everything, but everyone did

18  that with some things.

19          Now, let me go through with you the list of motions

20  and where I am coming out on them.  I am going to have some

21  questions on some of these motions for you.  First, as to Bay

22  Tek's motion for judgment on the pleadings, that's docket

23  number 33, I'm converting that to a motion for summary

24  judgment and I will set a new briefing schedule to the extent

25  there is anything left to say about anything.  I'm not going

1  to make anyone -- I'm not going to allow anyone to file papers

2  that are substantially the same as papers that have already

3  been filed.

4        Next, Bay Tek's motion to strike Full Circle's

5  notice of supplemental authority in opposition to the motion

6  for judgment on the pleadings. Now, in light of ruling I just

7  made on the motion for judgment on the pleadings, this is

8  moot.  It's denied as moot, but I need to understand; first,

9  why did Full Circle call a Notice of Supplemental Authority

10  when, in fact, it was the submission of an additional

11  affidavit?

12        Do you consider your affidavits to be authoritative?

13  Why was it called that?  It just screws up the docket sheet

14  and it makes me wonder what's going on.  I would like to know

15  from Full Circle why is that the name you give it.

16        MR. THANASIDES:  We were advised by local counsel to

17  call it that.

18        THE COURT:  So you're going to pass the buck to

19  local counsel.  Is local counsel on the phone?

20        MR. THANASIDES:  Ms. Reilly is on the call, but Reid

21  Skibell is lead counsel for local and he's sick today.  I

22  don't mean to throw a sick guy under the bus.

23        THE COURT:  Mr. Thanasides, you need to make sure

24  that your local counsel does a better job.  This is not a

25  Notice of Supplemental Authority.  That's when a new case

1   comes down when a motion is pending.  Everybody knows that.

2   It's not a question of New York local practice.  It's national

3   practice.  Supplemental authority means a court has decided

4   something since the motion was filed that supports the party's

5   position and they're giving the Court notice that there's more

6   authority.

7           Second, I want to ask Bay Tek where in the federal

8   rules do you have right to file a motion to strike?  Which

9   rule is that?

10          MS. LEPERA:  I believe, Jeff, you're going to answer

11   that question?

12          MR. MOVIT:  Yes, Your Honor.  In past practice, Your

13   Honor --

14          THE COURT:  Let's stick to the federal rules and not

15   past practice.  The only reference to the federal rules as to

16   a motion to strike is in Rule 12(f) and that's not what you're

17   doing.  It shouldn't have been called a motion to strike.  It

18   shouldn't have been called anything.  You should have sent me

19   a letter saying this is improper, he can't go outside the

20   pleadings.  Why not do that?  Why file everything as a motion,

21   especially a motion that has no basis.  In any event, it's

22   denied as moot, but I am again telling everyone, you have to

23   be more precise and more careful.  So, 72 is denied as moot.

24   128 is also moot in light of my ruling as to 33, converting it

25   to a motion for summary judgment and, like I said, I will set

1   a schedule for such additional papers as may be necessary.

2           Now, on Full Circle's motion for leave to file a

3   third amended complaint, I understand that despite the forum

4   selection clause, Full Circle did this because it, quote,

5   hoped Bay Tek would agree to waive the venue selection cause

6   for efficiency purposes and to avoid unnecessary delay, close

7   quote.  Did Full Circle call anybody at Bay Tek before filing

8   this motion to find out if they had waived the foreign

9   selection clause?

10          MR. THANASIDES:  I don't believe we did.

11          THE COURT:  Why not?

12          MR. THANASIDES:  I believe we did.  I'm sorry.

13          THE COURT:  Because if you had they would have said

14  no and then you would have said, okay, what are we going to do

15  now.

16          MR. THANASIDES:  Just to be clear, Your Honor, the

17  forum selection clause only applies to one of the new causes

18  of action in the proposed amended complaint.

19          THE COURT:  So, it only applies to the breach of

20  contract claim and not the fraud claim?

