```
 1              IN THE UNITED STATES DISTRICT COURT
 2            FOR THE EASTERN DISTRICT OF NEW YORK
 3  FULL CIRCLE UNITED, LLC        )
 4              Plaintiff          )
 5  VS.                            )CIVIL ACTION
 6  BAY TEK ENTERTAINMENT, INC.,   )NO.: 1:20-CV-03395
 7              Defendant          )
    _____
 8
 9  BAY TEK ENTERTAINMENT, INC.,   )
10    Counterclaim Plaintiff       )
11  VS.                            )
12  FULL CIRCLE UNITED, LLC        )
13    Counterclaim Defendant       )
14  and                            )
15  ERIC PAVONY,                   )
16   Additional Counterclaim       )
17   Defendant                     )
18  _____
19         ---------------------------------------
              VIDEOTAPED REMOTE ORAL DEPOSITION OF
20
                          ERIC COOPER
21
                        JUNE 8, 2022
22
                          VOLUME 2
23         ---------------------------------------
24  REPORTED BY: KATHRYN R. BAKER, RPR, CSR #6955
25  JOB NO. 212204
```

ERIC COOPER

2 A. I'd have to guess. I can take a guess. Do you
3 want a guess --
4 Q. No.
5 A. -- or do you want me to state what I remember
6 specifically?
7 Q. I do not want you to guess. I want you to --
8 A. Okay. Then I'd have to guess. Then I'd have to
9 guess. I don't -- I don't specifically remember.
10 Q. That's fine. That's one of my ground rules, is
11 that I don't want you to guess. That's fine.
12 A. Okay.
13 Q. Okay. I'm going to introduce another exhibit
14 now. Bear with me for a second here.
15             (Exhibit 31 marked.)
16 Q. (BY MR. HUMPHREY) Okay. I have Exhibit 31
17 here.
18             Mr. Cooper, can you see this document?
19 A. Uh-huh.
20 Q. Do you recognize this document?
21 A. I don't believe I've read this document, but I
22 do -- I can read what it is.
23 Q. So this is Full Circle's answers to Bay Tek's
24 second set of interrogatories.
25             Do you know what interrogatories are?

ERIC COOPER

2  A.  Can you refresh me on what it is.

3  Q.  Yeah.  In lawsuits people can take what is
4  called discovery, where they seek information from the
5  other side.

6          One of the mechanisms that they use to do
7  that are called interrogatories, which are written
8  questions that the parties are asked to answer.

9          Are you familiar with that process?

10  A.  Yes.  Now that you reminded me, yes.

11  Q.  Okay.  So were you involved in answering the
12  interrogatories in this case?

13  A.  No.

14  Q.  At all?

15  A.  No.

16  Q.  Okay.  So did you review this document at all?

17  A.  I did not.

18  Q.  Okay.  I'm going to take you through a few
19  things here and just see if you have any knowledge of some
20  of these allegations.

21          On page 7 here.  So the interrogatory asks
22  to state all facts according to contention that Bay Tek's
23  damages are barred because Bay Tek quote/unquote consented
24  or acquiesced for the use of the mark.

25          This is in line with what we were just

1      ERIC COOPER

2   displayed there.

3      Q.   This particular picture here, this is -- this is

4   the Brewskee-Ball Web site, correct?

5      A.   I believe so, yeah.  I don't -- yeah, it looks

6   to be that, yes.

7      Q.   And so this picture was posted on the

8   Brewskee-Ball Web site, correct?

9      A.   Yes, I guess so.  If you're showing me a

10  screenshot, yeah.

11     Q.   And we established that the Web site was

12  publicly available, right?

13     A.   The Web site was what?

14     Q.   Publicly available?

15     A.   Yes.

16     Q.   So anybody who logged into the Web site could

17  potentially see this pictures?

18     A.   Yes.

19     Q.   Including, potentially, a child?

20          MS. REILLY:  Objection, form.

21     A.   That's not for me to say.

22     Q.   (BY MR. HUMPHREY)  You don't know if a child

23  with Internet access could see this?

