1           CONFIDENTIAL - E. PAVONY

2          UNITED STATES DISTRICT COURT

3          EASTERN DISTRICT OF NEW YORK

4    FULL CIRCLE UNITED, LLC,          )
                                       )
5         Plaintiff,                   )
                                       ) Case No.
6    vs.                               ) 1:20-cv-03395
                                       )
7    BAY TEK ENTERTAINMENT, INC.,      )
                                       )
8         Defendant.                   )
     ----------------------------      )
9    BAY TEK ENTERTAINMENT, INC.,      )
                                       )
10        Counterclaim Plaintiff,      )
                                       )
11   vs.                               )
                                       )
12   FULL CIRCLE UNITED, LLC,          )
                                       )
13        Counterclaim Defendant,      )
                                       )
14   and                              )
                                       )
15   ERIC PAVONY,                      )
                                       )
16        Additional Counterclaim      )
          Defendant.                   )
17

18

19              CONFIDENTIAL

20   REMOTE VIDEO-RECORDED DEPOSITION OF ERIC PAVONY

21              June 13, 2022

22              Volume I

23   Reported by:

24   KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25   JOB NO. 211444

1          CONFIDENTIAL - E. PAVONY

2     trademark.

3              MS. LEPERA:  Okay.  Let me mark

4         another exhibit.  This is Full Circle

5         United's Amended Response to Bay Tek

6         Entertainment, Inc.'s Second Set of Requests

7         for Admission.

8              What are we up to, 5?

9              MS. NGUYEN:  5.

10             (Pavony Exhibit 5, Full Circle United,

11         LLC's Amended Response to Bay Tek

12         Entertainment, Inc.'s Second Set of Requests

13         for Admission, marked for identification, as

14         of this date.)

15     BY MS. LEPERA:

16         Q.    Okay.  Let's turn to the number 34,

17     please.

18              Let me ask you this, basically.  And

19     you should take a minute and to look at the

20     document.

21              Did you review, before these were

22     answered and submitted to Bay Tek counsel, the

23     answers to this set of admissions?

24         A.    Did I review them before they were

25     submitted?

```
 1              CONFIDENTIAL - E. PAVONY

 2        Q.    To us, correct.

 3        A.    Can you scroll up?  I just want to

 4     make sure I know what the document is.

 5              MS. NGUYEN:  You have power to scroll,

 6        Mr. Pavony.

 7              THE WITNESS:  Oh, right.  Right.

 8        Right.  Right.

 9     BY MS. LEPERA:

10        Q.    I don't know how much you want to see.

11     It's got quite a number of requests.

12        A.    I just want to see the top so I'm

13     familiar with what the actual document is.

14              Give me a sec.  Give me a sec.

15        Q.    Sure.

16        A.    Okay.  All right.  Yeah, I'm familiar

17     with this document, yeah.

18        Q.    Okay.  Terrific.

19              So if you look at number 34, there was

20     a request that Full Circle United admit that it

21     held no ownership rights in the Skee-Ball mark.

22              Do you see that?

23        A.    Yeah.

24        Q.    Bunch of objections, and then it

25     admits it's not the owner of the trademark
```

1              CONFIDENTIAL - E. PAVONY

2        A.    Okay.

3        Q.    Will that help you without dates?

4        A.    Yeah, if you're referring to -- if

5    you're referring to in a document, it would help

6    me if I can see it.

7              MS. LEPERA:  It's First Set of

8        Interrogatories Number 1.

9              MS. NGUYEN:  This is Pavony 6.

10             (Pavony Exhibit 6, Eric Pavony's

11        Amended Answers to Bay Tek Entertainment,

12        Inc.'s First Set of Interrogatories to Eric

13        Pavony, marked for identification, as of

14        this date.)

15    BY MS. LEPERA:

16        Q.    Full Circle United Amended Answers to

17    Bay Tek's First Set of Interrogatories, Number

18    4.

19             Go to number 4.  So, going down, you

20    can read -- you can read the interrogatory, Mr.

21    Pavony, okay?

22             You see that question?

23             MS. NGUYEN:  I'll give you access.

24        A.    I take over -- I'll take over the

25    scrolling.

1              CONFIDENTIAL - E. PAVONY

2                   (Pavony Exhibit 7, Document

3         Bates-stamped FCU_EXPERT_0001098 through

4         1120, marked for identification, as of this

5         date.)

6    BY MS. LEPERA:

7         Q.    FCU_EXPERT_000100 CONFIDENTIAL.

8               Turn to the next -- first, let's go to

9    the top.  You see that this is your name is

10   listed here, Eric Pavony, correct?

11        A.    Uh-huh.  Yeah.

12        Q.    Okay.  And is that your correct

13   address in Austin?

