```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2   _____
 3   FULL CIRCLE UNITED, LLC,        VIDEO CONFERENCE VIDEO
                                     DEPOSITION OF:
 4              Plaintiff,
                                     ERIC SCHADRIE
 5       vs.
                                     MARCH 8, 2022
 6   BAY TEK ENTERTAINMENT, INC.,
 7              Defendant.
                                     CASE NO. 1:20-cv-03395
 8
 9   BAY TEK ENTERTAINMENT, INC.,
10       Counterclaim Plaintiff,
11       vs
12   FULL CIRCLE UNITED, LLC,
13       Counterclaim Defendant,
14       and
15   ERIC PAVONY,
16       Additional Counterclaim
         Defendant.
17   _____/
18           ***CONFIDENTIAL ATTORNEYS EYES ONLY***
19      VIDEO CONFERENCE VIDEO DEPOSITION OF ERIC SCHADRIE
20         TAKEN BY:  The Plaintiff/Counterclaim Defendant
21             TAKEN AT:  Via Zoom Videoconference
22              8:36 a.m. CST - 5:11 p.m. CST
23                REPORTED BY NANSI CASPER
24              VIDEOGRAPHY BY KRAIG HILDAHL
25
```

1         MR. WILLIAMS: Objection, form. Calls for a
2    legal conclusion.
3         Please don't divulge any communications with
4    attorneys. You can answer in your personal
5    capacity.
6 A. To my knowledge, there was an acquisition.
7 BY MS. CASADONTE-APOSTOLOU:
8 Q. Did you have any involvement with the acquisition
9    that you're referring to?
10 A. No.
11         MR. WILLIAMS: Objection to form.
12 BY MS. CASADONTE-APOSTOLOU:
13 Q. Would you have any reason to -- strike that.
14         I'm going to share with you what's been
15    marked as Exhibit 12. I'll give you a moment. I
16    just ask that you look up when you're ready.
17         (Whereupon Exhibit No. 12 was marked
18    for identification.)
19         MR. WILLIAMS: Note for the record this
20    appears to be an eleven-page document.
21 A. Okay. I'm ready.
22 BY MS. CASADONTE-APOSTOLOU:
23 Q. Do you recognize the document that's been marked as
24    Exhibit 12?
25 A. I don't recall it.

1  Q.  Now that you've had an opportunity to review it, do
2      you recall any of the information reflected on
3      Exhibit 12?
4          MR. WILLIAMS:  Objection.  Again, this is an
5      eleven-page document, actually appears to have
6      multiple documents in it.
7          You can answer to the best of your ability.
8  A.  I don't recall the document.
9  BY MS. CASADONTE-APOSTOLOU:
10 Q.  Can we agree that it appears to be an email sent
11     from Eric Schadrie, eschadrie@baytekgames.com on
12     April 5th, 2016 to Tom Diedrich?
13         MR. WILLIAMS:  Same objections.
14 BY MS. CASADONTE-APOSTOLOU:
15 Q.  I didn't hear you, I'm sorry?
16 A.  Yes.  That is my email.
17 Q.  Okay.  Do you have any reason to believe that this
18     email and attachments was not sent by you on
19     April 5th in 2016 to Tom Diedrich?
20 A.  It's an email I sent.  I just don't recall it.
21     There are -- again, being, I guess, leader on
22     project management at that time, I was responsible
23     for trademark and copyright documents from a filing
24     and storing standpoint.  So the fact that this is
25     through my email, it's not a surprise, but I don't

