UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

_____
                              )
FULL CIRCLE UNITED, LLC,      )
                              )
      Plaintiff,              )    Case No.
                              )    1:20-cv-03395
vs.                           )
                              )
BAY TEK ENTERTAINMENT, INC.,  )
                              )
      Defendant.              )
_____)
BAY TEK ENTERTAINMENT, INC.,  )
                              )
      Counterclaim Plaintiff, )
                              )
vs.                           )
                              )
FULL CIRCLE UNITED, LLC,      )
                              )
      Counterclaim Defendant, )
 -and-                        )
ERIC PAVONY,                  )
                              )
      Additional              )
      Counterclaim Defendant. )
_____)

DEPOSITION OF LAURA SMITH

(Via Zoom Videoconference)

July 6, 2022

Reported by:  John L. Harmonson, RPR

Job No. 211446

```
 1                    L. SMITH
 2      Q.   And to your understanding, what do the
 3  New York courts require to establish lost
 4  profits?
 5           MS. REILLY:  Objection to form.
 6           THE WITNESS:  I'm not sure I can
 7  answer that with any degree of certainty.  You
 8  know, there are specific issues that I was
 9  looking for related to that, and those were the
10  focus that I looked at related to New York.  And
11  again, I didn't review any case law, so I would
12  not feel comfortable trying to summarize what New
13  York's law requires.
14  BY MR. WILLIAMS:
15      Q.   I'm sorry.  I don't think that quite
16  answered the question.  I'm not saying you
17  weren't trying to, but I want to make sure I got
18  an answer to the question I posed.
19           MR. WILLIAMS:  John, could you
20  possibly read back my last question?
21           (The record was read back by the
22      reporter as follows:
23           "Question:  And to your understanding,
24      what do the New York courts require to
25      establish lost profits?")
```

1  L. SMITH

2 MS. REILLY: Just note my objection

3 again.

4 MR. WILLIAMS: And what was the

5 objection based upon?

6 MS. REILLY: Well, that's a legal

7 question that she can't answer.

8 THE WITNESS: My answer is I guess the

9 same as last time. I don't have anything

10 additional to add.

11 BY MR. WILLIAMS:

12 Q. Sitting here today, you cannot tell me

13 what factual factors the New York courts rely

14 upon to assess the viability of a lost profits

15 claim. Is that correct?

16 MS. REILLY: Objection to form.

17 THE WITNESS: I don't have any

18 specific knowledge of what New York is versus

19 anywhere else. I know what typically is required

20 to prove out lost profits, but I don't -- I can't

21 tell you specifically what New York says related

22 to your question about factual basis. So I don't

23 know the answer to that question.

24 I know generally what's required. As

25 I discuss in my report, my analysis meets those

```
 1                    L. SMITH
 2    requirements.
 3    BY MR. WILLIAMS:
 4        Q.    And where do those requirements come
 5    from again?
 6        A.    The damages treaties [sic] that I
 7    referenced, my basic knowledge and understanding
 8    of how lost profits work.
 9        Q.    And I'm sorry.  I think you just
10    misspoke.  You said "treaties."  But you meant
11    treatises; is that correct?
12        A.    Yes.  I'm sorry, I did misspeak.  The
13    books, my damages book.
14        Q.    Yeah, no problem.  I just wanted the
15    record to be clear.
16              Aside from those treatises, your
17    knowledge comes from your basic understanding of
18    what is required to establish lost profits.  Is
19    that what you're saying?
20        A.    I mean, yes.  I've been doing this
21    work for over 20 years.  I've worked on many,
22    many lost profit claims, and many in New York.  I
23    don't believe that there is a large difference
24    between the federal rules that I'm used to or the
25    other states.  You need to prove reasonable
```

1          L. SMITH

2    certainty to the fact of damages and have a

3    reasonable basis for the calculation of damages.

4          Q.   Okay.  For now, I would like to talk

5    about something slightly different.  Did you

6    spend any time preparing for this deposition?

7          A.   Yes.

8          Q.   How much time would you estimate you

9    spent?

10         A.   Well, my deposition was moved three

11   times -- or this is the third date for my

12   deposition.  So it was moved twice.  So I prepped

13   in March, I believe the first one was scheduled.

14   I prepped in May, the beginning of May for the

15   second one.  And then I prepped again for this

16   one now.  I don't -- I don't have a total hour

17   amount.  I prepped at those three different

18   points in time.

19         Q.   Okay.  Just for the most recent one,

20   how much time would you estimate you spent

21   preparing?

22         A.   I honestly don't know.  Probably

23   somewhere in the range of 20 to 30 hours.  I'm

24   not sure.

25         Q.   And did part of that time involve

1       L. SMITH

2  that's the fact of lost profits but for assuming

3  liability on whatever count it is, there would --

4  the fact of damages, in my opinion, is reasonably

5  certain.

6       Q.    And when you say the fact of damages,

7  in your opinion, is reasonably certain, are you

8  speaking of the existence of damages generally or

9  of the specific amount of damages?

10      A.    No.  I think I mentioned it's just --

11 the reasonable certainty standard is only applied

12 to the fact of damages, not the quantification.

13      Q.    Do you know how Full Circle calculated

14 the revenues information that it provided to you?

15      A.    My understanding from the document

16 source that I have and from discussions with Full

17 Circle is that the revenues, with the exception

18 maybe of a small period of time in the last year,

19 were all generated through the app that they have

20 and the app -- and I think Squarespace maybe, or

21 Square.  I'm sorry, one or the other.  And those

22 documents were provided to me.  So I looked at

23 them.  I looked at the returns.  And I calculated

24 what the actual earned revenue was.

25      Q.    So you went through all of that data

 1                      L. SMITH

 2   generated.  There is no more need for funding

 3   after that.  Right?  The lanes that are out there

 4   are generating revenue and they are paying for

 5   the lanes that are then coming in in the next

 6   year or two after that.

 7              So there is only a need for funding

 8   really in that first year to cover the losses.

 9   And after that, the revenues are paying for

10   themselves.  Or sorry, the lane revenue is paying

11   for new lane purchases.

12        Q.    Are you aware that Full Circle United

13   couldn't even keep its own bank account open --

14              MS. REILLY:  Objection to form.

15   BY MR. WILLIAMS:

16        Q.    -- because it had no money?

17              MS. REILLY:  Sorry.  Objection to

18   form.

19              THE WITNESS:  I haven't seen any

20   documents related to that.

21   BY MR. WILLIAMS:

22        Q.    Are you aware that at some point Full

23   Circle United had to start using Eric Cooper's

24   newly opened apparently personal account as its

25   corporate account because it didn't have enough

1  L. SMITH

2  money to run its own business?

3          MS. REILLY:  Objection to form.

4          THE WITNESS:  Again, I haven't seen

5  any documents related to that.

6  BY MR. WILLIAMS:

7      Q.   You've seen what you've been shown by

8  the other side and what's in Mr. Dragon's report.

9  Other than that, have you seen anything else?

10     A.   Well, I saw all the documents that I

11 have listed in my report, and I've seen documents

12 that were provided with Mr. Dragon's -- or

13 referenced in Mr. Dragon's report.

14          So I asked for a lot of documents.  I

15 received a lot of documents.  I considered a lot

16 of documents.  And I asked for requests to be

17 made of Bay Tek for financial information, and

18 it's my understanding from counsel that those

19 requests were made but no documents were ever

20 produced.

21     Q.   Yeah.  It sounds like they prepared

22 you well on that, but they didn't show you some

23 of the other stuff apparently.

24          MS. REILLY:  Objection.

25          MR. WILLIAMS:  Objection to what?