**PX EXHIBIT 80**

**From:** "Larry Treankler <ltreankler@thevillage.bz>" <ltreankler@thevillage.bz>
**Sent:** Sun, 30 Dec 2018 20:53:49 +0000
**To:** Eric Pavony
**Subject:** Re: Moving Forward

Eric,

We've spent considerable time formulating a response to your email. I'm not going to respond to all of what you included but before I get to the primary purpose of this email I will respond to a couple points.

First, we have a fundamental disagreement on whether or not Bay Tek has breached the agreement or for that matter Full Circle's own breaches. I'll leave it at that.

Second, your request to have someone other than Bay Tek manufacture Skee-Ball lanes for FCU appears to be based on misconception. While there are many unclear terms in the license agreement the terms of Section 5.2 are pretty clear. As long as Bay Tek is making Skee-Ball lanes, Full Circle is required to utilize lanes built by Bay Tek. If Full Circle engages a manufacturer, other than us, such engagement will be a very serious breach of the license agreement perhaps rendering it entirely null and void according to our attorneys.

We could exchange emails back and forth for days or weeks but that's not likely to resolve anything. Our attorneys could beat on one another for months, perhaps years, to what cost and to what unknown outcome?

Bay Tek's leadership team has spent a considerable amount of time evaluating our entire relationship with FCU in an attempt to come up with a solution that will be acceptable to us and our brand and attractive to you guys. I would like to fly down to Austin for a meeting with you, Wikman, and Cooper to discuss a proposal. It is not a proposal that I am willing to present other than in a face to face meeting with all three of you.

Let me know that you are willing to meet and I'll put things in motion to get it on our schedules.

Eric, you ended your email saying you were fully committed to finding a mutually acceptable business solution. That's the kind of solution I intend to propose.

Let me know.

Larry

---

**From:** Eric Pavony <eric@nsbl.com>
**Sent:** Thursday, December 13, 2018 7:07:01 AM
**To:** Larry Treankler
**Subject:** Moving Forward

Larry,

Myself and the other Erics have been thinking long and hard about what has happened *(and not happened)* since Bay Tek purchased Skee-Ball, Inc almost 3 years ago.

On July 17, 2017 you looked me and Wikman in the eyes and said, "Thus far we have not given Full Circle the 'Bay Tek treatment'. I can apologize to you verbally, but instead I will apologize through my actions and

FCU000002822
CONFIDENTIAL

involvement from here on out and ensure Full Circle gets the 'Bay Tek treatment'."

Larry, we agree with you that **actions** speak louder than words, and Bay Tek's actions *(especially since the acquisition of Dimensional Branding Group, on or around January 3, 2018)* have been loud and clear.

That said, our company can no longer tolerate this damaging "Bay Tek treatment".

On behalf of Full Circle United, LLC, this email is to express our serious concerns with respect to Bay Tek's clear breach of our Revenue Share Agreement. Recent facts have also come to light over the past few weeks suggesting multiple breaches of our Confidential Settlement Agreement and Confidential Trademark License Agreement, in addition to possible claims against Bay Tek for fraudulent misrepresentation, tortious interference and illegal disclosure of Full Circle's critical trade secrets in violation of both Federal and State laws.

Before we dive in to the basis for Full Circle's present concerns, we must stress that our investigation of these matters is presently ongoing and that Full Circle respectfully reserves all rights, arguments, defenses and claims in connection with the present matter.

Larry, I also wish to emphasize that myself, Cooper and Wikman write to you today with a very heavy heart. When we first negotiated our Confidential Trademark License Agreement and settled our prior claims against Skee-Ball, Inc. in the aftermath of a very public and time consuming lawsuit, we facilitated what we thought at the time to be a bright and promising business relationship with Joe Sladek, the then owner of the Skee-Ball® brand. We truly believed the days of distrust and unproductive distractions, mostly inflamed then by Dimensional Branding Group, were behind us. Importantly, by consummating these settlement agreements, Full Circle ultimately became a licensee and customer of what is now your company, enjoying the rights to develop and conduct Live Play Skee-Ball® events without interference from Bay Tek. Full Circle's rights were further and explicitly carved out from Bay Tek's exclusive license agreement with third party Dimensional Branding Group, which you later acquired. Dimensional, as you probably know, was the major impetus to the prior litigation with Skee-Ball, Inc. DBG's John Leonhardt and Larry Seidman, with their bad faith, were antagonists during the lawsuit and to the events leading up to it.

