# PX EXHIBIT 92



2501 East Enterprise Avenue
P.O. Box 785
Appleton, WI 54912-0785
p 920.731.6631
f 920.734.0981

**Patrick J. Coffey**
Patrick-Coffey@mennlaw.com

February 25, 2020

Attorney Paul B. Thanasides
McIntyre, Thanasides, Bringgold, Elliott,
   Grimaldi, Guito & Matthews, P.A.
500 East Kennedy Boulevard, Suite 200
Tampa, FL 33602

*VIA E-MAIL:*
paul@mcintyrefirm.com

RE:    Full Circle United / Bay Tek Entertainment

Dear Paul:

Please accept this correspondence as a response to your correspondence of February 12, 2020, and your email of February 19, 2020, providing us until February 25, 2020 to respond.

As you are well aware, the parties are bound by the Confidential Trademark License Agreement ("License Agreement") executed in 2014. The License Agreement's terms require FCU to utilize its best efforts to build a national network of Live Play teams, leagues and/or events in at least 15 states in the United States within five (5) years of the effective date of this Agreement.

While we are well outside of that five (5) year time frame, we recognize FCU's apparent recent attempts with regard to ESPN. Consistent with its prior actions, and consistent with our prior discussions, my client is committed to assisting FCU's efforts and to continue further dialogue between the parties, if said dialogue is possible.[1]

Be that as it may, the document provided by you entitled ESPN, Inc. Agreement (the "ESPN Agreement") is not acceptable to my client. There are a number of concerns with that proposal as presented by your client:

    1)    Proper Disclosure of the Rights and Obligations of FCU and Bay Tek

Paragraph 10 of the ESPN Agreement suggests that FCU has advised ESPN that "it has all rights necessary to its grant of rights to ESPN hereunder," and that "the rights ESPN has acquired and its use of such rights [under said ESPN Agreement], will not infringe upon or violate the rights of any third party." Has FCU provided ESPN a copy of the License Agreement between our respective clients? As you are well aware, paragraph 17.1 of the License Agreement, limits the parties' rights to disclose the terms and conditions of the License Agreement to third parties. Notwithstanding, Bay Tek would consider authorizing FCU to disclose to ESPN terms of the

---

[1] Clearly, correspondence has been communicated between our respective clients recently that has not been responded to. I direct your attention to my correspondence of January 27, 2020, as well as our notice of default dated July 26, 2019.

01264872.DOCX

License Agreement in order to facilitate changes to the ESPN Agreement in order to avoid conflict with the terms of the License Agreement. Quite honestly, the degree to which FCU and ESPN have agreed regarding Bay Tek's intellectual property rights to be assigned to ESPN is not only overwhelming, but violative of the License Agreement.

2) The Program

My client needs to know more about "the Program," as outlined in the ESPN Agreement. It refers to it as a "compilation program." We are uncertain as to whether or not the ESPN Agreement purports to depict actual Live Play events as they occur. There is a concern in this regard which we would like to further discuss with FCU. Specifically, paragraph 3.1 of the License Agreement provides a "limited license" for "conducting, arranging, presenting, marketing, and promoting live play leagues, teams, events, and tournaments utilizing alley rollers manufactured by (Bay Tek) and called Skee-Ball® machines." Without knowing more about the Program contemplated by the ESPN Agreement, my client questions whether or not FCU is attempting to go beyond the limited license granted to it, to engage in some other type of unlicensed conduct. This is further highlighted by the fact that Section 4 of the License Agreement specifically requires FCU to seek permission to use the Skee-Ball trademark in a manner that is not expressly licensed under the Licensing Agreement. We suspect that is why you have forwarded your correspondence of February 12, 2020, with the attached ESPN Agreement.

We look forward to a response in this regard.

3) Exclusivity, Timeframe, and Creative Control

Under the ESPN Agreement, ESPN is granted the "exclusive" right to distribute, transmit, exhibit, license, advertise, duplicate, promote, perform, telecast and otherwise exploit the Program and its constituent element and any other material pertaining to the Program throughout the universe by all means and media now known or subsequently developed, on a live and/or delayed basis, without limitation as to the number of uses. Moreover, the ESPN Agreement provides for those rights to be "perpetual." ESPN further reserves the right of those perpetual and exclusive rights to "make reproductions of the Program and its constituent elements and to use, exhibit, and deal with those reproductions and any other material pertaining to the Program in any manner or media whatsoever, including but not limited to the right to incorporate the Program and/or its constituent elements into other work for commercial profit." Moreover, ESPN retains complete creative control over the Program. All of these acts go well beyond the rights that FCU has been granted in the License Agreement, and potentially impact not only FCU's rights, but certainly Bay Tek's rights to properly monitor and control the manner in which Skee-Ball® and other related intellectual property is commercially exploited by ESPN. As specifically stated, "ESPN has the right to exercise creative control and approval over the production and format of the Program and all content related thereto – ESPN has the limited right to edit, augment, supplement, and otherwise adapt the Program, including without limitation, titling or retitling the Program and, subject to the rights granted to NSBL in Section 5, to insert commercial and promotional material … NSBL will not include in the Program any credit to any person or entity."

