# PX EXHIBIT 78



# METZLER
## TIMM | TRELEVEN, S.C.

ATTORNEYS AT LAW

Ronald F. Metzler
Cynthia C. Treleven
David J. Timm
Christopher J. Pahl*
Laura J. Beck
Chad R. Levanetz

*Also Certified Public Accountant

222 Cherry Street
Green Bay, WI 54301-4223

Phone (920) 435-9393
Fax (920) 435-8866

www.titletownlaw.com

March 21, 2018

**VIA EMAIL**

Full Circle United, LLC
Attn: Mr. Eric Pavony
1810 East 12th Street
Austin, TX 78702

RE: Bay Tek Games, Inc.
Confidential Trademark License Agreement dated July 17, 2014 (the "License Agreement")

Dear Mr. Pavony,

Our law firm represents Bay Tek Games, Inc. ("Bay Tek"). We have been asked to contact you in regard to matters related to Full Circle United, LLC's ("Full Circle") business with Bay Tek arising out of and related to the License Agreement.

We understand that recent discussions have taken place between Bay Tek and Full Circle regarding the License Agreement and the overall relationship as between Bay Tek and Full Circle. Pursuant to the terms of the License Agreement, and despite any concerns that this letter may raise, Bay Tek intends to supply Full Circle with all of Full Circle's requirements for Skee-Ball branded alley roller machines for all Live Play (as defined in the License Agreement).

There are, however, three issues related to the relationship and the License Agreement which Bay Tek feels require attention.

First, my understanding is that ten custom made prototype Skee-Ball branded alley roller machines (hereinafter referred to collectively as the "Skee-Ball Games") were delivered to Full Circle on or about October 20, 2017, and that four of the Skee-Ball Games are located at Full Circle's New York, New York establishment and the other six Skee-Ball Games are located at Full Circle's Austin, Texas establishment. My further understanding is that the Skee-Ball Games were delivered to Full Circle under terms of a 15% revenue share oral agreement for which Bay Tek never received any payment. If Full Circle believes that it has had no obligation to remit 15% revenue generated by the Skee-Ball Games to Bay Tek please advise. On the other hand, if my understanding of a 15% revenue share obligation is correct, it is difficult to imagine that the Skee-Ball Games have generated no revenue since Full Circle took delivery. As such, the first purpose of this correspondence is to request that Full Circle provide to my office, on or before April 2, 2018, a full accounting of all gross

revenue generated by the Skee-Ball Games (by individual location and broken down by month) since October 20, 2017.

The second matter which requires attention before overall relationship issues can be considered is the status of the Skee-Ball Games operated by Full Circle but still owned by Bay Tek.

In order for Full Circle to continue to use the Skee-Ball Games Bay Tek would like Full Circle to buy them. Bay Tek is willing to sell all ten to Full Circle for a total price of $70,000.00. Should Full Circle want to purchase less than all of the Skee-Ball Games, Bay Tek is willing to sell them at a price of $7,500.00 per game. Bay Tek desires that the close of Full Circle's purchase of all, or less than all, of the Skee-Ball Games occur on or before April 23, 2018 (the "Termination Date"). Of course Bay Tek expects that Full Circle will remit payment to Bay Tek of its 15% revenue share, along with an appropriate accounting, up through and including the Termination Date.

Bay Tek will make arrangements for the return, at Bay Tek's cost and expense, of any of the Skee-Ball Games which Full Circle does not purchase.

There is one other material issue of concern that Bay Tek has identified with respect to its relationship with Full Circle. Bay Tek is concerned that Full Circle's "Live Play App" (the "App") does not conform to the limited SBI Use Guidelines, as defined in Section 3.1(a) through (d) inclusive, of the License Agreement. Provide to me, on or before the Termination Date, a detailed written explanation/summary/description of the App's applicability to conducting, arranging, presenting, marketing and promoting live play leagues, teams, events and tournaments.

Direct all responses to this correspondence to my attention. If you have questions, or if you would like to discuss this correspondence with me, feel free to call.

Sincerely,

METZLER, TIMM, TRELEVEN, S.C.

David J. Timm

DJT:js

cc: Bay Tek Games, Inc.
    Attn: Mr. Larry A. Treankler (via email)
       Ms. Holly Hampton (via email)
   Attorney Chad R. Levanetz

FCU000005554
CONFIDENTIAL