# PX EXHIBIT 91

| | |
|---|---|
| From: | Holly Hampton </O=BAY TEK INC/OU=BAY-TEK/CN=RECIPIENTS/CN=HOLLY> |
| Sent: | February 13, 2020 11:55 AM |
| To: | Matt |
| Subject: | FW: Full Circle United, LLC contract with ESPN |
| Attachments: | Letter to Bay Tek Entertainment re FCU contract with ESPN.pdf |
| Importance: | High |

Hey Matt,

Exciting opportunity here for the Skee-Ball brand…

I'll give you a call so we can chat!

Holly

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY

BT0010333

# MCINTYRE THANASIDES

*Reply to:*
Paul Thanasides
paul@mcintyrefirm.com

February 12, 2020

**Via Electronic Mail to:**
**David-Timm@mennlaw.com**
**Patrick-Coffey@mennlaw.com**

Bay Tek Entertainment, Inc.
c/o David Timm, Esq. and Patrick Coffey, Esq.
Menn Law Firm, Ltd.
480 Pilgrim Way, Suite 1200
Green Bay, WI 54307-0597

    Re:    FCU contract with ESPN

David and Pat,

During our last phone call, I mentioned that ESPN would likely be broadcasting the National Skee-Ball® League ("NSBL") 2020 Championship. That likelihood has now become a certainty.

I have attached a proposed contract between Full Circle United, LLC ("FCU") and ESPN for the broadcast and distribution of "National Skee-Ball® League: Legends of the Lane – 2020 Championship on ESPN" (the "Program"). ESPN drafted the proposed contract and has agreed to its terms. ESPN is now only waiting for FCU to execute it and begin production of the Program.

As you know, the NSBL has held tournaments every year since 2017, which FCU has broadcast and distributed via Twitch and other video streaming services and social media platforms, and which have also been covered by local and national television networks. The attached draft agreement between FCU and ESPN involves the same type of Live Play event that FCU has conducted, broadcast, and distributed in the past with Bay Tek's knowledge. This agreement simply gives NSBL a much larger distribution network. ESPN's broadcast of the Program will launch NSBL into national recognition and facilitate its rapid growth.

Under the terms of the draft agreement with ESPN, FCU has the right to retain one presenting or title sponsor for the Program. It also has the opportunity to secure other secondary sponsors for placement on lanes, competing rollers, tournament banners, etc., like it has for prior NSBL tournaments. Bay Tek will receive 5% of the gross revenue generated from all of these sponsorships, just as it has from every other Live Play event conducted by FCU.

This is only the beginning of ESPN's involvement with the NSBL. ESPN has demonstrated in writing a strong enthusiasm for further broadcasting of NSBL's events, based on the prior NSBL events on Twitch. Indeed, as you will see in the draft, ESPN has asked for first negotiation and

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY    BT0010334

first right of refusal on future events. This is the start of a long and beneficial relationship for everyone involved.

ESPN's broadcast and distribution of the Program gives the NSBL the national-level exposure needed to help FCU attain its goals of making live, competitive Skee-Ball® the most popular game with the most fun local, regional and national leagues in the country and around the world. The positive attention generated by ESPN will help build value for Bay Tek's Skee-Ball® brand. It is a win-win for FCU and Bay Tek, as well as for the television audience, advertisers, and ESPN.

FCU must begin spending significant money, time, and effort to develop the Program right away to meet the deadline in the proposed agreement. To avoid any uncertainty and possible loss of FCU's investment and damage to FCU's relationship with ESPN, FCU asks that, if Bay Tek has an objection to the draft agreement, Bay Tek communicate its objection(s) and the reason(s) for such objection(s) to the undersigned by February 20, 2020. If there are merely specific changes you suggest to the draft, we can work hard to get those resolved with ESPN. Please send those in redline, if you have them.

If we do not receive a specific objection from Bay Tek to the proposed agreement by February 20, 2020, we will rely on Bay Tek's lack of objection and FCU will cement its relationship with ESPN and immediately begin its production of the Program. If Bay Tek later decides it has an objection, that will cause FCU enormous damage, and likely permanent harm to FCU's relationship with ESPN. Accordingly, I beg of you to please state any objection(s) you may have to the proposed agreement or broadcast/distribution of the Program before FCU executes the agreement at the end of the day on February 20, 2020.

Sincerely,

Paul Thanasides

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY
BT0010335

ESPN, INC.
AGREEMENT

THIS AGREEMENT ("Agreement"), dated as of _____, 2020, is between Full Circle United, LLC, 11 Wolcott Street, Unit 1, Brooklyn, NY 11231 ("NSBL"), and ESPN, Inc., ESPN Plaza, Bristol, Connecticut 06010 ("ESPN").

NSBL agrees to furnish ESPN all rights and services specified below in connection with audio-video programs based on the subject matter described below, according to the following terms and conditions.

