# Exhibit A

1  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK
2
   ------------------------------x
3                                      20-CV-3395(BMC)
   FULL CIRCLE UNITED, LLC,
4                                      United States Courthouse
           Plaintiff,                  Brooklyn, New York
5
           -versus-                    February 07, 2025
6                                      11:45 a.m.
   BAY TEK ENTERTAINMENT, INC,
7
           Defendant.
8
   ------------------------------x
9
        TRANSCRIPT OF CIVIL CAUSE FOR PRETRIAL CONFERENCE
10           BEFORE THE HONORABLE BRIAN M. COGAN
             UNITED STATES SENIOR DISTRICT JUDGE
11

12 APPEARANCES

13

14 For the Plaintiff:      MANDEL BHANDARI LLP
                           BY:  ROBERT GLUNT, ESQ.
                                RISHI BHANDARI, ESQ.
15                              EVAN MANDEL, ESQ.

16

17 For the Defendant:      MITCHELL SILBERBERG & KNUPP LLP
                           BY:  CHRISTINE LEPERA, ESQ.
                                MARK HUMPHREY, ESQ.
18                              ANDREW NIETES, ESQ.
                                JAMES BERKLEY, ESQ.
19

20

21 Court Reporter:         Rivka Teich, CSR, RPR, RMR, FCRR
                           Phone:  718-613-2268
                           Email:  RivkaTeich@gmail.com
22

23 Proceedings recorded by mechanical stenography.  Transcript
   produced by computer-aided transcription.

24

25

1          (Video conference.)

2          THE COURTROOM DEPUTY:  Civil cause for pretrial

3   conference, 20-CV-03395, Full Circle United, LLC vs. Bay Tek

4   Entertainment, Inc.

5          State your name for the record starting with the

6   plaintiff.

7          MR. GLUNT:  Good morning, your Honor.  For the

8   plaintiff Full Circle, this is Rob Glunt.  I'm joined by Rishi

9   Bhandari and Evan Mandel, the same firm.

10          MS. LEPERA:  Good morning, your Honor.  For Bay Tek

11   Entertainment, Christine Lepera.  Along with my colleagues

12   Mark Humphrey, Andrew Nietes and James Berkley.  Thank you,

13   your Honor.

14          THE COURT:  Generally I only allow one attorney per

15   side to speak at a conference.  Since you both got multiple

16   people, I'll allow if it's necessary.

17          I have a feeling this is not the last final pretrial

18   conference we have based on your pretrial order.  Let me make

19   a couple of observations.

20          I think one or both sides when you drafted this said

21   we better include everything including the kitchen sink in

22   case we want to use it at trial, we don't want to be

23   precluded.  That's not an acceptable way to do a pretrial

24   order.  I'm not saying to have absolute certainty that you're

25   going to use a witness or piece of evidence.  But I am saying

1    10 percent or 20 percent is not enough.  And it makes it

2    unmanageable, as I think this probably is.

3          So what I do in those situations, I give the parties

4    another chance to submit an amended joint pretrial order that

5    reduces the number of witnesses and exhibits.  I'm not saying

6    you have to, you don't have to.  But what I am saying is, when

7    we go to trial if you don't call a witness or you don't offer

8    an exhibit that was designated in the joint pretrial order,

9    then I will hear a proffer from you as to why you changed your

10   mind.  And if I am not convinced that there was a good faith

11   basis for the change of mind, if I believe that it was just an

12   over-protectiveness that caused you to include that witness or

13   exhibit in the joint pretrial order, that is a $5,000 sanction

14   for a witness or exhibit.  It really adds up.

15         So carefully consider whether you want to do an

16   amended joint pretrial order that cuts back somewhat on

17   everything that's been listed in here.

18         Now, the easiest place to start, I think, is what

19   you are all doing with the depositions.  The order scheduling

20   this conference and requiring joint pretrial order was pretty

21   clear that you don't have to list anything that's being used

22   for impeachment or rebuttal.  So there shouldn't be all that

23   much, unless you're talking about witnesses who are not within

24   the subpoena power of the Court or who are party opponents

25   whose depositions you intend to read in as part of your case

1   and not call that party opponent as one of the witnesses in

2   your case.  Otherwise, when you give me all this deposition

3   testimony like this, it's impossible for me to rule pretrial.

