# Exhibit B

C O N F I D E N T I A L

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------x
FULL CIRCLE UNITED, LLC,

                Plaintiff,

      -against-        Case No.
                           1:20-cv-03395

BAY TEK ENTERTAINMENT, INC.,

                Defendant.
------------------------------------------x
BAY TEK ENTERTAINMENT, INC.,
        Counterclaim Plaintiff,

      -against-

FULL CIRCLE UNITED, LLC,
        Counterclaim Defendant,

            -and-

ERIC PAVONY,
   Additional Counterclaim Defendant.
------------------------------------------x

June 14, 2022

    Continued Remote Videotaped Deposition of

Full Circle United, LLC, by ERIC PAVONY, and

ERIC PAVONY, individually, held via Zoom before

Joseph R. Danyo, a Shorthand Reporter and Notary

Public within and for the State of New York.


Reported by: Joseph R. Danyo

Job No. 211445

PAVONY - Confidential

please.
    (Record read)
    A. And you're asking me to remember any words that he said seven years ago? Off the top of my head, I can't remember any specific words that he said that day specifically, but like I was saying, like I was saying, like, and the reason I bring this up is the purpose of the conversation was to understand that Bay Tek understood what it was that Full Circle United does and wanted to accomplish, and that was the purpose of that conversation, and we had it prior to us assigning the agreements over, and had Bay Tek never given us the oral promise that they, and agreed to manufacture lanes for us prior to the assignment, we never would have assigned the agreement over to Bay Tek.
    Q. Okay. So again the intention in here is that there was an agreement that was made, correct?
    MR. SKIBELL: Objection.
    Q. Page 5, paragraph 5. What were the material terms of the agreement that was made in that conversation that he uttered?

PAVONY - Confidential

    A. I can't remember exactly anything he uttered specifically like you keep asking me, but, you know, we talked about manufacturing of lanes, custom lanes at that, and we talked about how many lanes, over how many, you know, broken up, you know, how many lanes, how many years or how many lanes per year. We talked about the purpose of turning Skee-Ball into a bona fide sport to bring it to television networks such as ESPN. That was what was being discussed and what Gaetan agreed to.
    Q. I'm asking you to tell me what he agreed to, not what was discussed. Do you have anything further to add to your testimony as to what he said?
    MR. SKIBELL: Christine, why don't you refresh his recollection with the transcript if you want him to answer about specific words?
    MS. LEPERA: No. My deposition, I do it my way. I have the transcript. Would you like me to comment on it?
    A. My answer --
    Q. Do you have anything else to add, Mr.

PAVONY - Confidential

Pavony?
    A. Yes.
    Q. Specific words that Mr. Philippon said that manifested an agreement to do any of the things you mention in paragraph 5?
    A. I can't remember specific words, but like paragraph 5 says, it says that Bay Tek would manufacture Skee-Ball lanes for Full Circle, and Full Circle could broadcast its tournaments, league play and events.
    Q. And if I read you the transcript and audio, those words came out of Mr. Philippon's mouth or yours?
    A. Well, this was our first conversation. You know, our company has the license to Live Play, which is, you know, broadcasting of tournaments and league play and events. So the purpose of this initial conversation with at that time a potential new owner of the Skee-Ball company, the purpose of that conversation was to talk about what each of our respective companies did and how we were going to work together and how we were going to help each other be successful.

PAVONY - Confidential

    Q. Okay. Do you have anything further to add or is that it? I'm giving you a full and fair opportunity.
    MR. SKIBELL: Objection to form.
    Q. Okay. You made a claim against --
    MR. SKIBELL: Did you get a chance to answer? I didn't hear anything on the record.
    MS. LEPERA: He nodded his head, but I thought he was done.
    A. I think we discussed it.
    Q. You said no, right? Nothing further to add?
    A. Nothing further to add regarding what we were just discussing. Sure.
    Q. Exactly. You made a claim against Mr. Sladek in the SBI litigation that he made an agreement with you, because he told you good luck on something that you had expressed regarding your goals and desires. Do you recall that?
    MR. SKIBELL: Objection, lacks foundation.
    MS. LEPERA: I'm asking if he recalls.

