# Exhibit C

1             CONFIDENTIAL - E. PAVONY

2          UNITED STATES DISTRICT COURT

3          EASTERN DISTRICT OF NEW YORK

4   FULL CIRCLE UNITED, LLC,      )

5       Plaintiff,        )
                               ) Case No.

6   vs.                   ) 1:20-cv-03395

7   BAY TEK ENTERTAINMENT, INC.,   )

8       Defendant.        )
   ----------------------------- )

9   BAY TEK ENTERTAINMENT, INC.,   )

10      Counterclaim Plaintiff,  )

11  vs.                  )

12  FULL CIRCLE UNITED, LLC,     )

13      Counterclaim Defendant,  )

14  and                  )

15  ERIC PAVONY,           )

16      Additional Counterclaim  )
      Defendant.        )

17

18

19             CONFIDENTIAL

20  REMOTE VIDEO-RECORDED DEPOSITION OF ERIC PAVONY

21           June 13, 2022

22             Volume I

23  Reported by:

24  KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25  JOB NO. 211444

1          CONFIDENTIAL - E. PAVONY

2          Ask a question.

3          MS. LEPERA:  I've asked many questions

4     to which I'm not getting answers.  And you

5     know what, Mr. Skibell, or whatever your

6     name is, at the end of the day, it is what

7     it is:  He either did his job or he didn't.

8          MR. SKIBELL:  Christine, we will not

9     tolerate --

10          MS. LEPERA:  And obviously, that

11     applies to Mr. Wikman as well.

12          MR. SKIBELL:  My name is Skibell.

13     Please use it.  Don't be rude.  Ask

14     questions.

15          MS. LEPERA:  I'm going to call you

16     Reid.

17          Okay.  Let's mark the next document.

18          (Pavony Exhibit 3, LinkedIn Page for

19     Eric Pavony, marked for identification, as

20     of this date.)

21 BY MS. LEPERA:

22     Q.    This is your LinkedIn page, I believe,

23 Mr. Pavony.

24          Is it complete and fully accurate as

25 to your history, both educational and background

1          CONFIDENTIAL - E. PAVONY

2   and how things -- how we were -- how we were

3   going about events.

4          I really don't recall.  That would

5   be -- that would be hard for me to remember.

6   Ten years ago, how many events we did ten years

7   ago, how many events we did nine years ago, how

8   many events we did eight years ago, I can't come

9   up with numbers for that.

10      Q.    I don't expect you to guess.  I expect

11  you to give me an educated estimate.

12          This was your project, correct?

13          MR. SKIBELL:  Objection to form.

14      Relevance.

15          There's about three

16      questions/statements built in there.

17          MS. LEPERA:  Now you're doing a

18      speaking objection.

19          MR. SKIBELL:  I want to you ask a

20      question that's intelligible and not put

21      three things together so he can answer --

22          MS. LEPERA:  He's told me all day

23      long, and I've had it from the best of them,

24      and you're not.

25  BY MS. LEPERA:

1             CONFIDENTIAL - E. PAVONY

2       going direct you not to answer.

3             MS. LEPERA:  Now you're coaching the

4       witness to tell him it is privileged

5       communication that it's based on the answer,

6       and that's not appropriate.  You can simply

7       ask him whether or not there's going to be a

8       violation of any privilege, without telling

9       him that there is one.

10            MR. SKIBELL:  I am directing him not

11       to answer.

12            MS. LEPERA:  With respect to the legal

13       strategy of this case, seriously?

14            MR. SKIBELL:  I'm going to direct him

15       not to answer to the extent the question

16       would reveal our legal strategy in the case,

17       Christine.

18            MS. LEPERA:  That's not what you said,

19       but okay.  You know, the rules don't apply

20       to you.

21  BY MS. LEPERA:

22       Q.    But go ahead, Mr. Pavony.

23            MR. SKIBELL:  Christine, please stop

24       with the nasty asides.

25            MS. LEPERA:  The rules don't apply to

1          CONFIDENTIAL - E. PAVONY

2          MS. LEPERA:  Wait.  Wait.  Wait.  I

3     said coaching.  I said you're coaching.

