UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FULL CIRCLE UNITED, LLC,

      Plaintiff,

  v.

BAY TEK ENTERTAINMENT, INC.,

      Defendant.

CASE NO. 1:20-CV-03395-BMC

BAY TEK ENTERTAINMENT, INC.,

      Counterclaim Plaintiff,

  v.

FULL CIRCLE UNITED, LLC,

      Counterclaim Defendant,

  and

ERIC PAVONY,

      Additional Counterclaim
      Defendant.

**BAY TEK ENTERTAINMENT, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE ARGUMENT AND
EVIDENCE TO THE EXTENT OFFERED TO RE-LITIGATE
<u>ISSUES ESTABLISHED AS A MATTER OF LAW</u>**

Defendant and Counterclaim Plaintiff Bay Tek Entertainment, Inc. ("Bay Tek") respectfully submits this memorandum of law in support of its motion *in limine*, pursuant to Rules 401, 402, and 403 of the Federal Rules of Evidence, to exclude arguments and evidence proffered by Plaintiff and Counterclaim Defendant Full Circle United, LLC (collectively "Full Circle" or "FCU") that re-litigates issues established as a matter of law by this Court.

## I.      PRELIMINARY STATEMENT

As discussed at the February 7, 2025 pretrial conference, evidence seeking to re-litigate established rulings on claims made in the Court's summary judgment decision is not expected and will not be allowed. Notwithstanding that discussion, and while professing otherwise, FCU indeed is seeking to proffer arguments and evidence to re-litigate established claims and issues ruled on as a matter of law.

In its September 23, 2024 Summary Judgment Order (ECF 193; "MSJ Order"), this Court ruled as a matter of law that livestreaming of events using the Mark[1] by FCU was a breach of the License Agreement because such conduct is "patently outside" the limited trademark rights granted to FCU thereunder. The Court found that FCU engaged in such conduct, and thereby breached the License Agreement, including Section 4.5 thereof (which mandates that FCU may not use the Skee-Ball Mark via television and the Internet except for limited promotional and marketing purposes) as a matter of law. Accordingly, it has been established as a matter of law that livestreaming and broadcasting of events and tournaments is not a grant of rights, but instead a use and right *outside the scope of the License Agreement*.

---

[1] Terms used herein are defined below.

Nonetheless, FCU is attempting to re-litigate this issue at trial under the deceptive stance that it is making different arguments not already determined. It is not. It is seeking a "redo" on issues decided by this Court. In particular, FCU is seeking to argue that Bay Tek's "refusal" to allow (unauthorized) livestreaming or broadcast of events using the Mark in a proposed transaction FCU sought with ESPN is a purported *breach* by *Bay Tek* of the best efforts clause in the License Agreement.

In the pretrial order (ECF 263; "Joint PTO"), FCU states that it will seek to prove Bay Tek breached the License Agreement's "best efforts" provision (Section 7.2) by "[r]efus[ing] to consent" to a contract between FCU and ESPN that would have given ESPN the broad right to distribute a television program depicting Skee-Ball Live Play (as that term is defined in the License Agreement), including via online streaming: "FCU will demonstrate [at trial] that Bay Tek . . . [r]efused to consent to broadcast of Live Play of Skee-Ball tournaments on ESPN." Joint PTO at 3-4. There is no dispute that Bay Tek did not agree to such a use, for the reason that it is *beyond the scope of the License Agreement*. FCU's effort to mischaracterize and portray that decision as a potential breach of the best efforts clause by Bay Tek is directly contrary to and makes a mockery of the Court's ruling that FCU has *no right* to stream or broadcast tournaments using the Mark (outside the limited parameters of Section 4.5). *A fortiori*, as the License Agreement *prohibits* such use as a matter of law, under no conceivable construct could Bay Tek be in breach thereof for *not allowing* such *prohibited* use. It was Bay Tek's absolute right to not authorize that use with ESPN as it was outside the scope of the License Agreement.

If FCU is allowed to argue or characterize evidence to support these foreclosed issues at trial, such a result would cause prejudice to Bay Tek, confuse the issues, and mislead the jury.

