UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FULL CIRCLE UNITED, LLC,

 Plaintiff,

 -against-

BAY TEK ENTERTAINMENT, INC,

 Defendant.

BAY TEK ENTERTAINMENT, INC.,

 Counterclaim-Plaintiff,

 -against-

FULL CIRCLE UNITED, LLC, and ERIC PAVONY,

 Counterclaim-Defendants.

Case No: 20 Civ. 3395 (BMC)

# MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE*
# REGARDING THE PROPOSED ESPN CONTRACT

MANDEL BHANDARI LLP
Rishi Bhandari
Robert Glunt
Evan Mandel
80 Pine Street, 33rd Floor
New York, New York 10005
Tel: (212) 269-5600
Fax: (646) 964-6667

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS ............................................................................................................................................ 3

    I.      THE LICENSE AGREEMENT AND THE PROPOSED
           ESPN CONTRACT ............................................................................................ 3

    II.     THE SEPTEMBER 23, 2024 SUMMARY JUDGMENT DECISION ................... 4

    III.    THE JOINT PRETRIAL ORDER ......................................................................... 4

APPLICABLE STANDARDS ....................................................................................................... 5

ARGUMENT .................................................................................................................................. 6

    I.      SUMMARILY REJECTING THE ESPN PROPOSAL
           BREACHED THE BEST EFFORTS OBLIGATION ........................................... 6

    II.     EVIDENCE REGARDING THE ESPN PROPOSAL
           IS RELEVANT TO OTHER CLAIMS .................................................................. 9

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Bloor v. Falstaff Brewing Corp.*,
    601 F.2d 609 (2d Cir. 1979) ................................................................................ 7

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) ............................................................................ 7, 9

*Kornmann v. City of New York Bus. Integrity Comm'n*,
    Case No. 17-CV-2328 (BMC), 2020 WL 13680367
    (E.D.N.Y. Sept. 25, 2020) ..................................................................................... 5

*Kroboth v. Brent*,
    215 A.D.2d 813 (3d Dep't 1995) ......................................................................... 7

*Pfizer Inc. v. PCS Health Sys., Inc.*,
    234 A.D.2d 18 (1st Dep't 1996) ........................................................................... 7

*SourceOne Dental, Inc. v. Patterson Companies, Inc.*,
    Case No. 15-CV-5440 (BMC), 2019 WL 13422976
    (E.D.N.Y. Sept. 9, 2019) ....................................................................................... 5

*United States v. Monsalvatge*,
    850 F.3d 483 (2d Cir. 2017) ................................................................................ 5

*United States v. Pugh*,
    162 F. Supp. 3d 97 (E.D.N.Y. 2016) ................................................................... 5

*USAirways Grp., Inc. v. Brit. Airways PLC*,
    989 F. Supp. 482 (S.D.N.Y. 1997) ...................................................................... 7

*Vestron, Inc. v. Nat'l Geographic Soc.*,
    750 F. Supp. 586 (S.D.N.Y. 1990) ...................................................................... 8

# TABLE OF ABBREVIATIONS

| Abbreviation | Item |
|---|---|
| Def. Br. | Defendant's Memorandum of Law in Support of its Motion *in Limine* (ECF 268) |
| ECF __ | Docket Entries in this Action |
| Glunt Decl. | Declaration of Robert Glunt in Opposition to Defendants' Motions *in Limine* |
| License Agreement | Confidential Trademark License Agreement between Skee Ball, Inc. and Full Circle United, LLC (Glunt Decl. Ex. A) |
| PX __ | Exhibits Marked on Plaintiff's Exhibit List (ECF 263-5) |

## PRELIMINARY STATEMENT

In its papers, Defendant advances the same argument that it has made to this Court at least twice before. Defendant again argues that its obligations under the License Agreement are strictly limited to the specific actions itemized in the contract and that its promises to use "best efforts" to promote licensed uses of the Skee-Ball® mark are a meaningless dead letter guarantee. Indeed, Defendant now claims that it has an "absolute right" (Def. Br. 1) to withhold its consent to any uses of the Skee-Ball® mark, even if that consent would promote Licensed Uses, even if that consent is within its own capabilities, and even if Defendant withholds that consent in bad faith, in an effort to frustrate the purposes of the License Agreement and deny Plaintiff the benefits of the bargain.

