**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

FULL CIRCLE UNITED, LLC,

    Plaintiff,

  -against-

BAY TEK ENTERTAINMENT, INC,

    Defendant.

---

BAY TEK ENTERTAINMENT, INC.,

    Counterclaim-Plaintiff,

  -against-

FULL CIRCLE UNITED, LLC, and ERIC PAVONY,

    Counterclaim-Defendants.

Case No: 20 Civ. 3395 (BMC)

---

# REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF PLAINTIFF'S MOTIONS *IN LIMINE*

MANDEL BHANDARI LLP
Rishi Bhandari
Robert Glunt
Evan Mandel
80 Pine Street, 33rd Floor
New York, New York 10005
Tel: (212) 269-5600
Fax: (646) 964-6667

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 1

    I.    DEFENDANT FAILS TO SHOW THAT ITS EXHIBITS
          ARE ADMISSIBLE ..................................................................................... 1

          A.    Exhibits That Contain Multiple Levels of Hearsay .................................... 1

          B.    Exhibits That Contain of Statements from Defendant's Counsel ............... 3

          C.    Exhibits That Contain of Seven Years of Bank Statements ........................ 4

          D.    Exhibits That Contain of Hours of Skee-Ball® Videos ............................. 5

          E.    Exhibits That Consist of Hearsay ................................................................ 6

          F.    Interrogatory Responses .............................................................................. 7

          G.    Memorandum of Law .................................................................................. 7

          H.    Facebook Live Post ..................................................................................... 8

    II.    OTHER LITIGATION BY PLAINTIFF OR ITS PRINCIPAL ............................ 8

    III.    CRIMINAL HISTORY OF ANY WITNESS ........................................................ 9

    IV.    PLAINTIFF'S ABILITY TO RAISE INVESTMENT CAPITAL ......................... 9

    V.    SETTLEMENT DISCUSSIONS ........................................................................... 10

    VI.    ATTORNEYS AND ATTORNEY-CLIENT RELATIONSHIP,
          DISMISSED CLAIMS OR DEFENSES, *IN LIMINE* RULINGS,
          AND DISCUSSIONS BY COUNSEL ................................................................ 10

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Amerisource Corp. v. RxUSAIntern. Inc.*,
 Case No. 02-CV-2514 (JMA), 2009 WL 235648
 (E.D.N.Y. 2009) ................................................................................................ 2

*Cooper v. City of New Rochelle*,
 925 F. Supp. 2d 588 (S.D.N.Y. 2013) ............................................................... 2

*Evans v. Port Auth. of New York & New Jersey*,
 192 F. Supp. 2d 247 (S.D.N.Y. 2002) ............................................................... 1

*Laidlaw v. Sage*,
 158 N.Y. 73 (N.Y. 1899) ................................................................................... 4

*Morisseau v. DLA Piper*,
 532 F. Supp. 2d 595 (S.D.N.Y. 2008) ............................................................... 2

*Reilly v. Natwest Markets Grp. Inc.*,
 181 F.3d 253 (2d Cir. 1999) .............................................................................. 5

*Schaghticoke Tribal Nation v. Kempthorne*,
 587 F. Supp. 2d 389 (D. Conn. 2008) ............................................................... 3

*Timberlake Const. Co. v. U.S. Fid. & Guar. Co.*,
 71 F.3d 335 (10th Cir. 1995) ............................................................................ 3

*United States v. Murgio*,
 Case No. 15-CR-769 (AJN), 2017 WL 365496
 (S.D.N.Y. Jan. 20, 2017) ................................................................................... 1

*United States v. Robbins*,
 197 F.3d 829 (7th Cir. 1999) ............................................................................ 1

**Rules**

Fed. R. Evid. 402 ....................................................................................................... 4

Fed. R. Evid. 403 ....................................................................................................... 8

Fed. R. Evid. 609 ....................................................................................................... 9

Fed. R. Evid. 803(6) ........................................................................................... 2, 3, 6

# TABLE OF ABBREVIATIONS

| Abbreviation | Item |
|---|---|
| 2/7 TR: | Transcript of the February 7, 2025 Pretrial Conference (Glunt Dec. Ex. A) |
| Def Br. | Defendant's Memorandum of Law in Opposition to Plaintiff's Motions *in Limine* (ECF 271) |
| ECF __ | Docket Entries in this Action |
| Defendant Exhibit | Exhibits Identified by Defendant in the February 28, 2025 Proposed Pretrial Order (ECF 254) |
| Glunt Decl. | Declaration of Robert Glunt in Further Support of Plaintiff's Motions *in Limine* |
| Open Br. | Plaintiff's Memorandum of Law in Support of its Motions in Limine (ECF 265) |
| Pavony Dep. | Excerpts of the Deposition of Eric Pavony (Glunt Decl. Ex. B) |
| Treankler Dep. | Excerpts of the Deposition of Larry Treankler (Glunt Decl. Ex. D) |

