# Exhibit B

C O N F I D E N T I A L

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x
FULL CIRCLE UNITED, LLC,

                     Plaintiff,

      -against-           Case No.
                           1:20-cv-03395

BAY TEK ENTERTAINMENT, INC.,

                     Defendant.
------------------------------------x
BAY TEK ENTERTAINMENT, INC.,
         Counterclaim Plaintiff,

      -against-

FULL CIRCLE UNITED, LLC,
         Counterclaim Defendant,

        -and-

ERIC PAVONY,
   Additional Counterclaim Defendant.
------------------------------------x

              June 14, 2022

   Continued Remote Videotaped Deposition of

Full Circle United, LLC, by ERIC PAVONY, and

ERIC PAVONY, individually, held via Zoom before

Joseph R. Danyo, a Shorthand Reporter and Notary

Public within and for the State of New York.


Reported by: Joseph R. Danyo

Job No. 211445

PAVONY - Confidential

please.

(Record read)

A. And you're asking me to remember any words that he said seven years ago? Off the top of my head, I can't remember any specific words that he said that day specifically, but like I was saying, like I was saying, like, and the reason I bring this up is the purpose of the conversation was to understand that Bay Tek understood what it was that Full Circle United does and wanted to accomplish, and that was the purpose of that conversation, and we had it prior to us assigning the agreements over, and had Bay Tek never given us the oral promise that they, and agreed to manufacture lanes for us prior to the assignment, we never would have assigned the agreement over to Bay Tek.

Q. Okay. So again the intention in here is that there was an agreement that was made, correct?

MR. SKIBELL: Objection.

Q. Page 5, paragraph 5. What were the material terms of the agreement that was made in that conversation that he uttered?

PAVONY - Confidential

A. I can't remember exactly anything he uttered specifically like you keep asking me, but, you know, we talked about manufacturing of lanes, custom lanes at that, and we talked about how many lanes, over how many, you know, broken up, you know, how many lanes, how many years or how many lanes per year. We talked about the purpose of turning Skee-Ball into a bona fide sport to bring it to television networks such as ESPN. That was what was being discussed and what Gaetan agreed to.

Q. I'm asking you to tell me what he agreed to, not what was discussed. Do you have anything further to add to your testimony as to what he said?

MR. SKIBELL: Christine, why don't you refresh his recollection with the transcript if you want him to answer about specific words?

MS. LEPERA: No. My deposition, I do it my way. I have the transcript. Would you like me to comment on it?

A. My answer --

Q. Do you have anything else to add, Mr.

PAVONY - Confidential

Pavony?

A. Yes.

Q. Specific words that Mr. Philippon said that manifested an agreement to do any of the things you mention in paragraph 5?

A. I can't remember specific words, but like paragraph 5 says, it says that Bay Tek would manufacture Skee-Ball lanes for Full Circle, and Full Circle could broadcast its tournaments, league play and events.

Q. And if I read you the transcript and audio, those words came out of Mr. Philippon's mouth or yours?

A. Well, this was our first conversation. You know, our company has the license to Live Play, which is, you know, broadcasting of tournaments and league play and events. So the purpose of this initial conversation with at that time a potential new owner of the Skee-Ball company, the purpose of that conversation was to talk about what each of our respective companies did and how we were going to work together and how we were going to help each other be successful.

PAVONY - Confidential

Q. Okay. Do you have anything further to add or is that it? I'm giving you a full and fair opportunity.

MR. SKIBELL: Objection to form.

Q. Okay. You made a claim against --

MR. SKIBELL: Did you get a chance to answer? I didn't hear anything on the record.

MS. LEPERA: He nodded his head, but I thought he was done.

A. I think we discussed it.

Q. You said no, right? Nothing further to add?

A. Nothing further to add regarding what we were just discussing. Sure.

Q. Exactly. You made a claim against Mr. Sladek in the SBI litigation that he made an agreement with you, because he told you good luck on something that you had expressed regarding your goals and desires. Do you recall that?

MR. SKIBELL: Objection, lacks foundation.

