# Exhibit C

1          CONFIDENTIAL - E. PAVONY

2          UNITED STATES DISTRICT COURT

3          EASTERN DISTRICT OF NEW YORK

4    FULL CIRCLE UNITED, LLC,        )
                                     )
5          Plaintiff,               )
                                     ) Case No.
6    vs.                            ) 1:20-cv-03395
                                     )
7    BAY TEK ENTERTAINMENT, INC.,   )
                                     )
8          Defendant.               )
     ----------------------------   )
9    BAY TEK ENTERTAINMENT, INC.,   )
                                     )
10         Counterclaim Plaintiff,  )
                                     )
11   vs.                            )
                                     )
12   FULL CIRCLE UNITED, LLC,       )
                                     )
13         Counterclaim Defendant,  )
                                     )
14   and                            )
                                     )
15   ERIC PAVONY,                   )
                                     )
16         Additional Counterclaim  )
           Defendant.               )
17

18

19              CONFIDENTIAL

20   REMOTE VIDEO-RECORDED DEPOSITION OF ERIC PAVONY

21              June 13, 2022

22              Volume I

23   Reported by:

24   KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25   JOB NO. 211444

1          CONFIDENTIAL - E. PAVONY

2          Ask a question.

3          MS. LEPERA:  I've asked many questions

4     to which I'm not getting answers.  And you

5     know what, Mr. Skibell, or whatever your

6     name is, at the end of the day, it is what

7     it is:  He either did his job or he didn't.

8          MR. SKIBELL:  Christine, we will not

9     tolerate --

10          MS. LEPERA:  And obviously, that

11     applies to Mr. Wikman as well.

12          MR. SKIBELL:  My name is Skibell.

13     Please use it.  Don't be rude.  Ask

14     questions.

15          MS. LEPERA:  I'm going to call you

16     Reid.

17          Okay.  Let's mark the next document.

18          (Pavony Exhibit 3, LinkedIn Page for

19     Eric Pavony, marked for identification, as

20     of this date.)

21 BY MS. LEPERA:

22     Q.    This is your LinkedIn page, I believe,

23 Mr. Pavony.

24          Is it complete and fully accurate as

25 to your history, both educational and background

1          CONFIDENTIAL - E. PAVONY

2     and how things -- how we were -- how we were

3     going about events.

4               I really don't recall.  That would

5     be -- that would be hard for me to remember.

6     Ten years ago, how many events we did ten years

7     ago, how many events we did nine years ago, how

8     many events we did eight years ago, I can't come

9     up with numbers for that.

10         Q.    I don't expect you to guess.  I expect

11    you to give me an educated estimate.

12               This was your project, correct?

13               MR. SKIBELL:  Objection to form.

14          Relevance.

15               There's about three

16          questions/statements built in there.

17               MS. LEPERA:  Now you're doing a

18          speaking objection.

19               MR. SKIBELL:  I want to you ask a

20          question that's intelligible and not put

21          three things together so he can answer --

22               MS. LEPERA:  He's told me all day

23          long, and I've had it from the best of them,

24          and you're not.

25    BY MS. LEPERA:

1          CONFIDENTIAL - E. PAVONY

2     going direct you not to answer.

3          MS. LEPERA:  Now you're coaching the

4     witness to tell him it is privileged

5     communication that it's based on the answer,

6     and that's not appropriate.  You can simply

7     ask him whether or not there's going to be a

8     violation of any privilege, without telling

9     him that there is one.

10          MR. SKIBELL:  I am directing him not

11     to answer.

12          MS. LEPERA:  With respect to the legal

13     strategy of this case, seriously?

14          MR. SKIBELL:  I'm going to direct him

15     not to answer to the extent the question

16     would reveal our legal strategy in the case,

17     Christine.

18          MS. LEPERA:  That's not what you said,

19     but okay.  You know, the rules don't apply

20     to you.

21  BY MS. LEPERA:

22     Q.    But go ahead, Mr. Pavony.

23          MR. SKIBELL:  Christine, please stop

24     with the nasty asides.

