UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FULL CIRCLE UNITED, LLC,<br><br>　　Plaintiff,<br><br>　v.<br><br>BAY TEK ENTERTAINMENT, INC.,<br><br>　　Defendant. | CASE NO. 1:20-CV-03395-BMC |
| BAY TEK ENTERTAINMENT, INC.,<br><br>　　Counterclaim Plaintiff,<br><br>　v.<br><br>FULL CIRCLE UNITED, LLC,<br><br>　　Counterclaim Defendant,<br><br>　and<br><br>ERIC PAVONY,<br><br>　　Additional Counterclaim<br>　　Defendant. | |

**BAY TEK ENTERTAINMENT, INC.'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE ARGUMENT AND
EVIDENCE TO THE EXTENT OFFERED TO RE-LITIGATE
<u>ISSUES ESTABLISHED AS A MATTER OF LAW</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

I.    FCU OMITS AND MISREPRESENTS KEY FACTS ...................................................... 4

II.   FCU'S POSITION IS CONTRARY TO APPLICABLE LAW ON "BEST EFFORTS" PROVISIONS ................................................................................................ 7

III.  THE EVIDENCE IS INADMISSIBLE FOR FCU'S OTHER STATED PURPOSES ..... 9

CONCLUSION ........................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Bloor v. Falstaff Brewing Corp.*,
   601 F.2d 609 (2d Cir. 1979) ............................................................................................8

*Cruz v. FXDirectDealer, LLC*,
   720 F.3d 115 (2d Cir. 2013) ............................................................................................8

*Kroboth v. Brent*,
   625 N.Y.S.2d 748 (3d Dep't 1995) ..................................................................................8

*Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*,
   6 N.Y.S.3d 7 (1st Dep't 2015) .........................................................................................7

*Pfizer Inc. v. PCS Health Sys., Inc.*,
   650 N.Y.S.2d 164 (1st Dep't 1996) .................................................................................8

*USAirways Grp., Inc. v. Brit. Airways PLC*,
   989 F. Supp. 482 (S.D.N.Y. 1997) ..................................................................................8

*Vestron, Inc. v. Nat'l Geographic Soc.*,
   750 F. Supp. 586 (S.D.N.Y. 1990) ..........................................................................2, 7, 8

### OTHER AUTHORITIES

Fed. R. Evid. 403 ................................................................................................................9

# PRELIMINARY STATEMENT[1]

Plaintiff and Counterclaim Defendant Full Circle United, LLC's ("Full Circle" or "FCU") Opposition (ECF No. 270; the "Opp." or "Opposition") to Bay Tek Entertainment Inc.'s ("Bay Tek") Motion *In Limine* ("Motion") confirms that FCU is seeking to re-litigate the established issue that it has no right to livestream or broadcast the Skee-Ball® trademark (the "Skee-Ball Mark" or the "Mark") under the License Agreement (while pretending that it is not seeking to do so). Worse, FCU is outrageously trying to turn *its* violation of the License Agreement into a violation by Bay Tek thereunder.

FCU's Opposition represents the epitome of sophistry: trying to flip Bay Tek's ***right*** not to condone a violation by FCU of the License Agreement (*i.e.*, FCU's efforts to stream and broadcast on ESPN) into a ***breach*** by Bay Tek for failing to condone such a violation. In other words, FCU is asking the Court to ignore its finding that streaming is a breach of Section 4.5, and allow FCU to present argument and evidence that Bay Tek could be liable for breaching the License Agreement by refusing to allow a Section 4.5 violation. This should be soundly rejected, and FCU should be precluded from seeking to argue or introduce evidence that Bay Tek breached the "best efforts" provision in Section 7.2 (FCU's sole remaining claim) by refusing to allow FCU to grant ESPN rights ***FCU as a matter of law did not have*** to stream the Mark on television and online, in violation of Section 4.5.

FCU cannot dispute that the Court's September 23, 2024 Summary Judgment Order (ECF 193; "MSJ Order") established that internet streaming of events by FCU depicting the Mark is a breach of Section 4.5 of the License Agreement, because such conduct is "patently

---
[1] Terms not defined herein were defined in Bay Tek's opening Memorandum of Law in support of this motion (ECF No. 268; "Mem." or "Memorandum").