21          MR. THANASIDES:  That's right, Your Honor.  It only

22  applies to the one breach of contract claim which is for the

23  breach of the non-disclosure agreement.  The other new claims

24  are not governed by that.  They're not seeking to enforce

25  or -- for breach of the non-disclosure agreement.

1    THE COURT:  Okay, but in any event, your motion has

2  now been narrowed based on what you told me and you

3  acknowledge that Bay Tek is not consenting to waive.  You're

4  only seeking to get the fraud claim; correct?

5    MR. THANASIDES:  And to otherwise amend.  There are

6  other amendments we've made to the complaint.

7    THE COURT:  Let me tell you a little bit about those

8  amendments.  If all you are doing is weighing down the

9  pleading with evidence and you've already stated a claim, I

10  will not let you do that.  The pleading, if the case stays in

11  front of me, will not go to a jury.  So it doesn't matter what

12  it says as long as it says a plausible claim.  I'm not going

13  to let you load up a new complaint with things that it doesn't

14  need.  It's like you've got a bottomless pit of litigation

15  money to do things like this that don't matter.  Do you really

16  think that your amended complaint outside of the breach of

17  contract claim that you now recognize cannot be brought here,

18  do you really think you add substantively to the allegations

19  that are already in there to the point of making the

20  difference between failing to state a plausible claim and

21  stating a plausible claim?

22    MR. THANASIDES:  Your Honor, I believe we've altered

23  some of the allegations to conform to the evidence that we

24  acquired through discovery.  I believe it's more accurate and

25  more aligned with the evidence than the prior version of the

1  complaint.

2        THE COURT:  Okay.  In any event, right now, because

3  the breach of contract claims are still in it and you

4  recognize you can't bring those here, that's moot, right.  The

5  whole motion is moot.  I know you will want to file a

6  different motion to amend to have a third amended complaint,

7  but it's not this motion, or is it?

8        MR. THANASIDES:  Your Honor, you can give us leave

9  to amend to usurp the claims other than the breach claim.  We

10  would feel, of course, that that would be the efficient way to

11  resolve the issue.

12        THE COURT:  What if I do this:  What if I grant your

13  motion and transfer the case to Wisconsin?

14        MR. THANASIDES:  The entire case?

15        THE COURT:  The entire case.  You just told me you

16  want to be efficient.  You want one case pending in the

17  Eastern District of Wisconsin and one here when it's all about

18  the broken relationship between the parties?  What is

19  efficient about that?

20        MR. THANASIDES:  Well, the problem, Your Honor, is

21  that the breach claims that are brought on the license

22  agreement and settlement agreement are -- they're exclusive

23  venue in this court.  So we have two separate agreements,

24  right?  We have the nondisclosure agreement and the license

25  agreement.  We have exclusive jurisdiction in the Eastern

1   District of New York for the license agreement and Wisconsin

2   for the nondisclosure agreement.

3            THE COURT:  But I know you're willing to waive the

4   forum selection clause here because you're interested in

5   efficiency as you told me in your motion and I know that Bay

6   Tek would also consent to waive it because they would rather

7   be in their home forum.  So now what do you have to say?

8            MR. THANASIDES:  Our interest in efficiency does not

9   outweigh our interest in the right to the forum selection

10  clause.

11           THE COURT:  So you are demanding here rigid

12  adherence to the forum selection clause even though you filed

13  a motion stating a claim that was not within the forum

14  selection clause and you're claiming that you want to be

15  efficient by having two actions pending between these parties

16  instead of one; is that right?

17           MR. THANASIDES:  I would hope that given the fact

18  that we've been in this case for almost two years now, I

19  guess, that the efficient resolution would be for Bay Tek to

20  agree to have the nondisclosure agreement litigated here, but

21  if they don't want to do that, then it's their prerogative and

22  that's -- then we'll have to file that claim in Wisconsin.