24     A.   If you want to -- if you need to draw that line

25  between the two, go for it.  I'm not -- I'm not going to

```
 1                      ERIC COOPER
 2   speculate what a child does.
 3        Q.   I'm not asking you to speculate.  I'm asking you
 4   if it's possible.
 5        A.   Is it possible for a child to get on the
 6   Internet, yes.
 7        Q.   And it's possible for a child to go on this Web
 8   site and see this photo, correct?
 9                 MS. REILLY:  Objection.
10        A.   I don't want to -- I -- I don't -- I don't know
11   what children do.
12        Q.   (BY MR. HUMPHREY)  You don't have to know what
13   children do.  I'm just asking you is it possible --
14        A.   Is the Web site -- you asked me if the Web site
15   was -- I'm sorry, finish.
16        Q.   Well, is the Web site age restricted in any way?
17        A.   I already told you it wasn't.
18        Q.   Okay.  So -- but I'm just asking you, would it
19   be possible for a child with Internet access to come to
20   this Web site and see this photo?
21        A.   I've already answered this question about this
22   Web site.
23        Q.   Would it be possible for a child to do this is
24   what I'm asking?
25        A.   I don't want to draw a conclusion what a
```

1  ERIC COOPER

2  child -- can a child get on the Internet?  Yes.  Is our

3  Web site age restricted?  No.  You feel free to draw your

4  own conclusion about what children do.

5      Q.   Why can't you draw that conclusion?

6      A.   I don't -- I don't want to.

7      Q.   Sir, it's not about what you want.  I'm asking

8  you a question.  I'm asking if it's possible that a child

9  could go to the Web site and see this photo?

10     A.   Yes.

11     Q.   Okay.  Did you -- do you have any background in

12 graphic design?

13     A.   Yeah.  Yes.  I told -- I believe you asked me my

14 education.

15     Q.   Yes.  That's right.  That's right.

16          So are you involved in graphic design at

17 all for Brewskee-Ball?

18     A.   For Austin -- for mostly Austin stuff.  Yeah,

19 some -- possibly some Brewskee-Ball stuff, when asked.

20     Q.   So those -- the schedules that we were looking

21 at earlier with the team names, do you design anything

22 like that?

23     A.   Yeah.  Those -- I created those.

24     Q.   Did you create those specifically?

25     A.   Yes.

ERIC COOPER

2  Q. So are you aware of any reputation that Bar Stool Sports has?

4  A. No.

5  Q. You don't know anything about Bar Stool Sports?

6  A. I don't -- I really don't follow them. I know that they -- I know that they know -- I recently read somewhere recently that they made a deal with Major League Baseball, like they're going to stream major league baseball or something like that. I like baseball, so I -- that came across my feed.

12  Q. I also like baseball and I am aware of that.

       Let me show you another exhibit.

       (Exhibit 35 marked.)

15  Q. (BY MR. HUMPHREY) So Full Circle United and Eric Pavony then gave permission from Bar Stool Sports to do that broadcast, correct?

18  A. I -- I wouldn't -- I don't know if I would say Full Circle United or Full Circle Bar, but, yes.

20  Q. I'm going to put up this exhibit.

       But you're not aware of Bar Stool's reputation, correct?

23  A. I am not.

24  Q. Okay. I'm going to show you an exhibit briefly.

       Okay. This is Exhibit 35. We're not going

ERIC COOPER

to spend much time on this.  I just want you to take a look.

So this is an article from Media Matters, and it's collecting what I would -- I don't want to call it the greatest hits, but probably the worst of the worst of Bar Stool Sports.  The title is, Bar Stool Sports is a cesspool of misogyny and bigotry.

Do you see that?

A.   Uh-huh.

Q.   And I'm not going to read the laundry list here, because, frankly, it's some pretty vile stuff.  But I just want you to take a look and see some of the headings of things they have categorized here as actions Bar Stool Sports has taken.

Can you tell me what this says?

A.   Sexualizing minors and whitewashing nonconsensual explicit content.

Q.   Okay.  And what does this one say?

A.   Perpetuating and encouraging sexism and misogyny.

Q.   And what -- this is very long.

What does this one say?

A.   Perpetuating and encouraging racism.

Q.   As you can you see, these are pretty long.

ERIC COOPER

What's this one say?

A. Perpetuating and encouraging anti-LGBTQ (inaudible).

Q. Okay. So my question to you is: Well, do you have kind of an understanding of some of the things now that Bar Stool Sports has been accused of doing?

A. Well, the headlines you made me read, yeah.

Q. But based on -- but based on that, you --

A. Well, I haven't read the article. I haven't read the article, so, you know...

Q. Okay.

A. I mean, I get -- I get that somebody wrote a piece about them. And --

Q. Right?

A. And pointing out -- pointing out these headlines that you made me read.

Q. So my question to you is: Does having an event associated with Bar Stool Sports in any way reflect -- reflect positively on the Skee-Ball mark or on Bay Tek?

MS. REILLY: Objection to form.

Q. (BY MR. HUMPHREY) Based on this.

A. Based on that? But I haven't read that.

MS. REILLY: Same objection.

Q. (BY MR. HUMPHREY) But knowing what they're