14        A.    Yeah.

15        Q.    Okay.  Move down.

16              Keep going.  There's NSCL Tour.

17              Keep going.

18              Right there.  You see the domain

19   renewal of NationalSkeeBallLeague.com?

20        A.    I see NationalSkeeBallLeague.com?.          8

21        Q.    You did?

22        A.    I see it, yeah.

23        Q.    And you had no right to do that,

24   correct?

25              MR. SKIBELL:  Objection.  Calls for a

1                CONFIDENTIAL - E. PAVONY

2     legal conclusion.

3     A.    Can you go back to the document for me

4   for a second?

5         I think -- I thought -- you know, I'm

6   not an attorney and -- but I thought this was

7   reference to the trademark registration.

8     Q.    So you see where it says, Mr. Pavony,

9   that you're not going to register or otherwise

10  assert an ownership interest or right in any

11  Live Play phrase and slogan, see that?

12     A.    I see it, yeah.

13     Q.    Do you not understand that a domain

14  name is ownership -- ownership of an actual

15  asset, a domain name?

16         MR. SKIBELL:  Objection.  Outside the

17     scope of the 30(b)(6).  Calls for a legal

18     conclusion.

19         If you have an understanding, you can

20     answer.

21     A.    I don't really -- I don't have any

22  understanding exactly as to the distinction that

23  you're trying to make between a domain name or a

24  registered -- registration of a trademark.

25     Q.    You thought you had a right to get a

1          CONFIDENTIAL - E. PAVONY

2    domain name in NationalSkeeBallLeague.com?

3              MR. SKIBELL:  Same objections.

4        A.     I thought we were granted the license

5    and the rights to use those phrases, yeah.

6        Q.     Okay.  So the -- where is the domain

7    name now?  Who owns it?  Do you still have it in

8    your name?

9        A.     I imagine so.  Yeah.

10             MR. SKIBELL:  Objection to form.

11             THE WITNESS:  I'm sorry.  I'm sorry,

12        Reid.

13             MR. SKIBELL:  You can answer.

14             THE WITNESS:  I -- I assume so.  I

15        believe that -- I mean, you know, also, I'm

16        not -- I -- we probably -- I mean, we told

17        Bay Tek that we had, you know, certain

18        domains.  We registered NSBL.com and we, you

19        know, we used that along with -- with Bay

20        Tek.

21             So like they -- they understood that

22        we had certain domain names that we were

23        allowed to use the phrase of, right?  So

24        like you were saying that the -- the -- the

25        right is granted to FCU to use these phrases

1       CONFIDENTIAL - E. PAVONY

2       you have a problem.  Don't waste our time

3       here.

4           MS. LEPERA:  This witness has to

5       answer every contract -- every question

6       about this contract under law.

7           MR. SKIBELL:  He is answering your

8       questions.  You're critiquing all his

9       answers, and all I did was ask you not to

10      critique his answers.

11  BY MS. LEPERA:

12      Q.   Going back to try to get clarity with

13  you, Mr. Pavony, I am trying to get you to tell

14  me --

15          Well, first of all, Eric Pavony is

16  separate from Full Circle, correct?

17      A.   In what regard?  In what way are you

18  asking?

19      Q.   Full Circle is a corporate entity,

20  right?  A limited liability company, correct?

21      A.   Okay.

22      Q.   Full Circle is the one that has the

23  license agreement with SBI, not Eric Pavony,

24  correct?

25      A.   Full Circle United, yeah, yes, but

CONFIDENTIAL - E. PAVONY

1

2    I'm -- I'm the sole owner of Full Circle United,

3    yeah.

4        Q.    So why -- what gives you the right to

5    register these domain names in your personal

6    name?

7            MR. SKIBELL:  Objection.  Calls for a

8        legal conclusion.

9        A.    Yeah, I can't -- I can't speak to

10   that.  I don't really understand what -- if

11   you're talking about like domain law, I am not

12   very familiar with that.

13       Q.    With what?  Family law, you said?

14       A.    Domain law or URL law.  I don't know

15   if there's a specific title for that kind of

16   law.

17       Q.    Eric Pavony has no rights, including

18   any license right, with respect to the trademark

19   Skee-Ball, correct?

20           MR. SKIBELL:  Same objection.

21       A.    I -- I -- I'm not an attorney.  I

22   can't speak to that really, but Full Circle

23   United has the license, if that's what you're

24   trying to imply; but I own Full Circle United.