1          recall everything that comes through that
2          direction.
3     Q.   So just for the record, the email, the document I'm
4          referring to is Bates marked BT0007931 through
5          BT0007941 sent -- the top email from Eric Schadrie
6          to Tom Diedrich on April 5th, 2016 is a subject
7          line forward, Skee-Ball, Inc. trademark portfolio
8          transfer.
9                So if I understand you correctly, it would
10         not be uncommon for you to participate in recording
11         intellectual property rights -- excuse me --
12         documents reflecting intellectual property rights
13         of Bay Tek's?
14    A.   Trademark and copyright.  No.  That's not uncommon.
15    Q.   Do you have any recollection of why you would have
16         sent an email to Tom Diedrich that says, Tom, do
17         you have a location for these files, presumably
18         referring to the files attached to the email?
19               MR. WILLIAMS:  Objection to form.  He's
20         already said he doesn't recall sending this email.
21         Calls for speculation.
22    BY MS. CASADONTE-APOSTOLOU:
23    Q.   Do you have any independent recollection of why you
24         would have been asking Tom about where the notice
25         of recordation of the Skee-Ball -- Skee-Ball

1  Bay Tek?
2  A.  No.  I have not.
3  Q.  Did you have any opinion one way or another about
4      whether Full Circle's use of the Skee-Ball Live
5      lanes would have any impact on the Skee-Ball
6      Live -- the Skee-Ball brand?
7  A.  I don't recall any conversations in that regard.
8  Q.  Did you have any personal opinions even if they
9      weren't communicated about whether Full Circle's
10     use of the Skee-Ball Live lanes would have any
11     consequence, good or bad, on Skee-Ball Live
12     brand -- excuse me, the Skee-Ball brand?
13 A.  Yeah.  I had feelings about it.  I, you know,
14     working with licenses all the time; you want to be
15     able to contain the ways that your brand is
16     conveyed to the public.  So.  Personally, I feel
17     like Bay Tek had the right to restrain any usage
18     outside of our own company conveying what that
19     brand meant.
20 Q.  Can you explain to me what you mean, please?
21 A.  Sure.  I worked at an ad agency.  We developed and
22     designed logos, and we designed the identity
23     packets that would work with those logos that
24     really encompassed the culture and the feel that
25     that brand is to convey.

1              If you were to give a party outside of the
2      business free reign on how they used that logo or
3      they changed that identity, things can get really
4      messy and something that tarnishes your brand.
5   Q. Do you have any information to suggest that anyone
6      at Bay Tek in July 2017 thought that building the
7      Skee-Ball Live lanes for Full Circle would be messy
8      for the Skee-Ball brand?
9          MR. WILLIAMS: Objection. Form.
10  A. I just conveyed my own feelings toward that. Are
11     you asking if anybody else does?
12  BY MS. CASADONTE-APOSTOLOU:
13  Q. Yeah?
14  A. I don't know.
15  Q. You previously testified that you were excited to
16     build the Skee-Ball Live lanes for Full Circle;
17     right?
18  A. Correct.
19  Q. Do you think you would have been excited about
20     building Skee-Ball Live lanes for a third party if
21     you believed that that third party was going to
22     have a negative impact on the Skee-Ball brand?
23         MR. WILLIAMS: Asked and answered.
24     Incomplete hypothetical. Objection to form.
25  BY MS. CASADONTE-APOSTOLOU:

1  Do you see it? Oh. It's not the right document.
2  I'm sorry.
3  A. 18 is what I'm supposed to be looking at, or 28?
4         (Whereupon Exhibit No. 28 was marked
5     for identification.)
6  BY MS. CASADONTE-APOSTOLOU:
7  Q. 28. It should be marked now.
8  A. Okay.
9  Q. Should be a one-page document, BT0007773. Do you
10    see the document?
11 A. I see it.
12 Q. Do you recall -- do you recognize it?
13 A. I recognize it as an email to Pat Scanlan and Rick,
14    but I don't know the details. I don't recall it.
15 Q. Do you have any reason to -- do you have any
16    information about why you would have been wanting
17    to discuss the build of the next twenty-five lanes
18    with Larry Treankler?
19         MR. WILLIAMS: Objection to form.
20 A. Well, that would have likely been the next step is
21    to prepare a business case, assuming everything
22    else is a -- has a positive outlook.
23 BY MS. CASADONTE-APOSTOLOU:
24 Q. Do you recall whether you had any communications
25    with Larry Treankler about the quote unquote next