Our consent was needed when you acquired Skee-Ball, Inc in 2016 and we granted it, with reliance upon Bay Tek's word and what we then thought were good faith discussions about the furtherance of our business relationship and our mutual vision for Skee-Ball®. Furthermore, in 2017, we entered into the Revenue Share Agreement in reliance upon the manufacturing commitment clearly stated in the Confidential Trademark License Agreement. Your commitment under the Revenue Share Agreement was to deliver Full Circle 36 Skee-Ball® LIVE lanes for our expanding Live Play business during a critical time in the development of our company. On multiple occasions in 2017, you and various members of your team, all of whom were official representatives of Bay Tek at the time, met with, emailed or spoke with us and manifested acceptance of our Revenue Share Agreement for 36 Skee-Ball® LIVE lanes. In fact, Bay Tek continues to accept revenue share payments from Full Circle on the 10 Skee-Ball® LIVE prototype lanes you were able to partially perform on in October of 2017. Given all of this, the fact that the Revenue Share Agreement exists for 36 Skee-Ball® LIVE lanes is undeniable, and our subsequent revenue share payments to Bay Tek demonstrate nothing but Full Circle's total commitment and reliance upon the original terms of our agreement.

Sadly, and despite Full Circle's positive intent and good actions throughout the entire course of these events, we have sustained substantial damages as a result of Bay Tek's breaches of the Revenue Share Agreement and Full Circle's reliance upon the subsequent misrepresentations made by you and various members of the Bay Tek team, as is detailed below and in the attached damages report.

Please see the attached preliminary damages report, detailing the extent of Full Circle's damages through November 30th, 2018, in connection with the Revenue Share Agreement breaches. Included as well are the damages as a result of Bay Tek's decision to not assist with the installment of credit card units despite agreeing to see that through. Please note, this is a preliminary analysis, as our investigation of the matter is

ongoing. As is clearly shown in the complete damages report attached, Bay Tek's failure to perform its manufacturing commitment to deliver the initial 36 Skee-Ball® LIVE lanes in support of our Live Play business, plus refusing to aid in the agreed upon credit card unit installment, has resulted in a total revenue loss to Full Circle of $656,112. We also point out that these actions have resulted in a loss of revenue share payments to Bay Tek, totaling $63,036.

Note, these calculations are based on revenues which would have been realized had Bay Tek performed under the terms of the contract and the original plan presented to you in August of 2017, to have 147 Skee-Ball® LIVE lanes in NSBL Live Play venues by November 2018. Please see the below summary of estimated damages as of the present date. We would be happy to walk you through these numbers on a call with you and/or your attorney if you would like further clarification:

- **Total Revenue Loss to Full Circle = $656,112**

- **Total Revenue Share Loss to Bay Tek = $63,036**

- **Total Revenue Loss to Full Circle (Net Bay Tek Proceeds) = $593,076**

In addition to the above revenue share damages, Bay Tek's actions have further caused Full Circle to lose its coveted "first to market" advantage with respect to its Live Play business. This has caused Full Circle further substantial damages, in addition to directly resulting in the loss of specific investment opportunities which were, as you know, in fact dependent upon having a larger sample size of Skee-Ball® LIVE lanes in multiple venues to showcase our business potential and scalability. The extent of these additional damages are difficult to calculate, but they are in fact quantifiable by experts and potentially catastrophic. Were this matter to proceed to a trial, we estimate that Full Circle's total damages would easily exceed $1,000,000, after a comprehensive discovery of all relevant facts, documents and communication is completed by our attorneys.

Compounding the substantial damages caused by Bay Tek's breaches, actions and/or inactions in connection with the Revenue Share Agreement, recent facts suggest Bay Tek may very well be in violation of various terms of the Confidential Trademark License Agreement and Confidential Settlement Agreement, including 5.2 of the former agreement, stating Bay Tek "agrees it will not, directly or indirectly, operate, sponsor, or endorse a business involving Live Play," and Section 4.1. of the latter agreement, re-stating Bay Tek "will not, directly or indirectly, operate sponsor, or endorse a business anywhere in the world, involving Live Play business." Our review of the facts additionally give us a strong reason to believe that Full Circle's trade secrets may have been intentionally divulged to various third parties in violation of both State and Federal laws protecting Full Circle's valuable and critical intellectual property.