4)     Sublicense

Under the ESPN Agreement, "ESPN shall have the right, and may grant others the right to reproduce, print, publish or disseminate in any medium…NSBL and the National Skee-Ball League's name, trademarks, service marks, and logos for information purposes and to advertise, promote, publicize and Distribute the Program and ESPN's exploitation thereof, as well as to advertise, promote and publicize ESPN's programming services and other commercial ventures, but not as a direct endorsement of any product or other services." This is also problematic to Bay Tek, as ESPN's ability to use and sublicense the use of SKEE-BALL® without standard conditions or restrictions undermines the distinctiveness and enforceability of the Skee-Ball Trademark. It also certainly would allow ESPN to exploit the SKEE-BALL brand in connection with ESPN's own commercial ventures for which Bay Tek received no tangible commercial benefit.

5)     Moral Rights

The ESPN Agreement requires FCU and, effectively, Bay Tek to "waive any rights of attribution, integrity, publication or any other personal or moral rights that may accrue or have accrued to it under the laws of any jurisdiction." As you are well aware, Bay Tek has specifically indicated that the SKEE-BALL Trademark, and its moral equivalent, are critical to its business operations (see paragraph 7.1 of the License Agreement). In essence the ESPN Agreement will result in Bay Tek having no control over the character and quality of the Program or as to how the Program is exploited by ESPN in perpetuity. The ESPN Agreement places Bay Tek in a precarious position of providing ESPN with the use of one of its assets for no real consideration.

6)     Future Rights

In light of the aforementioned concerns, the ESPN Agreement also addresses future rights in Section 15. Once again, ESPN is reserving the "exclusive and irrevocable option to acquire from (FCU) exclusive rights and production services for one or more Programs of the 1010 (sic) Skee-Ball National Championship event pursuant to all the provisions of this Agreement (the "Option")." As the future rights are identified, those future rights can be exercised indefinitely with no other limitation and/or restriction other than is outlined in the ESPN Agreement. As indicated previously, the ESPN Agreement substantially violates the terms and conditions of the License Agreement.

------------------------

As you are well aware, your correspondence regarding this matter was provided to us on February 12, 2020, at 4:27 p.m. CST. Bay Tek has undertaken extraordinary efforts to meet your unilaterally imposed deadline of February 25, 2020. In those 13 days, Bay Tek has consulted with members of its team to address the issues raised by the ESPN Agreement. The issues outlined in this correspondence are the result of those review efforts. Bay Tek reserves the right to outline

additional concerns regarding the ESPN Agreement, after further consideration, regardless of your unilaterally imposed deadline.

However, in an attempt to cooperate with FCU, Bay Tek has provided substantial concerns regarding the ESPN Agreement, which have been outlined herein.

As indicated previously, Bay Tek is encouraged by the apparent efforts of FCU. Bay Tek would like to encourage additional efforts by FCU to commercially exploit the "Licensed Uses," as defined, contemplated and required by the License Agreement. Moreover, Bay Tek is willing to assist FCU with regards to the ESPN proposal. In that regard, Bay Tek is prepared to sit down with FCU and ESPN to discuss the terms and conditions of any agreement, and how those terms and conditions can conform to the terms of the License Agreement and how they may impact not only the rights of FCU, but of Bay Tek. It is the hope and desire of Bay Tek to reasonably cooperate with FCU with this particular issue and other issues in the future, while preserving the rights of our respective clients under the License Agreement.

Unfortunately, as presented, and in the timeframe presented, Bay Tek does not approve of the terms and conditions concerning the ESPN Agreement for the Program.

Once you have had the opportunity to review this correspondence with your client, please contact me. I look forward to continuing to work collaboratively to address matters, consistent with the rights and privileges of all parties to the License Agreement.

Very truly yours,

MENN LAW FIRM, LTD.

Patrick J. Coffey

PJC:sm