1. PROGRAM

    The title and subject matter of the Program shall be as follows: "National Skee-Ball League: Legends of the Lane – 2020 Championship on ESPN," a compilation program (the "Program").

2. PRODUCTION

    (a) Production Staff and Facilities. NSBL shall provide the production staff and other personnel, facilities and services required to produce the Program.

    (b) Commercial Format. The Program shall be approximately thirty (30) minutes in length and conform with ESPN's standard commercial format for on-air commercial time, promotional time and transition time (which may be modified at any time by ESPN), the current version of which is attached in Exhibit II.

    (c) Production Standards. The production standards and quality of the Program must be at least the same as those of current programs appearing on ESPN.

    (d) Creative Control. At all times, ESPN has the right to exercise creative control and approval over the production and format of the Program and all content related thereto. NSBL must consult with ESPN regularly throughout the development and production of the Program. ESPN has the unlimited right to edit, augment, supplement and otherwise adapt the Program, including without limitation, titling or retitling the Program and, subject to the rights granted to NSBL in Section 5, to insert commercial and promotional material. Without first obtaining ESPN's written consent, NSBL will not include in the Program any credit to any person or entity.

3. DELIVERY

    (a) Specifications. NSBL must deliver a rough cut of the Program to ESPN's tape library in Bristol, Connecticut on or before June 1, 2020. NSBL must also deliver a final cut of the Program to ESPN's tape library on or before August 1, 2020. The Program must be delivered in accordance with ESPN's "Production Guidelines for Packagers and Producers of Programming" ("Production Guidelines") attached as Exhibit III, which ESPN may change upon reasonable,

ESPN SSPA 2018/10/25
2020 ESPN Ocho _Skee-ball Championship (2.11.20) kd

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY                                                                                    BT0010336

prior notice to NSBL. NSBL must additionally deliver a digital Beta clone and a digital Beta clean copy (minus graphics and billboards) of the Program. Delivery of the videotape of the Program meeting such requirements as are set forth in this Agreement by the date indicated above shall be deemed to be of the essence of this Agreement.

(b) <u>Delivery Costs</u>. All costs of delivering the Program to ESPN in the required form and at the specified location must be paid by NSBL.

4. CONSIDERATION

In full consideration for all rights, materials and services to be supplied by NSBL hereunder, NSBL shall have the right to secure or retain either one "Presenting Sponsor" (i.e., a commercial name designated as the "presenter" of the Program) or "Title Sponsor" (i.e., a commercial name designated in the formal title of the Program) subject to the following:

(i) ESPN will have the right to approve any Presenting or Title Sponsor as well as the terms of the sponsorship package.

(ii) All graphical depictions of the Presenting or Title Sponsor's identities are subject to ESPN's prior approval.

(iii) Any Presenting or Title Sponsor or other level of sponsorship of the Program arranged for by NSBL will not have the intent or effect of affording such sponsor any presence in the Program without ESPN's prior approval, in its sole discretion (which approval, without limiting the generality of the foregoing, may be conditioned on an appropriate ad buy within the Program, as determined solely by ESPN).

(iv) All solicitations and sales by NSBL of any Presenting or Title Sponsor is subject to ESPN's prior approval and to ESPN's Advertising Regulations in Exhibit I and Media Delivery Guidelines as set forth in the Production Guidelines.

(v) ESPN shall retain the right to sell or allocate all other commercial inventory for the Programs in its sole discretion.

5. DISTRIBUTION & EXHIBITION

(a) <u>Distribution Rights</u>. ESPN has the exclusive, perpetual right to distribute, transmit, exhibit, license, advertise, duplicate, promote, perform, telecast and otherwise exploit (collectively, "Distribute" or "Distribution") the Program and its constituent elements and any other material pertaining to the Program throughout the universe, by all means and media now known or subsequently developed, on a live and/or delayed basis, without limitation as to the number of uses. For the avoidance of doubt and without limiting the foregoing, ESPN may Distribute any of its affiliated linear television networks and services (and rights-cleared versions of any such network or service) (e.g., ESPN, ESPN2, ESPN on ABC) via any means and media, now known or hereafter devised. ESPN also has the perpetual right to make reproductions of the Program and its constituent elements and to use, exhibit and deal with those reproductions and any other material pertaining to the Program in any manner or media whatsoever, including but

 SSPA 2018/10/25
2020 ESPN Ocho _Skee-ball Championship (2.11.20) kd

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY                                                                                           BT0010337

not limited to the right to incorporate the Program and/or its constituent elements into other works for commercial profit. In the event that ESPN declines to broadcast, publish, release, or distribute the Program in any way by December 31, 2020, and only in such an event, NSBL will have the right to distribute or publish the Program on the internet through streaming video networks/services such as Twitch and YouTube and/or social media platforms such as Facebook, Instagram, and Twitter, and any reference to ESPN must be removed from the Program and all revenues from any advertising or sponsorship(s) solicited by NSBL therein will belong solely to NSBL.