4   And the very idea of reading those depositions during a trial

5   and have the jury waiting there while we argue about each one

6   of the designations and should I sustain the objection or

7   overrule it, that's just not practical.  We'll be there much

8   longer than the outside nine days that one of you have

9   participated.  I want you to take a harder look at the

10  deposition designations nations.

11          If it's an adverse party designation can you use it.

12  Or you can call the adverse party, if they are within the

13  subpoena power of the court.  But you can't do both.  Right.

14  You have to decide what you want to do.  You can't use

15  cumulative evidence.  So decide what you want to do as to

16  those witnesses over whom you have subpoena power.

17          If you still decide you're going to use the

18  deposition, then you have got to give me marked copies of the

19  deposition with little brackets showing what you intend to

20  use.  And your adversary has to have the chance to put in

21  their own different colored brackets citing to the federal

22  rule that shows the objection to the testimony.  Then I will

23  give you item by item rulings on each portion of those

24  depositions.  I think that ought to help cut down the number

25  of deposition designations.

1          And I'm starting from the promise that everybody

2   understands, of course, that you can't use a deposition of

3   your own people, right, your own people you got to get to

4   court.  And you can't use depositions of non-party witnesses

5   who are within the subpoena power of the court.  Everybody

6   understands that.  Except, obviously, for impeachment you

7   don't have to list that if somebody says something

8   inconsistent you pull out the deposition at trial and hit them

9   with it.  That's what I have to say about depositions.

10         Next, let me try to go through some of the witnesses

11  that you designated.  And some of them, there is going to be

12  motion in limine and I've got that, and some of this stuff

13  will be reserved for motions in limine so we'll have to work

14  on that.

15         But obviously, for example, looking at Full Circle's

16  witnesses, Eric pavone knee.  He's going to testify.  He's

17  going to testify at trial.  Is he going to testify in support

18  of the dismissed claims?  I don't think so.  Does the

19  defendant really think so?  Why would the defendant think that

20  the plaintiff would disregard my order and allow him to do

21  that?  So we don't need to worry about that.  If it happens at

22  trial you'll say, uh-huh, I was right, he is doing that.  But

23  I don't need to rule on that now because it seems unlikely.

24  There are things he's not going to testify to.

25         I think that's true of most of Bay Tek objections to

1    Full Circle's witnesses.  Obviously, other than the narrow

2    basis on which lay opinion is admissible, I'm not going to

3    allow fact witnesses to testify as experts.  We don't have to

4    worry about that now.  They just can't do that.

5           If somebody is a contractor and they say, you can't

6    join a 2x4 to 5x8, I'll allow that, he ought to know that.  If

7    it's something beyond that, probably not.

8           I think Bay Tek was a little over-protective in

9    worries about that.  Give some credit to your adversary.  None

10   of you are unsophisticated lawyers here, you know the rules of

11   evidence.  You know what I'm not going to allow.  I don't want

12   to take the time to go through every witness and what they

13   might testify to and it's unlikely they will.

14          The rule against hearsay will has been applied.  But

15   so will be the numerous exceptions to the rule against

16   hearsay.  We all know what they are.

17          To the extent there is a Rule 403 issue, I'll have

18   to balance it at the time depending on the entirety of the

19   evidence in the case.  So I don't think that's something we

20   need to take up right now.

21          Is there in anything specific about any Full Circle

22   witnesses that Bay Tek thinks it's necessary or it's advisable

23   or would be helpful to raise at this time?  Something that you

24   really think Full Circle is going to over-step its bounds on

25   and it's something we ought to air out now?

1        MS. LEPERA:  Your Honor, there are two.  Mr. Jacobs

2   and Mr. Krause, who are identified as independent investors

3   who will speak to efforts by Full Circle to, I guess, get

4   money for something.  This was never disclosed.  These

5   witnesses were never disclosed.  There is no issue about any

6   effort by them to get investments or not get investments.

7   There is no dispute that they got no investments.  They

8   conceded that.  I'm not clear as to the relevance of this

9   proffered testimony.

10        THE COURT:  Okay, let me hear from Mr. Glunt on

11   that.