1  PAVONY - Confidential
2  A. So you're referring to the oral
3  agreement that Joe Sladek gave us in 2005, which
4  is a long time ago now, but I remember what
5  you're referring to. He didn't just wish us good
6  luck. You know, we again explained to him what
7  it was our company was doing, and he didn't just
8  say good luck. He gave us, he said, he agreed to
9  us doing what it was we presented him with.
10  Q. Okay. The court disagreed with you
11  on that, correct? Threw that claim out, right?
12  MR. SKIBELL: Objection to form.
13  Calls for a legal conclusion.
14  You can answer.
15  A. I actually don't recall what the
16  court said on that.
17  Q. You don't recall the court saying
18  Full Circle, who has failed to plausibly assert
19  the formation of an oral contract, no less a
20  breach thereof? You don't recall that?
21  A. I don't recall that specifically.
22  That lawsuit settled many years ago, but I do
23  remember Joe Sladek not contesting that point
24  during the litigation when it was brought up.
25  Joe himself said, he goes, yes, yes, Joe admitted

1  PAVONY - Confidential
2  during the course of the litigation that, yes,
3  that conversation in 2005 where he did wish us
4  good luck where he did say, yes, you can host
5  Skee-Ball tournaments, you can call it
6  Brewskee-Ball, you can do all these things that
7  we presented him with.
8  Joe decided, I guess because he
9  wanted to tell the truth, that he decided in that
10  litigation, he said, yeah, no, I'm not denying
11  that. That happened. That's what Joe said.
12  Q. Okay. Is that before or after the
13  court threw out your claim?
14  MR. SKIBELL: Objection,
15  argumentative.
16  MS. LEPERA: It's a question. It's
17  cross.
18  Q. Was that conversation that Mr. Sladek
19  allegedly said that, was that before or after the
20  court dismissed your claim against him for
21  alleged oral contract breach?
22  A. I don't recall the exact date, but I
23  think Joe said that during one of the
24  court-appointed mediations when that discussion,
25  that 2005 discussion and that 2005 agreement with

1  PAVONY - Confidential
2  Joe was being discussed. I think it was a
3  court-appointed mediation where Joe said that. I
4  don't know if that was before or after what you
5  are referencing.
6  Q. Okay. You say in paragraph 9 of this
7  document, and I believe you just testified to a
8  similar thing, that you relied on the agreement
9  made by Philippon on behalf of Bay Tek to execute
10  Full Circle's consent to the assignment of the
11  license agreement and settlement agreement from
12  Skee-Ball to Bay Tek. Do you see that?
13  A. Number 9?
14  Q. Yes, sir.
15  A. Yes.
16  Q. Okay.
17  MS. LEPERA: I would like to mark if
18  you would number 12, the consent to
19  assignment. It's FCU multiple zeros 48
20  through 50.
21  (Pavony Exhibit 12, Consent to
22  assignment dated December 3, 2015 Bates
23  stamped FCU 48 through 50, was so marked
24  for identification, as of this date.)
25  MS. LEPERA: So he can identify if

1  PAVONY - Confidential
2  this is what he's talking about.
3  Q. Mr. Pavony, we are showing you what
4  we have marked as Pavony 12, a December 3, 2015
5  document entitled "Potential Sale of Skee-Ball
6  Inc.," and review the four pages and tell me if
7  you recognize it.
8  A. Can I still scroll?
9  MS. NGUYEN: Yes, you can.
10  THE WITNESS: Okay. Thank you.
11  A. Okay.
12  Q. Are you familiar with these
13  documents?
14  A. Um-hum.
15  Q. Okay, and this is a letter that Mr.
16  Sladek wrote to you regarding a potential sale of
17  Skee-Ball, Inc. December 3, 2015 attaching a
18  document that is entitled Consent to Assignment
19  of Confidential Settlement Agreement. Do you see
20  that?
21  A. Yes. The date is correct. The name
22  of the letter you said is right, and then this
23  part is the consent to assignment of confidential
24  settlement agreement. Correct.
25  Q. Okay, and this is the document that