4          Do you know the difference between

5     saying you can't coach a witness and telling

6     someone they have a nasty reputation?  Do

7     you know that difference?  Because I don't

8     think you do, but I guess I'm going to have

9     to educate you.

10         MR. SKIBELL:  I'm not playing this

11    game.

12         Eric, you are --

13         MS. LEPERA:  Apparently you are.

14         MR. SKIBELL:  I'm directing you not to

15    answer to the extent it would reveal

16    communications about our legal strategy in

17    this case.  If you can answer

18    notwithstanding that, you can answer the

19    question.

20         THE WITNESS:  I am going to need the

21    question repeated because I -- I have

22    forgotten it since.

23   BY MS. LEPERA:

24    Q.    Is there any reason why you did not --

25   or, Full Circle, I should say, did not admit

1                   UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF NEW YORK

3   = = = = = = = = = = = = = = = = = = = = = = = = =

4   FULL CIRCLE UNITED, LLC,

5              Plaintiff,

6   -vs-               Case No. 1:20-cv-03395

7   BAY TEK ENTERTAINMENT, INC.,

8              Defendant.

9   = = = = = = = = = = = = = = = = = = = = = = = = =

10   BAY TEK ENTERTAINMENT, INC.,

11              Counterclaim Plaintiff,

12   -vs-

13   FULL CIRCLE UNITED, LLC,

14              Counterclaim Defendant,

15   -and-

16   ERIC PAVONY,

17              Additional Counterclaim

                 Defendant.

18

    = = = = = = = = = = = = = = = = = = = = = = = = =

19

             Remote Videotaped Deposition of:

20

21                GAETAN PHILLIPON

22                ***CONFIDENTIAL***

23                Neenah, Wisconsin

24                March 10, 2022

25             Reporter:  Jessica Bolanos

1          That's not a question.  He's already answered

2          his question -- the question, that he didn't

3          know of any others, period.  So now you want

4          to sit here and -- and harass him because he

5          didn't and he should have?  That's not

6          appropriate deposition questioning.

7                    MS. CASADONTE:  The record is --

8                    MS. LEPERA:  It's harassment.  You

9          should have learned of more because you're

10         supposed to be doing your job?  I mean,

11         that's what you're doing.  I -- okay.  You

12         want to make arguments, go ahead.  Ask him

13         facts, ask him questions.  This is a

14         deposition to learn facts.  Learn the facts.

15         You've already understood that fact.  You

16         learned that fact hours ago.

17    Q    I'm going to reveal what's been marked as

18         Exhibit 31.

19                    MS. LEPERA:  Okay.

20    Q    Please let me know when you can see the document

21         on your screen.

22                    MS. LEPERA:  Do you still have the

23         link up, Gaetan?

24                    THE WITNESS:  I do.

25                    MS. LEPERA:  Okay.  Hold on.  9,000

1          8.5, you're asking him?

2                    MS. CASADONTE:  Yes.

3          Paragraph 8 --

4                    MS. LEPERA:  Okay.  Okay.  In its

5          entirety?

6    Q    Without reading -- without reading paragraph 8,

7          sitting here today, do you have any recollection

8          of what the royalty rights, if any, provided under

9          the license agreement to SBI are?

10                   MS. LEPERA:  Wait a second.  You

11         asked the document -- you asked the

12         witness -- are you withdrawing the prior

13         question completely?

14                   MS. CASADONTE:  Yes.  He probably

15         forgot it, Ms. Lepera, because there's been

16         so much discourse.  So I'm --

17                   MS. LEPERA:  No, you asked him to

18         review paragraph 8, and you asked him if he

19         recalls reviewing paragraph 8 back in the

20         day, and he was reading it to answer your

21         question.

22                   MS. CASADONTE:  The common --

23                   MS. LEPERA:  Are you withdrawing

24         that question and now you're asking another

25         question; is that right?  Asking him to now

1          sit here, not look at the document, and tell

2          you whether he remembers the royalty

3          provision from eight or from something?  I'm

4          just trying to -- you see what you're doing?