To prevent such error and confusion, and to ensure the jury considers only relevant matters, any arguments and evidence offered to support said argument on this issue should be precluded.

## II.      RELEVANT FACTUAL BACKGROUND

### A.      The Licensed Uses

The 2014 trademark license agreement between Bay Tek's predecessor in interest and FCU (the "License Agreement"; ECF 156-2) identifies four "Licensed Uses" of the Skee-Ball® trademark (the "Skee-Ball Mark" or the "Mark") that FCU may, and indeed is obligated to, exploit:

1.   Conducting, arranging, presenting, marketing, and promoting [L]ive [P]lay leagues, teams, events, and tournaments utilizing alley rollers manufactured by [Bay Tek] called Skee-Ball® machines….

2.   Developing, producing, selling, and distributing merchandise solely in connection with Live Play….

3.   Developing, producing, offering, and using an electronic scoring application….

4.   Using the Skee-Ball [Mark] for sponsorships or endorsements solely and directly related to Live Play….

License Agreement, Section 3.1(a)-(d).

Section 4.5, in conjunction with Section 3.2, caveats the Licensed Uses by noting that FCU has the right to use the Skee-Ball Mark via the Internet, radio, television, or other communication and media outlets "for promotional and marketing purposes *only* of its Live Play business" and related merchandise. License Agreement, Section 4.5 (emphasis added).

**B.**     <u>FCU's Proposed Agreement With ESPN To Broadcast Live Play</u>

In December 2019, FCU engaged in discussions with ESPN regarding the potential for

ESPN to broadcast a competitive Live Play Skee-Ball tournament. Over the next two months,

behind Bay Tek's back, FCU worked with ESPN on proposed deal points and a full long-form

agreement providing, *inter alia*, that ESPN would have the broad right to distribute a television

program depicting Skee-Ball Live Play, authorizing it to have rights with the Mark, including via

online streaming. *See* Declaration of Mark C. Humphrey ("Humphrey Decl."), Ex. 1 at Section

5(a).[2] Only when the agreement was essentially ready to be signed did FCU reach out to Bay

Tek, on February 12, 2020, to announce it was entering into the agreement with ESPN, and

belatedly asked if Bay Tek would consent. Bay Tek advised it was outside the scope of the

License Agreement to broadcast Skee-Ball tournaments, via television and the Internet, and was

not a "Licensed Use" granted to FCU under the License Agreement (and consequently was

reserved to Bay Tek as owner of the Skee-Ball Mark). The agreement between ESPN and FCU

ultimately was not consummated.

**C.**     <u>Summary Judgment Ruling That Livestreaming is Outside the Scope of the License Agreement</u>

On December 23, 2022, Bay Tek moved for summary judgment (*see* ECF 149, 150) on,

*inter alia*, its claim for breach of the License Agreement by FCU's livestreaming as outside the

scope of that Agreement as a matter of law. On September 23, 2024, this Court granted Bay

---

[2] Notably, Section 5(a) of the proposed ESPN deal states: "In the event that ESPN declines to broadcast, publish, release, or distribute the Program in any way by December 31, 2020, and only in such an event, ***[FCU] will have the right to distribute or publish the Program on the internet through streaming video networks/services such as Twitch and YouTube*** and/or social media platforms such as Facebook, Instagram, and Twitter[.]" Humphrey Decl., Ex. 1 at Section 5(a) (emphasis added).

Tek's motion to the extent of finding that livestreaming of Skee-Ball matches was "patently outside the rights conferred" in Section 4.5 of the License Agreement. MSJ Order at 19.