Defendant is incorrect. As this Court already found in its September 23, 2024 Summary Judgment decision, Defendant promised to use best efforts to promote Licensed Uses in Section 7.2 of the License Agreement. Under New York law, that obligation was more than a dead letter guarantee, and more than just the good faith obligation implied within every contract. While Defendant was not required to cooperate with all of Plaintiff's requests in furtherance of licensed uses of the Skee-Ball® mark, it was obligated to consider those requests in good faith and to cooperate with them to the extent permitted by its own capabilities. Whether Defendant was required to accept a particular request is a fact-dependent inquiry for the jury, but Defendant did not have an "absolute right" to summarily reject all such inquiries.

Defendant argues that Plaintiff is seeking to "re-litigate" the Court's Summary Judgment determination that livestreaming Skee-Ball® matches is outside the rights granted to it by the License Agreement and/or that Plaintiff breached the License Agreement by doing so without consent. (Def. Br. 1-2). This is also incorrect. While Plaintiff will challenge whether those

breaches of the License Agreement are material (as the Court acknowledged in its ruling) Plaintiff has no intention of challenging at trial the Court's liability determination and would not expect to be permitted to do so.

Rather, Plaintiff seeks to introduce evidence that Defendant categorically rejected a proposed business arrangement negotiated by Plaintiff where ESPN, the cable sports network, would broadcast Skee-Ball® matches. This proposed arrangement would have showcased competitive Skee-Ball® play and introduced it to a much broader audience than ever before. The deal had enormous potential upside for the Skee-Ball® brand and would have materially promoted licensed uses of the Skee-Ball® mark under the License Agreement. However, Defendant refused to even contemplate such an arrangement.

To be clear, Plaintiff did not move forward with broadcasting live Skee-Ball® play on ESPN and, given the Court's summary judgment ruling, does not intend to argue at trial that it had the unilateral right to do so under the License Agreement. Nor will Plaintiff contend at trial that Defendant was required to accept any conceivable ESPN contract offered to it, no matter the terms. But Defendant was required to consider the proposed deal in good faith and the evidence will show that it failed to do so.

While this conduct constitutes an independent breach of Defendant's best efforts obligations, it is also properly considered in connection with the other claims remaining in the action. In determining whether Defendant acted in bad faith in refusing to sell custom Skee-Ball® tables to Plaintiff and/or prohibiting Plaintiff from obtaining them from other sources, the jury could properly consider the totality of Defendant's contemporaneous interactions with Plaintiff, including its refusal to speak with Plaintiff, consider any and all other proposals from Plaintiff, or promote Plaintiff's competitive Skee-Ball® leagues to others in the industry. In

addition, Plaintiff's negotiation for the broadcast of competitive Skee-Ball® on ESPN demonstrates that it fulfilled its own best efforts obligations under the License Agreement and would tend to refute Defendant's own claims for breach.

As set forth below, Defendant's motion should be denied.

## FACTS

**I.     THE LICENSE AGREEMENT AND THE PROPOSED ESPN CONTRACT**

Both Plaintiff and Defendant assert a claims for breach of the best efforts obligation contained in Section 7.2 of the License Agreement. *See* ECF 52 ¶ 242-44; ECF 263 at 10. That provision states as follows:

> 7.2    SBI and FCU each agree that they will use their respective best efforts to promote the Licensed Uses offered in connection with the SKEE-BALL Trademark and to coordinate the development, creation, distribution, sale, advertising, and promotion of the Licensed Uses so as to maintain and enhance the value of the goodwill residing in the SKEE-BALL Trademark.

In late 2019 and early 2020, Plaintiff engaged in discussions with the cable sports network ESPN regarding the broadcast of a competitive Skee-Ball® tournament. Once it became clear that ESPN was interested, Plaintiff discussed the terms that ESPN would be willing to agree to and obtained a draft contract setting forth those terms.