## PRELIMINARY STATEMENT

Defendant characterizes Plaintiff's motion as "substantively defective, improper, and/or brought for the purpose of leveling *ad hominem* attacks." Def. Br. 1. But despite these alleged failings, Defendant fails to demonstrate that the contested evidence that it proffers is properly admissible. Accordingly, Plaintiff respectfully requests that the Court issue an order *in limine*, precluding argument, questioning, testimony, or evidence on the following matters.

## ARGUMENT

### I. DEFENDANT FAILS TO SHOW THAT ITS EXHIBITS ARE ADMISSIBLE

"A party seeking to show that a particular record fits into a hearsay exception bears the burden of so demonstrating." *United States v. Murgio*, Case No. 15-CR-769 (AJN), 2017 WL 365496, at *6 (S.D.N.Y. Jan. 20, 2017). As a universal matter, Defendant's exhibit-by-exhibit argumentation falls substantially short of this mark. While Defendant's papers broadly assert that certain evidence is admissible as "a business record," "for state of mind," or "for the effect on the listener," Defendant does not even attempt to demonstrate that the elements of these doctrines are satisfied, and, by and large, avoids even discussing the relevant tests. This is plainly insufficient,[1] and, as set forth in detail below, the evidence should be excluded.

#### A. Exhibits That Contain Multiple Levels of Hearsay

Defendant's Exhibits D, J, and EE are emails between Defendant's employees relating conversations with third parties. As double hearsay, they are inadmissible.

---

[1] *See, e.g.*, *Evans v. Port Auth. of New York & New Jersey*, 192 F. Supp. 2d 247, 263 (S.D.N.Y. 2002) ("The burden of establishing admissibility, of course, is with the proponent of the evidence."); *United States v. Robbins*, 197 F.3d 829, 838 (7th Cir. 1999) ("We also require the proponent of the out-of-court statement to bear the burden of showing that the statement qualifies under Rule 804(b)(3)").

Defendant first argues that the documents should be admitted as "business records" since they represent "email exchange[s]" between "Bay Tek Executive[s]." Def. Br. 1-2. Not so. "An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule." *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 621 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 487 (2d Cir. 2009). To admit an out of court statement under Fed. R. Evid. 803(6), a party must demonstrate that:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification

Fed. R. Evid. 803(6). Defendant has not demonstrated that any of these elements are satisfied. But most critically, since the documents relate statements conveyed to the authors by third parties, the authors lack personal knowledge as to the truth of the underlying statements and cannot satisfy the elements of the rule. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 607 (S.D.N.Y. 2013) (excluding records containing double hearsay because "[d]ouble hearsay is not admissible unless each level of hearsay is covered by an exception to the hearsay rule").

Defendant next argues that the documents are relevant for the "state of mind" of its employees. Def. Br. 2-3. This is also incorrect. "[T]o be admissible under this exception, the hearsay declarant's state of mind must be relevant to the case." *Amerisource Corp. v. RxUSAIntern. Inc.*, Case No. 02-CV-2514 (JMA), 2009 WL 235648, * (E.D.N.Y. 2009). Exhibit D was authored by Tom Diedrich, who was neither identified on Bay Tek's Rule 26(a) disclosures nor on its trial witness list. Glunt Decl. Ex. E. His state of mind is irrelevant to the

2

issues to be tried. Exhibits J and EE forward messages from Anna Heck, another non-witness who was not identified by Defendant as knowledgeable about this case. *Id.* As such, her mental state is also irrelevant.

Even to the extent that the messages were received by individuals with some connection to the case, Bay Tek has not even attempted to explain how the contemporaneous mental state of those individuals is relevant. The documents in question were sent in late 2016 and early 2017, months or years prior to the event at issue. Absent a showing by Bay Tek that the mental state of a specific individual is relevant to the remaining claims, this exception also fails.