MS. LEPERA: I'm asking if he recalls.

| Page 343 | Page 344 |
|---|---|
| 1  PAVONY - Confidential | 1  PAVONY - Confidential |
| 2  A. So you're referring to the oral | 2  during the course of the litigation that, yes, |
| 3  agreement that Joe Sladek gave us in 2005, which | 3  that conversation in 2005 where he did wish us |
| 4  is a long time ago now, but I remember what | 4  good luck where he did say, yes, you can host |
| 5  you're referring to. He didn't just wish us good | 5  Skee-Ball tournaments, you can call it |
| 6  luck. You know, we again explained to him what | 6  Brewskee-Ball, you can do all these things that |
| 7  it was our company was doing, and he didn't just | 7  we presented him with. |
| 8  say good luck. He gave us, he said, he agreed to | 8    Joe decided, I guess because he |
| 9  us doing what it was we presented him with. | 9  wanted to tell the truth, that he decided in that |
| 10   Q. Okay. The court disagreed with you | 10  litigation, he said, yeah, no, I'm not denying |
| 11  on that, correct? Threw that claim out, right? | 11  that. That happened. That's what Joe said. |
| 12   MR. SKIBELL: Objection to form. | 12   Q. Okay. Is that before or after the |
| 13   Calls for a legal conclusion. | 13  court threw out your claim? |
| 14   You can answer. | 14   MR. SKIBELL: Objection, |
| 15   A. I actually don't recall what the | 15   argumentative. |
| 16  court said on that. | 16   MS. LEPERA: It's a question. It's |
| 17   Q. You don't recall the court saying | 17   cross. |
| 18  Full Circle, who has failed to plausibly assert | 18   Q. Was that conversation that Mr. Sladek |
| 19  the formation of an oral contract, no less a | 19  allegedly said that, was that before or after the |
| 20  breach thereof? You don't recall that? | 20  court dismissed your claim against him for |
| 21   A. I don't recall that specifically. | 21  alleged oral contract breach? |
| 22  That lawsuit settled many years ago, but I do | 22   A. I don't recall the exact date, but I |
| 23  remember Joe Sladek not contesting that point | 23  think Joe said that during one of the |
| 24  during the litigation when it was brought up. | 24  court-appointed mediations when that discussion, |
| 25  Joe himself said, he goes, yes, yes, Joe admitted | 25  that 2005 discussion and that 2005 agreement with |

| Page 345 | Page 346 |
|---|---|
| 1  PAVONY - Confidential | 1  PAVONY - Confidential |
| 2  Joe was being discussed. I think it was a | 2  this is what he's talking about. |
| 3  court-appointed mediation where Joe said that. I | 3   Q. Mr. Pavony, we are showing you what |
| 4  don't know if that was before or after what you | 4  we have marked as Pavony 12, a December 3, 2015 |
| 5  are referencing. | 5  document entitled "Potential Sale of Skee-Ball |
| 6   Q. Okay. You say in paragraph 9 of this | 6  Inc.," and review the four pages and tell me if |
| 7  document, and I believe you just testified to a | 7  you recognize it. |
| 8  similar thing, that you relied on the agreement | 8   A. Can I still scroll? |
| 9  made by Philippon on behalf of Bay Tek to execute | 9   MS. NGUYEN: Yes, you can. |
| 10  Full Circle's consent to the assignment of the | 10   THE WITNESS: Okay. Thank you. |
| 11  license agreement and settlement agreement from | 11   A. Okay. |
| 12  Skee-Ball to Bay Tek. Do you see that? | 12   Q. Are you familiar with these |
| 13   A. Number 9? | 13  documents? |
| 14   Q. Yes, sir. | 14   A. Um-hum. |
| 15   A. Yes. | 15   Q. Okay, and this is a letter that Mr. |
| 16   Q. Okay. | 16  Sladek wrote to you regarding a potential sale of |
| 17   MS. LEPERA: I would like to mark if | 17  Skee-Ball, Inc. December 3, 2015 attaching a |
| 18   you would number 12, the consent to | 18  document that is entitled Consent to Assignment |
| 19   assignment. It's FCU multiple zeros 48 | 19  of Confidential Settlement Agreement. Do you see |
| 20   through 50. | 20  that? |
| 21   (Pavony Exhibit 12, Consent to | 21   A. Yes. The date is correct. The name |
| 22   assignment dated December 3, 2015 Bates | 22  of the letter you said is right, and then this |
| 23   stamped FCU 48 through 50, was so marked | 23  part is the consent to assignment of confidential |
| 24   for identification, as of this date.) | 24  settlement agreement. Correct. |
| 25   MS. LEPERA: So he can identify if | 25   Q. Okay, and this is the document that |