25          MS. LEPERA:  The rules don't apply to

1          CONFIDENTIAL - E. PAVONY

2          MS. LEPERA:  Wait.  Wait.  Wait.  I

3     said coaching.  I said you're coaching.

4          Do you know the difference between

5     saying you can't coach a witness and telling

6     someone they have a nasty reputation?  Do

7     you know that difference?  Because I don't

8     think you do, but I guess I'm going to have

9     to educate you.

10          MR. SKIBELL:  I'm not playing this

11     game.

12          Eric, you are --

13          MS. LEPERA:  Apparently you are.

14          MR. SKIBELL:  I'm directing you not to

15     answer to the extent it would reveal

16     communications about our legal strategy in

17     this case.  If you can answer

18     notwithstanding that, you can answer the

19     question.

20          THE WITNESS:  I am going to need the

21     question repeated because I -- I have

22     forgotten it since.

23  BY MS. LEPERA:

24     Q.    Is there any reason why you did not --

25  or, Full Circle, I should say, did not admit

1             UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF NEW YORK

3    = = = = = = = = = = = = = = = = = = = = = = = = =

4    FULL CIRCLE UNITED, LLC,

5          Plaintiff,

6    -vs-              Case No. 1:20-cv-03395

7    BAY TEK ENTERTAINMENT, INC.,

8          Defendant.

9    = = = = = = = = = = = = = = = = = = = = = = = = =

10   BAY TEK ENTERTAINMENT, INC.,

11         Counterclaim Plaintiff,

12   -vs-

13   FULL CIRCLE UNITED, LLC,

14         Counterclaim Defendant,

15   -and-

16   ERIC PAVONY,

17         Additional Counterclaim

            Defendant.

18

    = = = = = = = = = = = = = = = = = = = = = = = = =

19

         Remote Videotaped Deposition of:

20

21           GAETAN PHILLIPON

22          ***CONFIDENTIAL***

23          Neenah, Wisconsin

24          March 10, 2022

25       Reporter:  Jessica Bolanos

1           That's not a question.  He's already answered

2           his question -- the question, that he didn't

3           know of any others, period.  So now you want

4           to sit here and -- and harass him because he

5           didn't and he should have?  That's not

6           appropriate deposition questioning.

7                    MS. CASADONTE:  The record is --

8                    MS. LEPERA:  It's harassment.  You

9           should have learned of more because you're

10          supposed to be doing your job?  I mean,

11          that's what you're doing.  I -- okay.  You

12          want to make arguments, go ahead.  Ask him

13          facts, ask him questions.  This is a

14          deposition to learn facts.  Learn the facts.

15          You've already understood that fact.  You

16          learned that fact hours ago.

17     Q    I'm going to reveal what's been marked as

18          Exhibit 31.

19                   MS. LEPERA:  Okay.

20     Q    Please let me know when you can see the document

21          on your screen.

22                   MS. LEPERA:  Do you still have the

23          link up, Gaetan?

24                   THE WITNESS:  I do.

25                   MS. LEPERA:  Okay.  Hold on.  9,000

1        8.5, you're asking him?

2                   MS. CASADONTE:  Yes.

3        Paragraph 8 --

4                   MS. LEPERA:  Okay.  Okay.  In its

5        entirety?

6    Q   Without reading -- without reading paragraph 8,

7        sitting here today, do you have any recollection

8        of what the royalty rights, if any, provided under

9        the license agreement to SBI are?

10                  MS. LEPERA:  Wait a second.  You

11       asked the document -- you asked the

12       witness -- are you withdrawing the prior

13       question completely?

14                  MS. CASADONTE:  Yes.  He probably

15       forgot it, Ms. Lepera, because there's been

16       so much discourse.  So I'm --

17                  MS. LEPERA:  No, you asked him to

18       review paragraph 8, and you asked him if he

19       recalls reviewing paragraph 8 back in the

20       day, and he was reading it to answer your

21       question.

22                  MS. CASADONTE:  The common --

23                  MS. LEPERA:  Are you withdrawing

24       that question and now you're asking another

25       question; is that right?  Asking him to now

1     sit here, not look at the document, and tell

2     you whether he remembers the royalty

3     provision from eight or from something?  I'm

4     just trying to -- you see what you're doing?