1

outside" of the specifically enumerated Licensed Uses of the Mark granted to FCU. MSJ Order at 19. FCU also fails to rebut that the proposed ESPN contract[2] included a broad grant of rights through which FCU both purported to sub-license rights to ESPN to broadcast Skee-Ball® matches in all manner of media (including streaming), and also to explicitly reserve for itself certain rights to livestream the content via YouTube, Twitch, and other platforms if ESPN did not ultimately exploit the content. As a matter of law, FCU did not have any such rights to grant any such sub-license therein; falsely claiming to have rights outside of the Licensed Uses and contrary to Section 4.5 is itself a violation of the License Agreement.

At the center of FCU's deceptive narrative is its conspicuous avoidance of the Licensed Uses, and the inextricable link between the "best efforts" clause tied expressly to those Licensed Uses *only.* And indeed, while tying itself in knots to try to harm Bay Tek with FCU's own violation of the License Agreement, FCU misstates the core contract principle espoused in *Vestron, Inc. v. Nat'l Geographic Soc.*: "A best efforts requirement must be reconciled with other clauses in the contract to the extent possible, *not used as a basis for negating them*." 750 F. Supp. 586, 593 (S.D.N.Y. 1990) (citation omitted) (emphasis added). FCU cannot reconcile the "best efforts" provision, whose goal pertains solely to promoting the Licensed Uses, to negate and expand them to include uses this Court has already determined FCU did not have, but falsely claimed it did in the proposed ESPN contract. Moreover, FCU's authorities confirm that "best efforts" provisions apply only to the explicitly stated goals of such provision. Under no construct can the "best efforts" provision be twisted to be *used against Bay Tek* for *not allowing a breach by FCU of the License Agreement* by exceeding the Licensed Uses.

---

[2] A true and correct copy of the proposed ESPN contract was attached to the previously-filed Declaration of Mark C. Humphrey ("Humphrey Decl.") as Exhibit 1 (ECF 269-1).

FCU also tries in vain to distance the proposed ESPN contract from the Court's ruling by mischaracterizing it as only being for "television with the express consent of Bay Tek[.]" Opp. at 6. This is false. The language of the proposed ESPN contract—omitted from FCU's Opposition—makes clear that FCU misrepresented to ESPN that *it* had the right to grant the sub-license to stream and broadcast Skee-Ball® matches. The proposed ESPN contract, however, nowhere mentions consent of Bay Tek nor conditions it thereon.

Finally, FCU's purported other grounds for relevance are equally fallacious and fail. FCU claims Bay Tek's decision not to condone the ESPN contract is relevant to (1) refute Bay Tek's own claims against FCU or (2) to support other purported violations of the "best efforts" clause by Bay Tek. Both of these arguments suffer from the same fatal infirmities as FCU's arguments discussed above. Bay Tek's claims are for, *inter alia,* violations of the License Agreement, and FCU's failure to use "best efforts" in connection with the **Licensed Uses.** The proposed ESPN contract provides no support for FCU's efforts in that regard; it is instead a clear violation. Moreover, FCU's suggestion that Bay Tek's rejection of the proposed ESPN contract tends to show Bay Tek was not acting in good faith on other, separate occasions again presupposes that this "rejection" could be construed as anything other than Bay Tek's exercise of its absolute right not to grant FCU rights it did not have under the License Agreement, and to reject FCU's efforts to claim and exercise such purported rights.

In sum, FCU has no proper purpose for attempting to use the arguments and evidence sought to be precluded on this Motion *in Limine*. If allowed to do so, it would be contrary to and in conflict with established rulings as well as highly prejudicial to Bay Tek, designed to mislead

a jury into accepting the preposterous premise that Bay Tek could be liable for breach of contract by refusing to consent to a counter-party's own breach.

I.  **FCU OMITS AND MISREPRESENTS KEY FACTS**

FCU's Opposition obfuscates the Licensed Uses and their interrelationship with the "best efforts" provision, the proposed ESPN contract, and the Court's MSJ Order. *See* Opp. at 6.