23           THE COURT:  All I am telling you is don't tell me

24  about your desire for efficiency in the future because it's

25  not correct, okay?  Don't tell me that.  I'm not going to find

1   it credible.

2        MR. THANASIDES:  All right.

3        THE COURT:  I am going to reserve on this.  I'm

4   going to consider the motion without the fraud and breach

5   claims and if I find that the changes that you're proposing in

6   the other claims are unnecessary -- let's just hope I don't

7   find it.

8        MR. THANASIDES:  Would it be all right if I ask Ms.

9   Casadonte her opinion of that issue to make sure that I'm not

10  I'm misspeaking on that argument?

11       THE COURT:  I will let you confer afterwards and if

12  you wants to take a position other than the one you have now,

13  you can let me know promptly.

14       MR. THANASIDES:  Okay, thank you.

15       THE COURT:  That is reserved.  That's ECF number 85.

16  The motion for leave to file a sur reply in further opposition

17  to the motion for leave to file a third amended complaint, I'm

18  granting that.  I'm going to take into account the sur reply

19  in determining what to do with the new fraud and new

20  allegations in the proposed third amended complaint.  Next,

21  ECF number 107, the motion to seek relief from paragraph eight

22  for the purpose of filing yet another action in the Eastern

23  District of Wisconsin.

24       Let me ask Bay Tek, what are you afraid of having

25  disclosed in that action on the face of the complaint?  What

1    do you think they'll say that's confidential?

2         MR. MOVIT:  On the face of the complaint, Your

3    Honor, we had no objection and we said that in our response;

4    that the complaint itself, Your Honor -- we viewed it as the

5    confidentiality order as posing zero obstacle to Full Circle

6    asserting these claims; that Full Circle filed these very

7    claims publicly in Your Honor's court.  So we saw no reason

8    why they couldn't publicly file the very same pleading in

9    Wisconsin court.  So we didn't understand what they were

10   seeking, frankly.  To the extent that they wanted to lift the

11   confidentiality order for discovery in a hypothetical case

12   that had not been filed, we viewed that as premature, but we

13   made it clear that we have zero opposition to their filing --

14   we may have oppositions that it's duplicative litigation

15   obviously, but we have no opposition under the confidentiality

16   order to them filing this breach of the NDA claim in

17   Wisconsin.  It's already a public claim.  It's on the public

18   docket of this court.

19        MR. THANASIDES:  Can I explain, Your Honor?

20        THE COURT:  Please.

21        MR. THANASIDES:  So, the confidentiality order

22   allows us to use the documents in this case.  So filing the

23   complaint in this case would not be a violation of the

24   confidentiality order.  But it does not allow us to file -- to

25   use those documents in another case.  So, by filing in

1  Wisconsin that would be another case and would violate the

2  confidentiality order.  And now I understand Mr. Movit talked

3  about this extensively.  He doesn't have an objection to it,

4  but it -- he was consenting to give us relief from the order

5  which is what we needed in order to file the Wisconsin claim.

6  We just didn't want to be in a situation where Your Honor

7  thought that we violated Your Honor's ruling.

8          THE COURT:  How about sending me a letter and asking

9  instead of generating all of these papers?  And, look, as it

10  stands right now, you don't know or at least you haven't told

11  me what information it is that you want to use in the

12  Wisconsin action.  As long as you can get your complaint

13  filed, it doesn't really matter.  At some point you may come

14  back to me and say here is what we want to disclose and here

15  is what we want to be public and then I will have something

16  concrete to decide.  I may also decide that the best person to

17  adjudicate this is the unfortunate judge in the Eastern

18  District of Wisconsin that gets your new case, okay?  And I

19  guarantee you if a judge from the Eastern District says, I

20  don't think they should be allowed to do that, it's highly

21  likely that I will go along with that, but I guarantee you I

22  will talk to the judge out there before I make any decision on

23  this.  So, I'm denying this motion as premature without

24  prejudice to renewing when it hits the real world instead of

25  the theoretical world.