25       Q.    But you don't -- you're not a

1              CONFIDENTIAL - E. PAVONY

2        We're on the record.

3              MS. LEPERA:  Good.  All right.

4    BY MS. LEPERA:

5        Q.    Mr. Pavony, back to my question,

6    please.  If you could identify any investors in

7    Full Circle who did not get an equity interest

8    but who otherwise invested, not including Bay

9    Tek.  I don't want to hear about Bay Tek.

10             You're on mute.

11       A.    Sorry.

12             I heard you, though.

13             Yes, correct, outside of Bay Tek, Full

14   Circle doesn't have any other investors.

15       Q.    And currently -- okay, my question may

16   be more expansive to include let's say the

17   entire time period from 2014 to the present in

18   that question.  Not just current.

19       A.    From 2014 to the present, does -- did

20   FCU ever get any investors that were not equity

21   investors?

22       Q.    Correct.

23       A.    Outside of Bay Tek.

24             No.

25       Q.    Okay.  And so who is Veridis, if you

1          CONFIDENTIAL - E. PAVONY

2    know?

3        A.    Veridis.  Yeah, I know Veridis.  They

4    are a finance company.

5        Q.    Did they provide financing to Full

6    Circle?

7        A.    Litigation financing.

8              MR. SKIBELL:  Eric -- wait.  Stop,

9         Eric.  I'm directing you not to answer that

10        question.  I'm also objecting on the basis

11        of relevance.

12        Q.    Does Veridis -- does Veridis have any

13    liens or a security interest in connection with

14    Full Circle's business?

15             MR. SKIBELL:  Again, Eric, I direct

16        you not to answer and object on the basis of

17        relevance.

18             MS. LEPERA:  Well, the relevance would

19        be a potential violation of the assignment

20        provision of the license agreement, which

21        we're entitled to explore because if there's

22        been any encumbrance imposed on any asset of

23        Full Circle, including the license

24        agreement, by a third party.

25             MR. SKIBELL:  You can -- same

1          CONFIDENTIAL - E. PAVONY

2   person is like an individual competition versus

3   like a team competition, which could be a

4   doubles format, you know, which we have, or a --

5   or three rollers on a team where, like, you

6   know, or even more.  You know, there's

7   different -- we have several different types of

8   competitor formats for team play or for

9   individual play.

10          So it's either individuals competing

11  against each other or teams competing against

12  each other, yeah.

13     Q.    So in these non-four -- let's start

14  with the ones that you identified when we were

15  talking about the number of states.  In each of

16  those events, how many --

17          First of all, were they leagues or

18  were they tournaments?

19     A.    In which states?

20     Q.    Every one you mentioned:  Boston,

21  Mass.; uptown Minnesota; uptown Des Moines; New

22  Orleans, Half Moon; Cheesie's, Chicago;

23  Portland, Oregon; Seattle; Gainesville;

24  Philadelphia; and Hoboken.

25     A.    Oh, those specifically, that was a --

1               CONFIDENTIAL - E. PAVONY

2    I would call that -- that was like a Live Play

3    event, right?  So that was a tournament that was

4    held over the course of many months.

5                The format of that was -- that was the

6    Skee-Ball Open you're referring to, which --

7    which was held over the course of -- I believe

8    that tournament was held over the course of,

9    like, I want to say four months.

10         Q.    Which state are we talking about?

11         A.    All the ones that you were just

12    referring to.

13         Q.    Okay.  So, in each of those states,

14    there was a one-time, approximately, four-month

15    tournament?

16         A.    In all of those states that you just

17    referenced, yes.  Like the Skee-Ball Open was,

18    you know, like, you know, when -- when you have

19    a tournament, there's several different ways

20    that you can format that tournament, so how it

21    works, how it flows, and that one in particular

22    was Skee-Ball Open, which -- which was several

23    months of competitions leading up to -- leading

24    up to a finale for the rollers that qualified

25    for the Rollers Tourn- -- which is called the

CONFIDENTIAL - E. PAVONY

1

2    Rollers Tournament.

3            So several hundred rollers were

4    competing in those states and others, and then

5    it culminated in dramatic fashion with this

6    one -- one event that was the finale event.

7        Q.    Okay.  And that's what you say

8    happened in each one of these, including the

9    Cheesie's Pub in Chicago?

10        A.    Right, the -- yes, the rollers were

11   competing as part -- part of the tournament in

12   those respective cities to try to qualify for

13   the -- for the Rollers Tournament, which was the

14   grand finale.

15        Q.    Do you have any documentation that

16   evidences the number of rollers and the length

17   of those competitions in each of these states?

18        A.    I don't have it on me handy, but I --

19   I mean, I could -- yes, we have doc- -- we have

20   documentation of that data, sure.

21        Q.    Do you know whether or not it's been

22   produced?

23        A.    I don't.

24        Q.    One of your topics is you have

25   evaluated the document production compliance.