While we continue to have grave concerns about the above and our investigation into these matters is currently ongoing, Full Circle remains optimistic and hopeful, given the recent success of our biggest Live Play event to date, held on November 10 & 11. Skee-Ball® LIVE on Twitch drew 130,000+ viewers from countries all over the world just on that Saturday lanecast alone – a great boost and new audience for the Skee-Ball® brand in which we are both mutually invested.

We feel strongly that, despite all of the above, there is as of today still a window to get our relationship somewhat "back on track" with the newly rebranded Bay Tek Entertainment and to achieve mutual profitability. We firmly believe it's in the best interests of both parties to find a business solution here, as opposed to a legal one, and remain fully committed to finding a logical and profitable pathway that does not involve a second litigation, this time against Bay Tek Entertainment.

As such, we would like to propose the following as a pathway to resolution as opposed to litigation. While we can never fully revive the vision of the partnership we originally consummated, the following will result in a fair and profitable scenario for both parties:

FCU000002824
CONFIDENTIAL

• Bay Tek's official consent to Full Circle's use of the phrase Skee-Ball® House. This request was made on multiple occasions to Bay Tek in accordance with the applicable provisions of the Confidential Trademark License Agreement. To date, we have not received any response. We feel strongly that it's in our mutual best interest to grant Full Circle use of this phrase, as this will enable larger revenue opportunities for both parties. I should also note, that in accordance with our agreement, Bay Tek must not delay or unreasonably withhold permission regarding use of the phrase Skee-Ball® House.

• Monetary compensation for the loss of lane revenue, investments, market advantages and opportunities sustained as a result of Bay Tek's inability to deliver the Skee-Ball® LIVE lanes under the clear terms of the manufacturing commitment. Given the extent of our losses, we would be willing to accept $593,076 as a full and final settlement for these claims.

• Bay Tek's official consent under Section 5.2. of the Trademark License Agreement to manufacture Skee-Ball® branded ally roller machines (Skee-Ball® LIVE lanes) with a third party, given that Bay Tek as the successor to Skee-Ball, Inc has been unable to fulfill our needs under the contract and despite our best efforts to comply. It has also clearly become impractical to rely upon or work with Bay Tek on a fundamental element for success in our exclusive Live Play marketplace – the development and manufacturing of our Skee-Ball® LIVE lanes. We request to be relieved of all obligations set forth in Section 5.2. of the License Agreement and be granted the ability to select our third party manufacturer in our sole and absolute discretion to manufacture our Skee-Ball® LIVE lanes, in perpetuity if we so choose. In consideration for this consent, Bay Tek would be fully relieved of any further manufacturing commitments set forth in Section 5.2 of the Trademark License Agreement.

With respect to item three (3) above, please be advised that this email constitutes our formal notice and request to select a third party manufacturer for our Skee-Ball® LIVE lanes under Section 5.2. of the Confidential Trademark License Agreement. If Full Circle does not receive a response to this request by December 31, 2018 we will deem Bay Tek's consent to have been granted and will proceed to have a third party manufacture our Skee-Ball® LIVE lanes. This is absolutely required at this time to begin to mitigate some of the damages we have sustained as a result of Bay Tek's failure to produce the committed Skee-Ball® LIVE lanes.

In closing, we want to emphasize that despite recent facts suggesting numerous breaches and claims against Bay Tek, Full Circle remains fully committed to finding a mutually-acceptable business solution. While we were extremely disappointed with the way events unfolded this year in the aftermath of Bay Tek's acquisition of Dimensional, we remain hopeful that our more sensible business natures will prevail and that a productive, profitable and positive relationship can be restored between Full Circle and Bay Tek Entertainment in accordance with the terms of the agreements reached as a result of our prior lawsuit.

If we cannot find a sensible business solution, as we have outlined above, we are committed to fully pursuing any and all available legal remedies under the law to protect our company and 13+ year investment in Full Circle's intellectual property and building of the National Skee-Ball® League.

Larry, we appreciate your consideration of the above and your listening to our present concerns. We look forward to discussing with you at your earliest convenience and respectfully reserve all rights, arguments, defenses and claims in connection with the present matter.

–Eric Pavony

FCU000002825
CONFIDENTIAL