(b) <u>Obligation to Distribute</u>. ESPN will use all reasonable efforts to Distribute the Program once on an ESPN linear network, which network will be determined in ESPN's sole discretion, unless ESPN is prevented from doing so for reasons beyond its control, conflicting scheduling requirements or other bona fide reasons. Any Distribution schedule for the Program (whether or not NSBL receives notice of it) is subject to change at any time for any reason in ESPN's sole discretion.

(c) <u>Exclusivity</u>. NSBL will not cause, authorize, license or permit any exhibition or Distribution of the Program or any portion thereof in any form or location by any means or media whatsoever other than by ESPN.

6. COPYRIGHT

(a) <u>Ownership</u>. ESPN shall own all right, title and interest in and to the Program and its constituent elements (and any other material shot or pertaining to the Program, whether or not such material was incorporated into the Program). All of NSBL's work and services under this Agreement are works done under ESPN's direction and control and have been specifically created or commissioned by ESPN as part of an audiovisual work. Accordingly, all such services and each of the works created by this Agreement will be commissioned as a "work made for hire" under U.S. and international copyright laws and are the sole and exclusive property of ESPN. To any extent that the Program does not vest as a "work made for hire," this Agreement constitutes an irrevocable assignment to ESPN of all of NSBL's right, title and interest in and to the Program, including all ownership of the Program's copyright. Further, if NSBL commissions music for the Program on a work-for-hire basis, NSBL shall assign to ESPN all right, title and interest it has in such music.

(b) <u>Waiver of Moral Rights</u>. NSBL waives any rights of attribution, integrity, publication or any other personal or "moral" rights that may accrue or have accrued to it under the laws of any jurisdiction, including but not limited to any right to publish or withhold publication (*droit de divulgation*), to be or not be associated with the Program (*droit a la paternite*) or to preserve the integrity of the Program (*droit de retrait ou de repentir*).

7. PRODUCTION ARRANGEMENTS

(a) <u>Site and Participants</u>. NSBL is solely responsible for all arrangements, including any compensation, with the owner(s) of the site(s) where the Program is produced (the "Site(s)") and all participants and any officials involved in the Program. Those arrangements must accord to


SSPA 2018/10/25
2020 ESPN Ocho _Skee-ball Championship (2.11.20) kd

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY

ESPN all rights and consents now or subsequently required for the exploitation of ESPN's rights as authorized by this Agreement. NSBL is solely responsible for ensuring that the attire of all participants involved in the Program conforms to both ESPN's Advertising Regulations as set forth in Exhibit I as well as the Production Guidelines set forth in Exhibit III.

(b) Signage. NSBL represents and warrants that it will not cause or allow at the Site(s) any sign, billboard or other display or announcement for any television network, distribution service or station, Internet service or portal, or any other entity engaged, in whole or in part, in the business of distributing sports-related (including sports news and information) audio-visual content. NSBL further represents and warrants that it will not cause or allow at the Site(s) any sign, billboard or other display or announcement for any other product or service in a manner that tends to be visible or audible in the Program, except for advertising installed at locations at the Site other than the immediate area on which an event occurs (e.g., stadium billboards targeted at on-Site spectators) or which is approved by ESPN in writing in advance.

(c) Production Guidelines. The Program must conform to ESPN's Production Guidelines. Without limiting the foregoing, NSBL acknowledges that the above Production Guidelines require NSBL to incorporate in the Program at its own cost closed captions for the hearing-impaired compliant with the FCC's standards as provided in 47 C.F.R. §15.119 (as such standards may be revised or amended).

(d) Personnel and Facilities. Only "above-" and "below-the-line" personnel, facilities and elements approved by ESPN shall be used by NSBL in producing the Program. Upon ESPN's request, NSBL shall provide talent and assistance to ESPN in any marketing campaign related to the ESPN 8 The Ocho Day programming.

8. EXPENSES & CLEARANCES

(a) Costs and Expenses. NSBL is solely responsible for all costs and expenses whatsoever required in connection with the production and exploitation of the Program including but not limited to: (i) any necessary fees to the organizers of any event(s) (or other properties) on which the Program is based and the participants in such event(s); (ii) acquiring the necessary exclusive rights and licenses for production and Distribution of the Program, as authorized by this Agreement; and (iii) producing the Program, including but not limited to all above-the-line and below-the-line elements, postproduction, and underlying rights, including securing all music master, mechanical, performance rights and synchronization rights as necessary for music contained in the Program ("Music Licenses").