12        MR. GLUNT:  Thank you, your Honor.  So one of the

13   defenses that the defendant has asserted in connection with

14   this case is that Full Circle did not honor its obligation to

15   use best efforts to promote licensed uses of the mark.  And in

16   particular, a lot of the questioning and some of the evidence

17   seems to be directed toward the notion that Full Circle was

18   this small failed venture that was unable to, that made no

19   efforts to try to get investment to grow, that it had no

20   ability, for example, to purchase the custom tables that

21   obviously factor into this case, and that it made no effort to

22   acquire financing in order to purchase those custom tables.

23   That's a huge thrust of the defense that's been made in this

24   case.

25        They also have an affirmative claim for breach of

1    the license agreement, again claiming that we breached our

2    best efforts obligation.

3         So witnesses that were directly involved in these

4    efforts to secure financing, we think would be relevant both

5    to obviously opposing their affirmative claim, but also to

6    demonstrate performance under the contract.  That's precisely

7    why they are identified.  We don't view them as lengthy

8    witnesses; we do think they have relevant testimony.

9         MS. LEPERA:  If I may respond here?

10        THE COURT:  Hang on.  I don't think you'll need to.

11        First of all, the way you describe them they are

12   actually, I might let you call them during your case, but they

13   are more rebuttal witnesses, right, they are responding to a

14   defense that Bay Tek is raising.  Right?

15        MR. GLUNT:  So I think that it's an interesting

16   question, your Honor.  Because to prevail on a breach of

17   contract claim you have to show performance as an affirmative

18   element of the claim.  I think there is an argument that they

19   are properly shown in our case in chief.  I agree that in the

20   sort of scheme of the case they do tend to be further on the

21   defending against their defenses or butting their defenses.  I

22   agree with that, although I think as a technical matter they

23   are part of our claim.

24        THE COURT:  Whether it's an element of your claim or

25   whether it is a rebuttal to Bay Tek's defense, it's something

1   that Full Circle knew about early on in the case.  Right?  Not

2   a surprise issue where these witnesses get designated for the

3   first time in the joint pretrial order.

4           MR. GLUNT:  I agree that the issue was raised

5   earlier in the case.  Obviously we were not directly involved

6   at that time.  I can't speak to directly to what disclosure

7   was made or wasn't made at that time, that is something I have

8   to investigate to determine.  But I agree that's an issue.

9           THE COURT:  So then the question for me is, do I

10  preclude them entirely for failure to identify them, it seems

11  me there should have been a Rule 26 disclosure of them.  Or,

12  do I allow the discovery now.  And I will hear from Bay Tek

13  counsel, but my inclination is to say I'll allow the discovery

14  now but I will require Full Circle to reimburse Bay Tek for

15  its attorney's fees in taking this discovery because there is

16  no excuse for not having disclosed them in the initial 26A

17  disclosures at the beginning of the case.

18          All right, Ms. Lepera.

19          MS. LEPERA:  Thank you, your Honor.

20          Many of the issues this case come to this point.  We

21  never said that we claim Full Circle violated the license

22  agreement by not getting money.  We never said they failed to

23  try to get money.  We have said they failed to buy the lanes

24  and to do the things that the license agreement requires them

25  to do in order to use the trademark.

1    That being said, again, of course if we were to make

2    this point at trial they would have every right to rebut it, I

3    think at this point I'm trying to streamline rather than

4    increase this trial scope and the burden on the parties.  So

5    if Full Circle wants to reserve on this issue, I think that

6    might be more productive since we're not going to say that at

7    trial.  And then they can decide if they want to use them as a

8    rebuttal and we can take a quick couple of depositions at that

9    point.  My goal is to try to minimize all of this.

10    THE COURT:  Okay.  So what we've established, I

11    think, is that this may well be capable of being worked out by

12    stipulation.  You two will talk and see if you can do that.

13    If you can't do that, and Full Circle still wants to call

14    these two gentlemen, then you'll have the right to take their

15    depositions and Full Circle will pay for your attorneys fees

16    in doing that.