5                    MS. CASADONTE:  Do you see what

6          you're doing?

7                    MS. LEPERA:  Yeah.  I'm training,

8          because obviously you haven't had any.

9                    MS. CASADONTE:  I don't need this.

10         Thanks.

11                   MS. LEPERA:  If you're going to

12         withdraw a question, withdraw it so the

13         witness knows.  All right?  So we're all

14         trying to, you know, follow you from the last

15         question.

16             In so paragraph 8, she's not asking you

17         about that anymore.  I believe her last

18         question is:  Do you remember the royalty

19         provision separate and apart from the

20         document?  I think that's what she's trying

21         to ask you.

22                   MS. CASADONTE:  That's my question.

23         I'll withdraw the prior question.

24                   MS. LEPERA:  Thank you.

25                   MS. CASADONTE:  Because it was

1    occurred on February 23, 2016, that was

2    confidential at the time --

3                   MS. LEPERA:  To whom?  To whom?

4                   MS. CASADONTE:  As far as -- as far

5              as he understood it.

6                   MS. LEPERA:  So that means whether

7              these people want their picture to be

8              disclosed publicly?  Is that part of it?  You

9              can ask him that.

10                  MS. CASADONTE:  I'm not referring

11             to the document.  I'm not referring to the

12             document.

13                  MS. LEPERA:  Yes, you are.  Stop

14             playing games.  Stop playing games.

15                  MS. CASADONTE:  I'm not.

16                  MS. LEPERA:  This doesn't become

17             you, I'll tell you that much.

18                  MS. CASADONTE:  I'm not a game

19             player.

20                  MS. LEPERA:  It's so transparent,

21             and it is a total game and a total waste of

22             time.

23   Q    Can you just answer the question, please?

24                  MS. LEPERA:  No.  Get a ruling.

25             Get a ruling on the document.  Go ahead.

1    communications with Full Circle that you can

2    recall prior to April 2016 between lanes

3    manufactured under the license agreement and any

4    other agreement of any type to manufacture lanes?

5                 MS. LEPERA:  Objection to form.  I

6         don't know what you're talking about, "any

7         other agreement to manufacture lanes."  Did

8         they make any other distinction?

9                 MS. CASADONTE:  Ms. Lepera, you're

10        using all of my time.

11                MS. LEPERA:  I don't know.  I don't

12        know.  Yeah, well, you -- because you've not

13        answered -- asking -- you're not looking for

14        facts.

15                MS. CASADONTE:  Yes, I am.

16                MS. LEPERA:  You're looking for

17        arguments, and you're looking to distort

18        things, and you're doing it in a way that's

19        not in good faith, period.

20                MS. CASADONTE:  That is not fair to

21        say.  Just because you place something on the

22        record does not make it true, Ms. Lepera, and

23        I really --

24                MS. LEPERA:  The witness told you

25        himself that you were basically tangling two

1      things together.  Came from his mouth.  So if

2      that doesn't clarify for you that this was

3      not in good faith --

4              MS. CASADONTE:  I'm asking --

5              MS. LEPERA:  -- I don't know what

6      else does.

7              MS. CASADONTE:  -- if there was any

8      consent to make them lanes of any type.

9      That's it.  That's it.

10             MS. LEPERA:  No, no.  Now you asked

11      an entirely different question.

12   Q   I believe the question on the table concerned

13      whether there were any communications that you can

14      recall between Bay Tek and Full Circle that made a

15      distinction between Bay Tek manufacturing lanes

16      for Full Circle under the license agreement and

17      any other type of agreement, if any?

18             MS. LEPERA:  You can answer that

19      question.

20   A   Can I?

21             MS. LEPERA:  If you understand it.

22      I always caveat that.

23             THE WITNESS:  Yeah.

24             MS. LEPERA:  It's pretty

25      convoluted, but you can answer it if you can.