**III.     FCU SHOULD BE PRECLUDED FROM OFFERING ARGUMENT AND PURPORTED EVIDENCE THAT BAY TEK BREACHED THE LICENSE AGREEMENT BECAUSE IT "REFUSED TO CONSENT" TO THE ESPN DEAL**

FCU's claim that Bay Tek breached the best efforts provision by "refusing to consent" to the ESPN deal is unquestionably an effort to re-litigate the Court's September 23, 2024 MSJ Order finding that livestreaming tournaments (which the ESPN deal proposed) is outside of the scope of the License Agreement. As this Court found, streaming Skee-Ball matches via the Internet is "patently outside the rights conferred" to FCU under the License Agreement. MSJ Order at 19. In particular, the Court noted that livestreaming is a breach of Section 4.5, which states, *inter alia*, that FCU can use the Skee-Ball Mark via television and the Internet ***only*** for advertising and promotional purposes.[3] FCU's proposed agreement with ESPN to grant it the broad right to broadcast and stream Skee-Ball matches, *via **all** manner of media (including the Internet), therefore is also "patently outside the rights conferred" to FCU under the License Agreement. Bay Tek thus had every right to maintain the prohibition under the License Agreement.

Given that the ESPN deal was far outside the scope of the License Agreement, any argument that Bay Tek had an obligation thereunder ***not*** to refuse to allow it to proceed, but

---

[3] FCU has attempted to argue throughout this case that livestreaming was permitted under the License Agreement because it constituted "promotion" of Live Play. By finding that livestreaming constituted a breach and invoking Section 4.5, the Court rejected this argument. Nevertheless, in the Pretrial Order FCU continues to assert this argument, but seeks to mask it by characterizing livestreaming as "FCU's ***promotion*** of Live Play ***via video***…." Joint PTO at 16 (emphasis added).

instead had to allow it, or violate the Section 7.2 "best efforts" provision, is patently frivolous. New York courts consistently recognize that best efforts provisions cannot be used to insert new obligations into a contract—particularly where those purported additional obligations would directly contradict the contract's existing terms. *See Vestron, Inc. v. Nat'l Geographic Soc.*, 750 F. Supp. 586, 593 (S.D.N.Y. 1990) ("A best efforts requirement must be reconciled with other clauses in the contract to the extent possible, not used as a basis for negating them.") (citation omitted). That is exactly what FCU is attempting to do here, which would thereby render Sections 3.2 and 4.5 and the Court's ruling thereon meaningless. In other words, FCU wants a "redo" on this issue, which is blatantly impermissible.

Accordingly, any argument or purported evidence offered in support of such an argument runs in blatant conflict with the Court's ruling, and thus is worse than irrelevant and prejudicial. Were arguments made in support of a putative claim that Bay Tek "refused to consent" to the ESPN deal made to a jury, jurors could be led to believe that FCU was in fact permitted to stream and broadcast Live Play events (as well as sub-license others to do so), and could seek to punish Bay Tek accordingly for not "allowing" FCU to enter into the ESPN deal despite the fact that FCU had zero right to make that proposed agreement. It is thus imperative that the Court's ruling on this point be instructed, and that the proposed ESPN deal not be permitted to be used as evidence of a purported breach by Bay Tek of the best efforts clause—contained in the very same License Agreement that *prohibits* FCU from using the Mark in such a matter.

## CONCLUSION

Bay Tek respectfully requests that the Court grant this motion *in limine* and preclude

FCU from introducing argument or purported evidence in support of a "claim" that Bay Tek

breached Section 7.2 by "[r]efus[ing] to consent" to the proposed ESPN agreement.

DATED:  New York, New York
            February 28, 2025

Respectfully submitted,

Mitchell Silberberg & Knupp LLP


By: */s/ Mark C. Humphrey*
     Christine Lepera (CL 9311)
     Andrew Nietes
     437 Madison Ave., 25th Floor
     New York, New York 10022-7001
     Telephone: (212) 509-3900
     Facsimile: (212) 509-7239
     Email: ctl@msk.com
     Email: jmm@msk.com

     Mark C. Humphrey (*pro hac vice*)
     James D. Berkley (*pro hac vice*)
     2049 Century Park East, 18th Floor
     Los Angeles, California 90067-3120
     Telephone: (310) 312-2000
     Facsimile: (310) 312-3100
     Email: mxh@msk.com
     Email: jdb@msk.com

     Attorneys for Bay Tek Entertainment, Inc.