In February of 2020 Plaintiff informed Defendant of the draft contract and asked that it consent to the agreement or, to the extent that the terms were unacceptable, propose language that would permit it to consent. However, Defendant refused to do so, instead responding through counsel that Plaintiff was violating the License Agreement. While Defendant claimed to be open to a "commercially viable" arrangement with ESPN, it never proposed any terms that it would accept in service of that deal and instead killed the negotiations. As a result, ESPN did

not broadcast any competitive Skee-Ball®, and the opportunity to promote the game to a wide audience was wholly squandered.

## II. THE SEPTEMBER 23, 2024 SUMMARY JUDGMENT DECISION

In connection with its motion for summary judgment, Defendant argued that Plaintiff's best efforts claim should be dismissed. In its briefing, Defendant argued that its obligations under the License Agreement were limited to actions that were specifically enumerated and that absent such specific guarantees, it could not be found to have breached the agreement. *See* ECF 150 at 17-19; ECF 183 at 9.

In its September 23, 2024 decision, the Court rejected Defendant's arguments:

> Bay Tek counters that the license agreement did not include "Skee-Ball Live" as a licensed use or obligate Bay Tek to provide custom lanes to Full Circle. Of course it didn't – if the License Agreement had such provisions, Bay Tek would have clearly breached them. What is relevant is that the License Agreement does not prohibit Full Circle from requesting that Bay Tek approve "Skee-Ball Live" as a licensed use or from requesting that Bay Tek manufacture custom lanes. If a jury finds that Bay Tek was not acting in good faith, considering its own capabilities, in ultimately rejecting these requests, then Bay Tek breached ¶ 7.2.

ECF 193 at 10.

## III. THE JOINT PRETRIAL ORDER

In the most recent Joint Pretrial Order, Plaintiff characterizes its claim as follows:

***Plaintiff's Breach of Contract Claim***

Plaintiff Full Circle United, LLC ("FCU") sues for breach of the 2014 License Agreement (PX 1), to which Defendant Bay Tek Entertainment, Inc. ("Bay Tek") is a party after purchasing the rights to the Skee-Ball®, brand.

Bay Tek breached Section 7.2 of the License Agreement by failing to use its "best efforts to promote the Licensed Uses offered in connection with the SKEE-BALL Trademark and to coordinate the development, creation, distribution, sale, advertising, and promotion of the Licensed Uses so as to maintain and enhance the value of the goodwill residing in the SKEE-BALL Trademark."

ECF 263 at 3. Plaintiff then itemizes several examples of behavior of Defendant that breached the best efforts guarantee, including when Bay Tek "Refused to consent to broadcast of Live Play of Skee-Ball tournaments on ESPN." *Id.* at 4. Plaintiff further states that: "FCU will demonstrate that these actions were not taken "in good faith in light of [Bay Tek's] own capabilities," as the law requires, but instead were done in an effort to sabotage FCU's promotion of licensed uses, either out of personal spite or in an effort to force a renegotiation of the license or to terminate the license." *Id.*

In proof of this allegation, Plaintiff intends to offer limited testimonial evidence and five exhibits (PX 90-94), all correspondence relating to the ESPN proposal and Defendant's rejection of the same.

## **APPLICABLE STANDARDS**

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence and if the fact is of consequence in determining the action." *United States v. Monsalvatge*, 850 F.3d 483, 494 (2d Cir. 2017) (internal marks omitted).

"The Federal Rules of Evidence favor the admission of all relevant evidence." *Kornmann v. City of New York Bus. Integrity Comm'n*, Case No. 17-CV-2328 (BMC), 2020 WL 13680367, at *1 (E.D.N.Y. Sept. 25, 2020) (Cogan, J.). Accordingly, a party seeking to exclude evidence *in limine* "has the burden of establishing that the evidence is not admissible for **any purpose**." *United States v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016) (emphasis added), *aff'd*, 937 F.3d 108 (2d Cir. 2019). As a result, "evidence should be excluded on a motion *in limine* only when evidence is clearly inadmissible on all potential grounds." *SourceOne Dental, Inc. v. Patterson Companies, Inc.*, Case No. 15-CV-5440 (BMC), 2019 WL 13422976, at *2 (E.D.N.Y. Sept. 9, 2019) (Cogan, J.).