**B.     Exhibits That Contain of Statements from Defendant's Counsel**

Defendant's Exhibit AB is a letter from Defendant's counsel to Plaintiff. Defendant claims that this email is "admissible as a business record" because it was "sent on behalf of Bay Tek in the regular course of business." Def. Br. 3. This argument is frivolous. The letter was sent by outside counsel in connection with a legal dispute and, as such, was not generated "in the regular course of business." *Timberlake Const. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 342 (10th Cir. 1995) (*reversing* district court admission of attorney letter as business record because "[i]t is well-established that one who prepares a document in anticipation of litigation is not acting in the regular course of business.").

Even if it were, Fed. R. Evid. 803(6) does not deem admissible all documents "regularly generated" by a party, only those made contemporaneously by persons with knowledge in the course of a regularly conducted activity where accurate record-keeping was required. *Schaghticoke Tribal Nation v. Kempthorne*, 587 F. Supp. 2d 389, 397 (D. Conn. 2008), *aff'd*, 587 F.3d 132 (2d Cir. 2009) ("a party seeking to introduce an email made by an employee about a business matter under the hearsay exception under Rule 803(6) must show that the employer imposed a business duty to make and maintain such a record."). Since the attorney-drafted

letters are not made by parties with knowledge and are not "records of regularly conducted activity," they are not generally admissible by the party whose counsel drafted them. *See* Open Br. 3.

### C. Exhibits That Contain of Seven Years of Bank Statements

Defendant's Exhibits CR, CS, CT, and CU consist of seven full years of bank statements for Plaintiff along with bank statements for Eric Pavony. Plaintiff has objected to these documents as irrelevant, cumulative, and a waste of time. In response, Defendant claims that:

> Bay Tek does not intend to go through the minutiae of the bank statements and specific entries. Instead, the documents will be used to establish an approximately 18-month gap in FCU's bank statements, during which time a personal bank account in the name of FCU consultant Eric Cooper was being used as FCU's bank account. This evidence is relevant to demonstrate FCU's financial status, lack of capital or funding, and lack of resources. As such, it is relevant to demonstrate that Bay Tek's concerns about the viability of FCU and its business ability were well founded.

Def. Br. 5. For several reasons, this does not support the admission of the documents.

*First*, it is unclear how admitting hundreds of pages of bank statements establishes a "gap." Admitting a bank statement from January and another from March does not prove that February statement does not exist, merely that it has not been introduced. And to the extent that Defendant admits that the "minutiae" – *i.e.* the actual contents – of the documents are irrelevant, it essentially concedes that they should not be admitted under Fed. R. Evid. 402.

*Second*, Plaintiff's "financial status" is not relevant to the claims or defenses in this action. And absent such relevance, a party's relative wealth or poverty is not admissible. *Laidlaw v. Sage*, 158 N.Y. 73, 103 (N.Y. 1899) ("Evidence of the wealth of a party is never admissible, directly or otherwise, unless in those exceptional cases where position or wealth is necessarily involved in determining the damages sustained."); *see also Reilly v. Natwest Markets*

4

*Grp. Inc.*, 181 F.3d 253, 266 (2d Cir. 1999) ("Evidence of wealth… is generally inadmissible in trials not involving punitive damages").

**Third**, Defendant's witnesses did not claim that "the viability of FCU and its business ability" was a motivation for its decision to sever ties with Plaintiff. *See* Treankler Dep. 112:9-20; 137:8-138:4. Even if they had, Plaintiff's bank records were not produced until discovery and, as such, played no role in such a decision.

### D. Exhibits That Contain of Hours of Skee-Ball® Videos

Defendant's Exhibits EV-FT consist of 46 hours of video-recorded Skee-Ball® games. The videos contain continuous audio commentary representing hours of out of court statements, all hearsay if taken for its truth and potentially prejudicial even if not.

The videos are too long to be played in their entirety to the jury, even if Defendant spent all of its requested time in doing so. Yet in its papers, Defendant continues to equivocate about whether and what portions of the videos it intends to show. This is improper. If Defendant identified the (minutes? hours?) of video that it intended to use, Plaintiff could properly decide whether the statements contained in those portions merited objection. The Court could then evaluate the merits of those objections prior to trial. But absent such designation, both Plaintiff and the Court are left to guess at what snippets Defendant intends to call up, without warning, in the middle of trial. This is precisely the sort of "over-designation and ambush" that this Court's pretrial procedures are meant to prevent.