5              MS. CASADONTE:  Do you see what

6     you're doing?

7              MS. LEPERA:  Yeah.  I'm training,

8     because obviously you haven't had any.

9              MS. CASADONTE:  I don't need this.

10    Thanks.

11             MS. LEPERA:  If you're going to

12    withdraw a question, withdraw it so the

13    witness knows.  All right?  So we're all

14    trying to, you know, follow you from the last

15    question.

16        In so paragraph 8, she's not asking you

17    about that anymore.  I believe her last

18    question is:  Do you remember the royalty

19    provision separate and apart from the

20    document?  I think that's what she's trying

21    to ask you.

22             MS. CASADONTE:  That's my question.

23    I'll withdraw the prior question.

24             MS. LEPERA:  Thank you.

25             MS. CASADONTE:  Because it was

1    occurred on February 23, 2016, that was

2    confidential at the time --

3                    MS. LEPERA:  To whom?  To whom?

4                    MS. CASADONTE:  As far as -- as far

5          as he understood it.

6                    MS. LEPERA:  So that means whether

7          these people want their picture to be

8          disclosed publicly?  Is that part of it?  You

9          can ask him that.

10                   MS. CASADONTE:  I'm not referring

11         to the document.  I'm not referring to the

12         document.

13                   MS. LEPERA:  Yes, you are.  Stop

14         playing games.  Stop playing games.

15                   MS. CASADONTE:  I'm not.

16                   MS. LEPERA:  This doesn't become

17         you, I'll tell you that much.

18                   MS. CASADONTE:  I'm not a game

19         player.

20                   MS. LEPERA:  It's so transparent,

21         and it is a total game and a total waste of

22         time.

23  Q   Can you just answer the question, please?

24                   MS. LEPERA:  No.  Get a ruling.

25         Get a ruling on the document.  Go ahead.

1     communications with Full Circle that you can

2     recall prior to April 2016 between lanes

3     manufactured under the license agreement and any

4     other agreement of any type to manufacture lanes?

5              MS. LEPERA:  Objection to form.  I

6         don't know what you're talking about, "any

7         other agreement to manufacture lanes."  Did

8         they make any other distinction?

9              MS. CASADONTE:  Ms. Lepera, you're

10       using all of my time.

11            MS. LEPERA:  I don't know.  I don't

12       know.  Yeah, well, you -- because you've not

13       answered -- asking -- you're not looking for

14       facts.

15            MS. CASADONTE:  Yes, I am.

16            MS. LEPERA:  You're looking for

17       arguments, and you're looking to distort

18       things, and you're doing it in a way that's

19       not in good faith, period.

20            MS. CASADONTE:  That is not fair to

21       say.  Just because you place something on the

22       record does not make it true, Ms. Lepera, and

23       I really --

24            MS. LEPERA:  The witness told you

25       himself that you were basically tangling two

1          things together.  Came from his mouth.  So if

2          that doesn't clarify for you that this was

3          not in good faith --

4                    MS. CASADONTE:  I'm asking --

5                    MS. LEPERA:  -- I don't know what

6          else does.

7                    MS. CASADONTE:  -- if there was any

8          consent to make them lanes of any type.

9          That's it.  That's it.

10                    MS. LEPERA:  No, no.  Now you asked

11          an entirely different question.

12    Q    I believe the question on the table concerned

13          whether there were any communications that you can

14          recall between Bay Tek and Full Circle that made a

15          distinction between Bay Tek manufacturing lanes

16          for Full Circle under the license agreement and

17          any other type of agreement, if any?

18                    MS. LEPERA:  You can answer that

19          question.

20    A    Can I?

21                    MS. LEPERA:  If you understand it.

22          I always caveat that.

23                    THE WITNESS:  Yeah.

24                    MS. LEPERA:  It's pretty

25          convoluted, but you can answer it if you can.

1       notification that the claim's not viable.  I

2       think you know that there very well has been

3       much notification.  If you want to ask him if

4       he ever notified anybody, I've got no problem

5       with that.