*First*, FCU intentionally refuses to recognize that the "best efforts" provision it claims Bay Tek breached—its sole remaining claim—is inextricably and solely tied only to ***Licensed Uses***. *See* License Agreement, Section 7.2; (*see* Mem. at 3 (listing Licensed Uses)). Therefore, it is axiomatic that any ***unauthorized*** uses of the Mark by FCU would not only be outside of the ***goal*** of the "best efforts" provision, they would indeed be anathema thereto.

This Court has already determined that streaming of Skee-Ball® matches is "patently outside the rights conferred in ¶ 4.5." Indeed, the MSJ Order at page 19 establishes that any such use is not a Licensed Use and thus not subsumed within the parameters of Section 7.2. Accordingly, a refusal by Bay Tek to consent to the proposed ESPN contract, which dealt with no Licensed Use under the License Agreement but instead an ***unauthorized*** use (since established as a Section 4.5 violation), cannot conceivably be a breach by Bay Tek of the "best efforts" provision. Simply put, Bay Tek cannot be ***held liable for breach of the License Agreement because it refused to consent to a breach by FCU of the License Agreement***.

*Second*, FCU attempts to mislead by inaccurately stating that the proposed ESPN contract (without citing or quoting it) pertained only to permitting "a third-party cable network [to] broadcast Skee-Ball® matches on television with the express consent of Bay Tek[.]" Opp. at 6. Not so. As explained in Bay Tek's Memorandum: "FCU worked with ESPN on proposed deal points and a full long-form agreement providing, *inter alia*, that ESPN would have the broad

4

right to distribute a television program depicting Skee-Ball Live Play, authorizing it to have rights with the Mark, *including via online streaming*." Mem. at 4 (citing Humphrey Decl., Ex. 1 at Section 5(a)) (emphasis added)." FCU ignores the exceedingly broad rights that were to be granted to ESPN under the proposed contract, which necessarily included online streaming:

> ESPN has the exclusive, perpetual right to distribute, transmit, exhibit, license, advertise, duplicate, promote, perform, telecast and otherwise exploit (collectively, "Distribute" or "Distribution") the Program and its constituent elements and any other material pertaining to the Program *throughout the universe, by all means and media now known or subsequently developed, on a live and/or delayed basis, without limitation as to the number of uses*.

Humphrey Decl., Ex. 1 at Section 5(a) (emphasis added).

While the above broad grant includes unauthorized streaming conduct in violation of the License Agreement, another section in the proposed contract states that FCU *would be permitted to stream the ESPN program* in the event ESPN did not do so by a specific date:

> In the event that ESPN declines to broadcast, publish, release, or distribute the Program in any way by December 31, 2020, and only in such an event, *[FCU] will have the right to distribute or publish the Program on the internet through streaming video networks/services such as Twitch and YouTube* and/or social media platforms such as Facebook, Instagram, and Twitter[.]"

Humphrey Decl., Ex. 1 at Section 5(a) (emphasis added). These rights that FCU purported to grant to ESPN and alternatively use itself were "patently outside the rights" conferred under the License Agreement. *See* MSJ Order at 19; ECF No. 153-61 (exhibit submitted in support of Bay Tek's Motion for Summary Judgment showing FCU's streaming on Twitch); ECF No. 169-3, ¶ 119 ("On multiple occasions since BTE was assigned the License Agreement in 2016, FCU has broadcast full Live Play matches and tournaments via online video streaming platforms such as Twitch"; FCU's Response: "Undisputed") (citation omitted). Further, Section 4.5 of the License Agreement

expressly includes "television" in the list of streaming that is limited to promotional and marketing purposes only for FCU. *See* Mem. at 3 (citing License Agreement).