1          Next, the special master's orders.  First, order

2     number one, docket number 73.  The objection is overruled as

3     to getting discovery regarding Bay Tek's ownership of the

4     mark.  Full Circle agreed not to challenge the validity of the

5     mark.  That's it.  I don't see any reason they should be let

6     out of that stipulation.  I also overrule the objection as to

7     the starting state for discovery.  July 17th of 2014, that's

8     the date of the licensing agreement.  That is the logical

9     starting point.  I should not have had to decide those two

10    issues.  I really shouldn't have had to.

11         Now, as to discovery regarding Bay Tek's marketing

12    of Beer Ball.  And just for the Court Reporter it is Beer

13    Ball, initial caps.  The only thing I'm going to allow

14    discovery on is Bay Tek needs to produce any published

15    advertisements for the beer ball that refer in the text to

16    alcohol, the text or the dialogue, or that show a picture of

17    alcohol like an easily recognizable beer bottle.  Frankly, I

18    would think that Full Circle through whatever avenues it has

19    already has this information, but I'm not going to allow

20    rummaging through the file to see what Bay Tek's

21    considerations were in deciding to run an ad or not.  Either

22    the brand is tarnished because they ran the ad, or may be

23    tarnished, or they decided not to run the ad.  So the

24    objection is sustained as to that in that limited capacity.

25         The objection to the special master's order number

1    14.  That is docket number 118.  I think the special master

2    should have considered that under her own order Full Circle

3    had any rights -- any rights Full Circle had to these

4    communications had to be raised sooner than they were.

5    Waiting two months to demand this discovery after it was

6    disclosed in the deposition, that to me is not consistent with

7    the Special Master's order.  So I'm going to sustain that

8    objection.  I will say when it comes time, and I think it will

9    come time, for me to consider what the sanctions are against

10   each side, I am not pleased with the fact that Bay Tek's

11   attorneys did not realize there was Slack data out there.

12   Maybe they heard it for the first time at the deposition but

13   it should have been produced.  How could you not produce it?

14   It's standard ESI.  But Full Circle waited too long.  We have

15   to go by the orders and the special masters order controls.

16   So the objection to order number 14 is sustained.

17           MR. MOVIT:  Your Honor, would Your Honor like to

18   hear at this junction about the Slack issue or at a later

19   time?

20           THE COURT:  I will hear it now, just be concise.

21           MR. MOVIT:  Very concisely, Your Honor, in this day

22   and age, as Your Honor is aware, there are vast troves of

23   potential sources of ESI.  The parties are sophisticated.

24   Both sides use Slack-like messaging devices.  It was not used

25   extensively by my client.  The other side says it was not used

1  extensively by them as well.  I would respectfully submit that

2  it was not a dereliction.  It was just not a source that

3  either side thought was one that they chose to search when

4  protocols were developed and the protocols specified the

5  repositories that would be searched.

6            THE COURT:  You didn't turn over Slack information,

7  right?

8            MR. MOVIT:  Nor did the other side turn over their

9  Slack-like system.  They have a similar system.  The parties

10  decided in July of 2021 what receptacles would be searched and

11  per the Special Master's order number one in July of 2021.  So

12  we respectfully submit this was not a dereliction.  It was

13  merely not a receptacle of ESI that the parties chose to

14  search.

15            THE COURT:  Okay.  That confirms my ruling.  It

16  doesn't upset it.  I appreciate you telling me that it didn't

17  look as bad as it did to me when I first said how could

18  anybody not produce Slack messages.

19            MR. THANASIDES:  Just for the record, Your Honor, we

20  never reached an agreement as to the protocols.  That's why we

21  had to go to the Special Master with respect to the all the

22  search terms and all the parameters of the search term process

23  when Mr. Movit says we reached an agreement not to search

24  those repositories, we never actually reached an agreement.