(b) Clearances. NSBL must arrange and be responsible for all necessary licenses, clearances, permissions and fees required in connection with the production of the Program and its exploitation consistent (whether by ESPN or NSBL, either party's affiliates and other duly authorized persons and entities) with the terms of this Agreement by NSBL and ESPN, its affiliates and other duly-authorized persons and entities, including without limitation all (i) agreements for use of the names, likenesses, trademarks and service marks of the individuals, entities and any event(s) on which the Program is based, and (ii) all Music Licenses and agreements for footage, photos and all other elements included in the Program. NSBL shall deliver an executed copy of each Music License to the ESPN, Inc. Music Department on or

-4-


HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY                                                                BT0010339

before delivery of the Program to ESPN. NSBL acknowledges that ESPN's Distribution of the Program will not rely on blanket or per-program music performance licenses (i.e., all performance rights to music in the Program must be cleared by NSBL at the source). NSBL additionally shall furnish ESPN with copies of all other licenses, clearances and permissions.

(c)     Union Obligations. If and to the extent any of NSBL's services specified herein fall within the purview or jurisdiction of a union or guild such as the Screen Actors Guild ("SAG") and/or the American Federation of Television and Radio Artists ("AFTRA"), NSBL shall comply with all rules, regulations and requirements of any union or guild having jurisdiction over such services. NSBL shall be solely responsible for compliance with all applicable collective bargaining agreements and the timely completion and distribution of proper contracts and special reports, including production time reports and audition reports. Any fines, penalties or costs resulting from NSBL's breach of this Section shall be the sole responsibility of NSBL.

(d)     No Payments by ESPN. Except as specifically required by this Agreement, ESPN shall not be obligated to make any payment to NSBL or anyone else related to the Program, its underlying material or ESPN's Distribution of the Program, all of such payments being the sole responsibility of NSBL.

(e)     Payments for Services. NSBL must pay to all persons who render services related to the Programs at least the amount required under any union or guild collective bargaining agreement, if any, that is applicable to the Program and to ESPN's rights hereunder.

9.   PROMOTION AND PUBLICITY

(a)     Names, Likenesses, and Marks. ESPN shall have the right, and may grant others the right, to reproduce, print, publish or disseminate in any medium, the name and likeness and voice of each person appearing in or connected with the Program and biographical material concerning such persons as well as NSBL and the National Skee-Ball League's name, trademarks, service marks and logos for information purposes and to advertise, promote, publicize and Distribute the Program and ESPN's exploitation thereof, as well as to advertise, promote and publicize ESPN's programming services and other commercial ventures, but not as a direct endorsement of any product or other services.

(b)     ESPN Marks. NSBL shall have no rights, in connection with the Event(s) or otherwise, to use ESPN's name, marks or other indicia without the prior consent of ESPN.

10.  WARRANTIES

(a)     By NSBL. NSBL warrants and represents to ESPN that:

(i)    (A)   It is free to enter into and perform this Agreement; (B) it has all rights necessary to its grant of rights to ESPN hereunder; (C) the rights ESPN has acquired, and its use of such rights, will not infringe upon or violate the rights of any third party; (D) it will not do anything which might tend to interfere with or impair the rights which ESPN has acquired in this Agreement; (E) neither ESPN nor any distribution system or service with which ESPN does business shall have any responsibility or liability for any services

 SSPA 2018/10/25
2020 ESPN Ocho _Skee-ball Championship (2.11.20) kd

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY                                                                                                                    BT0010340

in connection with the production of the Program, or any responsibility or liability not created by ESPN or any third party through which ESPN exercises its rights hereunder for the making of payments to any person by virtue of the use made of the Program or any other material supplied by NSBL, all residual payments to any such person being the sole responsibility and obligation of NSBL; (F) NSBL will not grant any rights inconsistent with the rights granted ESPN hereunder; and (G) as between NSBL and ESPN, NSBL shall assure that the Site(s) is in compliance with all occupational safety and health laws and regulations with respect to hazards that could affect ESPN personnel, and shall provide or cause to be provided to ESPN all information and cooperation necessary for ESPN to comply with ESPN's obligations under occupational safety and health laws as they relate to the Site; and

(ii) Neither the Program nor any element of, or material contained in, the Program will infringe upon or violate the right of privacy of, or right of publicity of or constitute a libel or slander against, or defame, or violate any copyright, trademark or service mark, common law or other right, of any person, firm or corporation or violate any other applicable law.

(b) <u>Exclusivity</u>. NSBL acknowledges that ESPN's rights in this Agreement are valuable and unique. Except as explicitly set forth herein, NSBL warrants that it will not authorize or permit any other exhibition or Distribution of the Program by any by any means or media whatsoever and that it will not grant any rights inconsistent with the rights granted ESPN herein. NSBL will not produce or license programs essentially duplicating the Program for television production, Distribution or recording by any third party.

(c) <u>By ESPN</u>. ESPN represents and warrants to NSBL that it has the right to enter into this Agreement and perform all of its obligations pursuant to this Agreement.