17    MS. LEPERA:  Thank you, your Honor.

18    MR. GLUNT:  Understood, your Honor.

19    THE COURT:  Anything else in Full Circle's witness

20    list that you think needs to be highlighted right now,

21    Ms. Lepera?

22    MS. LEPERA:  The only thing I will mention, again,

23    this is in the category of I don't want to waste time.

24    Mr. Goldman, it's been clear from the discovery adduced in the

25    case, there is no relevant information, never any use --

1  (audio interruption) -- casinos run to the ground.

2         THE COURT:  I need to interrupt you.  You're

3  microphone connection is not great.  It's not going in and

4  out, but it's coming out a little garbled.  Speak slower and

5  get clearer to the mic.

6         MS. LEPERA:  Absolutely, your Honor.  I apologize, I

7  speak fast.  I'll be more cautious.

8         Mr. Goldman is identified as a CEO of a third-party

9  Inko (ph), on discussions concerning the use of skeeball lanes

10 and casino.  This issue was run the ground in discovery.

11 There was no use of skeeball lanes and casinos.  I don't know

12 what the point is.  This testimony seems highly irrelevant,

13 but that could be established by a couple of questions if they

14 want to put him on the stand.  That's the reason for the

15 objection, your Honor, it's irrelevant.

16        THE COURT:  Mr. Glunt.

17        MR. GLUNT:  As the Court is aware, there is a

18 tarnishment claim.  And the thrust of the tarnishment claim is

19 that FCU has associated the skeeball mark with adult

20 activities.  So some of it is drinking, some of it is sexual

21 innuendo.  And we feel that showing that, for example, Bay Tek

22 was promoting or seeking to promote the use of the skeeball

23 mark in casinos, also unambiguously an adult activity, is

24 relevant to the tarnishment claim.  Is it also relevant to the

25 extent that Bay Tek was seeking to promote uses of the mark in

1  connection with competitive play in casinos, which would be

2  also a violation of the license agreement.

3             THE COURT:  Okay.

4             MS. LEPERA:  If I may, your Honor.

5             THE COURT:  Yes.

6             MS. LEPERA:  Full Circle adduced all of the evidence

7  to muster a claim that Bay Tek was engaging in some

8  competitive live-play activity.  It failed.  That claim was

9  dismissed.  There is no evidence from this witness or another

10 witness in the full record that would support that Bay Tek

11 engaged in live-play.

12            Two, the tarnishment claim regarding Full Circle's

13 conduct with respect to the mark is borne out of the

14 obligation under the license agreement not to tarnish the mark

15 and under trademark infringement law.  What Bay Tek does, and

16 frankly the record again shows, this didn't happen, does or

17 does not do in placing a lane in a venue is not tarnishing the

18 mark.  There is no cumulative reference there.

19            I think for many reasons as I've stated, this is

20 irrelevant.

21            THE COURT:  I'll think about this more.  I'm with

22 you on your first point, but on your second point I'm not so

23 sure.  That seems me to more of an in party delicto situation,

24 where you can hardly accuse Full Circle of tarnishing the mark

25 if you're doing the same thing.  Now, it may not be the same

1    thing.  It may be something that you contend is really quite

2    minor compared to what they were doing.  And maybe I should

3    get a motion in limine on that because I can't make that

4    determination now.  But it might well end up, in my gut sense

5    without knowing the particulars, is that it might be something

6    for the jury to determine, whether Full Circle really

7    tarnished it, when tarnishment is viewed in terms of what Bay

8    Tek itself was doing.

9            So if it's so clear to me that a reasonable jury

10   would have to see these as two separate acts, not having to do

11   with each other, then you're right I won't allow that

12   testimony.  But if it's something that a reasonable jury could

13   weigh and say, you know, what is Bay Tek complaining about,

14   yeah, they were both aggressive marketers, maybe Full Circle

15   went a little bit too far in the sexual innuendo, but Bay Tek

16   was going in that direction too; then I would be inclined to

17   let it in.

18           MS. LEPERA:  One other point, if I might, to be

19   clear maybe it got lost in the translation.

20           It didn't happen.  Introducing evidence of potential

21   conversation or discussion about a potential use in a casino

22   is far removed from using it in casino to demonstrate a quid

23   pro quo tarnishment.