1          notification that the claim's not viable.  I
2          think you know that there very well has been
3          much notification.  If you want to ask him if
4          he ever notified anybody, I've got no problem
5          with that.
6   Q   Can you answer the question, if you can answer the
7       question, Mr. Phillipon?  Do you understand the
8       question?
9                    MS. LEPERA:  (Unreportable
10          crosstalk).
11  Q   If you do understand the question, can you please
12      answer it?
13                   MS. LEPERA:  I'm sure he doesn't
14          have a clue what the question is at this
15          point.
16                   MS. CASADONTE:  Well, you've made
17          it so confusing by --
18                   MS. LEPERA:  No, you just -- you
19          just want to be operating in bad faith, and
20          that's what's going on here.
21                   MS. CASADONTE:  That's not --
22          that's not at all what's going on here.
23                   MS. LEPERA:  Then ask him whether
24          he communicated or heard anybody communicate
25          -- you go through this long, dancy question,

1          you know, that makes absolutely no sense, and

2          you don't want to -- you know, want to fix

3          it.  So what can I do?  Ask it again.

4                    MS. CASADONTE:  I have a question

5          pending.

6                    MS. LEPERA:  Can I have the court

7          reporter read it back?  That's the procedure.

8                    THE REPORTER:  Let me get back to

9          it.

10                   (Page 313, Lines 12-16 read back.)

11                   MS. LEPERA:  I don't think that's

12         the question she wanted answered.

13                   THE REPORTER:  Okay.  I'll go back

14         further.  Give me a sec.

15    Q    Here's the thing, Mr. Phillipon.  I think you know

16         what I mean.  I think you know exactly what I

17         mean.  What I'm trying to figure out when, if

18         ever, anyone from Bay Tek had communications with

19         Full Circle about this issue that they purportedly

20         have with Full Circle's claim that you identified

21         here in April 2016.

22                   MS. LEPERA:  Is that a speech or a

23         question?  What's -- don't give speeches.

24         Ask a very simple question.

25                   MS. CASADONTE:  I'm almost out of

1       time.

2   Q   If you understand the question, answer it.  If you

3       don't --

4                   MS. LEPERA:  That's not -- let her

5           read back the first question then.

6                   MS. CASADONTE:  I'm almost out of

7           time.

8                   MS. LEPERA:  The one you just did

9           was even worse.

10  Q   If you understand the question, answer.

11                  MS. LEPERA:  It's all right.  I'll

12          give you the extra -- go ahead.  Just let her

13          read it back.

14                  (Page 312, Lines 2 through 8 read

15          back.)

16  A   My answer is I don't know.

17  Q   Okay.  You see here on the third bullet point, it

18      says, based on the biz case, we are leaning

19      towards saying yes to 20 to 25 pieces built via

20      our Stage Four process."  Do you know what you

21      mean by in April 2016 by "Stage Four process"?

22  A   Taking it to the prototype phase.

23  Q   And do you know what you meant here by "biz case"?

24  A   The biz case is laid out in the "blue sky biz

25      case" in the next bullet.

1                    EXAMINATION
2      BY MS. LEPERA:
3      Q   Okay.  Mr. Phillipon, just a few follow-up
4          questions very briefly.  Do you have any training
5          as a lawyer?
6      A   I do not.
7      Q   Do you have any training in interpreting legal
8          provisions in written contracts?
9      A   I do not.
10     Q   Did you have any conversations with Joe Sladek as
11         to any of the meaning of the terms of either the
12         license agreement or the settlement agreement?
13     A   I did not.
14     Q   Did you have any role in negotiating any of those
15         provisions that were entered into between SBI and
16         Full Circle, either the license agreement or the
17         settlement agreement?
18     A   I did not.
19                    MS. LEPERA:  Okay.  No further
20            questions.
21                    MS. CASADONTE:  Thanks for your
22            time.
23                    MS. LEPERA:  Go for child care.
24            Christina, withdrawn, don't strike.  Don't
25            ask "possible" and don't ask "what do you

1          mean."  Otherwise, did a great job.