5

## ARGUMENT

I.  **SUMMARILY REJECTING THE ESPN PROPOSAL BREACHED THE BEST EFFORTS OBLIGATION**

Defendant first argues that "FCU's claim that Bay Tek breached the best efforts provision by 'refusing to consent' to the ESPN deal is unquestionably an effort to re-litigate the Court's September 23, 2024 MSJ Order finding that livestreaming tournaments (which the ESPN deal proposed) is outside of the scope of the License Agreement." (Def. Br. 5). This is incorrect.

Plaintiff does not dispute that the Court held that livestreaming was outside of the enumerated rights granted to Full Circle under the License Agreement. Nor does Plaintiff seek to challenge at trial the Court's finding that it violated the License Agreement by livestreaming Skee-Ball® matches on the internet without Bay Tek's consent. Plaintiff will challenge whether any breaches of the License Agreement were material, but the Court itself held that the materiality of any breaches had not been established as a matter of law. ECF 193 at 20.

Moreover, while the ESPN proposal involved broadcasting Skee-Ball® matches, it was fundamentally separate from the conduct that the Court held was a breach of the License Agreement. The Court held that Full Circle violated the License Agreement when it personally "streamed full Skee-Ball Live matches online." *Id.* at 19. The ESPN proposal, under which a third-party cable network would broadcast Skee-Ball® matches on television with the express consent of Bay Tek, was not discussed in the Court's ruling. And since Bay Tek rejected the proposal, neither party claims that any ESPN broadcasting actually took place in violation of the License Agreement.

More substantively, in seeking to enforce its best efforts claim, given the Court's summary judgment ruling, Plaintiff will not argue at trial that it had the contractual right to stream Skee-Ball® matches. To the contrary, Plaintiff will argue that, under the best efforts

clause, Bay Tek was obligated to cooperate in good faith with the ESPN negotiations. Plaintiff brought Bay Tek a highly beneficial proposal and Defendant summarily rejected that proposal without giving it serious consideration. Plaintiff contends that this summary rejection violated Bay Tek's "obligation to act with good faith in light of one's own capabilities." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 124 (2d Cir. 2013).

Defendant further argues that "[g]iven that the ESPN deal was far outside the scope of the License Agreement, any argument that Bay Tek had an obligation thereunder **not** to refuse to allow it to proceed, but instead had to allow it, or violate the Section 7.2 'best efforts' provision, is patently frivolous." Def. Br. 5-6. Again, this is incorrect.

"Under New York law, a contract need not explicitly define 'best efforts' for its 'best efforts' provision to be enforceable." *USAirways Grp., Inc. v. Brit. Airways PLC*, 989 F. Supp. 482, 491 (S.D.N.Y. 1997). To the contrary, a party who agrees to use "best efforts" must "pursue all reasonable methods" for accomplishing the stated goal. *Kroboth v. Brent*, 215 A.D.2d 813, 814 (3d Dep't 1995); *see also Pfizer Inc. v. PCS Health Sys., Inc.*, 234 A.D.2d 18, 18–19 (1st Dep't 1996) (upholding broad injunction against party who "breached the terms of its agreement with plaintiff to 'use its best efforts' to promote plaintiff's products and treat them in a 'favorable manner'"). This may even involve accepting financial losses so long as they are not "substantial" and do not require the company to "spend itself into bankruptcy." *Bloor v. Falstaff Brewing Corp.*, 601 F.2d 609, 613-14 (2d Cir. 1979) ("Once the peril of insolvency had been averted, the drastic percentage reductions in Ballantine sales as related to any possible basis of comparison required Falstaff at least to explore whether steps not involving substantial losses could have been taken to stop or at least lessen the rate of decline").