Defendant claims that "[v]ideo exhibits are typically not played in their entirety during trial but nevertheless are admitted into evidence in whole for consideration by a jury." Def. Br. 11. But the cases identified by Defendant involved security or dashboard camera videos without relevant audio commentary being received into evidence. Leaving aside that such videos

generally span *minutes, not days*, the courts in those cases were not faced with the prospect of hours upon hours of unvetted hearsay being dumped into the lap of the jury.

Notably, Defendant also acknowledges that there is other documentary evidence of the number of Skee-Ball® matches that Plaintiff streamed over the internet. *Id.* at 7. Even were there not, Plaintiff offered to stipulate (and remains willing to stipulate) to the total duration of video matches posted by FCU. Given this, the Court should preclude Exhibits EV-FT.

### E. Exhibits That Consist of Hearsay

Defendant's Exhibits E, F, EF, EG, and EH are internal email messages exchanged between Tom Diedrich, Mark Johnson, and Rick Rochetti, employees of Defendant who will not be testifying at trial. The documents are hearsay and should be excluded.

Defendant claims that the documents are "all admissible as business records under Fed R. Evid. 803(6), and individuals included on these emails will testify to lay the foundation for same at trial." Def. Br. 4. Defendant further argues that the documents are relevant to "multiple individuals' then-existing state of mind on matters." *Id.* at 4-5. Not so.

As set forth above, under Rule 803(6), Defendant would need to show that the statements were made by individuals with personal knowledge of the facts that they contain, and that they were made as a record of a regularly conducted business activity. But Exhibits E, F, EF, EG, and EH are not factual records of any regularly conducted activity. They contain statements of opinion about the interactions between FCU and Bay Tek and suggestions for how Bay Tek should proceed in negotiations. And with respect to state of mind, these statements are written by individuals not designated by Bay Tek as knowledgeable about the matters at issue in its 26(a) disclosures, two of whom were not deposed in this case. Glunt Decl. Ex. E. Accordingly,

Plaintiff would be prejudiced if written statements from those undisclosed employees were admitted at trial without any opportunity for cross examination. Open Br. 5.

### F. Interrogatory Responses

Defendant's Exhibits CZ, DA, and DC are interrogatory response provided by Plaintiff. The responses contain irrelevant and/or prejudicial information and should be excluded.

Defendant claims that Exhibits DA and DC are "party admissions of FCU, namely that FCU has not asserted that Bay Tek breached the License Agreement by not providing custom lanes to FCU, and that the License Agreement contains no such obligation." Def. Br. 12. The documents are indeed, subject to a hearsay exception. But the purpose for which Defendant seeks to introduce them – advancing a rejected legal argument concerning the non-existence of a best-efforts obligation – is improper. *See* Open Br. 6.

Defendant claims that Exhibit CZ is relevant to show "issues such as FCU's offering "free Skee-Ball" nights and FCU's lack of funding for its business goals." Def. Br. 12. But Defendant does not claim that its decision to cut ties with Plaintiff was motivated by either of these matters, and neither is relevant to the claims still at issue in the case. *See* Treankler Dep. 112:9-20; 137:8-138:4.

### G. Memorandum of Law

Defendant's Exhibit DD is a memorandum of law submitted by Plaintiff's prior counsel. It contains statements of law, references to dismissed claims, and summaries of evidence, none of which are properly set before the jury.

Defendant claims that this document is relevant because it uses Skee-Ball® in lower case and refers to it as a "game rather than a brand." Def. Br. 13. This is frivolous. Games and brands are not mutually exclusive categories; certainly Monopoly® or Scrabble® are both.

Indeed, Defendant and its counsel *routinely characterize Skee-Ball® as a game*. *See* Glunt Decl. Ex. F.

Even were this document marginally relevant, introducing it would put so much irrelevant/prejudicial material before the jury that it is properly precluded under Rule 403.

H.  **Facebook Live Post**

Defendant's Exhibit AC is a screenshot of a Facebook Live Video with no relevant content – *i.e.* no actual video. Defendant claims that the title alone "Here's a brief discussion about the "Lane of the Future" and its importance for the growth of NSBL and Skee-Ball® as a sport in this country – and beyond" is probative. Def. Br. 13-14. This is incorrect. The fact that Plaintiff viewed Skee-Ball Live® lanes as important for future growth is not genuinely disputed. Accordingly, the document contains no content that would justify its admission in light of the assorted third-party statements that it also includes and should be excluded. *See* Open Br. 7.