6  Q   Can you answer the question, if you can answer the

7     question, Mr. Phillipon?  Do you understand the

8     question?

9              MS. LEPERA:  (Unreportable

10     crosstalk).

11  Q   If you do understand the question, can you please

12     answer it?

13              MS. LEPERA:  I'm sure he doesn't

14     have a clue what the question is at this

15     point.

16              MS. CASADONTE:  Well, you've made

17     it so confusing by --

18              MS. LEPERA:  No, you just -- you

19     just want to be operating in bad faith, and

20     that's what's going on here.

21              MS. CASADONTE:  That's not --

22     that's not at all what's going on here.

23              MS. LEPERA:  Then ask him whether

24     he communicated or heard anybody communicate

25     -- you go through this long, dancy question,

1          you know, that makes absolutely no sense, and

2          you don't want to -- you know, want to fix

3          it.  So what can I do?  Ask it again.

4                    MS. CASADONTE:  I have a question

5          pending.

6                    MS. LEPERA:  Can I have the court

7          reporter read it back?  That's the procedure.

8                    THE REPORTER:  Let me get back to

9          it.

10                   (Page 313, Lines 12-16 read back.)

11                   MS. LEPERA:  I don't think that's

12         the question she wanted answered.

13                   THE REPORTER:  Okay.  I'll go back

14         further.  Give me a sec.

15    Q    Here's the thing, Mr. Phillipon.  I think you know

16         what I mean.  I think you know exactly what I

17         mean.  What I'm trying to figure out when, if

18         ever, anyone from Bay Tek had communications with

19         Full Circle about this issue that they purportedly

20         have with Full Circle's claim that you identified

21         here in April 2016.

22                   MS. LEPERA:  Is that a speech or a

23         question?  What's -- don't give speeches.

24         Ask a very simple question.

25                   MS. CASADONTE:  I'm almost out of

1          time.

2    Q    If you understand the question, answer it.  If you

3          don't --

4                        MS. LEPERA:  That's not -- let her

5                read back the first question then.

6                        MS. CASADONTE:  I'm almost out of

7                time.

8                        MS. LEPERA:  The one you just did

9                was even worse.

10   Q    If you understand the question, answer.

11                       MS. LEPERA:  It's all right.  I'll

12               give you the extra -- go ahead.  Just let her

13               read it back.

14                       (Page 312, Lines 2 through 8 read

15               back.)

16   A    My answer is I don't know.

17   Q    Okay.  You see here on the third bullet point, it

18         says, based on the biz case, we are leaning

19         towards saying yes to 20 to 25 pieces built via

20         our Stage Four process."  Do you know what you

21         mean by in April 2016 by "Stage Four process"?

22   A    Taking it to the prototype phase.

23   Q    And do you know what you meant here by "biz case"?

24   A    The biz case is laid out in the "blue sky biz

25         case" in the next bullet.

1              EXAMINATION

2    BY MS. LEPERA:

3    Q    Okay.  Mr. Phillipon, just a few follow-up

4         questions very briefly.  Do you have any training

5         as a lawyer?

6    A    I do not.

7    Q    Do you have any training in interpreting legal

8         provisions in written contracts?

9    A    I do not.

10   Q    Did you have any conversations with Joe Sladek as

11        to any of the meaning of the terms of either the

12        license agreement or the settlement agreement?

13   A    I did not.

14   Q    Did you have any role in negotiating any of those

15        provisions that were entered into between SBI and

16        Full Circle, either the license agreement or the

17        settlement agreement?

18   A    I did not.

19                  MS. LEPERA:  Okay.  No further

20          questions.

21                  MS. CASADONTE:  Thanks for your

22          time.

23                  MS. LEPERA:  Go for child care.

24          Christina, withdrawn, don't strike.  Don't

25          ask "possible" and don't ask "what do you

1          mean."  Otherwise, did a great job.