FCU's claim that the ESPN contract was conditioned on Bay Tek's consent (*See* Opp. at 6) is a red herring, and false. In fact, Bay Tek is not mentioned in the proposed ESPN contract whatsoever. *See generally* Humphrey Decl., Ex. 1 at FCU000020412-FCU000020427. Instead, FCU claimed to have all of the rights necessary to grant to ESPN in the contract, making it clear that FCU intended to cut Bay Tek out entirely, monetize the agreement itself, and take actions squarely outside of the rights conferred to FCU in the License Agreement. Specifically, FCU misrepresented to ESPN that "it has all rights necessary to its grant of rights to ESPN hereunder" and that "***the rights ESPN has acquired, and its use of such rights, will not infringe upon or violate the rights of any third party[.]***" *Id.* at Section 10(a)(i)(B)-(C) (emphasis added). As this Court has held, FCU does not have these rights. Nonetheless, FCU went so far as to purport to allow ESPN to be the sole and exclusive owner of the contemplated broadcast, including "its constituent elements (and any other material shot or pertaining to the Program, whether or not such material was incorporated into the Program)"—which would expressly include the Mark that only Bay Tek owned. *Id.* at Section 6(a). Worse still, the proposed ESPN contract contemplated that FCU would be responsible for the production of the contemplated program as a "work made for hire"—yet another action which FCU had no right to take with the Mark. *Id.*

Thus, the proposed ESPN contract falls squarely within the parameters of the ruling by the Court, as it attempted to confer and reserve rights in direct violation of Section 4.5 of the License Agreement. *See* MSJ Order at 19.

## II. FCU'S POSITION IS CONTRARY TO APPLICABLE LAW ON "BEST EFFORTS" PROVISIONS

FCU cannot avoid the legal principles set forth in Bay Tek's opening memorandum, namely that: "A best efforts requirement must be reconciled with other clauses in the contract to the extent possible, **not used as a basis for negating them**." *Vestron, Inc. v. Nat'l Geographic Soc.*, 750 F. Supp. 586, 593 (S.D.N.Y. 1990) (citation omitted) (emphasis added); *see* Opp. at 8 (discussing separate proposition from *Vestron*). As noted above, the proposed ESPN contract granted ESPN the right to, *inter alia*, livestream the contemplated program containing the Mark, and also stated that FCU had that right in the event ESPN did not exploit the program. Humphrey Decl., Ex. 1 at Section 5(a). Any argument or purported evidence offered to claim that Bay Tek's "refusal to consent" to the ESPN contract was a breach of the "best efforts" provision in Section 7.2 is thus improper, as it would both "negate" Section 4.5 of the License Agreement and run in blatant conflict with the Court's ruling. *See Vestron*, 750 F. Supp. at 593; *see also Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.,* 6 N.Y.S.3d 7, 11 (1st Dep't 2015) ("It is well settled 'that a contract should not be interpreted to produce an absurd result, one that is commercially unreasonable, or one that is contrary to the intent of the parties'") (citation omitted).

FCU's attempt to factually distinguish *Vestron* is completely unavailing. FCU makes the specious contention that Bay Tek has to consider **anything** FCU wants—regardless of whether it is **not allowed** under the License Agreement—or be subject to a "best efforts" breach. FCU further claims, nonsensically, that "the License Agreement does not grant Bay Tek any explicit

7

carve out entitling it to reject specific categories of proposals from Full Circle[.]" Opp. at 8-9. This is another circular end run to avoid that the "best efforts" provision is expressly limited only to *Licensed Uses*. Furthermore, the Court recognized as a matter of law that the License Agreement does have such a "carve out": Section 4.5, which prohibits streaming and broadcasting not undertaken for promotional or marketing purposes. MSJ Order at 19. Thus, *Vestron* is directly on point. *See* 750 F. Supp. at 593.