25  Otherwise, you wouldn't see 14 orders from the special master.

1   Thank you.

2           THE COURT:  That is fine, but let me ask you this:

3   Did you turn over Slack information the equivalent of what you

4   had.

5           MR. THANASIDES:  We turned over our text message

6   information which is what was responsive.  We didn't have any

7   responsive Slack information.

8           THE COURT:  Slack-type.  I know you don't use

9   exactly the Slack system but you know what I'm talking about;

10  right?

11          MR. THANASIDES:  Can I defer that to Christina,

12  please?

13          MS. CASADONTE:  Yes, Your Honor.  We termed over any

14  information on halt relate platforms.

15          THE COURT:  That is not a real answer.

16          MS. CASADONTE:  There was no relevant information on

17  any similar platform Slack or otherwise that was responsive

18  that needed to be produced or that was produced.

19          MR. THANASIDES:  None of it hit on the search terms

20  is what she's trying to say.  None of it hit on the search

21  terms.  We were given search terms by Bay Tek.  We ran the

22  search terms on all the platforms, chat messages and text

23  messages.  None of them hit on the chat message, but they did

24  on the text messages.  So we produced on the text messages.

25          THE COURT:  Whether we call it chat or Slack or

1  text, the fact is that Full Circle is certifying to me now

2  that all responsive and relevant information has been turned

3  over; is that right?

4          MR. THANASIDES:  Yes.  And the text messages just

5  recently.  But to be clear, yes.

6          MR. MOVIT:  Your Honor, as Mr. Thanasides just said,

7  they produced text messages for the first time six days ago

8  and that underscores our point that they were simply not

9  receptacles of ESI that the parties had agreed to search back

10 in July '21, when they started this process.  Everyone is

11 aware that people use text messages in this day and age.  Both

12 sides knew it.  This was brought up the first time

13 approximately a year later to the special master by Full

14 Circle.  So this just -- we wanted to make clear that there

15 was no dereliction on our part in terms of locating potential

16 receptacles.  It's just not the one the parties had search

17 terms for for searching.

18         THE COURT:  This is a good example of the things I

19 have to get to the bottom of.  I know you disagree,

20 Mr. Thanasides.  I have to get to the bottom of this when I

21 decide who to sanction.  I don't have to do it now.  I'm

22 sustaining the objection to the Special Master's order number

23 14.  Now, parties' letters for extension of time to complete

24 discovery.  That's ECF 122 and 123.  In light of my preceding

25 ruling as to the Special Master's order number 14, that is

1   denied.  I will extend discovery for the parties to comply

2   with the beer ball advertising that I referenced earlier.

3   That's all it's being extended for.  And, again, I just can't

4   believe there's anything out there that Full Circle's people

5   haven't discovered, but if there is, Bay Tek will produce any

6   published advertisement, video or anything else that couples

7   beer ball with a depiction of alcohol or a description of

8   alcohol.

9              Full Circle's objection to the Special Master's

10  order number 18.  It's overruled as to document number 833.

11  It's clearly a privileged document.  Other information in 833

12  is irrelevant to the claims that are being litigated here and

13  it reflects confidential business information.  It is not

14  related to these claims.  So I'm overruling the objection as

15  to 833.

16             As to Dimensional, I need a little more description.

17  As to the nature of the relationship between Dimensional and

18  Bay Tek.  For example, did Dimensional have any decision

19  making authority once it found a breach?  Could it call up Bay

20  Tek's legal department or outside counsel and say I've found

21  this, please take action.  Did it have that authority?  I've

22  got one head shake.