11. <u>INDEMNIFICATION AND INSURANCE</u>

(a) <u>Indemnity Obligations</u>. ESPN and NSBL each will indemnify, defend and hold each other harmless from ("Indemnify") any and all claims, costs, liabilities, judgments, expenses or damages (including reasonable attorneys' fees) ("Costs") arising out of any breach or alleged breach of this Agreement or any representation made in it. Further, NSBL will Indemnify ESPN with respect to Costs arising from all claims of any kind arising out of or in connection with (i) the Program and/or any material contained in them (including without limitation, claims of copyright and trademark infringement, violation of privacy or publicity rights, and libel or slander claims), (ii) NSBL's production of the Program (including, without limitation, claims relating to personal injury or payment for services rendered in connection with the Program), and (iii) ESPN's exercise of its rights under this Agreement in accordance with its conditions and limitations, including but not limited to ESPN's use and Distribution of the Program. Without limiting the foregoing, if NSBL fails to deliver to ESPN the Music Licenses in accordance with subsection 8(b), above, NSBL shall Indemnify ESPN for any amounts due to music performance rights societies as a result of ESPN's Distributions of the Program. In addition, NSBL shall Indemnify, defend and hold harmless ESPN from any and all Costs related to: (i) any actual or alleged physical damage to tangible property and/or personal injuries, including death, to any person, arising from the alleged negligent act(s) or omission(s) or alleged willful misconduct of


SSPA 2018/10/25
2020 ESPN Ocho _Skee-ball Championship (2.11.20) kd

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY                                                                                       BT0010341

NSBL, its employees or agents; and (ii) a third party claim that the services and/or equipment being supplied hereunder infringe or misappropriate any patent, copyright, trade secret or trademark of that third party.

(b) Procedure. When any such indemnification is sought:

(i) A party seeking indemnification ("Indemnitee") shall give the indemnifying party ("Indemnitor") prompt notice of any claim or litigation to which its indemnity applies; and

(ii) The Indemnitor shall have the right to assume the defense of any claim or litigation to which its indemnity applies and the Indemnitee will cooperate fully with the Indemnitor in such defense and in the settlement of such claim or litigation. Without limiting the generality of the foregoing, if the Indemnitor fails or refuses to assume the defense of any claim, action or cause of action to which its indemnity applies (whether or not suit has formally been brought), it shall be responsible for payment of any settlement of such claim, action or cause of action reached by the Indemnitee, as well as the costs and expenses (including reasonable attorneys' fees) incurred by the Indemnitee in defending such claim, action or cause of action and/or in reaching such settlement. In no case shall any such compromise or limitation implicate rights, obligations or property beyond the subject matter of this Agreement.

(c) Insurance. NSBL shall, at its sole expense, throughout the performance of its services pursuant to the Agreement and for such additional time as may be specified below, maintain:

(i) Commercial General Liability Insurance to include contractual liability, products/completed operations liability, and cross-liability (which must be maintained for three years following completion of the work) with minimum limits of Two Million Dollars ($2,000,000) written on an occurrence form basis;

(ii) Automobile Liability coverage with minimum combined single limits of Two Million Dollars ($2,000,000). Coverage shall include all owned, leased, non-owned and hired automobiles; protecting it, additional insured's and ESPN from claims for personal injury (including bodily injury and death) and property damage which may arise from or in connection with the performance of NSBL's services hereunder or from or out of any act or omission of NSBL, its officers, directors, agents, subcontractors or employees;

(iii) Workers' Compensation Insurance as required by applicable law, and Employer's Liability Insurance with minimum limits of One Million Dollars ($1,000,000);

(iv) Producer's Liability Insurance (Errors & Omissions Insurance) for such length of time as is necessary to cover any and all claims arising out of or relating to the production and any Distributions of the Program, having limits of at least Five Million Dollars ($5,000,000) for each claim, with an annual aggregate limit of at least Five Million Dollars ($5,000,000) with a deductible of no more than Twenty Five Thousand Dollars ($25,000). Such insurance shall have standard coverage, including, but not limited to, coverage with respect to libel/slander or other forms of defamation, infringements of


HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY

BT0010342

common law or statutory copyright, infringements of rights in material to be broadcast or in the manner of presentation thereof, infringement of privacy rights, breach of implied contract and unauthorized use of material in the Program. Any restrictions of coverage on the title, music or other rights shall be stated on the certificate of insurance and cleared prior to delivery of the Program. Additionally, any deductibles shall be stated on the certificate of insurance.

(v) All insurance required in this Section shall be with companies and on forms acceptable to ESPN and shall provide that the coverage there under may not be reduced or canceled unless thirty (30) days unrestricted prior written notice thereof is furnished to ESPN.