24           THE COURT:  Mr. Glunt, I agree with that.  There are

25   all kinds of things that go on in people's heads.  For a

1    variety of reasons they might decide not to do this, it will

2    tarnish our mark.  If they didn't do it, then the fact they

3    thought about it doesn't control.

4              MR. GLUNT:  I understand the argument, your Honor.

5    I think it would still speak potentially to materiality to the

6    extent that they have also claimed that the same conduct

7    violates the license agreement.  If they thought that placing

8    skeeball in casinos was something that was within the scope of

9    business plan or worth exploring, the idea that having some

10   adult activities associated with it would constitute a

11   material breach of the license, I think seems a bit far

12   afield; but I understand the Court's perspective.

13             THE COURT:  I'm going to sustain the objection.  I

14   think it really would, at least under 403, would get the jury

15   thinking about things that didn't happen.  So that won't be

16   allowed.

17             MR. GLUNT:  Fair enough, your Honor.

18             THE COURT:  Any other issues that Bay Tek has about

19   the witnesses?

20             MS. LEPERA:  No, your Honor.  We've made a Daubert

21   motion with respect to their expert, the Court is aware.

22             THE COURT:  Now regard to Bay Tek's witnesses.  We

23   have the private investigator, Mr. Williams.  And I think

24   that's kind of right.  I mean, it's after the fact

25   post-disclosure, post-discovery closing.  Why would I allow

1    the investigator now?

2              MS. LEPERA:  Let me explain, your Honor.  The Court

3    obviously in connection with the summary judgment motion is

4    familiar with the underlying facts.  With respect to the ten

5    prototype lanes that Bay Tek built that Full Circle has in its

6    two bars, one in Austin and one in New York, since this

7    litigation and for this last several years they have been

8    reporting zero revenue to Bay Tek in connection with any of

9    the licensed uses.  They have refused to tell us what they are

10   doing with the lanes.  They have refused to tell us that they

11   are monetizing.

12             We sent investigators in and we never did a final

13   deal as to what happens with these, as your Honor is aware,

14   there was never any full agreement on custom lanes per se.  So

15   this is been sort of a:  What are you doing with this lanes,

16   Full Circle?

17             We've been pressing, we pressed prior counsel, we

18   pressed new counsel, and ultimately what we have discovered is

19   further infringing use.  And in addition, when they claimed

20   that we didn't allow them to use the skeeball live, they used

21   it.

22             So it's inconsistent with their claims in this case.

23   So this evidence that we were forced to obtain, and this

24   precedent with respect to trademark owners going in and

25   investigating and using investigators on that issue --

1          (Audio interruption.)

2          THE COURT:  Anything, Mr. Glunt?

3          MR. GLUNT:  You did not lose me.  Apologize for the

4    interruption.

5          MS. LEPERA:  No problem.

6          We feel very much compelled to demonstrate this

7    evidence, which is inconsistent with Full Circle's defenses

8    and claims, and which is also inconsistent with their position

9    on loss profits, to the extent it's allowed.  Because they

10   have not demonstrated any income from any use of these lanes.

11   Again, for the last three or four years, there has been zero

12   monetization for Bay Tek and it's a wasting assets.  Because

13   Full Circle has an exclusive right to monopolize and hold this

14   mark hostage in this particular type of trademark use.  So if

15   they are not using this and they are not monetizing it, Bay

16   Tek's not monetizing it, and it's essentially a wasted asset.

17         THE COURT:  Okay.  Let me ask you, if you weren't

18   getting cooperation as to what was going on during the

19   discovery period, why didn't you come to me?

20         MS. LEPERA:  No, no this was after, to see what was

21   going on in the zero revenue report and they won't tell us if

22   they sold the lanes.  So this is all about post-summary

23   judgment conduct.

24         THE COURT:  Okay, but --

25         MS. LEPERA:  We had information earlier in discovery

1   when it was timely, that was a long time ago.

2           THE COURT:  What relevance does it have if it's

3   post-discovery?

4           MS. LEPERA:  It is relevant to what they are

5   currently doing with the mark from both an infringement

6   perspective and ultimately it also has significant relevance

7   to challenges, the intention that we somehow prevented them

8   from using the skeeball mark when they are using it.  So at

9   least two relevant points.  Not to mention, it's relevant on

10  the economics, in terms of what they are doing with their

11  business that is so devoted to skeeball growth but it's doing

12  nothing for Bay Tek.