2                    THE VIDEOGRAPHER:  We're going off

3          the record at 5:31 p.m., and this concludes

4          today's testimony given by

5          Gaetan J. Phillipon.

6                    (Adjourning at 5:32 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              UNITED STATES DISTRICT COURT
2              EASTERN DISTRICT OF WISCONSIN
3    - - - - - - - - - - - - - - - - - - - - - - - - - - -
     FULL CIRCLE UNITED, LLC,
4
                      Plaintiff,
5
          vs.                          Case No.
6                                      1:20-cv-03395
     BAY TEK ENTERTAINMENT, INC,
7
                      Defendant.       CONFIDENTIAL
8    _____
9    BAY TEK ENTERTAINMENT, INC.,
10            Counterclaim Plaintiff,
11    vs.
12   FULL CIRCLE UNITED, LLC,
13            Counterclaim Defendant,
14    and
15   ERIC PAVONY,
16            Additional Counterclaim
              Defendant.
17
     - - - - - - - - - - - - - - - - - - - - - - - - - - -
18
                      CONFIDENTIAL
19         VIRTUAL VIDEO-RECORDED DEPOSITION OF:
                      LARRY TREANKLER
20
              TAKEN AT:  The Witness's Residence
21
              LOCATED AT:  6747 Kawula Lane
22                Sobieski, Wisconsin
23                July 12, 2022
                  9:24 a.m. to 7:12 p.m.
24
              REPORTED BY:  VICKY L. ST. GEORGE, RMR.
25   - - - - - - - - - - - - - - - - - - - - - - - - - - -
     JOB NO. 5304329

1           THE WITNESS:  No, not to my knowledge.

2           MS. CASADONTE-ASPSTOLOU:  Okay.

3   BY MS. CASADONTE-ASPSTOLOU:

4   Q.   Was there any obligation -- did you basically have

5        any obligation in 2017 to make games -- Strike that.

6        Strike that.

7           Was there any problem with Full Circle's

8        concept of having NSBL lanes integrated with software

9        that enabled cashless payment to play the lane?

10          MS. LEPERA:  Object to the form of the

11       question.  Was there any problem with it?  Meaning

12       did it violate a contract or -- I don't understand

13       the question.

14          MS. CASADONTE-ASPSTOLOU:  You're

15       instructing the witness --

16          MS. LEPERA:  Wait, wait, wait, wait, wait.

17       Wait.  Was there any problem with that activity.

18          MS. CASADONTE-ASPSTOLOU:  Yeah, yeah.

19          MS. LEPERA:  Problem for who?  Problem for

20       who?

21          MS. CASADONTE-ASPSTOLOU:  I'm asking Mr.

22       Treankler.  I'm asking Mr. Treankler.  If he doesn't

23       understand it, he's free to tell me he doesn't

24       understand the question.  But you keep interrupting

25       and telling -- and directing him not to --

1          MS. LEPERA:  You ask the most problematic
2     let's use the word, questions.  Is there a problem
3     in doing something meaning --
4          MS. CASADONTE-ASPSTOLOU:  Okay.
5          MS. LEPERA:  Under what scenario, money?
6     Contracts?  I don't know what --
7          MS. CASADONTE-ASPSTOLOU:  Is there any
8     problem --
9  BY MS. CASADONTE-ASPSTOLOU:
10 Q.   Was that component of the NSBL a problem for you, Mr.
11     Treankler?
12          MS. LEPERA:  Personally?
13          MS. CASADONTE-ASPSTOLOU:  Seriously, Ms.
14     Lepera?  This is why we don't get -- you refuse to--
15          MS. LEPERA:  You just don't even
16     understand the reason I'm --
17          MS. CASADONTE-ASPSTOLOU:  Mr. Treanker, if
18     you don't understand any of my questions at any
19     time, say you don't understand it rather than, you
20     know, having Ms. Lepera have a soliloquy.
21          MS. LEPERA:  Fine, because you're never
22     going to learn how to ask a question.  Go ahead, Mr.
23     Treankler.
24          THE WITNESS:  I need you to ask the
25     question again.