7

Bay Tek unambiguously had the ability to accept the ESPN proposal. At a minimum, it had the ability to make clear what contractual terms it would require to authorize the broadcast of competitive Skee-Ball® in the future. And to the extent that Bay Tek took the position that absolutely no broadcasting of competitive Skee-Ball® would ever be permitted, so long as Full Circle was involved, that position would violate its obligation to promote Licensed Uses of the Skee-Ball® by Full Circle under the License Agreement. As such, to the extent that a jury finds that Defendant unreasonably rejected the ESPN proposal or did so in bad faith, it could properly conclude that Defendant breached its best efforts obligations.

Defendant's lone authority is not to the contrary. Defendant cites *Vestron, Inc. v. Nat'l Geographic Soc.*, 750 F. Supp. 586 (S.D.N.Y. 1990) for the notion that "best efforts provisions cannot be used to insert new obligations into a contract." (Def. Br. 6). But that case is deeply inapposite. In *Vestron*, a video distributor (Vestron) was given exclusive rights to certain National Geographic documentaries. Pursuant to that agreement, the distributor was required to use "best efforts" to promote the distribution of those documentaries and maximize royalties. National Geographic then claimed that the distributor had violated this "best efforts" promise by entering into certain subdistribution deals. The court rejected this argument, noting that

> Most significantly, the contract itself explicitly permits Vestron to enter into subdistribution agreements, and it excludes monies received by these subdistributors from gross receipts for purposes of calculating royalties due to the Society. Thus, the parties not only anticipated the utilization of subdistributors, they also foresaw the impact that it would have on royalties.

*Vestron, Inc.*, 750 F. Supp. at 593. The court specifically distinguished this explicit carve out from cases like *Bloor*, noting that "Vestron appears to be making reasonable marketing decisions in light of the resource constraints that it faces—decisions that are expressly permitted by the contract it is working under." *Id.* This is markedly different than the situation here, where the

8

License Agreement does not grant Bay Tek any explicit carve out entitling it to reject specific categories of proposals from Full Circle and where there is credible evidence that Bay Tek was not making "reasonable marketing decisions" but rather was operating in bad faith.

## II. EVIDENCE REGARDING THE ESPN PROPOSAL IS RELEVANT TO OTHER CLAIMS

Even if Defendant's rejection of the ESPN proposal were not itself a violation of its best efforts obligation, the limited evidence that Plaintiff seeks to present on the issue would be relevant to two other claims that are unambiguously before the jury.

*First*, Defendant alleges that Plaintiff breached its own best efforts obligations under the License Agreement by failing to take reasonable steps to promote competitive Skee-Ball® throughout the United States. *See* ECF 263 at 10. Plaintiff's negotiation of a proposal by which competitive Skee-Ball® would be broadcast on ESPN would tend to refute that claim. In addition to demonstrating that Plaintiff was engaged in reasonable efforts to promote competitive Skee-Ball®, that evidence also demonstrates that Defendant actively frustrated those efforts.

*Second*, Plaintiff alleges that Defendant breached its best efforts obligation in other ways, in particular by refusing to permit Plaintiff to acquire custom Skee-Ball® tables to support competitive play. To prevail, Plaintiff must show that Defendant did not "act with good faith in light of [it's] own capabilities." *Cruz*, 720 F.3d at 124. To the extent that Defendant argues that it refused to authorize custom Skee-Ball® tables for legitimate business reasons, the fact that Defendant categorically rejected other requests by Plaintiff to promote competitive Skee-Ball® would tend to show that it was not genuinely evaluating requests by Plaintiff in good faith.

## **CONCLUSION**

Plaintiff respectfully requests that Defendant's motion be denied.

**Dated:** New York, NY
February 20, 2025

                            Respectfully submitted,

                            MANDEL BHANDARI LLP
                            80 Pine Street, 33rd Floor
                            New York, New York 10005
                            (212) 269-5600

                            By:   /s/ Robert Glunt
                                      Robert Glunt

                            *Attorneys for Plaintiff*