II.  **OTHER LITIGATION BY PLAINTIFF OR ITS PRINCIPAL**

In its papers, Defendant actually states that it will seek to relitigate the case between FCU and SBI at trial, writing "the SBI Litigation is relevant because Pavony and FCU engaged in similar conduct in that case, advanced similar arguments, and are still attempting to achieve the same goal (genericizing the Skee-Ball Mark) as they did in the SBI Litigation." Def. Br. 15. This entire line of argument is wholly improper and should be precluded.

All claims and counterclaims between FCU and SBI (Defendant's predecessor in interest) were settled in 2014. Glunt Decl. Ex. G. SBI claimed that FCU had infringed upon the Skee-Ball® mark, and FCU claimed that the Skee-Ball® mark was generic and should be cancelled. *Id.* Pursuant to the settlement the parties agreed to put each of these allegations to rest. As SBI's successor, Defendant is bound by this agreement and should be held to it.

Even if the earlier litigation was probative of something, introducing the factual allegations and legal claims of an earlier lawsuit is prejudicial, a waste of time, and risks juror confusion. *See* Open Br. 7-8. And the harms are even more acute in this case. Should Defendant accuse FCU of infringing the Skee-Ball® mark prior to the Settlement Agreement, FCU would have no choice but to explain the defenses that it had to those purported acts of infringement. This includes the claim that the Skee-Ball® mark is generic and is properly cancelled. This issue would complicate the trial tremendously and risk substantial juror confusion. The entire matter is properly precluded.

## III.   CRIMINAL HISTORY OF ANY WITNESS

It is unclear whether Defendant opposes Plaintiff's motion to exclude criminal convictions except as permitted under Fed. R. Evid. 609. Defendant emphasizes in its papers that only "irrelevant" criminal convictions should be excluded. Def. Br. 15-16. On some level this is correct, but Rule 609 provides the exclusive mechanism for determining whether a conviction is sufficiently relevant to be admitted. *See* Fed. R. Evid. 609(a).

## IV.   PLAINTIFF'S ABILITY TO RAISE INVESTMENT CAPITAL

As the Court will recall, at the February 7, 2025 pretrial conference Defendant sought to exclude two witnesses who would specifically testify concerning Plaintiff's capital raising efforts. Defendant claimed that these witnesses were unnecessary and should be excluded because those efforts were not at issue in the case. 2/7 TR: 9:20-10:9 ("We never said they failed to try to get money.").

Now Defendant claims that "Bay Tek intends to present evidence as to FCU's … lack of capital acquisition…at trial" and takes the position that "FCU admittedly raised no capital and had no significant funds of its own, and that evidence, *inter alia*, is highly relevant." Def. Br. 20.

Plaintiff respectfully requests that the Court hold Defendant to its word and require that it honor the specific representations it made at the pretrial conference.

## V. SETTLEMENT DISCUSSIONS

Defendant claims that the January 17, 2019 meeting between the parties is relevant and should not be excluded. Def. Br. 22-23. Plaintiff agrees. That meeting predated this litigation and was not a discussion undertaken to settle it. Given the substantial agreement on this issue, any other reference to settlement discussions between the parties should be excluded.

## VI. ATTORNEYS AND ATTORNEY-CLIENT RELATIONSHIP, DISMISSED CLAIMS OR DEFENSES, *IN LIMINE* RULINGS, AND DISCUSSIONS BY COUNSEL

Defendant acknowledges that reference to attorneys or the attorney client relationship, dismissed claims or defenses, *in limine* rulings, and/or discussions by counsel should be precluded. Def. Br. 16-17, 21, 24. Plaintiff notes that it advised Defendant of its intent to move on these issues prior to filing its motion in hope of avoiding unnecessary motion practice. But in any event, as Defendant does not challenge the propriety[2] of the requested orders, Plaintiff respectfully requests that they be granted.

## **CONCLUSION**

Plaintiff respectfully requests that its motions be granted.

---

[2] Apart from embarrassment, Defendant's sole grievance is that Plaintiff only moved to preclude Defendant from referring to these topics. Def. Br. 16-17, 21, 24. This is not unusual, and Plaintiff did not need a court order to prevent its own counsel from discussing irrelevant issues. But regardless, Plaintiff has no objection to the Court's order applying to both parties.

**Dated:** New York, NY
March 21, 2025

> Respectfully submitted,
>
> MANDEL BHANDARI LLP
> 80 Pine Street, 33rd Floor
> New York, New York 10005
> (212) 269-5600
>
> By:   /s/ Robert Glunt           
>        Robert Glunt
>
> *Attorneys for Plaintiff*