2                    THE VIDEOGRAPHER:  We're going off

3          the record at 5:31 p.m., and this concludes

4          today's testimony given by

5          Gaetan J. Phillipon.

6                    (Adjourning at 5:32 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL

1      UNITED STATES DISTRICT COURT
2      EASTERN DISTRICT OF WISCONSIN
3  - - - - - - - - - - - - - - - - - - - - - - - - - - -
   FULL CIRCLE UNITED, LLC,
4
                 Plaintiff,
5
       vs.                        Case No.
6                                 1:20-cv-03395
   BAY TEK ENTERTAINMENT, INC,
7
                 Defendant.       CONFIDENTIAL
8  _____
9  BAY TEK ENTERTAINMENT, INC.,
10          Counterclaim Plaintiff,
11  vs.
12 FULL CIRCLE UNITED, LLC,
13          Counterclaim Defendant,
14  and
15 ERIC PAVONY,
16          Additional Counterclaim
                 Defendant.
17
   - - - - - - - - - - - - - - - - - - - - - - - - - - -
18
                    CONFIDENTIAL
19        VIRTUAL VIDEO-RECORDED DEPOSITION OF:
                    LARRY TREANKLER
20
            TAKEN AT:  The Witness's Residence
21
            LOCATED AT:  6747 Kawula Lane
22                 Sobieski, Wisconsin
23                 July 12, 2022
              9:24 a.m. to 7:12 p.m.
24
            REPORTED BY:  VICKY L. ST. GEORGE, RMR.
25 - - - - - - - - - - - - - - - - - - - - - - - - - - -
   JOB NO. 5304329

1          THE WITNESS:  No, not to my knowledge.

2          MS. CASADONTE-ASPSTOLOU:  Okay.

3    BY MS. CASADONTE-ASPSTOLOU:

4    Q.   Was there any obligation -- did you basically have

5         any obligation in 2017 to make games -- Strike that.

6         Strike that.

7               Was there any problem with Full Circle's

8         concept of having NSBL lanes integrated with software

9         that enabled cashless payment to play the lane?

10          MS. LEPERA:  Object to the form of the

11     question.  Was there any problem with it?  Meaning

12     did it violate a contract or -- I don't understand

13     the question.

14          MS. CASADONTE-ASPSTOLOU:  You're

15     instructing the witness --

16          MS. LEPERA:  Wait, wait, wait, wait, wait.

17     Wait.  Was there any problem with that activity.

18          MS. CASADONTE-ASPSTOLOU:  Yeah, yeah.

19          MS. LEPERA:  Problem for who?  Problem for

20     who?

21          MS. CASADONTE-ASPSTOLOU:  I'm asking Mr.

22     Treankler.  I'm asking Mr. Treankler.  If he doesn't

23     understand it, he's free to tell me he doesn't

24     understand the question.  But you keep interrupting

25     and telling -- and directing him not to --

1        MS. LEPERA:  You ask the most problematic

2     let's use the word, questions.  Is there a problem

3     in doing something meaning --

4        MS. CASADONTE-ASPSTOLOU:  Okay.

5        MS. LEPERA:  Under what scenario, money?

6     Contracts?  I don't know what --

7        MS. CASADONTE-ASPSTOLOU:  Is there any

8     problem --

9  BY MS. CASADONTE-ASPSTOLOU:

10 Q.   Was that component of the NSBL a problem for you, Mr.

11    Treankler?

12       MS. LEPERA:  Personally?

13       MS. CASADONTE-ASPSTOLOU:  Seriously, Ms.

14    Lepera?  This is why we don't get -- you refuse to--

15       MS. LEPERA:  You just don't even

16    understand the reason I'm --

17       MS. CASADONTE-ASPSTOLOU:  Mr. Treanker, if

18    you don't understand any of my questions at any

19    time, say you don't understand it rather than, you

20    know, having Ms. Lepera have a soliloquy.

21       MS. LEPERA:  Fine, because you're never

22    going to learn how to ask a question.  Go ahead, Mr.

23    Treankler.

24       THE WITNESS:  I need you to ask the

25    question again.

1          MS. LEPERA:  Objection to form,

2     hypothetical, speculative, problem with whom?

3     Legal, a legal lawsuit from someone?  Is that your

4     question?