Moreover, FCU's own cited authority states that "best efforts" provisions must be read to ***conform with the explicit language of an agreement***, namely, the stated goal of such best efforts, which here is only to ***promote the Licensed Uses and which expressly excludes,*** **inter alia,** *streaming uses*. *See Kroboth v. Brent*, 625 N.Y.S.2d 748 (3d Dep't 1995) ("best efforts" only applied to stated goal "to obtain subdivision approval"); *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) ("best efforts" only applied to "attempt in good faith [to] at least execute customer orders ***at the specified level***" (citation omitted) (emphasis added)); *Bloor v. Falstaff Brewing Corp.*, 601 F.2d 609, 610 (2d Cir. 1979); ("best efforts" only applied "to promote and maintain ***a high volume of sales*** under the [relevant] Rights" (emphasis added)); *USAirways Grp., Inc. v. Brit. Airways PLC*, 989 F. Supp. 482, 490-91 (S.D.N.Y. 1997) ("best efforts" only applied to stated goal to "obtain, at the earliest practicable date, DOT Approval of all of the transactions and acts contemplated by [the Investment] Agreement'" (alteration in original)); *Pfizer Inc. v. PCS Health Sys., Inc.*, 650 N.Y.S.2d 164 (1st Dep't 1996) ("While plaintiff urges that the injunction [under a best efforts provision] should also cover all new health plans, the agreement unambiguously provides that such new plans would be covered by the agreement 'only upon the mutual agreement of the parties', of which there is no evidence.").

## III. THE EVIDENCE IS INADMISSIBLE FOR FCU'S OTHER STATED PURPOSES

FCU's claimed alternative grounds of relevance suffer from the same infirmities as discussed above. In all events, the evidence is not relevant or admissible for FCU's two stated alternative purposes. *See* Opp. at 9.

*First,* FCU claims this evidence is relevant to "refute" Bay Tek's claim that FCU breached its best efforts obligations by failing to take steps to promote Skee-Ball® matches. *Id.* This is another fallacious and circular end run around the License Agreement. FCU's attempt to enter into the proposed ESPN contract is the *opposite* of compliance with the License Agreement. The proposed contract involves **no Licensed Use** whatsoever, and therefore could not remotely serve to show "best efforts" to promote **the Licensed Uses**. And, as a violation of the License Agreement, it reflects time and energy FCU spent pursuing matters indisputably outside the License Agreement, while ignoring what FCU was required to do under same.

*Second*, FCU claims that the evidence is relevant as it "tends to show" that Bay Tek was not genuinely evaluating in good faith *other* requests by FCU, such as its request that Bay Tek manufacture custom lanes (another matter outside the Licensed Uses). *See* Opp. at 9. Once again, Bay Tek's conduct in connection with the proposed ESPN contract cannot conceivably be used to support a lack of good faith elsewhere, as it does not even support a lack of good faith in and of itself: **it was an absolute right of Bay Tek to not allow FCU to use the Mark in an unauthorized way**. Accordingly, this argument fails for the same reasons discussed above and offers more evidence of the sophistry presented by FCU.

In all events, neither of these newly concocted arguments pass colorable muster on relevance, are in conflict with established rulings, and are certainly highly prejudicial to Bay tek and must be excluded under Fed. R. Evid. 403 as well.

## **CONCLUSION**

For the foregoing reasons and those stated in its opening Memorandum, Bay Tek respectfully requests that the Court grant its Motion *in Limine* and preclude FCU from introducing argument or purported evidence in support of a "claim" that Bay Tek breached Section 7.2 by "[r]efus[ing] to consent" to the proposed ESPN contract, or under the purported guise of refuting Bay Tek's claims or showing Bay Tek allegedly otherwise acted in bad faith.

DATED: New York, New York
          March 21, 2025

Respectfully submitted,

Mitchell Silberberg & Knupp LLP

By: */s/ Mark C. Humphrey*
    Christine Lepera (CL 9311)
    Andrew Nietes
    437 Madison Ave., 25th Floor
    New York, New York 10022-7001
    Telephone: (212) 509-3900
    Facsimile: (212) 509-7239
    Email: ctl@msk.com
    Email: jmm@msk.com

    Mark C. Humphrey (*pro hac vice*)
    James D. Berkley (*pro hac vice*)
    2049 Century Park East, 18th Floor
    Los Angeles, California 90067-3120
    Telephone: (310) 312-2000
    Facsimile: (310) 312-3100
    Email: mxh@msk.com
    Email: jdb@msk.com

    Attorneys for Bay Tek Entertainment, Inc.