23             MR. MOVIT:  Yes.  Your Honor, may I respond for Bay

24  Tek?

25             THE COURT:  Yes.

1      MR. MOVIT:  Yes, whether it was exercised or not

2 directly, I cannot say, but at the time of the acquisition of

3 the mark, the prior owner of the mark had delegated everything

4 to this licensing agent Dimensional.  So when the mark was

5 transferred, the agency relationship was also transferred and

6 Dimensional was an integral part.  They were the exclusive

7 licensing agent for the mark.  Eventually they were acquired

8 and hired and made literal employees of Bay Tek.  So, we

9 respectfully submit that this falls into the classic example

10 of both the functional equivalent to an employee because they

11 were literally made employees and as well within the scope of

12 the agency relationship that discussions between Dimensional

13 to which Dimensional was a part of in terms of protecting the

14 integrity of the trademark --

15      THE COURT:  I understand your argument.

16      MR. MOVIT:  Thank you, Your Honor.

17      THE COURT:  Mr. Thanasides, anything you want to add

18 to that?

19      MR. THANASIDES:  May I refer to Christina.

20      THE COURT:  Go ahead.

21      MS. CASADONTE:  Your Honor, the documents produced

22 by Bay Tek in discovery showed a different relationship

23 between Dimensional Branding Group and Bay Tek, especially

24 prior to 2018, December 2018.  It shows that Dimensional

25 Branding Group did not have authority.  They had to report

1   breaches of the trademark to an individual named Holly Hampton

2   who is the head of licensing at Bay Tek and a Bay Tek

3   employee.  As set forth in the objection, Your Honor, the

4   documents do not establish that Bay Tek's -- had an agency

5   relationship to the extent that Dimensional Branding was the

6   functional equivalent of an employee of Bay Tek for all

7   relevant times, Your Honor.

8           MR. MOVIT:  May I respond, Your Honor?

9           THE COURT:  Sure.

10          MR. MOVIT:  Ms. Hampton, was the supervisor of

11  Dimensional but that doesn't mean that Dimensional itself

12  lacked authority or that Dimensional was not an integral

13  partner to the process.  To the extent that Dimensional is out

14  there staying, hey, we found infringements, Holly; let's speak

15  to the lawyer about that, I respectfully submit that that

16  would not be a relationship that would be susceptible to

17  privilege waiver.  She supervised these folks and again had

18  those folks gone directly to the enforcement attorneys, that

19  would have been appropriate as well.

20          MS. CASADONTE:  One last point, Your Honor, if I

21  may.

22          THE COURT:  Go ahead.

23          MS. CASADONTE:  Your Honor, Bay Tek very early in

24  this litigation objected to discovery and directed Dimensional

25  Branding Group and its officers as irrelevant and claims that

1   Dimensional Branding Group was a third party; that they didn't

2   have knowledge of the facts relevant to the claims in this

3   litigation.  Only many months, maybe over a year later did

4   they contend that Dimensional Branding Group was a functional

5   equivalent of an employee of Bay Tek after the time permitted

6   for us to serve third party subpoenas, Your Honor.

7           So from our perspective, Bay Tek can't have it both

8   ways.  They were either an employee that had relevant

9   information that should have been subject to searches pursuant

10  to the ESI protocols and search terms, or not.

11          THE COURT:  Mr. Movit, did the relationship change

12  over time now they've been absorbed, if I understand you, into

13  Bay Tek?

14          MR. MOVIT:  So, the folks as Dimensional were

15  performing the same tasks before and after the acquisition

16  which I think is the key analysis, Your Honor.  I don't agree

17  with what Ms. Casadonte said.  What happened was that because

18  of some personality conflicts, Dimensional did not deal

19  directly with Full Circle, but that did not mean that they

20  were not involved behind the scenes in terms of finding

21  infringements and the like.  And, as I said, that throughout

22  the relationship they were doing the same types of work and

23  this is underscored by the fact that Bay Tek said, hey, why

24  don't we make you part of our company.

25          THE COURT:  But, of course, had they been part of

1   the company then the ESI searches would have covered them,

2   right?

3        MR. MOVIT:  If they were designated as custodians to

4   the extent -- and the ESI searches have covered them to the

5   extent that the custodians e-mailed with Dimensional.