(vi) All insurance required in this Section shall be primary and not contributory with regard to any other available insurance to the ESPN, its parent, and any subsidiaries, related and affiliated companies of each, and the officers, directors, shareholders, employees, agents and assigns of each.

(vii) All insurance required in this Section shall be written by companies with a BEST Guide rating of B+ VII or better.

(viii) Certificates of insurance (or copies of policies, if required by ESPN) shall be furnished to ESPN. All insurance required in this Section shall include ESPN, its parent, and any subsidiaries, related and affiliated companies of each, and the officers, directors, shareholders, employees, agents and assigns of each as additional insureds and contain a waiver of subrogation in their favor. (The additional insured requirement applies to all coverages except Workers' Compensation, Employers Liability and Professional Liability. The waiver of subrogation applies to all coverages).

(ix) ESPN's failure to request, review or object to the terms of such certificates or insurance shall not be deemed a waiver of NSBL's obligations or the rights of ESPN.

(x) The minimum limits of the insurance required in this Section shall in no way limit or diminish NSBL's liability under other provisions of this Agreement.

12. INDEPENDENT CONTRACTORS

NSBL has no authority to bind ESPN to any agreements or other obligations, and will not attempt to do so. NSBL and ESPN are independent contractors, and nothing in this Agreement creates any partnership, joint venture or agency relationship. As between each other, each party is fully responsible for all persons and entities it employs or retains, except as otherwise specifically provided in this Agreement.

13. FINANCIAL DISCLOSURE

In conformity with Section 507 of the Communications Act of 1934, as amended, concerning broadcasting matters and disclosure required thereunder, NSBL warrants and represents that it has not accepted or agreed to accept, and will not permit its employees, agents, representatives,


SSPA 2018/10/25
2020 ESPN Ocho _Skee-ball Championship (2.11.20) kd

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY                                BT0010343

contractors, or affiliate entities to accept, any monies, services, or other consideration for the inclusion of any commercial material or matter in or as part of the Program.

14. <u>NO INJUNCTIVE RELIEF</u>

All rights granted and agreed to be granted hereunder will be exclusively and irrevocably vested in ESPN and will not be subject to rescission or injunction by NSBL or any other party for any cause, nor will such rights be subject to termination or reversion by operation of law or otherwise. In the event of a breach of this Agreement by ESPN, NSBL hereby expressly recognizes that the damage, if any, caused to NSBL thereby would not be irreparable or otherwise sufficient as to give rise to a right of injunctive or other equitable relief and NSBL acknowledges that NSBL's rights and remedies in the event of a breach of this Agreement by ESPN will be limited to the right, if any, to recover monetary damages (if any) in an action at law.

15. <u>OPTION FOR FUTURE RIGHTS; FIRST NEGOTIATION/FIRST REFUSAL</u>

(a) <u>Option</u>. ESPN has the exclusive, irrevocable option to acquire from NSBL exclusive rights and production services for one or more Program(s) of the 1010 Skee-Ball National Championship event pursuant to all the provisions of this Agreement (the "Option"). ESPN shall have the right to exercise this Option by giving notice to NSBL by no later than August 1, 2020.

(b) <u>FN/FR</u>. If ESPN exercises its Option, then ESPN shall have "first negotiation and first refusal" rights, pursuant to which NSBL then will negotiate exclusively with ESPN for thirty days (the "Negotiating Period") regarding the acquisition by ESPN of one or more Programs of the 2020 Skee-Ball National Championship event.

(c) <u>Negotiating Period</u>. The Negotiating Period will begin on August 15, 2020, or on an earlier date selected by ESPN with notice to NSBL. For this purpose, the term "Program(s)" includes any program that is a successor or substitute for the Program named in Section 1 or that is otherwise equivalent or related thereto.

(d) <u>Offer/Reoffer</u>. If ESPN and NSBL do not reach a new agreement by the end of the Negotiating Period, then within three days thereafter NSBL must make a written offer to ESPN of the consideration on which NSBL is willing to license such rights and services to ESPN. With the exception of consideration, the Offer cannot contain any terms or conditions that differ from those contained in this Agreement ("Nonconforming Terms"), other than as permitted by subsection (e)(v), below. If ESPN does not accept the Offer within fourteen days after receiving it, NSBL may then enter into an agreement with a third party for those rights, but not without first re-offering to ESPN the same terms contained in any such third-party offer (the "Reoffer"). ESPN must accept or reject a Reoffer by no later than seven days after receiving it.