13          THE COURT:  Does what they are doing now bear on

14  what they were doing before?  What I'm really asking you is,

15  what is the cut off point of your counterclaim?

16          MS. LEPERA:  Trial.  It's a continuation.  Just as

17  if the Court would certainly rule for any damage claim they

18  would require proof of up to the date of trial what the

19  alleged profits are relative to that whole issue, it's a

20  similar situation with respect to trademark infringement.  It

21  would be counter-intuitive to say, okay, for some reason they

22  are not infringing but now they are and we go to trial and

23  then we have to start all over again.  So it's truly bringing

24  proof current to the trial date.

25          THE COURT:  Wouldn't it have preferrable for you to

 1    come to me and ask supplemental discovery based on the need to

 2    see what is going on up to trial, rather than sending in a

 3    private investigator when as far as Full Circle knew discovery

 4    was closed?

 5              MS. LEPERA:  I think certainly this is one of these

 6    situations I'm attempting to try to minimize expense rather

 7    than maximize expense and/or objections and finding with Full

 8    Circle, which has been extensive, extensive and very costly.

 9    This was essentially, go in and see what is going on, rather

10    than burdening the Court or the other sides.

11              If we want to go through this process now to

12    establish what we've now established because the facts are the

13    facts, they can't hide it now, I'm happy to do that.  I think

14    they should pay for that too.  But that is the situation where

15    it's, again, my goal is to try to keep this as tight as we can

16    but yet create a scenario and record where all the relevant

17    facts regarding what is going on here with this mark are

18    brought to the Court.

19              THE COURT:  Mr. Glunt, it does seem to me both on

20    Full Circle's damage theories and also continuing injury and

21    Bay Tek injuries, we do have to take the case up to trial and

22    this is in the nature of supplemental discovery.  I'm not sure

23    I'm crazy about the way it was done, and you might have more

24    discovery that you want to do as a result of this, but why is

25    it not relevant?

1       MR. GLUNT:  Your Honor, let me speak to that.  A

2   couple of things.

3           First, what we just heard from defense counsel I

4   think has some the character of a new claim, some of the

5   character of a new defense, but in it's actually very

6   difficult to sort out.  The first time these witnesses were

7   disclosed to us, if you can call it a disclosure, is when

8   their names appeared on a witness list on a proposed joint

9   pretrial order.  Which is I think opposite of how it is

10  supposed to work.  There is obviously an obligation under Rule

11  26e, in order to supplement, their is an obligation to amend

12  their 26a responses.

13          And from what we've been able to glean from our

14  clients this investigation appears to have occurred at least a

15  month ago, maybe two months ago.  Why they would have this

16  investigation, take these pictures, do whatever they were

17  going to do to, and then wait until the pretrial order to

18  disclose it, it really does feel like gamesmanship, your

19  Honor.

20          I think we're entitled to discovery of these

21  witnesses if they are going to testify at trial.  If fulsome

22  federal discovery means anything, I think it means you don't

23  just show up and meet the witness for the first time and find

24  out what they are going to say and what the nature of what

25  they are going to say is when they show up to trial.

1           It is difficult for me to determine whether this is

2     a new claim, whether there is some kind of new defense.  We

3     need to know, what are these people going to say, what are

4     they going to be testifying to, what bearing does it have on

5     the claims that they actually asserted in this case.

6           I agree with your Honor that discovery and damages

7     has to be updated up through the time of trial, that makes

8     sense.  I'm not sure that's what this is.  This seems more

9     like sending an investigator in to find something new to

10    introduce or inject in the case as maybe a new form of

11    infringement, maybe a new defense to infringement.  It just

12    sounds what gamesmanship.

13          MS. LEPERA:  I must respond.

14          When Full Circle counsel withdrew and refused to

15    tell us going on with the lanes, we were in limbo, we had no

16    one to talk to.  We weren't going to contact Mr. Pavoney

17    directly, obviously.  Then new counsel came at the eleventh

18    hour on December 6.  So we then had desire to make sure we

19    were going to bring this to the Court.  We were trying to

20    figure out what we were going to do in that limbo period.