1          MS. LEPERA:  Objection to form,
2      hypothetical, speculative, problem with whom?
3      Legal, a legal lawsuit from someone?  Is that your
4      question?
5              THE WITNESS:  It would not have been a
6      problem to build 100 games without credit card
7      readers.
8  BY MS. CASADONTE-ASPSTOLOU:
9  Q.   Would it have been a problem for Bay Tek to build 500
10      games without credit card readers?
11          MS. LEPERA:  Again, this is speculative.
12      There is no obligation to do any of this.
13          MS. CASADONTE-ASPSTOLOU:  He said there
14      was an obligation.
15          MS. LEPERA:  He did?
16          MS. CASADONTE-ASPSTOLOU:  An agreement.
17      There is an agreement, right, Mr. Treankler?
18  BY MS. CASADONTE-ASPSTOLOU:
19  Q.   Bay Tek agreed, it was one of the manufacturers that
20      agreed to a standard of wiring harness for credit
21      card readers, right?
22          MS. LEPERA:  No, no, no, you understand
23      me, Ms. Casadonte.
24          MS. CASADONTE-ASPSTOLOU:  You're
25      testifying --

CONFIDENTIAL

Page 257

1          MS. LEPERA:  Your question was whether or

2     not it was a problem for him to have built all these

3     multiple lanes for Full Circle and get himself into

4     some sort of hot water with someone.

5          MS. CASADONTE-ASPSTOLOU:  No, you're

6     testifying for your witness, Ms. Lepera.

7          MS. LEPERA:  I'm not testifying.  I'm

8     trying to clarify your question.

9          MS. CASADONTE-ASPSTOLOU:  His face is

10    telling me that he has something to say and you just

11    keep interrupting.

12          MS. LEPERA:  You just want to harass this

13    witness, don't you?

14          MS. CASADONTE-ASPSTOLOU:  I tried to --

15          MS. LEPERA:  You want to harass this

16    man --

17          MS. CASADONTE-ASPSTOLOU:  I had a

18    question --

19          MS. LEPERA:  -- in good faith and giving

20    you answers all day long at the last hour.

21          MS. CASADONTE-ASPSTOLOU:  I should have

22    called the Special Master earlier today.

23          MS. LEPERA:  I would show her the record

24    in which I would show her you asked the same

25    questions 90 times --


800-726-7007                Veritext Legal Solutions                305-376-8800

1             MS. CASADONTE-ASPSTOLOU:  And there was a

2      delay, and I've said off the record and on that my

3      hearing impairment makes it even more difficult for

4      me to follow because of the delay and the audio

5      issues, Ms. Lepera, and you interposing your

6      objections --

7             MS. LEPERA:  You know what, I just give up

8      with you.  I'm just really glad you don't work here.

9      That's all I've got to say.  Go ahead, ask the

10      question again.

11             MS. CASADONTE-ASPSTOLOU:  There is a

12      delay.  I'm going off the record.

13             THE VIDEO OPERATOR:  We're going off.

14      Stand by.  We're off the record at 5:31 p.m.

15             (Recess taken.)

16             THE VIDEO OPERATOR:  We are back on the

17      record at 5:32 p.m.  This is the end of media unit

18      No. 5.  We are off the record at 5:32 p.m.

19             (Recess taken.)

20             THE VIDEO OPERATOR:  We are back on the

21      record at 5:47 p.m.  This is the beginning of media

22      unit No. 6.

23   BY MS. CASADONTE-ASPSTOLOU:

24   Q.   Mr. Treankler, do you know whether this

25        standardization committee was in a position to, if it

1     know where you're going.  But okay, fine.  You can

2     answer that question.

3           MS. CASADONTE-ASPSTOLOU:  He works for Bay

4     Tek, right?  Didn't you say that?

5           MS. LEPERA:  You're screaming now.  It's

6     really unattractive.

7           MS. CASADONTE-ASPSTOLOU:  Well, you scream

8     all the time, Ms. Lepera.

9           MS. LEPERA:  No, I don't.  I don't

10    speak -- I never scream.  Never scream.  Never.

11          THE WITNESS:  You asked me if I know where

12    Adam Ambrosius works?

13   BY MS. CASADONTE-ASPSTOLOU:

14   Q.   Yes.

15   A.   For one of my other companies.

16   Q.   Do you know the name of the company that Adam

17    Ambrosius works for now?

18   A.   MCL Fab.

19   Q.   Is MCL Fab a different entity than the MCL you

20    previously identified at the beginning of the

21    deposition?