5          THE WITNESS:  It would not have been a

6     problem to build 100 games without credit card

7     readers.

8  BY MS. CASADONTE-ASPSTOLOU:

9  Q.  Would it have been a problem for Bay Tek to build 500

10    games without credit card readers?

11         MS. LEPERA:  Again, this is speculative.

12    There is no obligation to do any of this.

13         MS. CASADONTE-ASPSTOLOU:  He said there

14    was an obligation.

15         MS. LEPERA:  He did?

16         MS. CASADONTE-ASPSTOLOU:  An agreement.

17    There is an agreement, right, Mr. Treankler?

18  BY MS. CASADONTE-ASPSTOLOU:

19  Q.  Bay Tek agreed, it was one of the manufacturers that

20    agreed to a standard of wiring harness for credit

21    card readers, right?

22         MS. LEPERA:  No, no, no, you understand

23    me, Ms. Casadonte.

24         MS. CASADONTE-ASPSTOLOU:  You're

25    testifying --

1           MS. LEPERA:  Your question was whether or

2      not it was a problem for him to have built all these

3      multiple lanes for Full Circle and get himself into

4      some sort of hot water with someone.

5           MS. CASADONTE-ASPSTOLOU:  No, you're

6      testifying for your witness, Ms. Lepera.

7           MS. LEPERA:  I'm not testifying.  I'm

8      trying to clarify your question.

9           MS. CASADONTE-ASPSTOLOU:  His face is

10     telling me that he has something to say and you just

11     keep interrupting.

12          MS. LEPERA:  You just want to harass this

13     witness, don't you?

14          MS. CASADONTE-ASPSTOLOU:  I tried to --

15          MS. LEPERA:  You want to harass this

16     man --

17          MS. CASADONTE-ASPSTOLOU:  I had a

18     question --

19          MS. LEPERA:  -- in good faith and giving

20     you answers all day long at the last hour.

21          MS. CASADONTE-ASPSTOLOU:  I should have

22     called the Special Master earlier today.

23          MS. LEPERA:  I would show her the record

24     in which I would show her you asked the same

25     questions 90 times --

1          MS. CASADONTE-ASPSTOLOU:  And there was a

2     delay, and I've said off the record and on that my

3     hearing impairment makes it even more difficult for

4     me to follow because of the delay and the audio

5     issues, Ms. Lepera, and you interposing your

6     objections --

7          MS. LEPERA:  You know what, I just give up

8     with you.  I'm just really glad you don't work here.

9     That's all I've got to say.  Go ahead, ask the

10     question again.

11          MS. CASADONTE-ASPSTOLOU:  There is a

12     delay.  I'm going off the record.

13          THE VIDEO OPERATOR:  We're going off.

14     Stand by.  We're off the record at 5:31 p.m.

15          (Recess taken.)

16          THE VIDEO OPERATOR:  We are back on the

17     record at 5:32 p.m.  This is the end of media unit

18     No. 5.  We are off the record at 5:32 p.m.

19          (Recess taken.)

20          THE VIDEO OPERATOR:  We are back on the

21     record at 5:47 p.m.  This is the beginning of media

22     unit No. 6.

23  BY MS. CASADONTE-ASPSTOLOU:

24  Q.   Mr. Treankler, do you know whether this

25       standardization committee was in a position to, if it

1       know where you're going.  But okay, fine.  You can

2       answer that question.

3                   MS. CASADONTE-ASPSTOLOU:  He works for Bay

4       Tek, right?  Didn't you say that?

5                   MS. LEPERA:  You're screaming now.  It's

6       really unattractive.

7                   MS. CASADONTE-ASPSTOLOU:  Well, you scream

8       all the time, Ms. Lepera.

9                   MS. LEPERA:  No, I don't.  I don't

10      speak -- I never scream.  Never scream.  Never.

11                  THE WITNESS:  You asked me if I know where

12      Adam Ambrosius works?

13  BY MS. CASADONTE-ASPSTOLOU:

14  Q.   Yes.

15  A.   For one of my other companies.

16  Q.   Do you know the name of the company that Adam

17       Ambrosius works for now?

18  A.   MCL Fab.

19  Q.   Is MCL Fab a different entity than the MCL you

20       previously identified at the beginning of the

21       deposition?