6        MR. THANASIDES:  He's saying, Judge, that they were

7   not custodians, but if they happen to e-mail the custodians

8   then they would have been captured, but Your Honor's point is

9   an excellent point which is had they actually been employees,

10  they should have been searched in the first instance.

11       THE COURT:  I am going to reserve on that portion of

12  the objection.  Like I said, I'm overruling it as to 833, but

13  I will think about it a little more as to Dimensional.  I will

14  say my initial impression, but I'm not deciding this now, is

15  that the role of Dimensional is no secret.  We know how these

16  kinds of agencies work and a lot of small, even some large

17  companies use something like that to maintain their

18  trademarks.  I'm not seeing it initially now as any different

19  from a company that retains an accounting firm in preparation

20  for litigation.  You know, they're clearly part of the defense

21  team, but I will look and see if there is some distinction

22  that I might be missing.  So that's why I'm reserving on that

23  partial portion of the objection.

24       MR. MOVIT:  If I may make one clarification.  My

25  colleague Mr. Humphrey -- strike that, Your Honor.  I

1  apologize.

2          THE COURT:  All right.  And then the last thing I

3  have is Special Master order number 19.  That's docket number

4  138.  In light of my ruling on Document 833, it's unnecessary.

5  What's more, I've looked at it, the Special Master has looked

6  at it and this is privileged.  Okay.  That's all I've got.  Am

7  I missing any open issues?  Good.

8          MR. THANASIDES:  I'm so sorry, Your Honor.

9          THE COURT:  That is okay.

10          MR. THANASIDES:  There has been a request by Bay Tek

11  to be given permission to file a motion for summary judgment

12  in addition to the motion for judgment on the pleadings that

13  you converted to a motion for summary judgment.  Has that

14  been --

15          THE COURT:  The second one I think I denied as moot

16  in light of my ruling on the first one, which says that motion

17  for judgment on the pleadings is going to be a motion for

18  summary judgment.

19          MR. THANASIDES:  I see.  I'm sorry.  I missed that.

20          THE COURT:  Okay.  So the question is when does Bay

21  Tek want to file that motion?  Well, the motion is filed.

22  I've converted the motion for JLP into a summary judgment

23  motion.  Is there anything because of that conversion that Bay

24  Tek wants to add to the record?

25          MS. LEPERA:  Thank you, Your Honor.  With respect to

1   the discovery that's voluminous, we believe there are many

2   omissions and documents that have been established for

3   discovery that solidify the grounds for dismissal of Full

4   Circle's three claims that are in the second amended

5   complaint, as well as that support judgment as a matter of law

6   for counterclaims that Bay Tek has asserted specifically with

7   respect to trademark infringement and breach of contract.

8           THE COURT:  So the answer to my question is yes?

9           MS. LEPERA:  Yes.

10          THE COURT:  So how long do you need to file what

11  we'll call the supplement to the converted motion for judgment

12  on the pleadings.

13          MS. LEPERA:  We're prepared to file that.  We

14  produced to Full Circle yesterday by the third week in

15  December, if that's acceptable to the Court, and we proposed a

16  45-day opposition period for Full Circle and a 30-day reply

17  period.  Unfortunately, they did not think that would work but

18  that is the schedule that we proposed and I'm prepared to

19  adhere to if it's acceptable.

20          THE COURT:  First, the third week in December,

21  that's acceptable.  Now, Mr. Thanasides, what's the problem

22  with 45 days which is longer than I would ever give for

23  opposition papers?

24          MR. THANASIDES:  That wasn't the thing we objected

25  to.  There was much more in the proposal that we didn't agree.

1  The 45 days is not something that we found objectionable, Your

2  Honor.

3          THE COURT:  Okay.  We'll have 45 days after the

4  motion is filed.  30 days for my ten page reply?