(e) <u>Requirements</u>. The following additional requirements also apply to ESPN's and NSBL's negotiations of future rights:

(i) NSBL will not have any discussions or negotiations with any third party regarding the rights contemplated under this Section either before or during the Negotiating Period;


SSPA 2018/10/25
2020 ESPN Ocho _Skee-ball Championship (2.11.20) kd

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY        BT0010344

Any discussion or negotiation between NSBL and third parties after the Negotiating Period can be held only in accordance with the terms of this Section;

(ii)  ESPN will not be required to negotiate with NSBL concerning, or to consider any Offer conditioned upon, ESPN's acquisition of rights to any event or properties other than the Program(s) herein;

(iii)  The parties will act at all times in complete good faith consistent with the intent and spirit of this entire Agreement;

(iv)  Neither an Offer nor any Reoffer can be for rights pertaining to a period of less than one year;

(v)  If ESPN and NSBL reach a new agreement pursuant this Section, then negotiations of any subsequent agreement between the parties for rights to future Program(s) may include Nonconforming Terms; and

(vi)  In accepting an Offer or Reoffer, ESPN will not be required to comply with any term or condition that would be impossible for ESPN to perform or would conflict with any of ESPN's prior contractual commitments. ESPN must notify NSBL of any such terms or conditions as promptly as possible.

(f)  Limited Scope. NSBL acknowledges that this Agreement's scope is limited to its specific subject matter and it does not entitle either NSBL or ESPN to any future rights or expectations with respect to each other except as explicitly provided herein.

16.  MISCELLANEOUS

(a)  Notices. All notices from either party to the other must be given in writing to the respective addresses of NSBL and ESPN listed above, or at any subsequently-designated address of which the other party has been notified. Notice may be given: in person, by commercial courier or private messenger, via the U.S. mail (postage prepaid), or by facsimile transmission. Notice is deemed received: as of the date of any applicable receipt signed by or on behalf of the receiving party, the date of any electronic confirmation of transmission by a facsimile machine, or five days after deposit in the U.S. Mail (postage prepaid).

(b)  Further Documents. Each party will execute any and all further documents that are necessary and proper to carry out the purposes of this Agreement.

(c)  Entire Agreement. This Agreement contains the entire understanding of the parties. It supersedes all prior written or oral agreements and understandings pertaining to the subject-matter of this Agreement and cannot be modified except by a written instrument signed by both parties. The parties expressly acknowledge that in entering into this Agreement they have not relied on any representations, written or unwritten, concerning the subject matter of this Agreement other than those contained herein. The headings used in this Agreement are for convenience only and shall have no effect on the interpretation of the Agreement.

 SSPA 2018/10/25
2020 ESPN Ocho _Skee-ball Championship (2.11.20) kd

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY                                                       BT0010345

(d) Applicable Law. This Agreement will be governed by and construed according to the laws of the State of New York applicable to contracts entered into and to be fully performed there. In any legal proceeding brought by one party hereunder against the other, the prevailing party will be entitled to recover from the other party its attorneys' fees and other costs of suit.

(e) No Assignment. NSBL cannot assign any of its rights or obligations under this Agreement without the prior written consent of ESPN, and any purported assignment without that prior consent is void.

(f) Severability. Any provisions found by a court to be void or unenforceable shall not affect the validity or enforceability of any other provisions.

(g) Approvals. All approvals required under this Agreement must be in writing, which may be by e-mail.

(h) Agreement Governs. In the event of any conflict between any provision of this Agreement and a provision of any Exhibit or Attachment hereto (including but not limited to the Production Guidelines), the terms of the Agreement shall govern.

ACKNOWLEDGED AND AGREED, as of the effective date of this Agreement specified above.

FULL CIRCLE UNITED, LLC

By ___________________________

Name ________________________

Title _________________________

ESPN, INC.

By ________________________________
Burke Magnus
Executive Vice President
Programming & Scheduling

<center>**Exhibit I**</center>

<center>ESPN ADVERTISING REGULATIONS</center>

A.    <u>Advertising Sales Regulations</u>

In using the Commercial Time specified in the Agreement, NSBL must:

1. Consult regularly with the designee in ESPN's Advertising Sales Department on NSBL's plans and actions related to that Time;

2. Not sell to or solicit any advertiser to which ESPN is itself either currently furnishing advertising time or attempting to sell such time, without ESPN's prior consent.

3. Promptly advise ESPN of each completed sale, specifying the advertiser's name and product or service and whatever other relevant information that ESPN requests. NSBL also must furnish ESPN, no later than five business days before the date of the distribution in question, with the videotapes and other requisite materials for airing NSBL's commercials according to the guidelines contained in the attached Production Guidelines;

4. Comply with the Advertising Content Regulations specified in Section B, below;

5. Subject all advertisers on the Program to ESPN's prior approval; and

6. Not use any third-party sales representative, broker or other intermediary for the sale of any Commercial Time, without the prior approval of ESPN.