21          All the investigators did, it's not complicated, is

22    they took pictures of the lanes and video to show the mark,

23    and to show what was associated with the mark.  What they've

24    done is show that they are pairing it with all sorts of

25    alcoholic beverage marks, using all sorts of other

1  advertising, essentially diluting the brand and infringing the

2  mark license agreement, which none of this allowed.  While

3  simultaneously paying no money and holding the mark hostage.

4          I'm happy to have them post what the pictures are.

5  They are in the exhibits.  This is not secret.  This is not

6  any bad faith, it is opposite.

7          I think what Full Circle has done in concealing this

8  ongoing infringement and use of these lanes while holding the

9  mark hostage, is harmful to Bay Tek.  Again, the license

10  agreement is for the benefit of the mark.

11          THE COURT:  This is not the way I would have done

12  it.  What I would have done is, have the investigator go, done

13  his report, and then made a motion for supplement discovery

14  based on the report, saying look what the investigator found,

15  we need a discovery inspection, we need another deposition, we

16  need more interrogatories; rather than just having him and his

17  report show up.

18          His report gave you a good basis to seek to reopen

19  discovery.  But to try to surprise them with it at trial, like

20  I said, I see the relevance, I don't think that Full Circle is

21  disputing the relevancy; but the methodology is not the way it

22  should have gone.

23          I will say the same thing I said before, you can

24  when call him but you're going to pay for having him deposed.

25  It's not the way it should go.

1          MS. LEPERA:  May we take discovery of Full Circle on

2     this issue because obviously that's the key to this.

3          THE COURT:  You didn't ask before.  If you would

4     have asked, I probably would have said yes.  But you decided

5     to go with your investigator, and I'm inclined at this stage

6     that you got what you got.  You made your choice how to

7     proceed.  I don't want to keep expanding the case.

8          MS. LEPERA:  Okay.

9          THE COURT:  We're going to limit it to that.  Is

10    this the same thing with Anthony Chan?

11         MS. LEPERA:  Yes, your Honor.  One is an Austin bar,

12    one is in the New York bar.  Those are the two bars.

13         THE COURT:  Okay, so same deal.

14         MS. LEPERA:  Yes.

15         THE COURT:  The exhibits I just don't want to tangle

16    with today.  I think I want to see the motions in limine

17    first.

18         I also think, it's being confirmed by this

19    conference, that the two sides aren't talking to each other

20    enough.  I really think some these things can be worked out if

21    you understand what each of you is trying to do.  And if you

22    do that, you'll be able to agree more on what exhibits you

23    actually need.  I want to give you a better chance to decide

24    if you want to streamline these exhibits, especially in light

25    of the, if I wasn't clear, to say per exhibit $5,000 sanction

1    if you don't use it or you try to use it in bad faith.  Okay.

2    Think about that.

3             Let's say you give me either motions in limine or

4    and/or an amended joint pretrial order in three weeks.  Is

5    that enough time?

6             MR. GLUNT:  I think so, your Honor.

7             MS. LEPERA:  I would strongly request that if

8    possible, the rulings on the in limine motions will inform,

9    especially from Full Circle's position because we already

10   filed one in limine motion.  A lot of the documents that they

11   sought to proffer relate to just exchange after exchange after

12   exchange on the ten lanes.  And so if we can have in limine

13   rules before we file the amended joint pretrial order, it

14   might make sense to see where all that lands.

15            THE COURT:  The reason I see it the other way is I

16   think the amended joint pretrial order might eliminate a

17   number of exhibits that you want to move in limine on.

18            MS. LEPERA:  We already moved a considerable number

19   of exhibits that Full Circle --

20            THE COURT:  Some of those motions, part of those

21   motions, may be moot in light of this discussion today.

22            MS. LEPERA:  Okay.

23            THE COURT:  I think it's better to have them both on

24   the same date in three weeks.  That will give you a chance to

25   talk about the exhibits, to think separately about what you

1    want to withdraw, and what you still need to move on.

2              MS. LEPERA:  Okay.

3              THE COURT:  But I agree with you, it's dynamic.  I'm

4    not confident that I can predict the most efficient way to do

5    it.  If in the course of your discussions you come to

6    different opinions as to how to tee it up, then let me know.