22   A.   It's part -- sorry.  It's part of.  It's our main --

23   Q.   MCL Fab --

24   A.   Sorry.  Go ahead.

25   Q.   I didn't mean to interrupt you.

1           MS. CASADONTE-ASPSTOLOU:  He said -- I'm
2      going to retract that question.
3           MS. LEPERA:  I'm going to be able to put
4      my objection in so go ahead.
5           MS. CASADONTE-ASPSTOLOU:  Did I mishear
6      you because Ms. Lepera keeps speaking over you and--
7           MS. LEPERA:  Oh, my God, are you like a
8      human being?  I don't understand this.  Just --
9           MS. CASADONTE-ASPSTOLOU:  Still talking.
10     BY MS. CASADONTE-ASPSTOLOU:
11     Q.   Did I misunderstand you?
12     A.   I'm not --
13     Q.   Did you say that there was a decision made to
14          terminate the license agreement, yes or no?
15           MS. LEPERA:  No.
16           THE WITNESS:  I said there was not a
17     decision made to terminate the license agreement.
18           MS. CASADONTE-ASPSTOLOU:  Then I didn't
19     hear you.  Then I didn't hear, Ms. Lepera.  It's not
20     funny.
21           MS. LEPERA:  Because I'm allowed to put my
22     objection in first.  It's not appropriate that you
23     decide you want my witness to answer the question
24     before I get my objection in.  You're not allowed to
25     do that.  It doesn't work that way.  So I would just

1  Q.   I'll ask it again so the record is clear.

2              Were you the person that made a decision to

3       terminate the license agreement?

4              MS. LEPERA:  No, objection to the form of

5       the question.

6              MS. CASADONTE-ASPSTOLOU:  Sorry, sorry.

7       I'll withdraw it.

8  BY MS. CASADONTE-ASPSTOLOU:

9  Q.   Were you the person that made the decision --

10             MS. LEPERA:  -- are bad faith Christina.

11      You should be ashamed of yourself.  You should be

12      ashamed of yourself.

13             MS. CASADONTE-ASPSTOLOU:  Ms. Lepera --

14             MS. LEPERA:  Not making a decision to

15      terminate the license agreement, he said it 12

16      times.  He made a proposal which has a lot of terms

17      in it.  What is wrong here?

18             MS. CASADONTE-ASPSTOLOU:  I misspoke.  I

19      did misspeak.

20             MS. LEPERA:  No, you didn't misspeak.  No,

21      you didn't misspeak.  You've been trying to do this

22      for hours.

23             MS. CASADONTE-ASPSTOLOU:  We haven't --

24             MS. LEPERA:  Now, act -- every question

25      has to be posed in good faith.  Every question.

1      There is a rule.

2                  MS. CASADONTE-ASPSTOLOU:  Ms. Lepera,

3      please.  Stop accusing me of acting in bad faith.

4                  MS. LEPERA:  You know that last question

5      you asked was wrong.

6                  MS. CASADONTE-ASPSTOLOU:  I misspoke and I

7      retracted it immediately.  Let me continue.

8   BY MS. CASADONTE-ASPSTOLOU:

9   Q.   Mr. Treankler, were you the person that made the

10      decision to propose a term sheet to Full Circle

11      terminating the license agreement?

12                  MS. LEPERA:  Objection to form,

13      mischaracterizes the document, omits, ignores

14      significant facts.  You can answer the question.

15                  THE WITNESS:  I did that in conjunction

16      with Holly and my attorney David Timm.

17                  MS. CASADONTE-ASPSTOLOU:  Mr. Atfeh, can

18      you please bring up the term sheet and -- the term

19      sheet, please.

20                  MR. MOUHANNAD:  The letter or the --

21                  MS. CASADONTE-ASPSTOLOU:  It will be

22      providing the term sheet as an attachment to a

23      letter from David Timm I believe.  The term sheet

24      wasn't produced as a stand alone document by Bay

25      Tek.