22  A.   It's part -- sorry.  It's part of.  It's our main --

23  Q.   MCL Fab --

24  A.   Sorry.  Go ahead.

25  Q.   I didn't mean to interrupt you.

1    MS. CASADONTE-ASPSTOLOU:  He said -- I'm

2    going to retract that question.

3    MS. LEPERA:  I'm going to be able to put

4    my objection in so go ahead.

5    MS. CASADONTE-ASPSTOLOU:  Did I mishear

6    you because Ms. Lepera keeps speaking over you and--

7    MS. LEPERA:  Oh, my God, are you like a

8    human being?  I don't understand this.  Just --

9    MS. CASADONTE-ASPSTOLOU:  Still talking.

10   BY MS. CASADONTE-ASPSTOLOU:

11   Q.   Did I misunderstand you?

12   A.   I'm not --

13   Q.   Did you say that there was a decision made to

14        terminate the license agreement, yes or no?

15   MS. LEPERA:  No.

16   THE WITNESS:  I said there was not a

17   decision made to terminate the license agreement.

18   MS. CASADONTE-ASPSTOLOU:  Then I didn't

19   hear you.  Then I didn't hear, Ms. Lepera.  It's not

20   funny.

21   MS. LEPERA:  Because I'm allowed to put my

22   objection in first.  It's not appropriate that you

23   decide you want my witness to answer the question

24   before I get my objection in.  You're not allowed to

25   do that.  It doesn't work that way.  So I would just

1    Q.   I'll ask it again so the record is clear.

2               Were you the person that made a decision to

3         terminate the license agreement?

4               MS. LEPERA:  No, objection to the form of

5         the question.

6               MS. CASADONTE-ASPSTOLOU:  Sorry, sorry.

7         I'll withdraw it.

8    BY MS. CASADONTE-ASPSTOLOU:

9    Q.   Were you the person that made the decision --

10              MS. LEPERA:  -- are bad faith Christina.

11        You should be ashamed of yourself.  You should be

12        ashamed of yourself.

13              MS. CASADONTE-ASPSTOLOU:  Ms. Lepera --

14              MS. LEPERA:  Not making a decision to

15        terminate the license agreement, he said it 12

16        times.  He made a proposal which has a lot of terms

17        in it.  What is wrong here?

18              MS. CASADONTE-ASPSTOLOU:  I misspoke.  I

19        did misspeak.

20              MS. LEPERA:  No, you didn't misspeak.  No,

21        you didn't misspeak.  You've been trying to do this

22        for hours.

23              MS. CASADONTE-ASPSTOLOU:  We haven't --

24              MS. LEPERA:  Now, act -- every question

25        has to be posed in good faith.  Every question.

1      There is a rule.

2                  MS. CASADONTE-ASPSTOLOU:  Ms. Lepera,

3      please.  Stop accusing me of acting in bad faith.

4                  MS. LEPERA:  You know that last question

5      you asked was wrong.

6                  MS. CASADONTE-ASPSTOLOU:  I misspoke and I

7      retracted it immediately.  Let me continue.

8  BY MS. CASADONTE-ASPSTOLOU:

9  Q.   Mr. Treankler, were you the person that made the

10      decision to propose a term sheet to Full Circle

11      terminating the license agreement?

12                  MS. LEPERA:  Objection to form,

13      mischaracterizes the document, omits, ignores

14      significant facts.  You can answer the question.

15                  THE WITNESS:  I did that in conjunction

16      with Holly and my attorney David Timm.

17                  MS. CASADONTE-ASPSTOLOU:  Mr. Atfeh, can

18      you please bring up the term sheet and -- the term

19      sheet, please.

20                  MR. MOUHANNAD:  The letter or the --

21                  MS. CASADONTE-ASPSTOLOU:  It will be

22      providing the term sheet as an attachment to a

23      letter from David Timm I believe.  The term sheet

24      wasn't produced as a stand alone document by Bay

25      Tek.