5          MS. LEPERA:  Your Honor, with respect to that there

6  was another request that we were going to make with the page

7  limit increased.  We had proposed because essentially there

8  are two motions --

9          THE COURT:  You don't have to persuade me.

10          MS. LEPERA:  45 pages for the opening and 45 for the

11  opposition and 20 I believe for the reply because it covers a

12  number of claims.

13          THE COURT:  Okay.  Is that what you're objecting to,

14  Mr. Thanasides?

15          MR. THANASIDES:  So the proposal that was made Your

16  Honor -- yes.  The reason is the proposal that was made didn't

17  give Mr. Favoni (ph) who is only a counter-defendant in the

18  case any opportunity to file a response or opposition or a

19  separate opposition.  And so we just objected to the proposal

20  that was made.  The 45 pages if that's what they want, I don't

21  have an objection to that, Your Honor, but I would like to

22  have an opportunity to file separate oppositions by Mr. Favoni

23  from Full Circle because there are unique issues with respect

24  to Mr. Favaoni's individual liability.

25          MS. LEPERA:  This is news to us, Your Honor.

1        MR. THANASIDES:  That Mr. -- Mr. Favoni is a

2   counter-defendant.

3        MS. LEPERA:  No, you wanted that --

4        THE COURT:  Step, stop, stop.  You're representing

5   them both, right?

6        MR. THANASIDES:  Yes, Your Honor.

7        THE COURT:  Why can't you do a memorandum that had

8   argument point one, two and three as to Full Circle and

9   argument four, five and six as to the individual defendants?

10  Why do we need two pieces of paper instead of one since I know

11  we all want to be efficient?

12       MR. THANASIDES:  I think it's an issue of the 45

13  page limit.  If we're going to require the counter-defendants

14  to file one brief then 45 pages I don't think is going to be

15  sufficient.  I actually don't know because I haven't seen

16  their brief, Your Honor.  Can I reserve on the requests for

17  page limit?  I mean, if they file a 30-page brief maybe it

18  will be fine.

19       THE COURT:  The number of pages are not controlling.

20  What's controlling is you need to make your points to me.  You

21  could make your points in an executive summary of three pages.

22  I know you're not going to do that and I'm not asking you to

23  do that, but let's not build in inefficiency.  Once you have

24  their papers and you've reviewed them, then tell me what you

25  need and why you need it and I suspect after this call if what

1   you need is at all reasonable, then Bay Tek is going to

2   consent to it, okay.

3           MS. LEPERA:  Okay.

4           MR. THANASIDES:  I think that's great, Your Honor.

5   Thank you.

6           THE COURT:  All right.  Anything else that we need

7   to cover?  Thank you all for calling in.  I will get you a

8   ruling shortly on the two issues that I've reserved on.

9           MR. THANASIDES:  Your Honor, I was trying to say

10  there is one thing and I just want to make sure that by not

11  raising it here today I'm not accused of waiving it.  There

12  are some documents that we recently discovered that are

13  incomplete and that we will ask -- we just discovered this and

14  we will talk to Bay Tek about whether they will give us

15  complete versions of the documents and if not, if we can't

16  reach an agreement, we'll have to go to the Special Master

17  with respect to it, but they are documents that will bear on

18  the summary judgment issue.  So I just want to make sure I'm

19  raising this now so as not to be -- have anybody say that I've

20  waived that issue.  We just discovered that these documents

21  are incomplete.  They didn't go in a log and say we're not

22  going to give you complete documents.  They just produced the

23  documents incomplete and said go discover it.

24          THE COURT:  I strongly suspect that the two sides

25  are going to work out this kind of issue because if they

1  don't, the loser pays attorneys' fees at least.  So try hard

2  to work it out and don't come to the Special Master or me with

3  it unless you're confident it's something you'll prevail on

4  and it's something you really need to get or to perfect.

5          Okay, thanks for calling in.

6          MR. THANASIDES:  Thank you, Your Honor.

7

8          (Matter adjourned.)

9                  - ooOoo -