B.    <u>ADVERTISING CONTENT REGULATIONS</u>

ESPN will telecast only commercial material which is lawful and of the highest possible standards of excellence and in this regard NSBL will ensure that the following conditions are observed with respect to all local commercial announcements. There shall be:

1. no commercial or material which is not of a suitable artistic and technical quality;

2. no commercial or material that may violate any rights of any person, firm or corporation;

3. no false, unsubstantiated or unwarranted claims for any product or service, or testimonials that cannot be authenticated;

4. no advertising of any habit-forming drugs, tobacco products, handguns, or handgun ammunition;


SSPA 2018/10/25
2020 ESPN Ocho _Skee-ball Championship (2.11.20) kd

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY    BT0010347

5.  no commercial or material which advertises any distilled liquor, except as set forth below. Socially responsible distilled liquor advertising may be included in ESPN-approved programs (on ESPN-specified networks) only, provided that such advertising contains prominent and integral social responsibility messaging (e.g., the prevention of drinking and driving, moderation in consumption, and references for assistance with drinking-related issues). Message must be an integral part of the creative presentation and not simply a closing "drink responsibly" visual or other fleeting reference. Malt beverage advertising is acceptable, subject to appropriate scheduling restrictions and only if the commercial clearly and conspicuously communicates in audio and/or video that the product is an alcoholic malt beverage;

6.  no material constituting or relating to a lottery, a contest of any kind in which the public is unfairly treated or any enterprise, service, or product which would tend to encourage, aid, abet, assist, facilitate or promote illegal or legal gambling; however, advertising for casinos or other places of gambling (including ads for travel services or tourist destinations that directly or indirectly promote gambling) may be placed, under the following additional guidelines:
    - The advertisement does not in any way promote sports wagering or race book services, including references to odds, horse racing "tout" boards, betting slips, etc.
    - The advertisements may promote the non-gambling or gambling amenities of the casino, and may now include visual or audio references to gambling or gambling paraphernalia (e.g., dice, roulette wheels, "slot machine" type graphics).
    - The word "casino" may be used if it is part of the official name of the advertised establishment.
    - Advertising for casinos will be subject to any restrictions or prohibition from programming rights-holders during certain programming.
    Restrictions
    - Casino advertising of any type may not air in any NFL, NBA or NCAA Championship programming, or any programming ESPN reasonably believes to have significant audience concentrations or appeals to persons under age 17 (X-Games, Little League, Spelling Bee, High School Sports) including any support or ancillary programming.
    - NCAA (non-Championship) and MLB programming may contain "non-gaming" casino advertisements. Advertisements for casinos or other places of gambling may air during NCAA non-Championship and MLB programming only as long as the advertisement does not in any way promote legal or illegal gambling; and the advertisement does not contain any visual or audio references to gambling or gambling paraphernalia (e.g., dice, roulette wheels, "slot machine" type graphics, odds, horse racing "tout" boards, betting slips). Advertisements may, instead, promote the non-gambling amenities of the casino (e.g., floor shows, dining, shopping, etc.)
    Note: The list of programming in which such material is permitted is subject to change from time to time.

7.  no announcement for a product or service which is illegal per se or has no legal use in the state, county or municipality in which NSBL is distributing the announcement;

8.  no appeal for funds;


SSPA 2018/10/25
2020 ESPN Ocho _Skee-ball Championship (2.11.20) kd

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY                                     BT0010348

9. no commercial or material which is in whole or part defamatory, obscene, profane, vulgar, repulsive or offensive, either in theme or in treatment, or that describes or depicts repellently any internal bodily functions or symptomatic results of internal conditions, or refers to matters that are not considered socially acceptable topics;

10. no false or ambiguous statements or representations that may be misleading to the audience;

11. no commercial that includes any element of intellectual property without the owner's consent to such use, including but not limited to music master, mechanical, performance and synchronization rights or gives rise to any other colorable claim of infringement, misappropriation or other form of unfair competition;

12. no disparagement or libel of competitors or competitive products; or

13. no commercial that is or may be injurious or prejudicial to the interests of the public, Licensor or honest advertising and reputable business in general.

In addition, during any program of a championship athletic event conducted by the National Collegiate Athletic Association (the "NCAA"), there shall be:

1. no advertisement utilizing professional athletes or other persons connected with professional athletics or promoting any professional athletic event or team; and

2. no advertising of alcoholic beverages, drugs or patent medicines other than analgesics, cold remedies, antacids, and athletics training aids that are in general use and institutional advertising by pharmaceutical firms.

 SSPA 2018/10/25
2020 ESPN Ocho _Skee-ball Championship (2.11.20) kd

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY		BT0010349

## Exhibit II: Commercial Format

*[To come.]*


SSPA 2018/10/25
2020 ESPN Ocho _Skee-ball Championship (2.11.20) kd

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY  BT0010350

**Exhibit III: Production Guidelines for Packagers and Producers of Programming**

[*To come.*]

 SSPA 2018/10/25
2020 ESPN Ocho _Skee-ball Championship (2.11.20) kd

HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY　　　　　　　　　　　　　　　　　　　　　　　BT0010351