7    I'll reconsider that.

8              MS. LEPERA:  Thank you, your Honor.

9              So to that point, your Honor, you made a good point,

10   the parties have not been able to talk to each other.  And I

11   think it would be great if Full Circle is amenable, without

12   mandatory ADR with reference to the Eastern District mediation

13   program, to see whether or not there is any way these parties

14   can get a divorce.

15             THE COURT:  Let me tell you my feeling about that.

16   Generally, no.

17             MS. LEPERA:  Okay.  Even if the parties agree?

18             THE COURT:  First of all, I have lived with this

19   case long enough that from a personal perspective, I'd like to

20   try this case.

21             MR. BHANDARI:  I would love it, Judge, me to.

22             THE COURT:  My personal desire should not be what

23   drives the outcome of this action.  I have to do what's best

24   for the parties, I know it, I appreciate that.

25             But generally speaking, I also find that if I try to

1   keep the parties' feet to the fire as much as possible, if

2   there is going to be a settlement it's more likely in that

3   circumstance, than in the delaying the case for mediation.  So

4   my practice on mediation is I will send you to mediation only

5   if both sides enthusiastically want me to, okay.  You don't

6   have to tell me now.  Talk to each other and decide if you can

7   represent to me that you both enthusiastically want me to do.

8           MS. LEPERA:  I love to try cases.  I love it.  It

9   would be a tremendous personal experience.  These parties are

10  on different planets; one is on earth, I believe that's us,

11  Full Circle is on Mars.  I'm making a joke.

12          THE COURT:  You have to do what is best for the

13  parties despite personal feelings.  You have to do your best

14  for your client despite your feeling.

15          You'll confer and let me know if you want me to

16  refer you.  But if I do refer you, that's not going to slow

17  the schedule.  Because I still feel keeping your feet to the

18  fire is the best way to find out if the parties are really

19  interested in settling.  You'll let me know what you want to

20  do.

21          MS. LEPERA:  Okay, sounds good.

22          THE COURT:  Let's stick to the three weeks motion in

23  limine and amended joint pretrial order subject to such

24  alteration as either or both of you think would be helpful in

25  the getting the case moving.

1          MR. GLUNT:  Understood, your Honor.

2          THE COURT:  Okay.  That's about all I've got for you

3     now.  Anything else we need to talk about?

4          MR. BHANDARI:  Your Honor, I know you would have

5     told us this if there what any possibility, is it possible to

6     set any sort of trial date so we can start to block things off

7     for this?

8          MS. LEPERA:  That's a good idea.

9          THE COURT:  I can set them.  I generally don't

10    because I'm concerned they won't be realistic.  If you want me

11    to set something, say, in June?

12         MR. BHANDARI:  Yes.

13         THE COURT:  I can do that.

14         MR. BHANDARI:  That would be great.

15         MS. LEPERA:  We were already blocking out April.

16         THE COURT:  That's not going to happen.

17         MR. BHANDARI:  I was blocking out March.

18         THE COURT:  Who do you think I am?

19         MR. BHANDARI:  I don't know, Judge, anything is

20    possible, I figured if you had a free moment.

21         THE COURT:  If it was a two-day trial I'd find you a

22    free moment.

23         MR. BHANDARI:  June is great.

24         MS. LEPERA:  Can we set another pretrial conference

25    date too?

1        THE COURT:  Let me look at the papers then I'll pick

2   a date for that, but that will be soon.

3        Let's say pick a jury on June 16 before a magistrate

4   judge and we will proceed to trial immediately thereafter.

5        MS. LEPERA:  Okay.

6        MR. GLUNT:  Thank you, your Honor.

7        THE COURT:  We'll see each other again hopefully in

8   about a month after I've had a chance to look at your new

9   submissions.

10       MR. GLUNT:  Thank you, your Honor.

11       MS. LEPERA:  Thank you.

12       (Whereupon, the matter was concluded.)

13                    *    *    *    *    *

14  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

15

16  */s/ Rivka Teich*
    Rivka Teich, CSR RPR RMR FCRR

17  Official Court Reporter
    Eastern District of New York

18

19

20

21

22

23

24

25